ACCEPTED
15-25-00019-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/21/2025 10:35 AM
CHRISTOPHER A. PRINE
CLERK

**NO. 15-25-00019-CV**

**IN THE COURT OF APPEALS FOR THE
FIFTEENTH DISTRICT OF TEXAS AT AUSTIN**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/21/2025 10:35:12 AM
CHRISTOPHER A. PRINE

**In Re T. BENTLY DURANT, THOMAS R. DURANT, THE DURANT CLASSIC DYNASTY TRUST, MICHAEL A. WARD, 8100 PARTNERS, LTD., 8100, MANAGEMENT LLC, 8705 PARTNERS, LTD., 8705 MANAGEMENT LLC, CLASSIC CHEVROLET SUGAR LAND, LLC, CLASSIC CHEVROLET WEST HOUSTON, LLC, CLASSIC ELITE BUICK GMC, INC., AND 16835 CADET PARTNERS, LLC.,**
*Relators.*

Original Proceeding from the
Business Court of the State of Texas, Eleventh Division
Cause No. 25-BC11A-0001
Honorable Stacy Rogers Sharp, Judge of the Texas Business Court
Fourth Division, Sitting by Assignment

**RELATORS' RESPONSE TO
REAL-PARTIES-IN-INTEREST'S EMERGENCY MOTION TO
RECONSIDER THE STAY GRANTED BY THE COURT**

**SHACKELFORD, MCKINLEY & NORTON, LLP**
*Attorneys for Relators*

K. Elizabeth Swan
State Bar No. 24071218
eswan@shackelford.law
Derek D. Rollins
State Bar No. 24029803
drollins@shackelford.law
Lucas Peterson
State Bar No. 24121468
lpeterson@shackelford.law
9201 N. Central Expy., 4th Floor,
Dallas, Texas 75231
Telephone: (214) 780-1400
Facsimile: (214) 780-1401

Timothy D. Zeiger
State Bar No. 22255950
tzeiger@shackelford.law
2600 Via Fortuna, Suite 150
Austin, Texas 78746
Telephone: (512) 469-0900
Facsimile: (512) 469-0930

In this original proceeding, Relators seek mandamus review of the business court's order remanding a removed commercial action (Cause No. 25-BC11A-0001, the "Business Court Action") to the 387th District Court of Fort Bend County, Texas (Cause No. 24-DCV-318087, the "Divorce Action"). On February 21, 2025, this Court issued an Order staying all proceedings in both the Business Court Action and the Divorce Action (the "Stay") and requesting a response and reply to Relators' Petition for Writ of Mandamus.

The *status quo ante* at the time of the Stay was that Relators controlled and managed the operations of the Classic Dealerships without interference from the Sebastians, as they had for approximately seven (7) months. App.A:4, 9, 252-254. Jeff Sebastian was terminated from employment at the dealerships in July 2024 and Tiffany was terminated in September 2024,[1] prior to their initiation of any lawsuit against Relators. MR:391; MR:509-510 (¶¶2, 8-9); Motion p. 3.

The Sebastians jointly filed pleadings in the Divorce Action seeking to upend that status quo, including a request to appoint a receiver over virtually all dealership operations, and their February 21, 2025 request for an *ex parte* temporary restraining order "enjoin[ing] any interference with Jeff's legal right to control all management

---

[1] In fact, the Sebastians conceded in their "Emergency Application for TRO" not only that their terminations occurred but also that their terminations were the basis ("Specified Event" or "triggering event") that required a buy out of their interest. MR:509 (¶2), 510 (¶¶ 8, 9).

decisions" of the Classic Dealerships – which compelled Relators to seek a Stay from this Court. MR:401-404, 514-515, 556-7. This Court's Stay preserved the status quo of the peaceable operation of the Classic Dealerships and, pending mandamus review, prevented the Sebastians from obtaining court orders from the Divorce Court that would hamper or eliminate this Court's ability to afford relief in the event this Court determines that the business court improperly remanded the Business Court Action.

The day *after* the Stay was imposed, on February 22, 2025, the Sebastians unilaterally held a Special Meeting of the Managers of Relator Classic Chevrolet West Houston, LLC ("Classic West Houston"). App.A:252, 304-305; App.B:2-12. At that "meeting" – where Jeff was the sole member in attendance – Jeff purported to remove Relator Thomas R. Durant as Manager and President and appoint Tiffany as Manager and himself as President.[2] App.A:304; App.B:5-7. The Sebastians further purported to set each of their base compensation at $15,000 per month plus 2% of the dealership's gross revenues. App.A:304; App.B:7-9. The meeting was improper and ineffective for multiple reasons. App.A:6, 253-254; App.G.

After waiting almost three weeks, and despite the Stay and notice that Relators disputed the effectiveness of the actions taken at the purported meeting, the

---

[2] Notably, the Emergency Request for TRO sought an order giving Jeff control without even the fig leaf of the improper meeting the next day.

3

Sebastians then attempted to implement the unauthorized changes from their improper meeting, causing significant disruption to the dealership operations. App.A:253-254; App.G. On March 12, 2025, Jeff Sebastian contacted Classic West Houston's Controller, holding himself out as the Manager of that dealership. Jeff demanded the Controller implement the Sebastians' unilaterally dictated compensation structure and give the Sebastians access to email, financial reports and documents, keys, login access to systems, and other information. App.B. The Sebastians further entered the dealership property to "work" – despite both stating in their pleadings they were terminated months earlier. App.A:7; MR:391; Motion p. 3. Despite clear notice their status was disputed and the subject of pending litigation, they erroneously held themselves out as managers to the dealership employees, causing confusion and dissension and forcing Classic West Houston to significantly curtail operations, resulting in lost profits and reputational damage. *Id*. The Sebastians refused to leave when requested and affirmatively stated through counsel an intent to continue to disrupt Relators' business and return the next day. *Id*.

These actions gave rise to a new and independent cause of action for Classic West Houston for conduct occurring after the filing of this original proceeding and issuance of the Stay. While the Stay prevented the Sebastians' efforts to litigate a business dispute in the Divorce Court, it does not prevent these extrajudicial actions

4

because they were taken outside of the judicial process entirely. Faced with either allowing the disruption of its business to continue indefinitely or seeking temporary relief while the Mandamus Petition is pending, Classic West Houston sought relief in Tarrant County—a proper venue for that matter[3]—to protect the status quo and ability of Classic West Houston to operate until the Petition for Writ of Mandamus is resolved. App.A; Motion Ex.1.

Accordingly, Classic West Houston filed a verified petition and application for temporary injunction against the Sebastians under Cause No. 236-362746-25, in the 236th District Court of Tarrant County (the "Tarrant County Litigation"). Motion Ex.1; App.A. In doing so, Classic West Houston fully disclosed the procedural history of this case to the Tarrant County District Court, including the existence of the Stay. App.A: 6-7, 302-303; Motion Ex.1:5-6.

---

[3] Relators' Notice of Removal included the statutorily required recitation that venue was proper in the Eleventh District and, although the principal place of business of all three Classic Dealerships is in Tarrant County, one of the Classic Dealership store locations is in Ft. Bend County. After the Notice was filed, a more nuanced and in depth analysis of venue caused Relators to determine that, while the business court is the proper forum for this dispute, venue in Ft. Bend County is not, because Relators reside and/or maintain their principal place of business in Tarrant County (making it the mandatory venue for the Sebastians' request to appoint a receiver for the Classic Dealerships), because the events giving rise to the Sebastians' claims against Relators occurred in Tarrant County, and because only one of the three Classic Dealerships is actually located in Fort Bend County. *See* App.F. This error in the Removal Notice does not deprive Relators their right to request transfer to the appropriate division of the business court. TEX. GOV'T CODE § 25A.006 (i) and (j). Given the unique procedural history of this case, Relators have thus far been prevented from seeking to transfer venue from either the Divorce Court or the business court. Had Classic West Houston sought a TRO in Fort Bend County, it would have undoubtedly resulted in argument that Relators waived any objection to venue in Fort Bend County.

5

On March 13, 2025, the 236th District Court of Tarrant County granted a Temporary Restraining Order (App.C, the "TRO") which maintained the status quo of dealership operations by enjoining the Sebastians from:

1) effecting or enforcing any of the purported actions taken at the February 22, 2025 special meeting (which occurred after the Stay was imposed);

2) attempting to call, or otherwise participate in, any meetings of the dealership's members; and

3) attempting to vote or engage in any managerial function associated with their membership interest(s), including without limitation, entering the dealership, giving instruction, direction, or orders to dealership employees, or accessing or attempting to access any financial records of the dealership.

App.C.

The Sebastians filed a joint motion to dissolve the TRO and a supplemental motion seeking a stay of the Tarrant County Litigation because of the pending mandamus proceeding and this Court's Stay. App.D; App.E:9. A hearing was conducted on March 20, 2025, and the Tarrant County District Court granted the motion, dissolved the TRO, and stayed the Tarrant County Litigation "pending the actions of the 15th Court of Appeals, or until further order of the Court." App.G.

**ARGUMENT**

**I.      The Sebastians have not articulated any emergency warranting lifting of the Stay.**

The Sebastians' Motion is now moot. The TRO has been dissolved, the injunction hearing canceled, and all proceedings involving any of the parties to this

6

mandamus proceeding have been stayed in deference to this Court. App.D. There is no impending event or emergency that warrants lifting the Stay.

The Stay maintained the status quo of dealership operations and preserved the Court's jurisdiction to review Relators' Mandamus Petition. The basis for the Stay remains unchanged by the (now-dissolved) TRO. It is no more appropriate now to allow an improper court to render orders without jurisdiction than it was when the Stay was issued. This Court's determination of which court will preside over this action, and which claims will make up that action, must precede further proceedings on the claims that are subject to that determination. The Court's decision is important to the jurisprudence of this State and the Court's jurisdiction to make that decision must be preserved.

The Sebastians' Motion does not recite any emergency or harm they will suffer if the Stay is maintained. The Classic Dealerships are being managed by Relators, as they have been for the seven (7) months following the Sebastians' termination and prior to imposition of the Stay and the issuance of the TRO. App.A:4, 9, 252-254. Far from causing an emergency, the Stay ensures that status quo will continue without interference by the business court or the Divorce Court – although it has not prevented the Sebastians from unilateral extrajudicial interference. The Sebastians' desperation to wrest control from Relators and install themselves or a third-party receiver over all dealership operations prior to final trial

is not an emergency that warrants lifting the Stay. The Sebastians have not argued, much less demonstrated, any prejudice or harm that would result from Relators continuing to run their own businesses, as they have for the last seven months, pending mandamus review. Any request to change the party in control of dealership operations must be heard and decided by a court of proper jurisdiction, and proceedings in the business court and the Divorce Court must remain stayed until this Court can complete its review of that jurisdictional issue.

The Sebastians' Motion does confirm that, if the Stay is lifted, they intend to proceed with their requests for receivership and/or a temporary restraining order from the Divorce Court and attempt to usurp Relators' peaceable operation of the Classic Dealerships pending review by this Court. That illustrates why the Stay should remain in place. Relators would be irreparably harmed if they were to be divested of control of their businesses by a court of improper jurisdiction, including control over expenditures, financial obligations and debts, contracts, and personnel decisions such as hiring and firing. MR:555-558; *see In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010) (forum selection clause).

Lifting the Stay and allowing the Sebastians to proceed with receivership or other action in the Divorce Court would further be harmful because the Family Code does not permit the appointment of a receiver over property owned by third parties. *See Mallou v. Payne & Vendig*, 750 S.W.2d 251, 254–55 (Tex. App.—Dallas 1988,

writ denied); *Miles v. Miles*, No. 05-24-00740-CV, 2025 WL 863479 (Tex. App.—Dallas March 19, 2025, no hist.) (reliance on Section 64.001 of the Civil Practice and Remedies Code and its requirements is misplaced; Family Code, and not Section 64.001, controls the division of property on divorce). And mandatory venue of any receivership proceeding is at the Classic Dealerships' principal place of business, which is not Fort Bend County. App.F:15; *see* TEX. CIV. PRAC. & REM. CODE § 15.004 ("In a suit in which a plaintiff properly joins two or more claims or causes of action arising from the same transaction, occurrence, or series of transactions or occurrences, and one of the claims or causes of action is governed by [a] mandatory venue provision[] … the suit shall be brought in the county required by the mandatory venue provision."). A party may petition the appropriate appellate court for a writ of mandamus to enforce mandatory venue. TEX. CIV. PRAC. & REM. CODE § 15.0642; *see also Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 130 (Tex. 2018) ("A trial court's erroneous denial of a motion to transfer venue requires the judgment's reversal and a remand for new trial."). Lifting the Stay and allowing the Sebastians to proceed in an improper court while the case is being reviewed would only result in questionably valid orders and likely necessitate further appellate action.

There is no impending harm, prejudice, or emergency requiring the Court to lift the Stay. To the contrary, harm and prejudice to Relators would result if the Stay were lifted.

**II.    The now-dissolved TRO merely maintained the status quo of dealership operations pending mandamus review, consistent with the Stay.**

The TRO has been dissolved in apparent deference to this Court's impending action, and the Sebastians' Motion is moot. App.G. However, the TRO was requested in good faith, out of necessity to preserve the status quo of Classic West Houston's operations, consistent with the spirit of the Stay. In fact, in the absence of the TRO, Classic West Houston is nearly certain to suffer further harm because of the Sebastians' extrajudicial actions.

The Sebastians have sought a TRO in the Divorce Court based on the premise that the BuySell is valid, enforceable, and requires their interest in the Classic Dealerships to be bought under its terms. MR:512. Accordingly, the other parties to the BuySell have claims to equitable ownership of the interest the Sebastians claim gives them control over Classic West Houston. *Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex.1988) (option contract gave optionee equitable interest in property and standing to contest validity of foreclosure sale). Despite this, the Sebastians are seeking immediate changes to the management and control of the Classic Dealerships, prior to trial, and even prior to this Court's determination of which trial court has proper jurisdiction to make such changes. The

10

Stay prevents both the business court and the Divorce Court from issuing orders of any kind, including orders granting the Sebastians' request for changes in management and control of the dealerships. The spirit of the Stay is to prevent disruption of the status quo pending review.

With the Stay in place, the Sebastians decided to take matters into their own hands, outside of any judicial process, by unilaterally attempting to implement changes to the management and control of Relators' dealerships. **The Stay prevented both the business court and the Divorce Court from authorizing the exact actions the Sebastians unilaterally took without court authorization following the Stay.** MR:401-404, 514-515 (the Sebastians requested the Divorce Court to transfer management and control of the dealerships from Relators to the Sebastians and/or a receiver, which was prevented by the Stay); App.A:252, 304-305; App.B:2-12 (the Sebastians purported to unilaterally transfer management and control of the dealerships from Relators to the Sebastians).

The Stay did prevent the Sebastians from interfering with dealership operations through the Business Court Action or the Divorce Action, but it was not enough to prevent their extrajudicial interference with the status quo. When the Sebastians could not get immediate control over the dealerships through legal channels in the Divorce Court, they attempted to unilaterally usurp the majority owners' management and control of Classic West Houston and take control by

trespass – including entering the dealership and attempting to physically take control of Classic West Houston property. Classic West Houston was forced to seek additional relief as a result.

Classic West Houston did not act immediately after the improper meeting out of deference to this Court's impending decision on the merits of this proceeding. However, when the Sebastians escalated by entering Classic West Houston's premises without prior notice or authorization and demanding access to the company's internal files, the emergency necessitating legal action arose.

The TRO did not implement any changes to the management or control of Classic West Houston and merely preserved what had been the status quo for over six months with Relators managing the Classic Dealerships without input, interference, or intrusion from the Sebastians. App.C. It temporarily restrained the Sebastians from acting on any of the improper actions taken at the February 22, 2025 "special meeting." *Id*.; App.A:253-254. It temporarily prevented the Sebastians taking further improper action, such as calling additional meetings or attempting to vote or engage in management of the dealership, consistent with the status quo. *Id*. Finally, the TRO prevented the terminated Sebastians from continuing to engage in the irrational behavior of physically entering the dealership, giving instructions or orders to the employees, and unilaterally attempting to access financial records outside the proper discovery process. *Id*. The Sebastians were extremely disruptive

12

of Relators' business operations. Given their behavior, the immediate necessity for relief, the Stay applicable to both the Divorce Action and the Business Court Action, and with venue not being proper in Fort Bend County, Relators had no choice but to seek relief in Tarrant County, where the principal office of Classic West Houston is located.

## III. Obtaining the TRO was not inconsistent with the merits of the pending mandamus petition.

Classic West Houston's claims in the Tarrant County Litigation arise solely from the actions taken after the Stay was imposed. App.A. It asserted a new cause of action separate and apart from the claims at issue in the Business Court Action and Divorce Action, which entirely accrued after the Stay. The relief requested in the Tarrant County Litigation has not been requested in either the business court or the Divorce Court and was not foreclosed by the Stay of those actions.

Nor did Relators' request for a TRO and injunctive relief from a Tarrant County District Court somehow waive their timely request for mandamus review of the business court's Remand Order. Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam). Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances. *Id*.

13

Relators' continued intent to pursue mandamus relief is unmistakable. The same day the TRO was issued, Relators filed with this Court a 30-page Reply in support of their Petition for Writ of Mandamus, maintaining their position that the Remand Order was improper and evidencing their continued request for the business court to adjudicate the claims against them. Waiver cannot be implied in light of Relators' clear pursuit of mandamus review.

Despite Relators' continued position that the business court should hear the Sebastians' claims against them, the status quo is that the business court has refused to exercise jurisdiction, the Business Court Action is stayed, and it is currently impossible for Relators to seek a TRO or injunctive relief against the Sebastians in that venue. Relators cannot be penalized for seeking emergency relief elsewhere when they tried unsuccessfully to have the business court hear this dispute and are actively pursuing mandamus review of the business court's refusal to do so.

## PRAYER FOR RELIEF

Relators respectfully request that the Court deny the Sebastians' Emergency Motion to Reconsider the Stay Granted by the Court. Relators pray for all other appropriate relief.

Respectfully submitted,

**SHACKELFORD, MCKINLEY & NORTON, LLP**

K. Elizabeth Swan
State Bar No. 24071218
eswan@shackelford.law
Derek D. Rollins
State Bar No. 24029803
drollins@shackelford.law
Lucas Peterson
State Bar No. 24121469
lpeterson@shackelford.law
9201 N. Central Expressway, 4th Floor
Dallas, Texas 75231
Telephone (214) 780-1400
Facsimile (214) 780-1401

Timothy D. Zeiger
State Bar No. 22255950
tzeiger@shackelford.law
2600 Via Fortuna, Suite 150
Austin, Texas 78746
Telephone (512) 469-0900
Facsimile (512) 469-0930

**ATTORNEYS FOR RELATORS**
**T. Bently Durant, Thomas R. Durant,**
**The Durant Classic Dynasty Trust,**
**Michael A. Ward, 8100 Partners, Ltd.,**
**8100 Management LLC, 8705 Partners,**
**Ltd., and 8705 Management LLC, Classic**
**Chevrolet Sugar Land, LLC, Classic**
**Chevrolet West Houston, LLC, Classic**
**Elite Buick GMC, Inc., and 16835 Cadet**
**Partners, LLC**

15

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on the parties through their counsel of record listed below on this March 21, 2025, in accordance with Texas Rule of Appellate Procedure 9.5.

BOHREER LAW FIRM PLLC
E. Michelle Bohreer
michelle@bohreerlaw.com
Pritesh Soni
pritesh@bohreerlaw.com
777 Post Oak Blvd., Suite 950
Houston, Texas 77056
***Counsel for Real Party in Interest Michael Jeffrey Sebastian, Individually and on behalf of the Sebastian Community Estate, and Derivatively on behalf of the Classic Dealerships***

Hon. Stacy Rogers Sharp
Judge of the Texas Business Court,
Fourth Division, Sitting by
Assignment
BCClerk@txcourts.gov
William P. Clements Building
300 West 15th Street, Suite 606
Austin, Texas 78701
***Respondent***

SCHEEF & STONE, LLP
Byron K. Henry
byron.henry@solidcounsel.com
Walker Steven Young
walker.young@solidcounsel.com
J. Mitch Little
mitch.little@solidcounsel.com
Steven Ovando
steven.ovando@solidcounsel.com
2600 Network Blvd., Suite 400
Frisco, Texas 75034

DICECCO LAW PARTNERS, PLLC
John Coselli, III
john@diceccolawpartners.com
Jill K. Evangelista
jill@diceccolawpartners.com
Joseph W. DeCecco
joe@diceccolawpartners.com
777 Post Oak Blvd., Ste. 900
Houston, Texas 77056

***Counsel for Real Party in Interest Tiffany Lynn Sebastian***

K. Elizabeth Swan

**DECLARATION OF K. ELIZABETH SWAN**

STATE OF TEXAS         §
                         §
COUNTY OF DALLAS     §

"My name is K. Elizabeth Swan. I am an attorney with the law firm of Shackelford, McKinley & Norton, LLP, and I am one of the attorneys for Relators in this case. I am fully qualified and capable of making this Declaration.

I have reviewed the foregoing *Relators' Response to Real-Parties-In-Interest's Emergency Motion to Reconsider the Stay Granted by the Court*, and Appendix Tabs A through H to the Motion. I hereby affirm the following:

A.     Appendix Tab A is a true and correct copy of *Plaintiff's Verified First Amended Petition and Application for Temporary Injunction* filed in the Tarrant County Litigation.

B.     Appendix Tab B is a true and correct copy of the March 12, 2025 Email from Jeff Sebastian to Ulises Duran, with attachment, as it was provided to me.

C.     Appendix Tab C is a true and correct copy of the *Temporary Restraining Order and Order Setting Hearing* issued in the Tarrant County Litigation.

D.     Appendix Tab D is a true and correct copy of *Defendants' Joint Motion to Transfer Venue and, Subject Thereto, Emergency Motion to Dissolve Temporary Restraining Order and for Action on Bond* filed in the Tarrant County Litigation.

E.     Appendix Tab E is a true and correct copy of *Defendants' Supplemental Emergency Motion to Dissolve Temporary Restraining Order and for Action on Bond, and Motion for Temporary Stay* filed in the Tarrant County Litigation.

F.     Appendix Tab F is a true and correct copy of *Plaintiff's Response to Defendants' Joint Motion to Transfer Venue and to Dissolve Temporary Restraining Order* filed in the Tarrant County Litigation.

17

G.      Appendix Tab G is a true and correct copy of the *Order Granting Defendants' Emergency Motion to Dissolve Temporary Restraining Order and Stay of Proceedings* issued in the Tarrant County Litigation.

H.      Appendix Tab H is a true and correct copy of the March 12, 2025 Letter from Relators' counsel to Jeff Sebastian's Counsel.

I have reviewed all factual statements in the foregoing Motion, and hereby certify that such statements are supported by competent evidence in the mandamus record and/or documents in the Appendix hereto.

My name is K. Elizabeth Swan, my date of birth is April 2, 1984, and my office address is 9201 N. Central Expressway, Fourth Floor, Dallas, TX 75231. I declare under penalty of perjury that the foregoing is true and correct."

Executed in Dallas County, State of Texas, on this 21st day of March, 2025.

_____
K. Elizabeth Swan

**INDEX TO APPENDIX**

| Tab | Item |
| --- | --- |
| A. | Plaintiff's Verified First Amended Petition and Application for Temporary Injunction |
| B. | March 12, 2025 Email from Jeff Sebastian to Ulises Duran, with attachment |
| C. | Temporary Restraining Order and Order Setting Hearing |
| D. | Defendants' Joint Motion to Transfer Venue and, Subject Thereto, Emergency Motion to Dissolve Temporary Restraining Order and for Action on Bond |
| E. | Defendants' Supplemental Emergency Motion to Dissolve Temporary Restraining Order and for Action on Bond, and Motion for Temporary Stay |
| F. | Plaintiff's Response to Defendants' Joint Motion to Transfer Venue and to Dissolve Temporary Restraining Order |
| G. | Order Granting Defendants' Emergency Motion to Dissolve Temporary Restraining Order and Stay of Proceedings |
| H. | March 12, 2025 Letter from Relators' counsel to Jeff Sebastian's Counsel |

CAUSE NO. 236-362746-25

| | | |
|---|---|---|
| CLASSIC CHEVROLET WEST HOUSTON, LLC, | § § § | IN THE DISTRICT COURT |
| *Plaintiff*, | § § | |
| v. | § § | 236th JUDICIAL DISTRICT |
| MICHAEL JEFFREY SEBASTIAN AND TIFFANY SEBASTIAN, | § § § § | |
| *Defendants.* | § § | TARRANT COUNTY, TEXAS |

## PLAINTIFF'S VERIFIED FIRST AMENDED PETITION AND APPLICATION FOR TEMPORARY INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Classic Chevrolet West Houston, LLC ("Plaintiff") files its First Amended Verified Petition and Application for Temporary Injunction against Defendants Michael Jeffrey Sebastian ("Jeff") and Tiffany Lynn Sebastian ("Tiffany") (collectively "Defendants"), and would respectfully show the Court the following:

### Discovery Control Plan

1.      Plaintiff intends that discovery be conducted under Level 3.

### Rule 47 Statement

2.      In accordance with Rule 47 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiff seeks monetary relief of $250,000 or less and non-monetary relief from Defendants at this time. The damages sought are within the jurisdictional limits of this Court.

### Parties and Jurisdiction

3.      Plaintiff is a Texas limited liability company with its principal place of business in Grapevine, Tarrant County, Texas.

4.      Defendant Michael Jeffrey Sebastian is a Texas resident who resides in Tomball, Texas and may be served with process at his usual place of abode, which is 25702 Zion Lutheran Cemetery Road, Tomball, Harris County, Texas 77375, or wherever he may be found in the State of Texas.

App.A 0001

5.      Defendant Tiffany Lynn Sebastian is a Texas resident who resides in Richmond, Texas and may be served at her usual place of abode, which is 5002 Shiloh Lake Dr, Richmond, Fort Bend County, Texas 77407, or wherever she may be found in the State of Texas.

## Venue

6.      Venue is proper in Tarrant County, Texas because Plaintiff maintains a principal office at 1101 West State Highway 114, Grapevine, TX, such office being in Tarrant County, Texas; because all or a substantial part of the events or omissions giving rise to the claims asserted herein by Plaintiff occurred in Tarrant County, Texas; and because no mandatory venue rule applies. *See* TEX. CIV. PRAC. & REM. CODE § 15.002; *In re Cont'l Airlines, Inc.*, 988 S.W.2d 733, 735 (Tex. 1998) ("[a]ctions for declaratory judgments are governed by general venue rules for civil actions. … the injunction venue statute [TEX. CIV. PRAC. & REM. CODE § 65.023(a)] applies only to suits in which the relief sought is purely or primarily injunctive.").

7.      The temporary injunctive relief requested herein is ancillary to the declaratory judgment because the injunctive relief is sought solely to maintain the *status quo ante* (i.e., the peaceable operation of the dealership) pending resolution of the declaratory judgment sought. *In re FPWP GP LLC*, No. 05-16-01145-CV, 2017 WL 461355, at *3 (Tex. App.—Dallas Jan. 25, 2017, no pet.) ("When the injunctive relief is sought simply to maintain the status quo pending resolution of the lawsuit, then the injunctive relief is ancillary to the relief sought and [mandatory venue] section 65.023 does not apply."); *see also In re City of Corpus Christi*, 13–12–00510–CV, 2012 WL 3755604, at **1, 5 (Tex. App.—Corpus Christi Aug. 29, 2012, orig. proceeding) (mem. op.) (injunctive relief ancillary to declaratory relief where plaintiff sought only temporary injunctive relief pending final hearing of the merits of the declaratory judgment action); *In re Adan Volpe Props., Ltd.*, 306 S.W.3d 369, 377–78 (Tex. App.—Corpus Christi 2010, orig. proceeding) (holding that request for injunctive relief was ancillary in libel action in which declaratory judgment was also sought where injunction was sought to maintain status quo until libel suit could be resolved); *Shuttleworth v. G & A Outsourcing, Inc.*, No. 01–08–00650–CV, 2009 WL 277052, at **1, 4 (Tex. App.—Houston [1st Dist.] Feb. 5, 2009, no pet.) (holding that temporary injunction to prevent party from using, disseminating, or destroying

App.A 0002

confidential information was ancillary to suit against former employee for violation of non-compete and non-solicitation agreements where injunction sought to preserve evidence for trial and plaintiff sought substantial damages on contract and tort claims).

8.      When a party "does not plead for a permanent injunction, the injunctive relief is ancillary to the other relief sought." *FPWP*, 2017 WL at *3; *see also In re Cont'l Airlines*, 988 S.W.2d at 736-37 (section 65.023 inapplicable and injunctive relief ancillary to prayer for declaratory relief where the plaintiff did not pray for permanent injunctive relief, the pleadings would not support a permanent injunction, the controversy can be fully resolved by declaratory judgment, and "throughout the pleading the only requests for court action ask the trial court to declare the parties' rights under the contract."); *Flewellen v. Brownfield State Bank & Tr. Co. of Brownfield*, 517 S.W.2d 384, 388 (Tex. Civ. App.—Amarillo 1974, no writ) ("The petition demonstrates that the principal and primary relief sought is to establish by the court's decree the correlative rights of the plaintiff and the defendants for possession and disposition of the cotton grown by Weiss, and the respective priorities thereto, and that the injunctive relief sought is only incidental to such main relief and to protect and enforce the rights so established.").

### Facts

9.      Plaintiff operates a new and used automobile sales and service dealership at 8100 South Hwy 6, Houston, Texas 77083 (the "Dealership"). The Dealership is part of The Classic Family of Dealerships, which owns dozens of automobile dealerships in Texas and beyond. The Dealership is a General Motors ("GM") authorized franchise, licensed to do business by the State of Texas.

10.     Jeff is a member of Plaintiff pursuant to that certain written Company Agreement of Classic Chevrolet West Houston, LLC dated as of November 29, 2019 (the "Company Agreement"). Tiffany is not a member of Plaintiff. A true and correct copy of the Company Agreement is attached hereto as Exhibit "1." Jeff's membership interest is subject to that certain Buysell Agreement for Interests in Classic Chevrolet Sugar Land, LLC, Classic Chevrolet West Houston, LLC, Classic Elite Buick GMC, LLC [sic], and 16835 Cadet Partners, LLC dated May 1, 2023 (the "Buy-Sell Agreement"). A true and correct copy of the Buy-Sell Agreement is attached hereto as Exhibit "2."

App.A 0003

11. In addition to owning a membership interest in the Dealership, Jeff was also responsible for performing certain management-type duties at the Dealership. However, as the Dealership's performance and profitability was lagging in 2023 and 2024, the members who hold a majority of the interest in the LLC (as defined in the Buy-Sell Agreement) voted "no confidence" in Jeff, and, in accordance with Section III.1.(iv) of the Buy-Sell Agreement, exercised their option to buy-out Jeff's interest in the Dealership. A true and correct copy of Plaintiff's October 11, 2024 written notice to Defendant regarding "Exercise of Option to Purchase pursuant to that certain Buysell Agreement…" is attached hereto as Exhibit "3".[1]

12. In September 2024, Jeff improperly attempted to join Plaintiff (as a *co-respondent*) to a pending divorce action between Jeff and Tiffany in the 387th Judicial District Court in Fort Bend County, Texas, cause number 24-DCV-318087 (the "Fort Bend Action"). *See* Counterpetition in Divorce, attached hereto as Exhibit "4".

13. On December 3, 2024, Defendants filed a third-party action in the Fort Bend Action wherein they asserted claims for breach of contract and declaratory judgment. A true and correct copy of the Third-Party Petition filed by Defendants is attached hereto as Exhibit "5".

14. On December 20, 2024, Defendants filed their First Amended Third-Party Petition in the Fort Bend Action. A true and correct copy of the First Amended Third-Party Petition is attached hereto as Exhibit "6". This filing included Defendants' request for the court-ordered appointment of a receiver over the Dealership. *Id.*, ¶¶ 74-79. In the third-party petition, Defendants also seek, *inter alia*, declaratory relief pertaining to their rights under the Buy-Sell Agreement. *Id.*, ¶¶ 48-49. Defendants' First Amended Third-Party Petition also admits (i) that the Company Agreement is "valid and enforceable" and "governs" the management and operation of the Dealership *Id.*, ¶41, and (ii) that Defendants were terminated and replaced at the Dealership in July and September of last year. *Id.*, ¶31. The Dealership has operated without Defendants' involvement for over seven (7) months as to Jeff and almost six (6) months as to Tiffany.

---

[1] The Buy-Sell Agreement defines the term "LLC" to include Classic Chevrolet West Houston, LLC (Plaintiff herein), Classic Elite Buick GMC, Inc., Classic Chevrolet Sugar Land, LLC, and 16835 Cadet Partners, LLC.

App.A 0004

15.     Pursuant to the Company Agreement, Defendants' request for appointment of receiver over the Dealership is an event that constituted an "Involuntary Transfer," which term is defined by the Company Agreement at Section 1.1(z). *See* Ex. "1" at § 1.1(z) ("Involuntary Transfer shall mean … if there is filed by or against a Member … a petition for the appointment of a receiver").

16.     More than sixty (60) days have elapsed since Defendants' request for a receiver over the Dealership and, in the interim, Jeff did not withdraw, release, vacate, stay, or otherwise "cure" his request to appoint a receiver over the Dealership. Therefore, the Involuntary Transfer was effective as of February 18, 2025. *Id.*, § 1.1(z). The effect of the Involuntary Transfer resulting from Defendants' application for appointment of receiver is governed by, among other things, Section 6.6 of the Company Agreement, which specifies that, as a direct result of the Involuntary Transfer, Jeff lost all of his voting and other management rights associated with his membership interest in Plaintiff / the Dealership. *See* Ex. "1" at § 6.6.

17.     On January 2, 2025, the defendants in the Fort Bend Action (including Plaintiff herein) filed a Notice of Removal to the newly established Texas Business Court, transferring certain of Defendants' claims in the Fort Bend Action to the Eleventh Division of the Texas Business Court, where it was assigned a cause number of 25-BC11A-0001 (the "Removed Action"). *See* Ex. "7."

18.     On January 9, 2025, Defendants filed a Motion to Remand the Removed Action, and on February 4, 2025, the Business Court granted the Motion to Remand, which, but for the stay issued by the 15th Court of Appeals (discussed *infra*, ¶20) would have transferred the Fort Bend Action back to the Fort Bend Divorce Court ("the Remand Order").

19.     On February 18, 2025, Jeff purported to issue a Notice of Special Meeting of Managers ("the Notice") of Plaintiff, a true and correct copy of which is attached hereto as Exhibit "8". The Notice purported to set a meeting of the Dealership Managers on Saturday, February 22, 2025 to discuss and vote upon Jeff's proposed removal and of Thomas R. Durant as Plaintiff's President and Manager—and installation of himself as replacement President—and upon certain

App.A 0005

compensation-related matters. *See id.* However, that same day, Jeff lost all of his voting and other management rights associated with his membership interest in Plaintiff / the Dealership pursuant to the Company Agreement. Ex. "1" at § 6.6.

20. On February 21, 2025, Plaintiff's counsel sent Jeff's counsel a letter informing her Jeff was not authorized to call a meeting of the Dealership or to take any unilateral action on behalf of the Dealership. *See* Ex. 9. Because Jeff lost his voting and other managerial rights in Plaintiff's organization by virtue of his request for a court-ordered receivership over the Dealership (i.e., a contractually-specified event of Involuntary Transfer), Jeff was not entitled to call a special meeting, he was not entitled to vote, and he was not (and is not) otherwise entitled to participate in Plaintiff's / the Dealership's management or operation. Id. Moreover, even if Jeff had not lost his voting and managerial rights in the Dealership, the purported actions taken, including removal of Mr. Durant as President and Manager, required a unanimous vote of the Managers to be effective. *See* Id.; Ex. 1, Company Agreement, §§ 1.1(bb), 3.14. Furthermore, attendance of all of Plaintiff's Managers, which did not occur, was required to meet a Quorum pursuant to section 3.27 of the Company Agreement. Id.

21. Also on February 21, 2025, Defendants filed a Joint Emergency Application for Temporary Restraining Order and Temporary Injunction in the Fort Bend Action seeking entry of a temporary restraining order effectively stripping Thomas R. Durant of all ownership and management rights in Plaintiff and transferring those rights to Jeff. *See* Ex. 10.

22. In response to the foregoing, on February 21, 2025, Plaintiff and other defendants in the Fort Bend Action were forced to file an Emergency Motion for Stay pending the Fifteenth Court of Appeals' review of those parties' petition for writ of mandamus regarding the Business Court's Remand Order. That same day, February 21, 2025, the Fifteenth Court of Appeals granted the Emergency Motion for Stay and ordered a temporary stay of the Fort Bend Action and proceedings in the Business Court pending review of the petition for writ of mandamus and requested further briefing on the mandamus from both sides ("the Stay Order"). *See* Ex. 11. As

App.A 0006

of the date of this filing, the Stay Order remains in full force and effect, staying all proceedings in both courts.

23.     On February 22, 2025, Defendants purported to hold a Meeting of the Managers of Plaintiff Classic Chevrolet West Houston. On February 24, 2025, despite the Stay Order and notice from the Dealership that the Meeting was not authorized by the Company Agreement, Jeff's counsel sent Plaintiff's a letter stating that Jeff had purported to: unilaterally remove Thomas R. Durant as President and Manager of Plaintiff; appointed Jeff as President of Plaintiff; appointed Tiffany as Manager in Mr. Durant's place; and set compensation for the Managers at $15,000 per month plus two percent (2%) of the Dealership's gross sales.

24.     On March 12, 2025, without prior notice, Defendants entered the Dealership property, purporting to "work," disrupting the Dealership's operations and forcing the Dealership to curtail operations. Defendants informed personnel on site that they intended to return to the Dealership the following day, March 13, 2025, to further disrupt the Dealership's operations. Defendants further falsely represented and held themselves out as Plaintiff's Managers to Plaintiff's employees, causing confusion and dissension among employees, further harming the Dealership's business operations. *See* Ex. 12 (Bohreer 3/12/25 Letter).

25.     On March 13, 2025, after a hearing, the Court signed a Temporary Restraining Order enjoining Defendants from interfering with the peaceable operation of the Dealership. *See* Ex. 13. Plaintiff paid the bond the same day.

26.     On March 17, 2025, Defendants filed their Joint Motion to Transfer Venue and, Subject Thereto, Emergency Motion to Dissolve Temporary Restraining Order and for Action on Bond.

27.     All conditions precedent have been performed or have occurred.

App.A 0007

## Causes of Action

### Count 1: Request for Declaratory Judgment

28.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

29.     Plaintiff seeks entry of a Declaratory Judgment under the Texas Uniform Declaratory Judgments Act (the "Act"). TEX. CIV. PRAC. & REM. CODE §§ 37.001, *et seq*.

30.     Plaintiff seeks a declaratory judgment against Defendants to determine certain rights of the parties insofar as a justiciable controversy has arisen and harm has resulted from the controversy. In this case, a justiciable controversy is whether Jeff had a right to call for the February 22, 2025 special meeting made the subject of the Notice (attached as Exhibit 8) in light of the event constituting an Involuntary Transfer (i.e., Defendant's request for appointment of a receiver, now more than sixty (60) days old under the Company Agreement), and consequently, whether the actions Jeff purported to take at said special meeting—including the purported removal of Thomas R. Durant as Manager and appointment of Tiffany as Manager—were authorized under the Dealership's governing documents. Imminent harm to Plaintiff has occurred and will continue to occur because of Defendants' actions.

31.     Indeed, there is a real and substantial controversy involving a genuine conflict of tangible interests; namely, the managerial and voting rights (or lack thereof) of Defendants. Moreover, in the absence of an injunction, Defendants have indicated that they will continue to cause harm to the business operations of Plaintiff, including entering the Dealership property and disrupting business operations. Further, Defendants' purported removal and replacement of Thomas R. Durant as Manager, and subsequent purported actions including the installation of Jeff as President, the March 12, 2025 disruption of the Dealership's operations, and threatened actions on March 13, 2025 and thereafter, have and would continue to jeopardize the ongoing operation of the Dealership, causing Plaintiff ongoing irreparable financial and reputational harm.

32.     Plaintiff seeks an interpretation of a written contract, specifically the Company Agreement, to confirm that Defendants lost all of their voting and managerial rights over Plaintiff such that, due to their request for appointment of a receiver over the Dealership in the Fort Bend

App.A 0008

Action, Defendants had (and have) no right under the Company Agreement to call for or participate in any management meeting(s) or to vote or engage in any managerial function associated with their membership interest(s) in Plaintiff. Plaintiff further seeks a determination that the purported actions taken by Jeff and Tiffany at the February 22, 2025 Meeting are null and void and without effect; and consequently, that Defendants have no managerial or official rights or responsibilities with respect to the Dealership operations and are prohibited from entering Dealership property.

## Application for Temporary Injunction

33.     Pursuant to Texas Rules of Civil Procedure 680, *et seq.*, and Texas Civil Practice & Remedies Code § 65.011, Plaintiff seeks a Temporary Injunction enforcing Plaintiff's contractual rights under the Company Agreement. Specifically, Plaintiff requests a Temporary Injunction with the following provisions:

a. The purported actions taken at the February 22, 2025 special meeting were unauthorized under the Company Agreement and are, therefore, null and void;

b. Defendants are prohibited from attempting to call, or otherwise participate in, any meetings of Plaintiff's members; and

c. Defendants are prohibited from attempting to vote or engage in any managerial function associated with their membership interest(s) in Plaintiff, including without limitation, entering the Dealership, giving instruction, direction, or orders to Dealership employees, or accessing or attempting to access any financial records of the Dealership.

34.     Based on the verified facts set forth herein, Plaintiff is entitled to the issuance of a Temporary Injunction **to protect and preserve the *status quo ante*** pending a full trial on the merits. The status quo for the approximately seven (7) months preceding Defendants' unauthorized intrusion on Dealership property on March 12, 2025, was the peaceable operation of the Dealership without participation or interference by Defendants. Plaintiff has suffered and will suffer irreparable harm due to Jeff's blatant disregard of his contractual prohibition to vote and otherwise participate in the management of the Dealership. Moreover, the actions Defendants improperly purported to take, without regard for Jeff's forfeiture of such rights under the Company

App.A 0009

Agreement, have caused and will continue to cause imminent and irreparable harm to the Dealership. Specifically, Defendants' entry onto Dealership property has disrupted the business operations of Plaintiff and caused Plaintiff financial and reputational harm; no judgment from any court can remedy this harm. Pending a determination of the validity of the purported actions taken at the February 22, 2025 "meeting," including whether such purported actions were authorized or effective under the Company Agreement, a temporary injunction to preserve the status quo is necessary.

35.     Plaintiff has demonstrated a likelihood of success on the merits of this case and a balancing of the equities strongly favors an award of injunctive relief as requested herein. Plaintiff has no other adequate remedy at law.

36.     Plaintiff is willing to post a bond to obtain the requested relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests Defendants be cited to appear and answer herein as required by law, and that after proper consideration by the Court, be subject to the Orders and Final Judgment of the Court as follows:

   a. Declaratory Judgment interpreting the Company Agreement to find Jeff forfeited all of his voting and managerial rights in Plaintiff's organization as a result of his request for appointment of a receiver;

   b. Declaratory Judgment interpreting the Company Agreement to find Defendants' proposed removal and replacement of Thomas R. Durant as Manager and President requires the unanimous consent of all members;

   c. the injunctive relief as requested herein;

   d. payment to Plaintiff for Plaintiff's reasonable and necessary attorneys' fees, costs, and expenses; and

   e. all and such further relief to which Plaintiff may be entitled at law or in equity.

App.A 0010

Respectfully submitted,

By: /s/ Derek D. Rollins
Derek D. Rollins
State Bar No. 24029803
Lucas Peterson
State Bar No. 24121468

SHACKELFORD, MCKINLEY & NORTON, LLP
9201 N. Central Expressway
4th Floor
Dallas, Texas 75231
214-780-1400
drollins@shackelford.law
lpeterson@shackelford.law

Timothy D. Zeiger
State Bar No. 22255950
tzeiger@shackelford.law
2600 Via Fortuna, Suite 150
Austin, Texas 78746
(512) 469-0900

**ATTORNEYS FOR PLAINTIFF**

App.A 0011

## DECLARATION OF THOMAS BENTLY DURANT

STATE OF _____Texas_____ )

)

COUNTY OF ___Tarrant___ )


1.      "My name is Thomas Bently Durant. I am over 18 years of age, competent to make this declaration, and am otherwise in all respects competent and qualified to make this verification.

2.      The facts stated in the foregoing Verified First Amended Petition and Application for Temporary Injunction are within my personal knowledge and are true and correct."

## JURAT

My name is Thomas Bently Durant. My date of birth is ___July 20 1982___, and my

address is ___1920 country moss way, Southlake Tx 76092___. I declare under penalty

of perjury that the foregoing is true and correct. This declaration is being executed pursuant to

28 U.S.C. §1746, TEX. CIV. PRAC. & REM. CODE § 132.001, and any other applicable law

authorizing use of an unsworn declaration.

Executed in ___Glynn___ County, State of ___Georgia___, on the _19_ day of March 2025.


_____
Thomas Bently Durant, Declarant

App.A 0012

THE SECURITIES REPRESENTED HEREBY: (1) HAVE NOT BEEN REGISTERED OR QUALIFIED UNDER THE U.S. FEDERAL SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER STATE SECURITIES LAWS AND ARE "RESTRICTED SECURITIES" AS DEFINED IN RULE 144 PROMULGATED UNDER THE ACT ("RULE 144"); (2) HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO OR IN CONNECTION WITH THE DISTRIBUTION THEREOF; AND (3) MAY NOT BE SOLD OR OTHERWISE DISPOSED OF WITHOUT AN EFFECTIVE FEDERAL REGISTRATION STATEMENT AND STATE QUALIFICATION RELATED THERETO OR, IF REQUESTED BY THE MANAGERS, AN OPINION OF COUNSEL FURNISHED AT BUYER'S EXPENSE IN FORM AND SUBSTANCE AND FROM COUNSEL REASONABLY SATISFACTORY TO THE ISSUER OF THESE SECURITIES THAT SUCH SALE OR DISPOSITION IS IN COMPLIANCE WITH RULE 144 OR THAT SUCH REGISTRATION AND QUALIFICATION OTHERWISE IS NOT REQUIRED UNDER THE ACT AND UNDER APPLICABLE STATE LAW.

ALL TRANSFERS OF MEMBERSHIP INTERESTS ARE SUBJECT TO AND GOVERNED BY THAT CERTAIN BUY-SELL AGREEMENT FOR MEMBERSHIP INTERESTS OF EVEN DATE HEREWITH, AS AMENDED FROM TIME TO TIME, BY AND AMONG THE COMPANY AND ITS MEMBERS.

## COMPANY AGREEMENT

## OF

## CLASSIC CHEVROLET WEST HOUSTON, LLC

THIS COMPANY AGREEMENT, dated as of November __2ᴺ__, 2019, is hereby duly adopted as the Company Agreement (hereinafter referred to as this "Agreement") of Classic Chevrolet West Houston, LLC, a Texas limited liability company, by the Managers of Company (as defined below) and by the Members (as defined below) who agree to be bound hereby.

The Certificate of Formation of Classic Chevrolet West Houston, LLC, dated as of October 10, 2019, was filed in the Office of the Secretary of State of Texas and became effective on October 10, 2019.

## ARTICLE I
## DEFINITIONS

1.1     Definitions. The following terms used in the Agreement shall have the following meanings (unless otherwise expressly provided herein):

(a)     "Additional Capital Contributions" means Capital Contributions made pursuant to Section 7.3.

(b)     Adjusted Capital Account Deficit". Any reference to "Adjusted Capital

Account Deficit" shall mean, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments: [i] credit to such Capital Account any amounts which such Member is obligated to restore (pursuant to the terms of such Member's promissory note payable to the Company or otherwise) or is deemed to be obligated to restore pursuant to the penultimate sentence of Reg. §§ 1.704-2(g)(1) and 1.704-2(i)(5); and [ii] debit to such Capital Account the amounts specified in Reg. §§ 1.704-1(b)(2)(ii)(d)(4), (d)(5) and (d)(6). The foregoing definition of Adjusted Capital Account Deficit is intended to comply with the provisions of Reg. § 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(c) "Affiliate". Any reference to an "Affiliate" shall mean, with respect to any Person, (i) any Person directly or indirectly controlling, controlled by or under common control with the Person, (ii) any Person owning or controlling fifty percent (50%) or more of the outstanding voting interests of the Person, (iii) the Person's spouse, children or more remote descendants (either natural or adoptive), sons-in-law, daughters-in-law, and any trust of which one or more of such individuals (including the Person) are current beneficiaries, and (iv) the equitable or beneficial owners of any Person which is not an individual. For purposes of this definition, the term "controls," "is controlled by" or "is under common control with" shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

(d) "Assignee" means a Person who has acquired all or a portion of a beneficial interest in a Membership Interest. An Assignee has only the rights granted under Section 101.109 of the BOC. As Assignee does not have the right to become a Member except as provided in this Agreement or in Section 101.109 of the BOC.

(e) "Bankruptcy" means bankruptcy of a Member, which shall be deemed to have occurred when a Member: (i) makes a general assignment for the benefit of creditors; (ii) files a voluntary bankruptcy petition; (iii) becomes the subject of an order for relief or is declared insolvent in any federal or state bankruptcy or insolvency proceeding; (iv) files an answer or other pleading admitting, or fails to contest the material allegations of a petition filed against the Member seeking reorganization, arrangement, composition, readjustment, liquidation, winding up or similar relief under any law; or (v) seeks, consents to, or acquiesces in the appointment of a trustee, receiver, or liquidator of Member or all or substantially all of Member's properties.

(f) "BOC" shall mean the Texas Limited Liability Company Law, part of the Texas Business Organizations Code, as the same may be amended from time to time.

(g) "Buy-Sell Agreement" shall mean that certain Buy-Sell Agreement for Membership Interests in Company, of even date herewith, as amended from time to time, by and among the Members and Company.

(g) "Capital Account" means, with respect to any Member, the account maintained for such Member pursuant to Section 7.8 and Schedule 1 of this Agreement.

(h) "Capital Contributions" shall mean, with respect to any Member, the

 App.A 0014

amount of money and the initial Gross Asset Value of any property (other than money) contributed to the Company by such Person (or its predecessors in interest) with respect to the interest in the Company held by such Person. The principal amount of a promissory note that is not readily traded on an established securities market and that is contributed to the Company by the maker of the note (or a Person related to the maker of the note within the meaning of Reg. Section 1.704-1(b)(2)(ii)(c)) shall not be included in the Capital Account of any Person until the Company makes a taxable disposition of the note or until (and to the extent) principal payments are made on the note, all in accordance with Reg. Section 1.704-1(b)(2)(iv)(d)(2).

(i) "Cash Available for Distribution". Any reference to "Cash Available for Distribution" shall mean the gross cash proceeds from Company operations (including sales and dispositions and loan proceeds) less the portion thereof used to pay or establish reserves for all Company expenses, debt payments, capital improvements, replacements, and contingencies, all as determined by the Managers. "Cash Available for Distribution" shall not be reduced by depreciation, amortization, cost recovery deductions, or similar allowances, but shall be increased by any reductions of working capital reserves previously established by the Managers.

(j) "Certificate of Formation" shall have the meaning given that term in Section 2.1 hereof and includes the Amended and Restated Certificate of Formation described therein.

(k) "Class A Members" means those Members holding the Class A Membership Interest of Company.

(l) "Class A Membership Interest" means the percentage of ownership interest of a Class A Member of Company at any particular time, as further described in Subsection 6.1(a) of this Agreement.

(m) "Class B Members" means those Members holding the Class B Membership Interest of Company.

(n) "Class B Membership Interest" means the percentage of voting interest of a Class B Member of Company at any particular time, as further described in Subsection 6.1(b) of this Agreement.

(o) "Code" means the Internal Revenue Code of 1986, as amended.

(p) "Company" means Classic Chevrolet West Houston, LLC, a Texas limited liability company.

(q) "Company Minimum Gain" shall mean that amount determined by first computing for each Nonrecourse Liability of the Company, any gain the Company would realize if it disposed of the Company property subject to such liability for no consideration other than full satisfaction of the liability, and by then aggregating the separately computed gains. For purposes of determining the amount of such gain, the additional rules set forth in Reg. § 1.704-2(d) shall be followed.

App.A 0015

(r) "Contributed Property" shall mean each property or asset of any kind or nature, whether real, personal or mixed, contributed to the Company by one or more of the Members, including any property subsequently acquired by the Company which has a basis determined by reference in whole or in part to any such property.

(s) "Dealer Operator" shall mean the individual who is designated in writing by the Company to the Manufacturer (as defined hereafter) as the "dealer operator," "dealer principal" or like description to be primarily responsible for the management and control of the Dealership (as defined hereafter).

(t) "Depreciation" shall mean, for each Fiscal Year, an amount equal to the depreciation, amortization, or other cost recovery deduction allowable for federal income tax purposes with respect to an asset for such Fiscal Year, except that if the Gross Asset Value of an asset differs from its adjusted basis for federal income tax purposes at the beginning of such Fiscal Year, Depreciation shall be an amount that bears the same ratio to such beginning Gross Asset Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis, provided, however, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero, Depreciation shall be determined with reference to such beginning Gross Asset Value using any reasonable method selected by the Managers.

(u) "Distributions" shall mean any cash and the fair market value of any property distributed to a Member on account of its Membership Interest.

(v) "Economic Interest" shall mean a Person's share of the Profits and Losses of, and the right to receive Distributions from, the Company pursuant to this Agreement and the BOC, but shall not include any right to participate in the management or affairs of the Company, including, the right to vote on, consent to, or otherwise participate in any decision of the Members or Managers, and shall not include any right to require any information or account of the Company's transactions or to inspect the Company's books and records, tax return information, or any other Company information, documents, or other data associated with the Company.

(w) "Fiscal Year" shall mean (i) the period commencing on the effective date of this Agreement and ending on December 31 of the year of the effective date of this Agreement and (ii) any subsequent twelve (12) month period commencing on January 1, and ending on December 31.

(x) "Gross Asset Value" shall mean, with respect to any asset, the asset's adjusted basis for federal income tax purposes, except as follows:

(i) The initial Gross Asset Value of any asset contributed by a Member to the Company shall be the gross fair market value of such asset, as determined by the contributing Member and the Managers, provided that, if the contributing Member is a Manager, the determination of the fair market value of a contributed asset shall require the consent of a majority of the Members;

(ii)     The Gross Asset Values of all Company assets shall be adjusted to equal their respective gross fair market values, as determined by the Managers, as of the following times: [a] the acquisition of an additional interest in the Company by any new or existing Member in exchange for more than a de minimis Capital Contribution, including services; [b] the distribution by the Company to a Member of more than a de minimis amount of Property as consideration for an interest in the Company; and [c] the liquidation of the Company within the meaning of Reg. § 1.704-1(b)(2)(ii)(g), provided, however, that adjustments pursuant to clauses [a] and [b] above shall be made only if the Managers reasonably determine that such adjustments are necessary or appropriate to reflect the relative economic interests of the Members;

(iii)     The Gross Asset Value of any Company asset distributed to any Member shall be adjusted to equal the gross fair market value of such asset on the date of distribution as determined by the distributee and the Managers, provided that, if the distributee is a Manager, the determination of the fair market value of the distributed asset shall require the consent of a majority of the Members; and

(iv)     The Gross Asset Values of Company assets shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such assets pursuant to Section 734(b) or Section 743(b) of the Code, but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to Reg. § 1.704-1(b)(2)(iv)(m) and subparagraph (vi) of the definition of Profits and Losses or Article VIII, provided, however, that Gross Asset Values shall not be adjusted pursuant to this subparagraph (iv) to the extent the Managers determine that an adjustment pursuant to subparagraph (ii) is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment pursuant to this subparagraph (iv).

If the Gross Asset Value of an asset has been determined or adjusted pursuant to subparagraphs (i), (ii), or (iv), such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of computing Profits and Losses.

(y)     "Initial Capital Contribution" means the initial Capital Contribution to Company made by a Member pursuant to this Agreement.

(z)     "Involuntary Transfer" shall mean (i) any foreclosure or similar event associated with a Membership Interest or any beneficial right therein; (ii) committing an act of bankruptcy or making a general assignment for the benefit of creditors; or (iii) if there is filed by or against a Member a petition in bankruptcy or a petition for the appointment of a receiver, or the commencement under any bankruptcy or insolvency laws of any proceeding for relief, composition, extension, arrangement or adjustment of any obligations of such Member; or (iv) the issuance of any writ, attachment or similar process against the property of a Member; or (v) the taking of possession of or assumption of control of all or any substantial part of the property of a Member by any government or agency thereof.

Provided, however, notwithstanding the foregoing, there shall be no Involuntary Transfer pursuant to (iii), (iv), or (v) above if, within sixty (60) days after: [a] any matter described in (iii), such filing, petition, or commencement is withdrawn, released, vacated or stayed; or [b] any matter described in (iv) above, such writ, attachment, or similar process is vacated, released, or bonded; or [c] any matter described in (v) above, such taking of possession of or assumption of control shall have been rescinded or otherwise relinquished or abandoned.

The date of such Involuntary Transfer shall be: [a] with respect to any matter described in (ii) upon the committing of such acts of bankruptcy or making of such general assignment; or [b] with respect to any matter described in (iii), (iv), or (v) above, upon the expiration of such sixty (60) day period without any of the applicable curative events described above.

(aa)    "Losses" means, for each Fiscal Year, the losses and deductions of Company determined in accordance with accounting principles consistently applied from year to year under the method of accounting adopted by Company and as reported, separately or in the aggregate, as appropriate, on Company's information tax return filed for federal income tax purposes, plus any expenditures described in Section 705(a)(2)(B) of the Code.

(bb)    "Majority" means (i) with respect to any referenced group of Members, a combination of such Members constituting more than fifty percent (50%) of the number of Members of such referenced group who are then Members, and (ii) with respect to any referenced group of Managers, a combination of any such Managers constituting more than fifty percent (50%) of the number of Managers of such referenced group who are then elected and qualified. Any action to be taken by the Managers hereunder, unless otherwise specified under the BOC or this Agreement, shall be taken upon the affirmative vote of a Majority of the Managers.

(cc)    "Majority-In-Interest" means, with respect to any referenced group of Members, a combination of any of such Members who, in the aggregate, own more than fifty percent (50%) of the Membership Interests owned by all of such referenced group of Members. Any action to be taken by the Members hereunder, unless otherwise specified under the BOC or this Agreement, shall be taken upon the affirmative vote of a Majority-In-Interest of the Members.

(dd)    "Managers" means Thomas R. Durant, Michael Jeffrey Sebastian, or any other Person(s) who is (are) designated to succeed him in that capacity or who are designated to act as additional Managers of Company as provided herein, but does not include any Person who has ceased to be a Manager of Company. "Managers" means all such Persons, whether one or more, collectively in their capacity as Managers of Company.

(ee)    "Member" means each Person designated as a Class A Member or Class B Member on Schedule 1, attached hereto and hereby made a part hereof, any successor or successors to all or any part of any such Person's interest in Company, or any additional Member admitted as a Class A Member or Class B Member of Company in accordance with Article VIII, each in its capacity as a Member of Company, but does not include any Person who has ceased to be a Member of Company. "Members" means all such Persons collectively in their capacity as Members of Company.

(ff)  "Member Minimum Gain" shall mean an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if such Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Reg. § 1.704-2(i).

(gg)  "Member Nonrecourse Debt" shall have the meaning set forth in Reg. § 1.704-2(b)(4), being generally any nonrecourse debt of the Company for which any Member (or related person within the meaning of Reg. § 1.752-4(b)) bears the economic risk of loss.

(hh)  "Member Nonrecourse Deductions" shall have the meaning set forth in Reg. §§ 1.704-2(i)(1) and (j)(2).

(ii)  "Membership Interest" or "Interest" means the (i) percentage of ownership interest of a Class A Member of Company at any particular time or (ii) percentage of voting rights of each Member, as indicated on Schedule 1 attached hereto. The total of all Membership Interest in Company shall at all times equal one hundred percent (100%).

(jj)  "Nonrecourse Deductions" shall have the meaning set forth in Reg. § 1.704-2(b)(1).

(kk)  "Nonrecourse Liability" shall have the meaning set forth in Reg. § 1.704-2(b)(3).

(ll)  "Person" shall have the meaning given that term in the BOC.

(mm)  "Profits and Losses". Profits" shall mean the net income of the Company as determined for federal income tax purposes, and any reference to "Losses" shall mean the net losses of the Company as determined for federal income tax purposes, for each Fiscal Year, (including all items of income, gain, loss or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code) adjusted as follows: (i) Any income of the Company that is exempt from federal income tax and not otherwise taken into account in computing Profits or Losses pursuant to this definition of "Profits" and "Losses" shall be added to such net income or loss; (ii) Any expenditures of the Company described in Section 705(a)(2)(B) of the Code or treated as Section 705(a)(2)(B) expenditures pursuant to Reg. Section 1.704-1(b)(2)(iv)(i) and not otherwise taken into account in computing Profits or Losses pursuant to this definition of "Profits and Losses" shall be subtracted from such net income or loss; (iii) In the event the Gross Asset Value of any Company asset is adjusted pursuant to subparagraphs (ii) or (iii) of the definition of "Gross Asset Value," the amount of such adjustment shall be taken into account as gain or loss from the disposition of such asset for purposes of computing Profits or Losses; (iv) Gain or loss resulting from any disposition of Property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Gross Asset Value of the property disposed of, notwithstanding that the adjusted tax basis of such property differs from its Gross Asset Value; (v) In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such net income or loss, there shall be taken into account Depreciation for such Fiscal Year, computed in accordance with the definition of "Depreciation"; (vi) To the extent an

adjustment to the adjusted tax basis of any Company asset pursuant to Section 734(b) or Section 743(b) of the Code is required pursuant to Reg. Section 1.704-1(b)(2)(iv)(m)(4) to be taken into account in determining Capital Accounts as a result of a distribution other than in complete liquidation of a Member's Interest, the amount of such adjustment shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases the basis of the asset) from the disposition of the asset and shall be taken into account for purposes of computing Profits or Losses; and (vii) there shall be excluded from such net income or losses those items subject to special allocation under the Regulatory Special Allocations and the Special Curative Allocations. The amount of Company income, gain, loss or deduction available to be specially allocated pursuant to the Regulatory Special Allocations and Special Curative Allocations, shall be determined by applying rules analogous to those set forth in subparagraphs (i) through (vi) above.

(nn) "Reg." or "Treasury Regulations" shall mean the designated Treasury Regulation promulgated under the Code, as such Treasury Regulation may be amended from time to time.

(oo) "Transfer" means any change in the record ownership of Membership Interest, whether made voluntarily or involuntarily by operation of law, including, but not limited to, the following:

(i) a sale or gift to any Person;

(ii) a transfer to the personal representative of the estate of a Member upon such Member's death, and any subsequent transfer from such personal representative to the heirs or devisees of the deceased Member under his will or by the laws of descent and distribution;

(iii) a transfer to a judicially appointed personal representative as a result of the adjudication by a court of competent jurisdiction that the transferor Member is mentally incompetent to manage his person or property;

(iv) a transfer to the transferor Member's spouse or former spouse, or heirs of such spouse or former spouse, in connection with a division of their community or other property upon the death of the transferor Member, divorce or the death of such spouse;

(v) a general assignment for the benefit of creditors, or any assignment to a creditor resulting from the creditor's foreclosure upon or execution against such Interest;

(vi) the filing by the transferor Member of a voluntary Bankruptcy petition;

(vii) the entry of a judicial order granting the relief requested by the petitioner in an involuntary Bankruptcy proceeding filed against the transferor Member.

## ARTICLE II
## FORMATION OF COMPANY

2.1     Name and Formation. The name of Company is Classic Chevrolet West Houston, LLC. Company was formed pursuant to the Certificate of Formation of Company filed in the office of the Secretary of State of Texas on October 10, 2019 (the "Certificate of Formation"), in accordance with the BOC.

2.2     Principal Place of Business. The principal place of business of Company shall be 8100 South Hwy 6, Houston, TX 77083.  Company may locate its place(s) of business and registered office at any other place or places as a Majority of the Managers may from time to time deem necessary or advisable.

2.3     Registered Office and Registered Agent. Company's registered office shall be 1101 W. State Highway 114, Grapevine, Texas 76051, or such other office selected by a vote of a Majority-In-Interest of the Members from time to time.  The registered agent of Company is Thomas R. Durant or another Person or Persons selected by a vote of a Majority-In-Interest of the Members from time to time.

2.4     Term. The term of existence of Company shall be perpetual, unless Company is earlier wound up in accordance with the provisions of either this Agreement or the BOC.

2.5     Purposes and Powers. The purposes and character of the business of Company shall be the ownership and operation of a Chrysler, Dodge, Jeep, RAM and Fiat automobile sales and service dealership business (the "Dealership") located in Sugar Land, Texas, pursuant to a written sales and service dealership agreement with FCA USA LLC (the "Manufacturer"). Company shall have any and all powers which are necessary, proper, advisable, convenient, or desirable to carry out the purposes and business of Company, to the extent the same may be legally exercised by limited liability companies under the BOC.

2.6     Foreign Qualification. The Managers shall cause Company to comply, to the extent legally possible, with all requirements necessary to qualify Company as a foreign limited liability company in each jurisdiction in which Company conducts business.  At the request of the Managers, each Member shall execute, acknowledge, swear to, and deliver all certificates and other instruments conforming with this Agreement that are necessary or appropriate to qualify, continue, and terminate Company as a foreign limited liability company in all such jurisdictions in which Company may conduct business.

2.7     Mergers, Conversions and Exchanges. Company may be a party to (a) a merger, (b) a conversion, or (c) an exchange or acquisition of the type described in the BOC, subject to obtaining the unanimous vote of the Members.

2.8     No State Law Partnership. The Members intend that Company will be treated as a partnership for tax purposes and that each Member will be treated as a partner of a partnership for tax purposes, and that Company will not be a partnership (including, without limitation, a limited

partnership) or joint venture, and that no Manager or Member be a partner or a joint venture of any other Manager or Member, for any purposes other than tax purposes, and this Agreement may not be construed to suggest otherwise.

## ARTICLE III
## POWERS, RIGHTS AND DUTIES OF MANAGERS AND OFFICERS

3.1    Management Powers of Managers. The Managers shall have the sole and exclusive right to manage the Company business and shall, on behalf and in the name of the Company, carry out the purposes of the Company and perform all acts, contracts and other undertakings which are necessary or advisable or incidental to the purposes of the Company. Except as provided in this Agreement, all decisions made or actions taken by the Managers shall be binding upon the Company and all of the Members, and the ratification or consent of the Members to such decisions or actions shall not be required. Subject to the stated purposes of the Company and the limitations set forth in this Agreement, the Managers' authority and power shall include, but not be limited to, the following, which authorities and powers shall be broadly construed and may be exercised by a Manager when and under such terms and conditions as the Managers, in their discretion, may determine to be in the best interest of the Company:

(a)    In General. Engage in any kind of activity and perform and carry out contracts of any kind necessary or incidental to, or in connection with, the accomplishment of the purposes of the Company, as may be lawfully carried on or performed by a limited liability company under the laws of each state in which the Company is then formed or qualified.

(b)    Property Acquisitions. Acquire by purchase, lease, exchange, or otherwise any real and/or personal property.

(c)    Property Management. Operate, maintain, finance, improve, construct, own, grant options with respect to, sale, convey, assign, mortgage, and/or lease any real property and/or any personal property owned, directly or indirectly, by the Company.

(d)    Interest in Properties. Make all elections or decisions, and bind the Company thereby, that may be necessary or permissible in connection with any purchase, joint venture agreement or other type of contract under which an interest in properties is to be acquired, operated, sold or assigned by the Company.

(e)    Property Leasing. Negotiate and execute any lease agreements with respect to Company property.

(f)    Property Sales. Sell, exchange or otherwise transfer all or any part of the assets of the Company.

(g)    Financing. Borrow money and mortgage or encumber property of the Company in order to further the purposes of the Company.

App.A 0022

(h) <u>Deeds, Mortgages, Deeds of Trust and Other Instruments</u>. Execute any deed, lease, mortgage, deed of trust, mortgage note, security agreements, pledge, promissory note, bill of sale, contract, or other instrument purporting to convey or encumber any or all of the Company property.

(i) <u>Depository Accounts</u>. Open any one or more accounts on behalf of the Company, and to make deposits therein and to execute and deliver all appropriate checks, drafts, or other orders for payment of funds on behalf of the Company.

(j) <u>Liquid Investments</u>. Invest and reinvest the property of the company in savings accounts, certificates of deposit, stocks, bonds, notes, options, margin accounts, calls, puts, money market or cash accounts maintained or administered by banks, savings and loans, brokerage firms, or any state or national institution having similar characteristics.

(k) <u>Business Investments</u>. Acquire, invest in, loan to, hold, retain, and operate any business interest, whether it be a sole proprietorship, joint venture, partnership, limited liability company, corporation, or other type of business organization.

(l) <u>Contracts</u>. Execute and perform any and all agreements, contracts, documents, certifications, and any other instruments necessary, appropriate or convenient in connection with or incidental to the management, maintenance and operation of Company property, or in connection with managing the affairs of the Company or the accomplishment of the purposes of the Company.

(m) <u>Miscellaneous Insurance</u>. Purchase and pay for property, casualty, and/or liability insurance, including extended coverage liability and casualty and worker's compensation, as would be customary for any Person owning comparable property and engaged in a business similar to that of the Company and/or covering such risks as deemed appropriate by the Manager.

(n) <u>Life Insurance</u>. Purchase or acquire life insurance policies on the life of any person in whom the Company has an insurable interest, pay premiums therefor, borrow against the policies and exercise any and all other rights of ownership regarding the policies and the proceeds therefrom; provided that any insured person, shall be prohibited from exercising any incidents of ownership, within the meaning of Section 2042 of the Code, over any life insurance policy on the life of the person, whether as a Member, an officer, director, manager, member or other representative of a Member or the Company, or in any other capacity, as such incidents of ownership shall be exercised solely by the non-insured Manager or Managers and the non-insured representatives thereof, anything to the contrary in this Agreement notwithstanding.

(o) <u>Loans and Guarantees</u>. Execute loan guarantees for transactions entered into for or by the Company and make loans to any Member of the Company on such terms, conditions, and collateral as the Managers, in their reasonable discretion, shall deem appropriate.

(p) <u>Judicial and Administrative Actions</u>. Institute, prosecute, defend, settle, compromise, and dismiss lawsuits or other judicial or administrative proceedings brought on or in behalf of or against the Company or its Members in connection with Company activities and

COMPANY AGREEMENT <span style="color:red">App.A 0023</span> PAGE 11

transactions, and engage counsel or others in connection therewith and execute powers of attorney, consents, waivers and other documents that may be necessary before any court, administrative board or agency of any governmental authority, affecting the properties owned by the Company.

(q)     Tax Returns.  Prepare or have prepared and file all tax returns for the Company (but not the tax returns or information returns of the individual Members) and make all tax elections under the Code or relevant state or local law as the Managers shall, in their discretion, deem to be in the best interest of the Members.

(r)     Employees and Contractors.  Contract on behalf of the Company for the employment and services of employees and/or independent contractors and delegate to such Persons such responsibilities and duties as the Managers, in their discretion, may determine, and select for and contract on behalf of the Company for all professional services, including, but not limited to, accountants, lawyers, investment advisors, or other professional advisors.

(s)     Certificate of Authority.  The Managers may provide any Person dealing with the Company, and such Person may rely upon, a certificate signed by a Manager as to: (1) the identity of the Members; (2) any conditions precedent to acts by the Company; (3) the Persons who are authorized to execute any documents and bind the Company; and (4) any other matter involving the Company.

3.2     Limitations on Managers' Authority. Notwithstanding anything contained in this Agreement to the contrary, the Managers shall not have the authority to do or cause the Company to do any of the following acts without the affirmative unanimous Vote of all of the Members:

(a)     Contravention.  Do any act in contravention of this Agreement;

(b)     Impossibility:  Do any act which would make it impossible to carry on the ordinary business of the Company;

(c)     Illegality.  Do any act in violation of the BOC, including but not limited to the making of a Distribution that would impair the ability of the Company to pay its debts as they mature or that would violate the limitations set forth in Section 101.206 of the BOC;

(d)     Company Property.  Possess Company property or assign the rights of the Company in specific property for any purpose other than for and on behalf of the Company;

(e)     Sale, Exchange or Disposition of Company Property.  Sell, lease, exchange or otherwise dispose of (other than by way of a pledge, mortgage, deed of trust or trust indenture) all or substantially all the Company's property and assets (with or without good will);

(f)     Mergers or Acquisitions.  Be a party to [i] a merger, [ii] an interest exchange, or [iii] a conversion; or

(g)     Amendment of Certificate of Formation.  Amend or restate the Certificate of Formation.

COMPANY AGREEMENT

3.3     Third Party Reliance.  Any Person, other than a Member, dealing with the Company may rely on the authority of any Manager in taking any action in the name of the Company without inquiry into the provisions of this Agreement or compliance herewith, regardless of whether that action actually is taken in accordance with the provisions of this Agreement.

3.4     Nominees to Hold Company Property.  Any Person, including without limitation any Member, may be specifically authorized by the Managers to acquire, on behalf of the Company, any real or personal property, arrange any financing, execute contracts and complete all other arrangements needed to effectuate the purposes of the Company, without the need to disclose the existence of the Company.  Such Person shall place a written declaration in the Company's books and records acknowledging the Person's capacity as an agent and nominee for and on behalf of the Company, and the name of the Company as the true owner thereof.  The acquisition of Company property or the creation of indebtedness of the Company in the name of such Person acting as a nominee shall not give such Person an interest in Company property or cause it to be liable for a Company debt in excess of its proportionate part based on its Membership Interest, if any.

3.5     Delegation of Authority.  The Managers may, from time to time, delegate to one or more Managers such authority and duties as the Managers may deem advisable.  Any such delegation may be revoked at any time by the Managers.  A Manager's signed statement delegating its authority to any other Person shall automatically vest full power and authority in that Person to execute and deliver any and all documents and instruments, and to perform any other act, as may be necessary and desirable in furtherance of the powers so authorized.  All actions completed by such designated Person, and any documents executed thereby, shall be binding on the Company.  Any such signed statement by a Manager, when delivered to any third party, shall be all the evidence such third party shall need concerning the capacity of a Person specifically so authorized to execute and deliver such documents and instruments and to perform such acts, and any such third party shall be entitled to rely upon such statement and shall not be required to inquire further as to any of the matters contained in such statement.

3.6     Protection of Managers for Acts of Agents.  No Manager shall be held liable or otherwise responsible for any neglect, omission, or wrongdoing of any agent employed by the Managers on behalf of the Company provided such Manager uses reasonable care in the employment of the agent.

3.7     Liability.  A Manager shall be personally liable to the Company for theft, fraud, bad faith, intentional misconduct, gross negligence or willful failure to perform a Manager's duties in accordance with this Agreement.

3.8     Loans from Members. The Managers may, from time to time, borrow money on behalf of the Company from one or more Members at a rate of interest (not to exceed the maximum rate then permitted by applicable law) and with terms agreeable to the loan-making Members and the Managers.  Notwithstanding anything in this Agreement to the contrary, all amounts then due and payable under any loan(s) from a Member shall be satisfied by the Company prior to the making of any Distributions to the Members.  Payments on any such loans made by the Company

shall be first applied to any interest due on any loan with the balance of any payments to be credited against the outstanding principal balance of the loan.

3.9     Reimbursement of Managers. The Managers shall be entitled to reimbursement for any reasonable expenses incurred in connection with the Company's business. These amounts shall be considered a Company expense and not a Distribution to the Member.

3.10    Compensation of Managers. Each Manager shall receive compensation for their services as Managers in such amount as is fair and reasonable, as determined by a Majority-In-Interest of the Class A Members, taking into consideration the actual time devoted to the Company and administration of the Company, the relative financial benefit accruing to the Company as the result of the Manager's management, and any other relevant facts and circumstances.

3.11    Accounting Responsibilities of Managers. The Managers shall maintain proper books and records reflecting the assets, liabilities, investments, income, disbursements, principal, and transactions of the Company. These books and records shall be available for inspection during regular business hours by each Member or its representative. The Managers shall be free of any court accounting or supervision of the Company.

3.12    Tax Matters Partner. The Class A Members hereby appoint Thomas R. Durant as the "Tax Matters Partner" for purposes of Section 6231(a)(7) of the Code, with the authorization and requirement to represent the Company in connection with all tax matters pertaining to the Company.

3.13    Devotion of Time. The Managers shall devote to the Company such time as may be necessary for the proper performance of their duties as set forth herein. No provision of this Agreement shall require the officers, directors, managers, or Affiliates of a Manager to devote their full time or activities to the conduct of the affairs of the Company.

3.14    Multiple Managers. In the event that there is more than one Manager of the Company, the rights and powers of the Managers hereunder shall be exercised by the Managers only in accordance with the affirmative Vote of the Managers.

3.15    Election of Managers. At each election for Managers every Class A Member shall have the right to Vote in person or by proxy, the percentage of Membership Interest owned by such Member, as a Class A Member, for as many persons as there are Managers to be elected and for whose election such Member has a right to Vote. In other words, the Managers shall be elected by a Majority-In-Interest of the Class A Members.

3.16    Term of Office. Each Manager shall hold office until (i) the Manager dies, or in the case of a Manager who is not an individual, the Manager dissolves, liquidates or otherwise ceases to exist under state law, (ii) the Manager resigns, (iii) the Manager is removed, or (iv) the Company is dissolved and terminated, except as allowed to wind up the affairs of the Company under Section 10.1 of this Agreement, Section 11.052 of the BOC, or other applicable law.

App.A 0026

3.17    Vacancies in Managers.  Any vacancy occurring in the Managers shall be filled by a Majority-In-Interest of the Class A Members at an annual meeting or special meeting duly called and held for such purpose.

3.18    Chairman of the Managers.  At each annual meeting of the Managers, the Class A Members or the Managers may elect a Chairman of the Managers who shall hold office until the next succeeding annual meeting of the Managers and until the Chairman's successor is elected and qualified.  The Chairman of the Managers shall preside at all meetings of the Managers and, in the absence of the President, at all meetings of the Members.  If no Chairman of the Managers is so elected, the President shall so act.

3.19    Resignation of Managers.  Any Manager may resign by giving Notice to the President or the Secretary, or in lieu thereof to the remaining Managers, or if none exist to the Members.  Such resignation shall take effect at the time specified therein, or immediately, if no time is specified therein.  Unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

3.20    Removal of Managers.  A Manager may be removed at any time, with or without cause, by a Majority-In-Interest of the Class A Members, and thereby the term of office of such Manager shall automatically terminate.  Such removal shall be effective upon the effective date of the action to remove the Manager even if a successor is not elected simultaneously.

3.21    Number and Qualifications of Managers.  Managers need not be residents of the State of Texas or Members of the Company.  The number of Managers shall be two (2) until otherwise fixed by a Majority-In-Interest of the Class A Members at an annual meeting or a special meeting duly called and held for such purpose.  No decrease in the number of Managers shall have the effect of reducing the term of any incumbent Manager unless such Manager is removed as provided in Section 3.20.

3.22    Officers.

(a)    Election of Officers.  The Managers may elect as officers of Company a President, a Secretary, a Vice President(s) and Treasurer.  The Managers may elect or appoint such other officers and agents as they shall deem necessary, who shall be appointed for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Managers.  Officers need not be a Member or Manager of Company or a resident of Texas.  Any two or more offices may be held by the same Person.  Each officer of Company shall hold office until his successor is chosen and is qualified in his stead or until his death, resignation or removal from office. Any vacancy in any office because of death, resignation, removal or otherwise may be filled by such person as is elected or appointed by the Majority vote of the Managers.  The officers of Company shall not receive any compensation for their service as an officer unless such amount is approved by Majority-In-Interest the Class A Members.

(b)    Authority and Duties.  The officers of Company shall have the authority and shall exercise the powers and perform the duties specified below and as may be additionally specified by the Managers or this Agreement (and in all cases where the duties of any officer are

COMPANY AGREEMENT

App.A 0027

PAGE 15

not prescribed by this Agreement or the Managers, such officer shall follow the orders and instructions of the President):

(i) <u>President</u>. The President of Company shall preside over the general and active management of the business of Company, and shall direct, manage and control the business of Company to the best of the President's ability. The President shall serve until resignation, the winding up of Company, or removal by the Managers and shall have full and complete authority, power and discretion to make any and all decisions and do any and all things that the President deems to be reasonably required in furtherance of Company's business and objectives. Without limiting the generality of the foregoing, the President or such subordinate officer designated by the President, or any officer duly authorized by the Managers shall have the power and authority on behalf of Company:

(A) to purchase liability and other insurance to protect Company's property and business;

(B) to invest any Company funds temporarily (by way of example but not limitation) in time deposits, short-term governmental obligations, commercial paper or other investments;

(C) to employ accountants, legal counsel, managing agents or other experts, employees or agents to perform services for Company and to compensate them from Company funds;

(D) to negotiate with employees and any labor organization representing employees of Company; and

(E) to carry out all orders and resolutions of the Managers.

(ii) <u>Vice President</u>. The Vice President of Company shall, in the absence or disability of the President, perform the duties and have the authority and exercise the powers of the President. The Vice President shall perform such other duties and have such other authority and powers as Managers may from time to time prescribe or as the President may from time to time delegate. No other officer of Company shall rank higher than Vice President except President. No other officer or Manager shall perform the duties of the President in the absence or disability of the President except the Vice President unless the Vice President is absent or disabled.

(iii) <u>Secretary</u>. The Secretary shall attend all meetings of the Managers and Members and record all votes and the minutes of all proceedings in a book to be kept for that purpose and shall perform like duties for any committee, if requested. The Secretary shall give, or cause to be given, notice of the meetings of the Managers and Members where such notices are required by this Agreement or the BOC to be given. The Secretary shall be under the supervision of the President and shall perform such other duties and have such other authority and powers as the Managers may from time to time prescribe or as the President may from time to time delegate. The Secretary, if any, shall, together with the

App.A 0028

President, if any, perform the duties of a Treasurer in the event a Treasurer is not elected or appointed.

        (iv)    <u>Treasurer</u>. The Treasurer shall have the custody of Company funds and shall keep full and accurate accounts of receipts and disbursements of Company, and shall deposit all monies and other valuable effects in the name and to the credit of Company in such depositories as may be designated by the Managers. The Treasurer shall disburse the funds of Company as may be ordered by the Managers, taking proper vouchers for such disbursements, and shall render to the President and Managers, at the regular meetings of the Managers, or whenever they may require it, an account of all transactions as Treasurer and of the financial condition of Company. If required by the Managers, the Treasurer shall give Company a bond in such form, in such sum, and with such surety or sureties as shall be satisfactory to the Managers for the faithful performance of the duties of office and for the restoration to Company, in case of death, resignation, retirement or removal from office, of all books, papers, vouchers, money or other property of whatever kind in the Treasurer's possession or under his or her control belonging to Company. The Treasurer shall perform such other duties and have such other authority and powers as the Managers may from time to time prescribe or as the President may from time to time delegate.

        (c)    <u>Execution of Contracts</u>. Subject to the limitations contained in this Agreement, the Manager(s), President or such subordinate officer or officers designated by the President or any officer designated by the Managers shall have the authority to execute on behalf of Company all agreements, instruments, and documents, including, without limitation, checks, drafts, notes, and other negotiable instruments, mortgages, deeds of trusts, security agreements, financing statements, documents providing for the acquisition, mortgage or disposition of Company property, assignments, bills of sale, leases, partnership agreements, and any other instruments or documents necessary to effectuate any actions which have been approved by the Members or the Managers (if such actions require under the BOC or this Agreement the approval of the Members or the Managers) or by the President (if such actions do not require under the BOC or this Agreement the approval of the Members or the Managers).

        (d)    <u>General</u>.

        (i)    <u>Removal</u>. Any officer may be removed at any time by the Managers whenever in the Managers' judgment, the best interests of Company will be served thereby, but such removal will be without prejudice to the contract rights, if any, of the person so removed. Election or appointment of an officer shall not in itself create contract rights.

        (ii)    <u>Resignation</u>. Any officer may resign at any time, subject to the rights or obligations under any existing contracts between the officer and Company, by giving written notice to the President or any Manager. An officer's resignation shall take effect at the time specified in the notice, and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

        (iii)    <u>Vacancies</u>. A vacancy in any office, however occurring, may be filled by the Managers.

(iv)  Indemnification.  Company shall indemnify the Managers, officers, and Members to the extent set forth in Article V hereof.

3.23  Place and Manner of Meetings.  All meetings, regular or special, of the Managers of Company may be held either within or without the State of Texas.  The Managers may participate in such meetings by means of conference telephone or similar communications equipment by which all Persons participating in the meeting can hear each other, and participation in a meeting as provided herein shall constitute presence in person at such meeting, except where a Person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.  The Managers shall keep regular minutes of their proceedings.  The minutes shall be placed in the minute book of Company.

3.24  Annual Meetings of Managers.  The annual meeting of Managers shall be held, without further notice, immediately following the annual meeting of Members, and at the same place, or at such other time and place as shall be fixed with the consent in writing of all Managers.

3.25  Regular Meetings of Managers.  Regular meetings of the Managers may be held without notice at such time and place either within or without the State of Texas as shall from time to time be determined by the resolution of a Majority of the Managers.

3.26  Special Meetings of Managers.  Special meetings of the Managers may be called by any Manager on three (3) days' notice to each Manager, either personally or by mail, by email or telephone.

3.27  Quorum.  At all meetings of the Managers, the presence of a Majority of the Managers shall be necessary and sufficient to constitute a quorum for the transaction of business unless a greater number is required by law or by the Certificate of Formation.  The act of a Majority of the Managers present at a meeting at which a quorum is present shall be the act of the Managers, except as otherwise provided by law, the Certificate of Formation or this Agreement.  If a quorum shall not be present at any meeting of the Managers, the Managers present at the meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present.

3.28  Attendance and Waiver of Notice.  Attendance of a Manager at any meeting shall constitute a waiver of notice of such meeting, except where a Manager attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Managers need be specified in the notice or waiver of notice of such meeting.

3.29  Action Without Meeting.  Any action required by statute to be taken at a meeting of the Managers, or any action which may be taken at a meeting of the Managers, may be taken without a meeting, without notice and without a vote if a consent in writing, setting forth the action so taken, shall be signed by the Managers necessary to have at least the minimum number of votes

App.A 0030

that would be necessary to take the action at a meeting at which each Manager entitled to vote on the action is present and votes. Such consent shall have the same force and effect as a unanimous vote at a meeting.

## ARTICLE IV
## POWERS, RIGHTS AND LIABILITIES OF MEMBERS

4.1     No Management Powers of Members. Except for any rights granted to the Class A Members in this Agreement, no Member (other than in its capacity as a Manager or an officer or other designated representative of a Manager, if applicable) shall have any power or authority whatsoever to participate in or vote on matters pertaining to the management of the Company, to act for or on behalf of the Company, to transact any business for the Company or sign for or otherwise bind the Company to any agreement or document, to do any act that would be binding on the Company, or to incur any expenditure on behalf of the Company.

4.2     Limitations on Members' Liability. No Member shall be personally liable to the Company, to any of the Members, to the creditors of the Company, or to any third party for the debts, obligations, liabilities and/or losses of the Company, including under a judgment, decree or order of a court, solely as a result of being a Member. Notwithstanding the foregoing, a Member shall be liable to the Company for any damages the Company sustains as a result of the Member's theft from the Company, fraud perpetuated against the Company, bad faith perpetuated against the Company, intentional misconduct damaging the Company and gross negligence damaging the Company.

4.3     Permissible Competition and Other Activities. The Members, Managers and officers, and their respective managers, directors, officers, employees, agents and Affiliates may have other business interests and may engage in other activities in addition to those relating to the Company. The pursuit of such ventures, even if competitive with the business of the Company, shall not be deemed wrongful or improper, it being expressly understood that no such person shall be restricted in any way with regard to other activities, business or otherwise. No such person shall be obligated to offer any interest in such activities to the Company, and no such person shall be required to permit the Company or any Member, Manager, or officer of the Company to participate in any such activities. Any such persons shall be permitted by the terms of this Agreement to transact any lawful business between themselves, and shall in no way be affected by reason of the relationship between the Company and such persons whatsoever.

4.4     Place and Manner of Meetings. All meetings of the Members shall be held at the principal office of Company or at such other place within or without the State of Texas as may be determined by the Managers and set forth in the respective notice or waivers of notice of such meeting. Members may participate in such meetings by means of conference telephone and similar communications equipment by means of which all Persons participating in the meeting can hear each other, and participation in a meeting as provided herein shall constitute waiver of notice of the same and presence in person at such meeting, except where a Person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

App.A 0031

4.5　Annual Meetings of Members. The annual meeting of the Members of Company for the transaction of such other business as may properly come before the meeting shall be held at such time and date as shall be designated by the Managers from time to time and stated in the notice of the meeting. Such annual meeting shall be called in the same manner as provided in this Agreement for special meetings of the Members, except that the purposes of such meeting need be enumerated in the notice of such meeting only to the extent required by law in the case of annual meetings.

4.6　Special Meetings of Members. Special meetings of the Members may be called by the Managers or by the holders of not less than ten percent (10%) of all the Membership Interests. Business transacted at all special meetings shall be confined to the purpose stated in the notice.

4.7　Notice of Meetings of Members. Written or printed notice stating the place, day and hour of the meeting and, in the case of special meetings, the purpose or purposes for which the meeting is called, shall be delivered not less than ten (10) nor more than sixty (60) days before the date of the meeting, either personally or by mail, by or at the discretion of the Managers or the Person calling the meeting, to each Member of record entitled to vote at such meeting.

4.8　Quorum. A Majority-In-Interest of each Class of Members entitled to vote and present at a meeting, in person or by proxy, shall constitute a quorum at all meetings of the Members, unless a greater percentage is otherwise provided by law or the Certificate of Formation. Once a quorum is present at the meeting of the Members, the subsequent withdrawal from the meeting of any Member prior to adjournment or the refusal of any Member to vote shall not affect the presence of a quorum at the meeting. If, however, such quorum shall not be present at any meeting of the Members, the Members entitled to vote at such meeting shall have the power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until the holders of the requisite amount of Membership Interests shall be present or represented. At any meeting of the Members at which a quorum is present, the vote of the holders of a Majority-In-Interest of each Class of Members entitled to vote and present, in person or by proxy, shall be the act of the Members, unless otherwise provided by the Certificate of Formation or this Agreement or required by law. Any vote of the Members entitled to vote may be taken viva voce or by show of hands unless someone entitled to vote objects, in which case written ballots shall be used.

4.9　Registered Members. Company shall be entitled to treat the holder of record of any Membership Interest as the holder of such Membership Interest for all purposes, and accordingly shall not be bound to recognize any equitable or other claim to or interest in such Membership Interest on the part of any other Person, whether or not it shall have express or other notice of such claim or interest, except as expressly provided by this Agreement or the laws of the State of Texas.

4.10　Proxies. A Member entitled to vote may vote either in person or by proxy executed in writing by the Member. A telegram, telex, cablegram, electronic mail or similar transmission by the Member, or a photographic, photostatic, facsimile, or similar reproduction of a writing executed by the Member shall be treated as having been executed in writing for purposes of this Section.

4.11    Conduct of Meetings. All meetings of the Members shall be presided over by the chairman of the meeting, who shall be a Manager (or representative thereof) designated by a Majority of the Managers. The chairman of any meeting of Members shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of discussion as seemed to him in order.

4.12    Fixing Record Dates for Matters Other than Consents to Actions. The Managers may fix in advance a record date for the purpose of determining Members entitled to notice of or to vote at a meeting of the Members (other than determining Members entitled to consent to action by Members proposed to be taken without a meeting of Members), the record date to be not less than ten (10) nor more than sixty (60) days prior to said meeting. In the absence of any action by the Members, the date upon which the notice of the meeting is mailed shall be the record date.

4.13    Fixed Record Dates for Consents to Action. Unless a record date shall have previously been fixed or determined pursuant to Section 4.12 hereof, whenever action by Members is proposed to be taken by consent in writing without a meeting of Members, if provided for by this Agreement, the Managers may fix a record date for purposes of determining Members entitled to consent to that action, which record date shall not precede, and shall not be more than ten (10) days after, the date upon which the resolution fixing the record date as adopted by the Managers. If no record date has been fixed by the Managers and the prior action by the Managers is not required by the BOC, the record date for determining Members entitled to consent to action in writing without a meeting shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to Company by delivery to its registered office, its principal place of business, or a Manager of Company having custody of the books in which proceedings of meetings of Members are recorded. Delivery shall be by hand or by certified or registered mail, return receipt requested. Delivery to Company's principal place of business shall be addressed to any Manager of Company. If no record date has been fixed by the Managers and prior action of the Managers is required by statute, the record date for determining Members entitled to consent to action in writing without a meeting shall be at the close of business on the date on which the Managers adopt a resolution taking such prior action.

4.14    Actions Without a Meeting. Any action required by the BOC to be taken at a meeting of the Members, or any action which may be taken at a meeting of the Members, may be taken without a meeting, without prior notice, and without a vote if a written consent or consents in writing, setting forth the action so taken, shall have been signed by the Members of each Class of Interest entitled to vote with respect to the action that is the subject matter of the consent, and such consent shall have the same force and effect as a unanimous vote of the Members. Every written consent pursuant to this Section shall be signed, dated, and delivered in the manner required by, and shall become effective at the time and remain effective for the period specified by, the BOC. A telegram, telex, cablegram, or similar transmission by a Member, or a photographic, photostatic, facsimile, email transmission, or similar reproduction of a writing signed by a Member shall be regarded as signed by the Member for purposes of this Section. Prompt notice of the taking of any action by Members without a meeting by less than unanimous written consent shall be given to those Members who do not consent in writing to the action.

4.15    Nature of Membership Interest.  A Membership Interest is personal property.  A Member shall have no interest in specific property of Company.

4.16    Right to Remove Dealer Operator.  Notwithstanding any term or provision of this Agreement to the contrary, a Majority-In-Interest of the Class A Members shall have the right to immediately remove and replace the Dealer Operator of the Dealership upon written notice to the Dealer Operator, the Company, the Managers, the other Class A Members and the Class B Members. In this regard, only written notice from the Majority-In-Interest of the Class A Members to the Dealer Operator, the Company, the Managers, the other Class A Members and the Class B Members is required and no prior action of the Members and/or Managers is necessary.

# ARTICLE V
# INDEMNIFICATION

5.1    Policy of Indemnification and Advancement of Expenses.

(a)    To the full extent permitted by Article 8.051 of the BOC, as amended from time to time, and by this Section 5.1, Company shall indemnify any Manager, officer, and/or Member of Company against judgments, penalties (including excise and similar taxes), fines, settlements, and reasonable expenses (including court costs and attorneys' fees) actually incurred by any such person who was, is or is threatened to be made a named defendant or respondent in a Proceeding because the person is or was a Manager, officer, and/or Member of Company, and shall advance to such person such reasonable expenses as are incurred by such person in connection therewith.

(b) Notwithstanding the provisions of Section 5.1(a) above, Company shall indemnify a Manager, officer, and/or Member only if it is determined in accordance with Section 5.1(d) below that the Person:

(i)    conducted himself, herself or itself in good faith;

(ii)    reasonably believed (A) in the case of conduct in the Person's official capacity as a Manager, officer, and/or Member of Company, that the Person's conduct was in Company's best interest; and (B) in all other cases, that the Person's conduct was at least not opposed to Company's best interests; and

(iii)    in the case of any criminal proceeding, had no reasonable cause to believe his, her or its conduct was unlawful.

A Manager, officer and/or Member shall not be indemnified under this Section 5.1 in respect of a Proceeding (1) in which the Person is found liable on the basis that personal benefit was improperly received by such Person, whether or not the benefit resulted from an action taken in the Person's official capacity; or (2) in which the Person is found liable to Company.  A Person shall be deemed to have been found liable in respect of any claim, issue or matter only after the Person shall have been so adjudged by a court of competent jurisdiction after exhaustion of all appeals therefrom.

(c) A Person may be indemnified by Company against judgments, penalties (including excise and similar taxes), fines, settlements, and reasonable expenses actually incurred by the Person in connection with the proceeding; but if the Person is found liable to Company or is found liable on the basis that personal benefit was improperly received by the Person, the indemnification (i) is limited to reasonable expenses actually incurred by the Person in connection with the proceeding, and (ii) shall not be made in respect of any proceeding in which the Person shall have been found liable for willful or intentional misconduct in the performance of his duty to Company.

(d) A determination of indemnification under Section 5.1(a) above must be made:

(i) by a Majority vote of a quorum consisting of Managers who at the time of the vote are not named defendants or respondents in the proceeding;

(ii) if such a quorum cannot be obtained, by special legal counsel selected by a Majority vote of all Managers; or

(iii) by a Majority-In-Interest of the Class A Members in a vote that excludes the Membership Interest held by Managers who are named defendants or respondents in the proceeding.

Authorization of indemnification and determination as to reasonableness of expenses must be made in the same manner as the determination that indemnification is permissible.

5.2 Definitions. For purposes of this Article V:

(a) "Manager, officer, and/or Member" means any person who is or was a Manager, officer, and/or Member of Company and any person who, while a Manager, officer, and/or Member of Company, is or was serving at the request of Company as a manager, director, officer, partner, venturer, proprietor, trustee, employee, agent, or similar functionary of Company or of another foreign or domestic corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan, or other enterprise.

(b) "Proceeding" means any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, arbitrative, or investigative, any appeal in such an action, suit, or proceeding, and any inquiry or investigation that could lead to such an action, suit, or proceeding.

5.3 Non-Exclusive; Continuation. The indemnification provided by this Article V shall not be deemed exclusive of any other rights to which the person claiming indemnification may be entitled under any agreement, any vote of Managers or Members or otherwise both as to any action in his or her official capacity and as to any action in another capacity while holding such position, and shall continue as to a person who shall have ceased to be a Manager, Member, officer, or

employee of Company engaged in any other enterprise at the request of Company and shall inure to the benefit of the heirs, executors and administrators of such person.

5.4    Indemnification of Employees or Agents. Company may indemnify and advance expenses to an employee or agent who is not a Manager, Member or officer to such further extent, consistent with law, as may be provided by general or specific action of the Managers, or contract as permitted or required by common law.

5.5    Appearance as a Witness. Notwithstanding any other provision of this Article V, Company may pay or reimburse expenses incurred by a Manager, officer and/or Member in connection with his or her appearance as a witness or other participation in a Proceeding at a time when he or she is not a named defendant or respondent in the Proceeding.

5.6    Insurance. Company may purchase and maintain insurance, at its expense, to protect itself and any Person who is or was serving as a Manager, Member, officer, employee, or agent of Company or is or was serving at the request of Company as a manager, director, officer, partner, venturer, proprietor, trustee, employee, agent, or similar functionary of another foreign or domestic limited liability company, corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan, or other enterprise against any expense, liability, or loss, whether or not Company would have the power to indemnify such Person against such expense, liability, or loss under this Article V.

5.7    Member Notification. To the extent required by law, any indemnification of or advance of expenses to a Manager, officer and/or Member in accordance with this Article V shall be reported in writing to the Members with or before the notice or waiver of notice of the next Members meeting or with or before the next submission to Members of a consent to action without a meeting, in any case, within the twelve (12) month period immediately following the date of the indemnification or advance.

5.8    Savings Clause. If this Article V or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then Company shall nevertheless indemnify and hold harmless each Manager, officer and/or Member or any other Person indemnified pursuant to this Article V as to costs, charges, and expenses (including reasonable attorneys' fees), judgment, fines, and amounts paid in settlement with respect to any action, suit, or proceeding, whether civil, criminal, administrative, or investigative, to the fullest extent permitted by any applicable portion of this Article V that shall not have been invalidated and to the fullest extent permitted by applicable law.

## ARTICLE VI
## MEMBERSHIP INTERESTS

6.1.    Membership Interest. The Membership Interest of Company shall be represented by the aggregate amount of the Members' Class A Membership Interest and Class B Membership Interest which shall at all times equal one hundred percent (100%). The Class A Members may establish additional series or classes of Membership Interest by adopting a resolution, setting forth the designation of the series or class and determining the designations, preferences, limitations and relative rights of the series or class of the Membership Interest. There must always be a class or

App.A 0036

series of Membership Interest outstanding that has complete voting rights except as limited or restricted by voting rights conferred on some other class or series of outstanding Membership Interest. As of the date of this Agreement, Company shall have the following classes of Membership Interest:

(a) <u>Class A Membership Interest</u>. Company will have Class A Membership Interest which will be owned by the Class A Members, with the amount of Class A Membership Interest initially held by each Class A Member shown across from the name of such Class A Member on <u>Schedule 1</u>, as the same may be adjusted in accordance with this Agreement and the records of Company. Class A Members shall be afforded all rights, privileges and obligations of a Member in accordance with the terms of this Agreement, including the sole and exclusive right to vote one hundred percent (100%) of the voting rights of Company at a meeting of the Members or Class A Members.

(b) <u>Class B Membership Interest</u>. Company will have Class B Membership Interest which will be owned by the Class B Members, with the amount of Class B Membership Interest initially held by each Class B Member shown across from the name of such Class B Members on <u>Schedule 1</u>, as the same may be adjusted in accordance with this Agreement and the records of Company. Class B Members shall be afforded all rights, privileges and obligations of a Member in accordance with the terms of this Agreement; provided, however, Class B Members shall not be entitled to participate in the management of Company or to vote on any matters except for the matters exclusively reserved to the note of all Members as may be provided in this Agreement.

6.2 <u>Prohibited Transfers of Membership Interests</u>. Except as otherwise expressly permitted by this Agreement, or by the terms of the Buy-Sell Agreement, no Member (nor its respective legal representatives, agents and fiduciaries) may transfer any Membership Interest, or any other beneficial interest therein. Any attempted transfer or assignment in contravention of this Agreement shall have no force or effect and shall not be binding or recognized by the Company or any of its Members.

6.3 <u>Assignee Treatment of Permitted Transferees</u>. A Permitted Transferee of a Membership Interest shall be an assignee for all purposes herein and shall not be treated as a Member for any purpose unless and until admitted as a Member as provided herein. A Permitted Transferee shall be entitled only to receive its respective share of Company Profits, Losses, and Distributions (if any), to which the respective assigning Member would otherwise be entitled. No transferee, assignee, or purchaser of a Member's Membership Interest shall have any power or authority whatsoever to participate in or vote on matters pertaining to the management of the Company, to act for or on behalf of the Company, to transact any business for the Company or sign for or otherwise bind the Company to any agreement or document, to do any act that would be binding on the Company, to incur any expenditure on behalf of the Company or exercise any powers or duties granted to the Members hereunder, or to attend meetings of the Members, unless such transferee, assignee, or purchaser is first admitted to the Company as a Member as provided in this Agreement.

6.4 <u>Admission of New or Substitute Members</u>. Additional and/or substitute Members

may be admitted to the Company upon the affirmative unanimous Vote of all of the Members. A new and/or substitute Member duly admitted to the Company shall be subject to all of the terms and provisions of this Agreement. A transferee or assignee of a Membership Interest may request in writing to be admitted to the Company as a substitute Member. Each Member may, in its sole and absolute discretion, withhold its Vote for such transferee or assignee to be admitted as a Member. In addition, the Managers may require the applicant transferee or assignee to comply with additional conditions and requirements as provided by this Agreement.

6.5 <u>Treatment of Nonpermitted Transferees</u>. Any attempted assignment or transfer of a Membership Interest or any beneficial interest therein in contravention of this Agreement shall be of no force or effect and shall not be binding upon or recognized by the Company or any of its Members. The Company and its Members shall be entitled to treat the Member holding record ownership of the Membership Interest as the absolute owner thereof, and shall be entitled to make all Distributions, if any, to such Member without any liability whatsoever to any purported assignee or transferee, and shall incur no liability for allocations of income, gain, loss, deduction or credit, or for transmittal of reports and notices required to be given to such Member. Such an alleged assignee shall have no right to require any information or account of the Company's transactions or to inspect the Company's books and records, tax return information, or any other Company information, documents, or other data associated with the Company.

6.6 <u>Voting and Management Rights of Transferred Interests</u>. If a Member transfers a Membership Interest, such transferor shall lose all right to Vote and any other management right associated with that portion of the Membership Interest, the Economic Interest of which was transferred, and the transferee may obtain such rights only upon being admitted to the Company as a Member as provided under <u>Section 6.4</u>, and only to the extent of the rights pertaining to the Class to which such transferee is admitted.

6.7 <u>Change of Control of Member</u>. No Member which is not an individual shall permit any of its equity owners to transfer any ownership interest in such Member without the affirmative unanimous Vote of the Members, if such transfer would result in a Change of Control of such Member. As used in this Section, a transfer shall be deemed to cause a "Change in Control" of a Member if such transfer would, taking into account all prior transfers of equity ownership interests in such Member on a cumulative basis since the date of such Member's admission to the Company as a Member, result in fifty percent (50%) or more of the equity ownership interests in such Member being owned by Persons other than (i) the equity owners of such Member who were such as of the date of such Member's admission to the Company as a Member, or (ii) the Affiliates of such Member who were such as of the date of such Member's admission to the Company as a Member.

6.8 <u>General Requirements for Transfer of Membership Interest</u>. A Permitted Transfer of a Membership Interest shall be made subject to all the terms and conditions of this Agreement and shall not be recognized by the Company or considered to have transferred title to the Membership Interest until the last day of the month in which the following requirements are met to the satisfaction of the Managers:

(a) <u>Written Assignment</u>. A duly executed written instrument of assignment setting forth the assigning Member's assignment of its Membership Interest shall be given to the

App.A 0038

Managers. Such written assignment shall include provisions whereby the assignee accepts and adopts the terms and provisions of this Agreement, including the assumption of any and all obligations of the assigning Member to the Company.

(b)     Securities Opinion.  An opinion of counsel for the Company, prepared at the sole cost and expense of the assigning Member, satisfactory in form and substance to the Managers, to the effect that the transfer may be made without violation of the Securities Act of 1933, as amended, and all applicable federal and state securities laws, shall be delivered to the Managers, unless written waiver of this requirement is made by the Managers.

(c)     Tax Opinion.  The assigning Member shall deliver to the Managers an opinion of counsel for the Company, prepared at the sole cost and expense of the assigning Member, and in form and substance satisfactory to counsel designated by the Managers, to the effect that (1) the tax status of the Company will not be adversely affected by the assignment, and (2) that the assignment will not cause a termination of the Company within the meaning of Section 708(b) of the Code, unless written waiver of this requirement is made by the Managers.

(d)     Other Instruments.  The assigning Member and its assignee shall execute and acknowledge such other instruments as the Managers reasonably deem necessary or desirable to effect such assignment.

(e)     Transfer Fee.  The assigning Member or assignee shall pay to the company a transfer fee to cover all reasonable expenses of the transfer, unless written waiver of this requirement is made by the Managers.

6.9     Pledge of Interest and First Refusal Rights of Remaining Members.  If a Member (the "Pledging Member") desires to assign, pledge, or mortgage an Economic Interest in its Membership Interest (the "Pledged Economic Interest") as collateral for a loan to such Member or its Affiliates, the provisions of this Section shall become applicable.

(a)     Consent to Pledge.  The Pledging Member shall obtain the written consent of the Managers prior to such assignment, pledge, or mortgage, which consent shall not be unreasonably withheld.

(b)     Acceptance of Terms.  The assignee, pledgee, or mortgagee (the "Lender") must agree in writing to be bound by the terms of this Agreement, must agree to not sell the Pledged Economic Interest at a foreclosure sale or otherwise unless all parties are fully informed of the Company's and the Members' rights under this Agreement, and must agree that any Person who obtains an interest in the Pledged Economic Interest as a result of the loan, including through a foreclosure proceeding, shall also agree to be bound the terms of this Agreement, including the rights of purchase provided herein.

## ARTICLE VII
## CONTRIBUTIONS TO CAPITAL AND CAPITAL ACCOUNTS

7.1     Capital Contributions.  Each Member has contributed, and/or hereby contributes to the capital of the Company those assets reflected on Schedule 1, which Capital Contributions shall

be considered Required Capital Contributions.

7.2     Required Additional Capital Contributions. Except as otherwise provided in this Agreement, no Member shall be required to make any additional Capital Contributions.

7.3     Voluntary Additional Capital Contributions. If and to the extent determined by the Managers that additional Capital Contributions are necessary or advantageous to carry out the purposes of the Company, the following provisions shall become applicable:

(a)     Notification. The Managers shall provide Notice to all Members of the request for additional Capital Contributions (the "Contribution Notice"). The Contribution Notice shall specify the aggregate amount of the requested additional Capital Contributions, the intended purposes(s) of the requested additional Capital Contribution and the amount requested of each Member (which requested amount, shall be in proportion to their respective Percentage Interests or in such other percentages as shall be determined by unanimous Vote of the Members). The Contribution Notice shall also set forth the period of time within which such requested Capital Contributions are to be completed, which period shall not be less than thirty (30) days from the date of the Contribution Notice or such shorter period of time as is reasonable under the circumstances.

(b)     Unanimous Vote. Such requested additional Capital Contributions, shall be made only upon the consent of the Members by unanimous Vote, authorizing the additional Capital Contributions. In the event the Members do not unanimously consent to additional Capital Contributions, one or more Members may make loans to the Company pursuant to Section 7.15.

(c)     Adjustment to Percentage Interests and Capital Accounts. In the event that the Members unanimously consent to the requested additional Capital Contribution as provided in this Section, the Members' Membership Interests will be adjusted (to the extent the additional Capital Contributions are not proportionate to the Members' existing Membership Interests) taking into account the amount of the additional Capital Contributions and the fair market value of the other Company properties, as determined by a Majority-In-Interest of the Class A Members. The Members' Capital Accounts shall also be adjusted as provided in the Capital Account Provisions.

(d)     Contributions of Class A Members. Unless otherwise agreed by a unanimous Vote of the Class A Members, any additional Capital Contributions made by the Class A Members, shall be deemed to be in respect of the contributing Class A Members' Class B Membership Interest, if any, and if none, then in respect of a new Class B Membership Interest.

7.4     No Deemed Additional Capital Contributions. Unless otherwise agreed in writing, by the Members, if: (i) a Member makes a payment to a creditor of the Company because of personal liability thereon; or (ii) a Member makes any payment to a creditor of the Company because of the personal guarantee by such Member, such Member shall have any rights of contribution and payment by the remaining Members as shall be available under applicable law and such payment shall not be deemed an additional Capital Contribution.

7.5     Rights in Capital Contributions. No Member shall be entitled to a return of any portion of its Capital Contributions or to receive any Distributions from the Company, except as

specifically provided herein. No loan or advance made to the Company by any Member shall constitute a Capital Contribution.

7.6     Company Property. The Members agree that all real and personal property contributed to, owned by or acquired by the Company shall constitute an asset of the Company and shall be considered Company property. No Member shall thereafter have any right with respect to Company property, and each Member expressly waives the right, if any, to require partition of any Company property or any part thereof.

7.7     Withdrawal. Except as otherwise expressly provided in this Agreement, no Member shall be entitled to withdraw from the Company as a Member prior to the termination of the Company.

7.8     Capital Accounts. A Capital Account shall be maintained for each Member. The Capital Accounts shall be maintained in accordance with the rules of Reg. § 1.704-1(b)(2)(iv), which shall control over any inconsistent provisions of this Agreement.

7.9     General Increases. The Capital Account of a Member shall be increased by (i) such Member's Capital Contributions, (ii) the amount of Profits allocated to the Member and items of income or gain specially allocated to the Member, and (iii) the amount of any Company liabilities assumed by such Member or which are secured by any Company property distributed to such Member.

7.10    General Decreases. The Capital Account of a Member shall be decreased by (i) the amount of money and the Gross Asset Value of property distributed by the Company to the Member, (ii) the amount of Losses allocated to the Member and items of deduction specially allocated to the Member, and (iii) the amount of any liabilities of such Member assumed by the Company or which are secured by property contributed by such Member to the Company.

7.11    Transfer of Membership Interest. In the event all or a portion of an interest in the Company is transferred in accordance with the terms of this Agreement, the transferee of the Membership Interest or an Economic Interest therein shall succeed to the Capital Account relating to the Membership Interest or Economic Interest transferred.

7.12    Oil and Gas Properties. The Capital Accounts of all Members shall be adjusted for depletion based either on simulated or actual depletion as may be determined by the Managers, and gain or loss with respect to any oil or gas properties of the Company pursuant to the requirements of Reg. §§ 1.704-1(b)(2)(iv)(k)(2) and (k)(3).

7.13    Modifications. In the event the Managers shall determine that it is prudent to modify the manner in which the Capital Accounts, or any decreases or increases thereto (including, without limitation, decreases or increases relating to liabilities that are secured by contributed or distributed property or that are assumed by the Company or the Members), are computed in order to comply with the Treasury Regulations, the Managers may make such modification, provided that it is not likely to have a material effect on the amounts distributable to any Member upon the dissolution of the Company. The Managers also shall (i) make any adjustments that are necessary

or appropriate to maintain equality between the Capital Accounts of the Members and the amount of Company capital reflected on the Company's balance sheet, as computed for book purposes, in accordance with Reg. § 1.704-1(b)(2)(iv)(g), and (ii) make any appropriate modifications in the event unanticipated events might otherwise cause this Agreement not to comply with Reg. § 1.704-1(b).

7.14    Restoration of Deficit Capital Accounts.  In the event any Member has a deficit balance in such Member's Capital Account upon liquidation of the Member's interest in the Company after making all adjustments thereto, such Member shall have no obligation to make any contribution to the capital of the Company with respect to such deficit, and such deficit shall not be considered a debt owed to the Company or to any Person for any purpose whatsoever.

7.15    Loans From Members.  Loans by a Member to Company shall not be considered Capital Contributions.  If any Member in its sole election loans funds to Company, (i.e., a cash advance in excess of the amounts required hereunder to be contributed by him or her to the capital of Company) which the Member elects to be characterized as a loan instead of a Capital Contribution, the making of such loan shall not result in any increase in the amount of the Capital Account of such Member.  The amount of any such loan shall be a debt of Company to such Member, shall bear interest at a fluctuating rate of interest equal to the lesser of (a) ten percent (10%) per annum or (b) two percent (2%) in excess of the prime rate announced from time to time by Wall Street Journal, Money Rate Section or any successor thereof (but in no event higher than the maximum legal contractual rate permitted by law), and shall be payable or collectible only out of Company assets in accordance with the terms and conditions upon which such advances are made.  The repayment of loans from a Member to Company upon liquidation shall be subject to the order of priority set forth in Section 10.2 hereof.

7.16    No Third Party Beneficiaries.  The provisions of this Agreement regarding Class A Capital Contributions or loans by Members are solely for the benefit of the Members and are not enforceable by any creditor of Company or any other third parties, including, but not limited to, a receiver or a trustee in bankruptcy.

## ARTICLE VIII
## ALLOCATIONS, DISTRIBUTIONS, ELECTIONS AND REPORTS

8.1    Allocations of Profits and Losses. One hundred percent (100%) of the Profits and Losses of Company for each Fiscal Year shall be allocated among the Members in proportion to their respective percentage of Membership Interest in Company (the "General Allocation of Profits and Losses").  The General Allocation of Profits and Losses shall be subject to the limitations and special allocations contained in this Article VIII in the following order: (i) first to the Regulatory Special Allocations, if applicable, and (ii) second to the to the Special Curative Allocations.  Any credits available for federal and state income tax purposes shall be allocated among the Members in the same manner.

8.2    Allocations for Federal Tax Purposes.  All Company income, gains, deductions, losses and credits for federal income tax purposes shall be allocated among the Members in the

App.A 0042

same manner as Profits and Losses are allocated under this Agreement to the extent permitted by law and subject to the provisions of this Agreement.

8.3     Regulatory Special Allocations. Notwithstanding the General Allocation of Profits and Losses, the provisions of this Section (collectively referred to as the "Regulatory Special Allocations") shall be applicable to all Company allocations of Profits and Losses for each Fiscal Year in the following order:

(a)     Minimum Gain Chargeback Allocations. Except as otherwise provided in Reg. § 1.704-2(f), if there is a net decrease in Company Minimum Gain during any Company Fiscal Year, each Member shall be specially allocated items of Company income and gain for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to such Member's share of the net decrease in Company Minimum Gain, determined in accordance with Reg. § 1.704-2(g)(2). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Reg. §§ 1.704-2(f)(6) and 1.704-2(j)(2). This Section 8.3(a) is intended to comply with the minimum gain chargeback requirement in Reg. § 1.704-2(f) and shall be interpreted consistently therewith.

(b)     Member Nonrecourse Debt Minimum Gain Chargeback Allocations. Except as otherwise provided in Reg. § 1.704-2(i)(4), if there is a net decrease in Member Minimum Gain attributable to a Member Nonrecourse Debt during any Company Fiscal Year, each Member who has a share of the Member Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Reg. § 1.704-2(i)(5), shall be specially allocated items of Company income and gain for such Fiscal Year (and, if necessary, subsequent Fiscal Years) in an amount equal to such Member's share of the net decrease in Member Minimum Gain attributable to such Member Nonrecourse Debt, determined in accordance with Reg. § 1.704-2(i)(4). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Member pursuant thereto. The items to be so allocated shall be determined in accordance with Reg. §§ 1.704-2(i)(4) and 1.704-2(j)(2). This provision is intended to comply with the minimum gain chargeback requirement in Reg. § 1.704-2(i)(4) and shall be interpreted consistently therewith.

(c)     Qualified Income Offset Allocations. In the event any Member unexpectedly receives any adjustments, allocations or distributions described in Reg. §§ 1.704-1(b)(2)(ii)(d)(4), (d)(5) or (d)(6), items of Company income and gain shall be specially allocated to each such Member in an amount and manner sufficient to eliminate, to the extent required by the Treasury Regulations, the Adjusted Capital Account Deficit of such Member as quickly as possible, provided that an allocation pursuant to this Section 8.3(c) shall be made only if and to the extent that any such Member would have an Adjusted Capital Account Deficit after all other allocations provided for in this Agreement have been tentatively made as if this Section 8.3(c) was not in this Agreement. The allocation contained in this Section 8.3(c) shall be referred to herein as the "Qualified Income Offset Allocation." This provision is intended to be a "qualified income offset" as that term is used in Reg. § 1.704-1(b)(2(ii)(d) and shall be interpreted consistently therewith.

(d)    Gross Income Allocations. In the event any Member has a Capital Account deficit at the end of any Company Fiscal Year which is in excess of the sum of (1) the amount such Member is obligated to restore (pursuant to the terms of such Member's promissory note payable to the Company or otherwise), and (2) the amount such Member is deemed to be obligated to restore pursuant to the penultimate sentences of Reg. §§ 1.704-2(g)(1) and 1.704-2(i)(5), each such Member shall be specially allocated items of Company income and gain in the amount of such excess as quickly as possible, provided that an allocation pursuant to this Section 8.3(d) shall be made only if and to the extent that any such Member would have a Capital Account deficit in excess of such sum after all other allocations provided for in this Agreement have been tentatively made as if the Qualified Income Offset Allocations and this Section 8.3(d) were not in this Agreement.

(e)    Nonrecourse Deductions. Nonrecourse Deductions for any Fiscal Year or other periods shall be allocated among the Members in proportion to their respective Percentage Interests.

(f)    Member Nonrecourse Deductions. Any Member Nonrecourse Deductions for any Fiscal Year or other period shall be allocated to the Members who bear the economic risk of loss with respect to the Member Nonrecourse Debt to which such Member Nonrecourse Deductions are attributable in accordance with Reg. § 1.704-2(i)(1).

(g)    Section 754 Adjustments. To the extent an adjustment to the adjusted tax basis of any Company asset pursuant to Section 734(b) or 743(b) of the Code is required, pursuant to Reg. §§ 1.704-1(b)(2)(iv)(m)(2) or (m)(4), to be taken into account in determining Capital Accounts as the result of a distribution to a Member in complete liquidation of its interest in the Company, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis), and such gain or loss shall be specially allocated to the Members in accordance with their Percentage Interests (in the event that Reg. § 1.704-1(b)(2)(iv)(m)(2) applies), or to the Members to whom such distribution was made (in the event that Reg. § 1.704-1(b)(2)(iv)(m)(4) applies).

8.4    Special Curative Allocations. The Regulatory Special Allocations are intended to comply with certain requirements of the Treasury Regulations. It is the intent of the Members that, to the extent possible, all Regulatory Special Allocations shall be offset either with other Regulatory Special Allocations or with special allocations of other items of Company income, gain, loss, or deduction pursuant to this Section. Therefore, notwithstanding any other provision of this Agreement (other than the Regulatory Special Allocations), the Managers shall make such offsetting special allocations of Company income, gain, loss or deduction in whatever manner it determines appropriate so that, after such offsetting allocations are made, each Member's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Member would have had if the Regulatory Special Allocations were not part of this Agreement and all Company items were allocated among the Members in accordance with the General Allocation of Profits and Losses. In exercising their discretion under this Section, the Managers shall take into account future Regulatory Special Allocations under Section 8.3(a) and Section 8.3(b) that, although not yet made, are likely to offset other Regulatory Special Allocations previously made under Section 8.3(e) and Section 8.3(f). The provisions of this Section shall be referred to as the

"Special Curative Allocations."

8.5     Special Allocation of Gain or Loss on Contributed Property. In accordance with Section 704(c) of the Code and the Treasury Regulations thereunder, income, gain, loss, and deduction with respect to any property contributed to the capital of the Company shall, solely for tax purposes, be allocated among the Members so as to take account of any variation between the adjusted basis of such property to the Company for federal income tax purposes and its fair market value at the time of contribution. In the event the Capital Accounts of the Members are adjusted due to a revaluation of Company property, subsequent allocations of income, gain, loss, and deduction with respect to such property shall take account of any variation between the adjusted basis of such property for federal income tax purposes and its fair market value in the same manner as under Section 704(c) of the Code and the Treasury Regulations thereunder.

8.6     Recapture Items. Any portion of any income or gain attributable to the sale or other disposition of any depreciable Company property required to be recaptured as ordinary income shall, to the maximum extent possible in accordance with Section 704 of the Code and the Treasury Regulations thereunder, be allocated among the Members for tax purposes in the same ratio as the deductions giving rise to such recapture were allocated. Any recapture of tax credit shall be allocated among the Members in accordance with Reg. § 1.704-1(b)(4)(ii).

8.7     Allocations Within a Fiscal Year. For purposes of determining the Profits, Losses or any other items allocable to any period, Profits, Losses, and any such other items shall be determined on a daily, monthly, or other basis, as determined by the Managers using any permissible method under Section 706 of the Code and the Treasury Regulations thereunder.

(a)     Change or Transfer of Membership Interest. If the Membership Interest of a Member changes or is transferred in compliance with the terms of this Agreement during a Fiscal Year of the Company, the change or transfer shall be deemed to be effective as of the end of the month in which such change or transfer occurs. Income, gain, losses and deductions recognized by the Company during such Fiscal Year shall be allocated between the Member and the assignee on the basis of the number of months the Member or its assignee owned the Membership Interest during the Fiscal Year unless the assignee and the Member agree otherwise and such agreement is approved by the Managers in their discretion.

(b)     Cash Basis Items. In the event the Company adopts the cash receipts and disbursements method of accounting, then a portion of any allocable cash basis item, as defined in Section 706(d) of the Code, shall be assigned to each day of the period to which such item is attributable, and the portion assigned to any such day shall be allocated among the Members in proportion to their Percentage Interests at the close of such day. In the event all or a portion of a cash basis item is attributable to any period before or after the current tax year, it shall be allocated or capitalized as provided in Section 706(b) of the Code.

8.8     Distributions of Cash Available for Distribution. Subject to Section 3.8 and unless there has been a Dissolution Event, Distributions of the Cash Available for Distribution of the Company shall be determined and distributed, at such times as the Managers may determine that funds are available, but no less often than annually, to the Members in accordance with their

Percentage Interests.

8.9     Distributions Upon Liquidation:  Upon a Dissolution Event, the net assets, if any, of the Company and any cash proceeds from the liquidation of any such assets, shall be applied, and Distributions shall be made, as follows:

(a)     Creditors.  First, to the payment of or provision for all debts, liabilities and obligations of the Company to any Person (including Members who are creditors of the Company), all in the priority provided for in the relevant sections of the BOC, and to the payment of the expenses of liquidation;

(b)     Capital Accounts.  Finally, to the Members in accordance with their positive Capital Account balances.

(c)     Compliance With Agreement.  In the event the Company is "liquidated" within the meaning of Reg. § 1.704-1(b)(2)(ii)(g), distributions provided herein shall be made in compliance with Reg. § 1.704-1(b)(2)(ii)(b)(2).

8.10    Records and Reports.  At the expense of Company, the Managers shall maintain records and accounts of all operations and expenditures of Company.  At a minimum, Company shall keep at its principal place of business the following records:

(a)     A current list that states:

(i)     The name and mailing address of each Member; and

(ii)    The Membership Interest owned by each Member;

(b)     Copies of the federal, state and local information or income or franchise tax returns for each of Company's six (6) most recent tax years;

(c)     A copy of the Certificate of Formation and this Agreement, all amendments or restatements, executed copies of any powers of attorney, and copies of any document that creates, in the manner provided by the Certificate of Formation or this Agreement, classes or groups of Members;

(d)     Correct and complete books and records of account of Company;

(e)     Records of all proceedings and actions taken by the Members; and

(f)     Any other books, records or documents required by the BOC or other applicable law.

8.11    Returns and Other Elections.  The Managers shall cause the preparation and timely filing of all tax returns required to be filed by Company pursuant to the Code and all other tax returns deemed necessary and required in each jurisdiction in which Company does business.  All

elections permitted to be made by Company under federal or state laws shall be made by the Manager.

8.12 <u>Records Required by BOC; Right of Inspection.</u>

(a) <u>Records Required.</u> During the term of Company and for a period of six (6) years thereafter, the Managers, at the expense of Company, shall maintain in Company's principal place of business hereof all books, records and accounts of Company, including, without limitation, a current list of the names, addresses and Interests held by each of the Members (including the dates on which each of the Members became a Member), copies of federal, state and local information or income or franchise tax returns for each of Company's six (6) most recent tax years, copies of this Agreement and the Certificate of Formation, including all amendments or restatements of each, and correct and complete books and records of account of Company, records of all proceedings and actions taken by the Members and Managers and any other books, records or documents required by the BOC or other applicable law. All such books, records and accounts shall be kept separate and distinct from all other books and records of any other entity.

(b) <u>Right of Inspection.</u> On not less than two (2) Business Days' notice a Member or an Assignee of a Member's Interest (an "<u>Eligible Person</u>") may examine and copy in person or by the Eligible Person's representative, at the Eligible Person's expense, all books, records and accounts of Company. Upon written request by any Eligible Person made to the Managers at the address of Company's principal place of business hereof, Company shall provide to the Eligible Person without charge true copies of (i) this Agreement and the Certificate of Formation and all amendments or restatements of each, and (ii) any of the tax returns of Company described above.

8.13 <u>Tax Returns and Information.</u> The Managers shall prepare or cause to be prepared all federal, state and local income and other tax returns that Company is required to file. Within the shorter of (a) such period as may be required by applicable law or regulation, or (b) seventy-five (75) days after the end of each calendar year, the Managers shall send or deliver to each Person who was a Member at any time during such year such tax information as shall be reasonably necessary for the preparation by such Person of his federal income tax return and state income and other tax returns.

8.14 <u>Delivery of Financial Statements to Members.</u> As to each Fiscal Year of Company, the Managers shall send to each Member a copy of (a) a balance sheet of Company as of the end of the Fiscal Year, (b) an income statement of Company for such year, and (c) a statement showing the revenues distributed by Company to Members in respect of such Fiscal Year. Such financial statements shall be delivered by no later than ninety (90) days following the end of the Fiscal Year to which the statements apply. Unless a Member requests in writing prior to the end of the Fiscal Year to which the financial statements apply that the financial statements shall be audited, such statements need not be audited.

**ARTICLE IX**
**CONFIDENTIALITY**

9.1    Confidentiality of Information.    Each Member shall be entitled to receive all information concerning Company and its business under the circumstances and subject to the conditions stated in this Agreement and the BOC.  The Members agree, however, that due to contractual obligations, business concerns, or other considerations, that certain information regarding the business, affairs, Company property, and financial condition of Company shall be kept confidential and not provided to anyone other than other Members, except as set out herein below.  In addition, the Members acknowledge that they may receive information regarding Company in the nature of trade secrets or that otherwise is confidential, the release of which may be damaging to Company or Persons with which it does business.  Each Member shall hold in strict confidence any information it receives regarding Company that is identified as being confidential (and if that information is provided in writing, that is so marked) and may not disclose it to any Person other than another Member, except for disclosures compelled by law, or disclosures made to advisers or representatives of the Member (if they have agreed to be bound by the provisions of this Section).  Members agree that the provisions of this Section may be enforced by specific performance.

## ARTICLE X
## WINDING UP AND TERMINATION

10.1    Winding Up.

(a)    Company shall be wound up upon the first of the following to occur:

(i)    The unanimous written agreement of the Class A Members to wind up Company;

(ii)    The entry of a judicial order to wind up Company; or

(iii)    The occurrence of any other event that causes the winding up of a limited liability company under the BOC.

(b)    Upon winding up of Company, the business and affairs of Company shall terminate, and the assets of Company shall be liquidated under this Article X.

(c)    The winding up of Company shall be effective as of the day on which the event occurs giving rise to the winding up, but Company shall not terminate until there has been a winding up of Company's business and affairs, and the assets of Company have been distributed as provided in Section 10.2 hereof.

(d)    Upon the winding up of Company, the Managers may cause any part or all of the assets of Company to be sold in such manner as the Managers shall upon written agreement of the Managers determine in an effort to obtain the best prices for such assets; provided, however, that the Managers may distribute assets of Company in kind to the Members to the extent practicable.

COMPANY AGREEMENT

(e)    The death, insanity, retirement, resignation, termination, withdrawal, bankruptcy, legal incapacity or termination of any Member shall not terminate Company if there is at least one (1) remaining Member. If there is not one (1) remaining Member, then the successors in interest to a Member's Membership Interest (the Assignees) shall automatically be admitted as Members and Company shall not be wound up and terminated.

10.2    Liquidation.    Company shall be wound up and liquidated as quickly as circumstances will allow. The assets of Company, to the extent thereof, shall be applied to Company liabilities in the following order:

(a)    To pay or provide for all amounts owing by Company to creditors other than Members in the order of priority as provided by law, and for expenses of winding up.

(b)    To pay or provide for all amounts owing by Company to Members other than for capital and profits.

(c)    To pay or provide for all amounts owing by Company to the Members, on a pro rata basis, for capital and for profits, as follows:

(i)    The Members' Capital Accounts shall be adjusted as if the assets of Company were sold for an amount as determined by unanimous agreement among the Members or, failing unanimous agreement, the purchase price and the gain or loss therefrom allocated to the Members according to Article VIII hereof.

(ii)    Each Member shall be paid an amount equal to the amount of each Member's Capital Account. Distributions may be made in cash or in kind.

(iii)    Any remaining assets shall be distributed to the Members in cash or in kind pro rata according to their respective Membership Interests;

provided, however, that in the event that any Member owes to Company any account payable or debt of any kind at the time of distribution, then to the extent that the Member would be entitled to payment from Company for capital and profits and for other than capital and profits, such account payable or debt shall be distributed in kind to such Member as payment in the full amount of such account payable or debt and applied against the amounts owed by Company to such Member for capital and profits and for other than capital and profits.

10.3    Distributions in Kind.    If any assets of Company are distributed in kind, such assets shall be distributed to the Members entitled thereto as tenants-in-common in the same proportions as the Members would have been entitled to cash distributions if such property had been sold for cash and the net proceeds thereof distributed to the Members. In the event that distributions in kind are made to the Members upon the winding up and liquidation of Company, the Capital Account balances of such Members shall be adjusted to reflect the Members' allocable share of gain or loss which would have resulted if the distributed property had been sold at its fair market value.

App.A 0049

10.4    Certificate of Termination.  When all liabilities and obligations of Company have been paid or discharged, or adequate provision has been made therefor, and all of the remaining property and assets of Company have been distributed to the Members according to their respective rights and interests, the Certificate of Termination shall be executed on behalf of Company by the Managers or an authorized Member and shall be filed with the Secretary of State of Texas, and the Managers and Members shall execute, acknowledge and file any and all other instruments necessary or appropriate to reflect the winding up and termination of Company.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

11.1    Notices.  Any notices, claims or demands which any party is required or may desire to give to another under or in conjunction with this Agreement shall be in writing, and shall be given by addressing the same to such other party(ies) at the address set forth on Schedule 1 of this Agreement, and by: (i) depositing the same so addressed, postage prepaid, first class, certified or registered, in the United States mail (herein referred to as "Mailing"); (ii) overnight delivery by a nationally recognized overnight courier service (e.g. UPS, Federal Express); (iii) delivering the same personally to such other party(ies); or (iv) transmitting by facsimile and Mailing the original. Any notice shall be deemed to have been given three (3) U.S. Post Office delivery days following the date of Mailing; one day after timely delivery to an overnight courier; if by personal delivery, upon such delivery; or if by facsimile, the day of transmission if made within customary business hours, or if not transmitted within customary business hours, the following business day. Except as otherwise provided in this Agreement, any notice to Company shall be made to the registered agent at the registered office specified in this Agreement with a copy to the other parties hereto. Any party may change the address or facsimile telephone number for notices to be sent to it by written notice delivered pursuant to the terms of this Section 11.1.

11.2    Waiver of Notice.  Whenever, by statute, the Certificate of Formation or this Agreement, notice is required to be given to any Member or Manager, a waiver thereof in writing signed by the Person or Persons entitled to such notice, whether before or after the time stated in such notice, shall be equivalent to the giving of such notice. Attendance of a Manager or Member at a meeting shall constitute a waiver of notice of such meeting, except where a Manager or Member attends the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting is not lawfully called or convened.

11.3    Application of Texas Law.  This Agreement and the application or interpretation hereof, shall be governed exclusively by the laws of the State of Texas, and specifically the BOC. Venue for all matters pertaining to the Company shall be subject to the courts of Grapevine, Tarrant County, Texas.

11.4    No Action for Partition.  No Member shall have any right to maintain any action for partition with respect to the property of Company.

11.5    Headings and Sections.  The headings in this Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Agreement or any provision hereof. Unless the context requires otherwise,

all references in this Agreement to Sections or Articles shall be deemed to mean and refer to Sections or Articles of this Agreement.

11.6 Attorneys' Fees. If any action at law or in equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and all other costs of litigation from the other party, which amounts may be set by the court in the trial of such action or may be enforced in a separate action brought for that purpose, and which amounts shall be in addition to any other relief which may be awarded.

11.7 Power of Attorney. Each Member hereby irrevocably constitutes and appoints the Managers as its attorney-in-fact, with full power of substitution and resubstitution, in the Member's name, to execute, consent to, swear to, acknowledge, deliver, record and file the following:

(a) the Certificate of Formation and any amendments to such Certificate of Formation that the Managers deem appropriate, as well as any other instruments required by the laws of any state that the Managers deem appropriate to qualify the Company to conduct or continue to conduct business in such state;

(b) any other instrument relating to the qualification or registration of the Company that the Managers deem appropriate;

(c) all instruments required to effect the dissolution and termination of the Company including the execution and filing of Certificate of Termination with the Secretary of State as required by the BOC;

(d) all reports, forms, and schedules that the Managers determine are required to be filed with any governmental body, agency or instrumentality in connection with any Company activity; and

(e) any other instrument that the Managers deem necessary and appropriate with respect to the business of the Company.

This grant of the Power of Attorney is coupled with an interest and is irrevocable, and will expressly survive the death, dissolution, legal disability, incompetency, bankruptcy, retirement or withdrawal of any Member or the assignment of all or any portion of any Member's Membership Interest.

11.8 Amendment of Certificate of Formation and this Agreement. Except as otherwise expressly set forth in this Agreement, the Certificate of Formation of Company and this Agreement may be amended, supplemented or restated only upon the unanimous written consent of the Members. Upon obtaining the approval of any amendment to the Certificate of Formation, the Managers shall cause a Certificate of Amendment in accordance with the BOC to be prepared, and such Certificate of Amendment shall be executed by no less than one authorized Manager and shall be filed in accordance with the BOC.

11.9    Numbers and Gender.  Where the context so indicates, the masculine shall include feminine and neuter, and the neuter shall include the masculine and feminine, the singular shall include the plural.

11.10    Binding Effect.    Except as herein otherwise provided to the contrary, this Agreement shall be binding upon and inure to the benefit of the Members, their distributees, heirs, legal representatives, executors, administrators, successors and permitted assigns.

11.11    Counterparts.  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and shall be binding upon the Member who executed the same, but all of such counterparts shall constitute the same Agreement.

11.12    Entire Agreement.  This Agreement contains the entire agreement of the parties with respect to the transactions contemplated herein, and supersedes and replaces any prior oral or written agreements with respect to such transactions.

11.13    Legal Construction.  In case any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

11.14    Execution of Additional Documents.    Each Member, and its successors and permissible assigns, shall execute and deliver such other and further documents and instruments and take such further action as may be necessary or desirable to effectuate, perform and carry out the provisions of this Agreement and the transactions contemplated herein, and to comply with all laws which may be applicable to the Company, its properties and activities.

*[SIGNATURE PAGE FOLLOWS]*

App.A 0052

**IN WITNESS WHEREOF,** the undersigned, being all the Members and Managers of Company, do hereby agree to be bound by and to perform all of the terms and provisions set forth in this Agreement effective as of the date first above written.

<u>**MANAGERS:**</u>

_____
Thomas R. Durant

_____
Michael Jeffrey Sebastian

<u>**CLASS A MEMBERS:**</u>

_____
Thomas R. Durant

_____
Michael Jeffrey Sebastian

<u>**CLASS B MEMBERS:**</u>

_____
Thomas R. Durant

THE DURANT CLASSIC DYNASTY TRUST

By: _____
Mark Escamilla, Trustee

# SCHEDULE 1

## NAMES, INITIAL CAPITAL CONTRIBUTIONS
## AND MEMBERSHIP INTERESTS OF THE MEMBERS OF
## CLASSIC CHEVROLET WEST HOUSTON, LLC

| Members | Initial Capital Contribution | Membership Interest |
|---|---|---|
| Thomas R. Durant<br>1101 W. State Highway 114<br>Grapevine, Texas 76051 | $_____ | Class A Membership Interest; 0.49% of Membership Interests |
| Michael Jeffrey Sebastian<br>3115 Southwest Freeway<br>Sugarland, Texas 77478 | $_____ | Class A Membership Interest; 0.51% of Membership Interests |
| Michael Jeffrey Sebastian<br>13115 Southwest Freeway<br>Sugarland, Texas 77478 | $_____ | Class B Membership Interest; 39.49% of Membership Interests |
| Thomas R. Durant<br>1101 W. State Highway 114<br>Grapevine, Texas 76051 | $_____ | Class B Membership Interest 0.11% of Membership Interests |
| The Durant Classic Dynasty Trust<br>1101 W. State Highway 114<br>Grapevine, Texas 76051 | $_____ | Class B Membership Interest; 59.40% of Membership Interests |

App.A-0054

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

**BUYSELL AGREEMENT**
**FOR INTERESTS IN**
**CLASSIC CHEVROLET SUGAR LAND, LLC**
**CLASSIC CHEVROLET WEST HOUSTON LLC**
**CLASSIC ELITE BUICK GMC, LLC.**
**16835 CADET PARTNERS, LLC**

Exhibit 2

App.A 0055

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

# TABLE OF CONTENTS

ARTICLE I. ..................................................................................................... 1
GENERAL PROVISIONS .............................................................................. 1
    Section 1.1.    Interests Subject to Agreement ............................................ 1
    Section 1.2.    General Definitions for Agreement ...................................... 2
        (a)    "Code" ................................................................. 2
        (b)    "Disability" ......................................................... 2
        (c)    "Family Members" ............................................... 2
        (d)    "Family Trust" ..................................................... 2
        (e)    "Restricted Interests" .......................................... 2
        (f)    "Transfer" ............................................................ 3
    Section 1.3.    Successor Rights and Obligations of Trust Beneficiaries ..... 3

ARTICLE II. ................................................................................................... 3
RESTRICTIONS ON LIFETIME TRANSFERS OF INTERESTS ................. 3
    Section 2.1.    Restrictions on Lifetime Transfers ...................................... 3
    Section 2.2.    Lifetime Right of First Refusal ........................................... 4
        (a)    Transferor's Notice ............................................. 4
        (b)    Option Granted ................................................... 4
        (c)    Interest Covered by Options ................................ 4
    Section 2.3.    Remaining Parties' Option to Purchase Interest .................. 4
        (a)    Option Period ...................................................... 4
        (b)    Exercise of Option .............................................. 5
        (c)    Release of Option ............................................... 5
        (d)    Sale Without Release of Option .......................... 5
    Section 2.4.    LLC's Option to Purchase Interest ...................................... 5
        (a)    Option Period ...................................................... 5
        (b)    Exercise of Option .............................................. 5
        (c)    Release of Option ............................................... 5
    Section 2.5.    Purchase and Sale of Offered Interest .................................. 6
        (a)    Closing Date of Purchase and Sale ..................... 6
        (b)    Terms of Closing ............................................... 6
    Section 2.6.    Expiration of Lifetime Transfer Restrictions ...................... 6
    Section 2.7.    Conditional Exemption of Transfers to Family Members, Family
        Trusts and Martial Trusts ................................................... 7
    Section 2.8.    Special Exemption of Transfers to Family Partnerships ....... 7

ARTICLE III. .................................................................................................. 8
PURCHASE OPTIONS WITH RESPECT TO Sebastians's RESTRICTED ... 8
INTERESTS UPON OCCURRENCE OF SPECIFIED EVENTS .................. 8
    Section 3.1.    Purchase and Sale Options ................................................. 8
        (a)    Spouse's Interest In Restricted Non-Membership Interests 8

App.A 0056

|  |  |  |
|---|---|---|
| | (b) References to "Sellers" | 8 |
| Section 3.2. | Right of First Refusal | 8 |
| | (a) Notice | 8 |
| | (b) Option Granted | 9 |
| | (c) Interests Covered by Options | 9 |
| Section 3.3. | Remaining Parties' Option to Purchase Sebastians's Restricted Interests | 9 |
| | (a) Option Period | 9 |
| | (b) Exercise of Option | 9 |
| Section 3.4. | LLC's Option to Purchase Sebastians's Restricted Interests | 9 |
| | (a) Option Period | 9 |
| | (b) Exercise of Option | 10 |
| Section 3.5. | Determination of Purchase Price by Agreement | 10 |
| Section 3.6. | Alternative Determination of Purchase Price While Guarantee in Effect | 10 |
| | (a) Acquisition Loan | 10 |
| | (b) Purchase Price During Term of Loan Guaranty | 10 |
| Section 3.7. | Alternative Determination of Purchase Price if Loan No Longer Outstanding | 10 |
| | (a) Failure to Agree on Appraiser | 11 |
| | (b) Multiple Appraisal | 11 |
| | (c) Costs of Appraisal | 11 |
| Section 3.8. | Payment of Purchase Price | 11 |
| | (a) Closing Date | 11 |
| | (b) Terms of Purchase Price | 11 |
| | (c) Prepayment Privilege | 11 |
| | (d) Execution of Documents | 12 |
| Section 3.9. | Determination of Disability | 12 |
| | (a) By Mutual Agreement | 12 |
| | (b) In the Event of Disagreement | 12 |
| ARTICLE IV. | | 12 |
| DEATH OR DIVORCE OF A SPOUSE OF A PARTY | | 12 |
| Section 4.1. | Effect of Death or Divorce | 12 |
| Section 4.2. | Party's Option to Purchase Restricted Interests | 13 |
| | (a) Option Period | 13 |
| | (b) Exercise of Option | 13 |
| Section 4.3. | Business' Option to Purchase Restricted Interests | 13 |
| | (a) Option Period | 13 |
| | (b) Exercise of Option | 14 |
| Section 4.4. | Determination of Purchase Price | 14 |
| | (a) Divorce | 14 |
| | (b) Death | 14 |
| Section 4.5. | Payment of Purchase Price | 14 |

377019

App.A 0057

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

| | | |
|---|---|---|
| (a) | Closing Date of Purchase/Sale | 14 |
| (b) | Terms of Purchase Price | 14 |
| (c) | Prepayment Privileges | 15 |

ARTICLE V. 15
MISCELLANEOUS PROVISIONS 15
Section 5.1. Filing of Agreement 15
Section 5.2. Notice Provision 15
Section 5.3. Amendment of Agreement 15
Section 5.4. Specific Performance 15
Section 5.5. Attorney Fees 16
Section 5.6. Termination of Agreement 16
Section 5.7. Binding Effect 16
Section 5.8. Execution of Multiple Agreements 16
Section 5.9. Provisions Severable 16
Section 5.10. Construction of Agreement 17
Section 5.11. Entire Agreement 17
Section 5.12. Execution of Additional Documents 17
Section 5.13. Incorporation by Reference of Exhibits 17
Section 5.14. Effective Date 17

SIGNATURES 19
EXHIBIT "A" RESTRICTED INTERESTS 20
EXHIBIT "B" PROMISSORY NOTE 21
EXHIBIT "C" NOTICE ADDRESSES 23

377019

App.A 0058

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

**BUYSELL AGREEMENT
FOR INTERESTS IN
CLASSIC CHEVROLET SUGAR LAND, LLC
CLASSIC CHEVROLET WEST HOUSTON LLC
CLASSIC ELITE BUICK GMC, LLC.
16835 CADET PARTNERS, LLC**

THIS BUYSELL AGREEMENT FOR INTERESTS IN CLASSIC CHEVROLET SUGAR LAND, LLC, CLASSIC CHEVROLET WEST HOUSTON LLC. CLASSIC ELITE BUICK GMC, LLC. 16835 CADET PARTNERS, LLC (the "Agreement") is executed by and between CLASSIC CHEVROLET SUGAR LAND, LLC, CLASSIC CHEVROLET WEST HOUSTON LLC. CLASSIC ELITE BUICK GMC, Inc. 16835 CADET PARTNERS, LLC all Texas limited liability companies (the "LLC"), (the "Business"), and by THOMAS R. DURANT ("DURANT"), Michael Jeffrey Sebastian and Tiffany Sebastian ("Sebastians"), and THE DURANT CLASSIC DYNASTY TRUST, created by a Trust Agreement dated January 31, 2000 (the "DYNASTY TRUST") (collectively referred to as the "Owners") to provide for the orderly disposition of their respective member equity interests in the LLC. The LLC and the Owners, may also be referred to collectively in this Agreement as the "Parties" or individually as a "Party". The Agreement has been modified to covered multiple LLC's and owners, with the intent that it jointly and severally apply to each legal entity and person herein so that the provisions below may be applied where applicable to just one owner, or just one entity, as well as to multiple owners. For this purpose, the term Sebastians may refer to either Michael Jeffrey Sebastian, or Tiffany Sebastian individually, or both collectively as may be necessary to effectuate the intent of this agreement.

**RECITALS**

App.A 0059

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

1.      The primary business of the LLC is the ownership and operation of an automobile dealership.   Sebastians's primary duties are the management of such automobile dealership activities ("Dealership Business Duties").

2.      The Parties desire to impose certain restrictions on the disposition of interests in the LLC, as provided herein.

## ARTICLE I.

## GENERAL PROVISIONS

### Section 1.1.      Interests Subject to Agreement

.  The Parties to this Agreement have agreed that it is in their individual and collective best interests to maintain their collectively owned business assets between themselves in order to provide stability for long term planning purposes, to permit their continued consolidated management thereof, and to provide a mechanism by which the Parties can implement an efficient business successor and continuity plan with respect to such assets.  Accordingly, all member equity interests in the LLC now owned or hereafter acquired by the Parties (the "Restricted Membership Interests") shall be subject to the terms and provisions of this Agreement.

### Section 1.2.      General Definitions for Agreement

. The following terms shall have the indicated meanings in this Agreement:

(a)      "Code"
: References in this Agreement to "Code" shall mean the Internal Revenue Code of 1986, as amended.

(b)      "Disability"
: References in this Agreement to the "Disability" of Sebastians shall mean the physical and/or mental inability of Sebastians to perform the ordinary and regularly assigned duties in carrying out the Business Duties. The Disability status of

2

App.A 0060

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

Sebastians may be determined by the mutual agreement of the LLC and Sebastians [or his representatives]. In this regard, the LLC shall be fully protected and shall have no liability whatsoever for transacting any business with the spouse, custodian or guardian of Sebastians, whether such custodian or guardian is natural or court-appointed. In the event of a disagreement between the LLC and Sebastians [or Sebastians's representatives] as to Sebastians's condition or ability to carry out such employment responsibilities and duties, the LLC shall select a competent, independent medical doctor who shall render a professional opinion as to whether or not Sebastians is subject to Disability as defined herein. The opinion and decision of such medical doctor shall be binding upon both the LLC and Sebastians [and Sebastians's representatives]. The LLC shall bear the costs and expenses of obtaining such professional opinion.

### (c) "Family Members"

: References in this Agreement to "Family Members" shall mean the Owners and each of the respective spouses and all of the respective descendants of the Owners.

### (d) "Family Trust"

: Any references in this Agreement to "Family Trust" shall mean any trust of which the sole beneficiaries are one or more Family Members.

### (e) "Restricted Interests"

: References in this Agreement to the "Restricted Interests" shall mean collectively all of the Restricted Membership Interests owned by the Parties including but not limited to those Restricted Interests specified on the attached Exhibit "A".

### (f) "Transfer"

: References in this Agreement to "Transfer" [or "Transferred"] shall mean any sale, transfer, assignment, pledge, encumbrance, alienation or any other disposition or hypothecation of Restricted Interests.

### Section 1.3. Successor Rights and Obligations of Trust Beneficiaries

. All of the Restricted Interests subject to this Agreement are currently owned by the Parties.

The Parties hereby agree that all of the rights, obligations and purchase and sale provisions of

this Agreement shall be applicable to the respective successors of the Parties if and to the extent

that all or any part of such Restricted Interests are distributed by any of the Parties to their

permissible successors and further that this Agreement shall be construed and interpreted

3

App.A 0061

thereafter to continue to subject such distributed Restricted Interests to the provisions of this Agreement.

## ARTICLE II.

## RESTRICTIONS ON LIFETIME TRANSFERS OF INTERESTS

### Section II.1.    Restrictions on Lifetime Transfers

. No Restricted Interests or any interest in any Restricted Interests shall be Transferred while such Restricted Interests are owned by the Parties without (i) the prior written consent of all of the Parties, or (ii) complying with the conditions and provisions of this Article.

Neither the LLC nor its members, managers or officers shall deliver any certificate representing Restricted Interests, execute any agreement affecting Restricted Interests, transfer any Restricted Interests on the LLC's books, or otherwise act to create new rights in Restricted Interests, except in compliance with this Agreement and any attempt to do so shall be void and of no force or effect.

### Section II.2.    Lifetime Right of First Refusal

. The following provisions shall become applicable in the event a Party proposes to Transfer (referred to in this Article II as the "Transferor") all or any part of its Restricted Interests to other than a Family Member or Family Trust, subject to the limitations and conditions set forth in Section 2.6, below.  For purposes of this Article II, whoever among the Parties is not the Transferor, and owns an interest in the LLC, shall be referred to as the "Remaining Parties".

#### (a)    Transferor's Notice

: The Transferor shall first give written notice [the "Option Notice"] to the Remaining Parties and the LLC, identifying the prospective transferee(s) and setting forth in reasonable detail the consideration to be received and the terms and conditions on which the Transfer is proposed to be made, accompanied by copies of any information furnished to or by the prospective transferee(s).

App.A 0062

### (b)    Option Granted

: The Option Notice shall automatically grant to the Remaining Parties the option to purchase the Restricted Interests proposed to be transferred pursuant to the Transfer [the "Offered Interest"] for the same consideration and on the same terms and conditions as contained in the Option Notice.

### (c)    Interest Covered by Options

: The respective options may be exercised as to all or any part of the Offered Interest.

### Section II.3.    Remaining Parties' Option to Purchase Interest

. The Remaining Parties shall have the option to purchase all or any part of the Offered Interest

pursuant to the follow provisions:

### (a)    Option Period

: The Remaining Parties may exercise their option to purchase the Offered Interest at any time on or before NINETY (90) days after receipt of the Option Notice [referred to in this Article II as the "Option Period"]. In the event that the Transferor Transfers the Offered Interest to a non-Family Member transferee [the "Transferee"] without the consent of all of the parties [excluding the Transferor], the Transferee shall take the Offered Interest subject to the Remaining Party's option to purchase, and the Transferred Offered Interest will be deemed to be owned by the Transferor for purposes of applying Sections 2.2 and 2.3 of this Agreement.

### (b)    Exercise of Option

: The Remaining Parties shall give written notice within such Option Period to the Transferor of its election to purchase the Offered Interest. Such notice shall be given on or before NINETY (90) days prior to the purchase date proposed by the Remaining Party in such notice.

### (c)    Release of Option

: Upon the unanimous decision of the Remaining Parties, the Remaining Parties may give written notice within such Option Period to the Transferor of its election to release its option and therefore allow the Transferor to transfer the Offered Interest to the non-Family Member purchaser. The Transferor's proposed Transfer shall be subject to the option granted to the respective Business in Section 2.4 of this Agreement.

### (d)    Sale Without Release of Option

: If the Transferor transfers the Offered Interest to a non-Family Member purchaser and the Remaining Parties have not released their option pursuant to Section 2.3(c) above, then the non-Family Member purchaser takes the Offered

5

App.A 0063

Interest subject to the option of the Remaining Party, and the LLC, described in Sections 2.2, 2.3 and 2.4 of this Agreement.

### Section II.4.  LLC's Option to Purchase Interest

.  In the event the Remaining Parties do not purchase all of the Offered Interest, then the LLC shall have the option to purchase the remaining Offered Interest pursuant to the following provisions:

#### (a)  Option Period

:  The LLC may exercise its option to purchase the remaining Offered Interest at any time within the THIRTY (30) day period [the "30-Day Period"] beginning at the earlier of [1] the date the final Remaining Party has released his or her respective option pursuant to Section 2.3(c), above, or [2] the date the Option Period expires as described in Section 2.3(a), above.

#### (b)  Exercise of Option

:  The LLC shall give written notice within such 30-Day Period to the Transferor of its election to purchase the Offered Interest.  Such notice shall be given at least THIRTY (30) days prior to the purchase date proposed by the LLC in such notice.

#### (c)  Release of Option

:  Upon the decision of the LLC, it may give written notice within such 30-Day Period to the Transferor of its election to release its option and therefore allow the Transferor to transfer the Offered Interest to the non-Family Member purchaser. The Transferor shall have NINETY (90) days to sell the Offered Interest after the LLC has given written notice of its release of the option.

### Section II.5.  Purchase and Sale of Offered Interest

.  The purchase and sale of the Offered Interest shall be completed pursuant to the following provisions in the event the Remaining Parties or LLC exercise their respective options to purchase the Offered Interest:

#### (a)  Closing Date of Purchase and Sale

:  The Transferor and Remaining Party shall agree upon a mutually convenient time and place for the closing.  Unless agreed otherwise, the closing, however, must be within TEN (10) days after the Transferor's receipt of the last written election by the Remaining Parties and/or the LLC.

#### (b)  Terms of Closing

6

App.A 0064

: The Offered Interest shall be purchased for the consideration equal to the net book value of such Offered Interests, such value to be determined by the accountant regularly engaged by the LLC.

### Section II.6. Expiration of Lifetime Transfer Restrictions

. Subject to (b) below, the Transferor shall have the right to Transfer the Offered Interest or any portion thereof to the Transferee named in the Option Notice; provided that the Remaining Parties, and the LLC, have released their respective options to purchase such Offered Interests or any portion thereof or the time for exercise of such option otherwise expires without exercise thereof; and provided further that the Transfer is made for the same consideration and on the same terms and conditions contained in the Option Notice. The Transferor's right to transfer such Offered Interest shall continue for a period of NINETY (90) days after either the final Remaining Parties has given written notice of his or her release of the option specified in this Article II, or the applicable Option Period for the Remaining Parties is allowed to lapse without exercise; and the LLC have either provided written notification declining to exercise the option in Section 2.4 or the applicable 30-Day Period for the LLC is allowed to lapse without exercise. If the Offered Interest is not transferred within such NINETY (90) day period, or if the Transferor desires to change the Transferee, consideration, terms or conditions contained in the Option Notice, then the Transferor must reoffer the Restricted Interests in accordance with the provisions of this Article II.

### Section II.7. Conditional Exemption of Transfers to Family Members, Family Trusts and Martial Trusts

. The Transferor may transfer all or any part of its Restricted Interests to a Family Member and/or a Family Trust without first offering such Interests to the Remaining Party or the LLC.

7

App.A 0065

A Party, as well as any spouse of a Party who acquires an ownership interest in any LLC, may transfer all or any part of its Restricted Interests to a trust for the benefit of the spouse of such Transferor [the "Marital Trust"] provided that (1) such spouse is provided lifetime benefits from such Marital Trust, and (2) by the terms of such Marital Trust Agreement, the Restricted Interests thereof shall be distributed to or held in further trust for one or more Family Members.

All transferee Family Members, Family Trusts and Marital Trusts shall take the Restricted Interests subject to all of the terms, provisions and conditions of this Agreement, including, but not limited to, all of the restrictions, conditions, options and sale obligations contained in this Agreement.

### Section II.8. Special Exemption of Transfers to Family Partnerships

. Each Party may transfer all or any part of his or her Restricted Interests to one or more partnerships ["Family Partnerships"] provided that all general partner interests therein are continuously owned by a Party, directly or indirectly through an LLC or other entity which is the general partner (and by a spouse of a Party who has a community property interest therein).

A Family Partnership which owns any Restricted Interests shall be subject to all of the terms and provisions of this Agreement, including but not limited to the mandatory and optional sale and purchase provisions as hereinafter provided, and this Agreement shall be interpreted in a manner consistent with the intent of the Parties to subject such Restricted Interests owned by a Family Partnership to the terms and provisions of this Agreement.

## ARTICLE III.

## PURCHASE OPTIONS WITH RESPECT TO Sebastians'S RESTRICTED INTERESTS UPON OCCURRENCE OF SPECIFIED EVENTS

8

App.A 0066

### Section III.1. **Purchase and Sale Options**

. Upon the occurrence of a specified event, all Restricted Interests owned by Sebastians shall be subject to the purchase options provided by this Article as herein granted to DURANT and the DYNASTY TRUST (referred to in this Article as the "Remaining Parties") and the LLC. The following items are specified events for purposes of this Article: (i) the death of Sebastians; (ii) the Disability of Sebastians; (iii) the cessation of the performance of the Dealership Business Duties of Sebastians (including termination of either of the Sebastians as an officer or Manager of the LLC); or (iv) a vote of no confidence in the Sebastians by members who hold a majority of the interest in the LLC. The Sebastians, the legal representatives of Sebastians's estate and/or other successors in interest (in the event of Sebastians's death), Sebastians's attorney-in-fact, custodian, guardian or other representative (in the event of Sebastians's disability or cessation of his performance of his Business Duties) shall be referred to as the "Sellers" for purposes of this Article.

(a) **Spouse's Interest In Restricted Non-Membership Interests**

: At the occurrence of any of the events set forth in Section 3.1 with respect to Sebastians, his spouse's community property and/or separate property interests in the Restricted Interests [if any] shall be subject to the purchase and sale option provisions of this Agreement.

(b) **References to "Sellers"**

: References in this Article to "Sellers", as defined above, shall also include Sebastians's spouse and/or his transferees.

### Section III.2. **Right of First Refusal**

. The following provisions shall become applicable upon the occurrence of a specified event:

(a) **Notice**

: Sebastians or Sebastians's estate, as the case may be, shall give written notice [the "Option Notice"] within NINETY (90) days of Sebastians's death or disability to the Remaining Parties and the LLC, setting forth the identity of Sebastians and his

9

App.A 0067

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

date of death or disability. In the event of the cessation of performance of Sebastians's Dealership Business Duties, the Remaining Parties shall notify Sebastians of such cessation and commencement of the Option Period with respect thereto.

### (b) Option Granted

: The Option Notice shall automatically grant to the Remaining Parties and the LLC options to purchase, in the order specified below, the Restricted Interests owned by the Sellers upon the date of death or disability of Sebastians ["Sebastians's Restricted Interests"].

### (c) Interests Covered by Options

: The respective options may be exercised by the Remaining Parties as to all or any part of Sebastians's Restricted Interests.

### Section III.3. Remaining Parties' Option to Purchase Sebastians's Restricted Interests

. Upon the occurrence of any of the events set forth in Section 3.1, the Remaining Parties shall have the first option to purchase Sebastians's Restricted Interests pursuant to the following provisions:

### (a) Option Period

: The Remaining Parties may exercise their option to purchase Sebastians's Restricted Interests, as described above, at any time within NINETY (90) days after receipt of the Option Notice or notification by the Remaining Parties of the cessation of Sebastians's Dealership Business Duties.

### (b) Exercise of Option

: The Remaining Parties shall each give written notice within such option period to Sebastians's estate of their respective election to purchase Sebastians's Restricted Interests. The failure of the Remaining Parties to notify Sebastians, or Sebastians's estate, as the case may be, within this option period of their election to exercise their option shall constitute a waiver of the option.

### Section III.4. LLC's Option to Purchase Sebastians's Restricted Interests

. In the event the Remaining Parties do not purchase all of Sebastians's Restricted Interests, then the LLC shall have the option to purchase the remaining portion of Sebastians's Restricted Interests pursuant to the following provisions:

10

App.A 0068

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

### (a)    Option Period

:   The LLC may exercise its option to purchase the remaining portion of Sebastians's Restricted Interests at any time within THIRTY (30) days after the termination of the last option period specified by Section 3.3, above.

### (b)    Exercise of Option

:   The LLC shall give written notice within such option period to Sebastians's estate of its election to purchase the remaining portion of Sebastians's Restricted Interests. The failure of the LLC to notify Sebastians's estate within this option period of its election to exercise its option shall constitute a waiver of the option.

### Section III.5.   Determination of Purchase Price by Agreement

.   The purchase price for Sebastians's Restricted Interests shall be determined by the mutual agreement of the respective Purchasers and Sellers; provided, however, the Purchasers and Sellers shall be bound to the agreed upon valued described below.

### Section III.6.   Alternative Determination of Purchase Price While Guarantee in Effect

.   If such parties fail to mutually agree upon a purchase price for such Restricted Interests and the following provisions in (a) and (b) do not apply, then the purchase price shall be determined by the provisions of Section 3.7.

### (a)    Acquisition Loan

:   In the initial formation of each LLC, Sebastians financed his Capital Contributions by obtaining a loan from The Durant Classic Dynasty Trust (the "Loan").

### (b)    Purchase Price During Term of Loan Guaranty

So long as the Loan remains unpaid, the Parties hereby agree that the applicable Purchase Price for Sebastians's Restricted Interests shall be equal to the lower of: (i) the amount of Sebastians's initial contribution to the LLC for his Restricted Membership Interest or (ii) the appraised value as determined by the appraisal procedures set forth in Section 3.7(a)-(c). This provision only applies to the specific LLC where the acquisition loan is still in effect and does not extend to other LLC's when their loan has been paid in full either by refinancing through a third party or by payment in full satisfaction of the loan.

11

App.A 0069

### Section III.7.  Alternative Determination of Purchase Price if Loan No Longer Outstanding

. In the event the Loan is repaid in full, and the Remaining Parties and/or the LLC exercise their respective options to purchase Sebastians's Restricted Interests under this Article and the respective parties cannot mutually agree upon a purchase price thereof, then the purchase price of Sebastians's Restricted Interests shall be the appraised fair market value of such interests determined by an independent appraiser selected by the mutual agreement of the Sellers and the persons or entities entitled to purchase the Restricted Interests under this Agreement (the "Purchasers"), subject to the following provisions:

#### (a)  Failure to Agree on Appraiser

:  In the event the Sellers and the Purchasers fail to mutually agree on an independent appraiser, the fair market value of Sebastians's Restricted Interests shall be determined by a Multiple Appraisal as provided in Section 3.6(b), below.

#### (b)  Multiple Appraisal

:  In the event that a Multiple Appraisal is required under this Agreement, the Sellers shall collectively select one appraiser, and the Purchasers shall collectively select one appraiser.  The two appraisers shall then attempt to agree on the required determination of fair market value.  If the two appraisers cannot agree upon the required determination, they shall appoint a third appraiser, and the three appraisers shall determine the required fair market value by majority vote.  The decision of the appraisers shall be binding on all parties.  Any appraiser shall be independent and regionally recognized as an expert appraiser.

#### (c)  Costs of Appraisal

:  All appraisals, legal and accounting costs incurred for purposes of the appraisal shall be paid ONEHALF (1/2) by the Sellers and ONEHALF (1/2) by the Purchasers.  The appraiser or appraisers may retain such additional appraisers, advisors and experts as they deem reasonably necessary and may rely on the opinion of such additional appraisers, advisors and experts. Any additional costs incurred shall be treated as costs of the appraisal of the fair market value of the Restricted Interests.

### Section III.8.  Payment of Purchase Price

12

App.A 0070

. The purchase price of Sebastians's Restricted Interests for purposes of this Article shall be paid pursuant to the following provisions:

### (a)    Closing Date

: The closing shall occur on or before ONE HUNDRED EIGHTY (180) days following the date of the specified event, and at a time and place mutually agreeable to Sellers and the Purchasers. In the event that the purchase price has not been determined by such date, then closing shall occur on or before TEN (10) days after the determination of the purchase price.

### (b)    Terms of Purchase Price

: Each respective Purchaser shall deliver at closing a Promissory Note(s), dated as of the Closing Date, the principal amounts of which shall be equal to such pro rata share of the purchase price for each Seller, the form and substance of the Promissory Note(s) being the same as the attached Exhibit "B".

### (c)    Prepayment Privilege

: The respective Purchasers shall have the sole and absolute right to prepay all or any part of the purchase price at any time without penalty. The Parties further agree that each Purchaser shall have the unilateral option to elect thereafter to pay interest on the unpaid principal at the prevailing interest rate at the time.

### (d)    Execution of Documents

: The Sellers and the respective Purchasers agree to execute any and all additional documents reasonably necessary to complete the closing as contemplated herein.

### Section III.9.  Determination of Disability

. The Disability status of Sebastians shall be determined pursuant to the following provisions:

### (a)    By Mutual Agreement

: The Disability status of Sebastians may be determined by mutual agreement of the remaining Parties and Sebastians or his respective representatives. The remaining Parties shall be fully protected and shall have no liability whatsoever for transacting any business with the custodian or guardian of Sebastians, whether such custodian or guardian is natural or court-appointed.

### (b)    In the Event of Disagreement

: In the event of a disagreement between the remaining Parties and Sebastians, or his representatives, as to the condition or the ability of Sebastians to carry out his duties, the remaining Parties shall select a competent, independent medical doctor, who shall render a professional opinion as to whether or not Sebastians is subject

App.A 0071

to Disability as defined in this Agreement. The opinion and decision of such medical doctor shall be binding upon both the remaining Parties, and Sebastians or his representatives. The costs and expenses of obtaining such professional opinion, shall be borne equally by the remaining Parties, collectively, and Sebastians or his representatives.

## ARTICLE IV.

### DEATH OR DIVORCE OF A SPOUSE OF A PARTY

#### Section IV.1.  Effect of Death or Divorce

. In the event the marital relationship of one of the Parties who owns Restricted Interests is terminated by divorce or by the death of his or her spouse, any Restricted Interests owned by such individual that do not pass to the respective Party, Family Members (other than his or her spouse) or a Family Trust, shall be subject to the options contained in this Article.

#### Section IV.2.  Party's Option to Purchase Restricted Interests

. The Party who was married (the "Married Party") to the divorced or deceased spouse shall have the option to purchase all or any portion of such Restricted Interests for the purchase price (as determined in Section 4.4 below) of the Restricted Interests determined as of the end of the month preceding the date on which a final judgment of divorce was entered or the date of death, whichever the case may be, pursuant to the following provisions:

##### (a)    Option Period

: The Married Party may exercise his option to purchase any part of the Restricted Interests at any time within NINETY (90) days after the latter of: [1] the date on which a final judgment of divorce is entered or the date of death, as the case may be; and [2] the date of the determination of the purchase price of the Restricted Interests.

##### (b)    Exercise of Option

: The Married Party shall give written notice within such option period to the divorced spouse or the representatives of the deceased spouse's estate [or other successors in interest] and to the LLC of the number of Restricted Interests which he or she agrees to purchase. The failure of the Married Party to notify the divorced spouse or the representatives of the deceased spouse's estate [or other successors in

14

App.A 0072

interest] and the LLC within this period of the Married Party's election to exercise his option shall constitute a waiver of the option.

### Section IV.3.  Business' Option to Purchase Restricted Interests

. In the event the Married Party does not purchase all of the Restricted Interests, then the LLC shall have the option to purchase all or any portion of such remaining Restricted Interests for the purchase price (as determined in accordance with Section 4.4 below) of the Restricted Interests determined as of the end of the month preceding the date on which a final judgment of divorce was entered or the date of death, whichever the case may be, pursuant to the following provisions:

#### (a)  Option Period
: The LLC may exercise its option to purchase any part of such remaining Restricted Interests at any time within NINETY (90) days after the latter of: [1] the date on which a final judgment of divorce is entered or the date of death, as the case may be; and [2] the date of the determination of the purchase price of the Restricted Interests.

#### (b)  Exercise of Option
: The LLC shall give written notice within such option period to the divorced spouse or the representatives of the deceased spouse's estate [or other successors in interest] of the number of Restricted Interests which it agrees to purchase. The failure to notify the divorced spouse or the representatives of the deceased spouse's estate [or other successors in interest] within this period of its election to exercise its option, shall constitute a waiver of the option.

### Section IV.4.  Determination of Purchase Price

. The purchase price of the Restricted Interests purchased under the terms of this Article shall be determined as follows:

#### (a)  Divorce
: In the event of the divorce between the Married Party and his spouse, the purchase price shall be the amount determined by the court having jurisdiction over the divorce proceeding, or if such court does not make such determination, the amount as agreed upon by and between the Married Party [or the LLC] and his or her spouse. If the divorce court does not make such a value determination and the Married Party and his or her spouse do not agree upon the valuation, then the

15

App.A 0073

purchase price shall be the amount determined in accordance with Section 3.7 [with the Married Party and/or the LLC and his spouse each paying onehalf of the related costs].

### (b)     Death

In the event of the death of a Married Party's spouse, the purchase price shall be the amount as agreed upon by and between the Married Party [or the LLC] and his or her deceased spouse's estate, or if they do not so agree, then the purchase price shall be the amount determined in accordance with Section 3.7 [with the Married Party and/or the LLC and his deceased spouse's estate each paying onehalf of the related costs].

### Section IV.5.   Payment of Purchase Price

In the event the Married Party and/or the LLC exercise their options to purchase all or any portion of such Restricted Interests, the purchase price shall be paid pursuant to the following provisions:

### (a)     Closing Date of Purchase/Sale

The Married Party and/or the LLC shall give the divorced spouse or the representatives of the deceased spouse's estate [or other successors in interest] written notice of the time and place of the closing. The closing shall be within THIRTY (30) days after the divorced spouse or the representatives of the deceased spouse's estate [or other successors in interest] receives the last written election by the Married Party and/or the respective LLC of their elections to exercise their options.

### (b)     Terms of Purchase Price

The Married Party and/or the LLC shall pay the total purchase price at closing by the execution and delivery of a promissory note or notes at closing, the terms and provisions of which are the same at the form which is attached as Exhibit "B" to this Agreement.

### (c)     Prepayment Privileges

The Married Party and/or the LLC shall have the sole and absolute right to prepay all or any part of the purchase price at any time, without penalty. The Parties further agree that each Purchaser shall have the unilateral option to elect thereafter to pay interest on the unpaid principal at the prevailing interest rate at the time.

App.A 0074

## ARTICLE V.

## MISCELLANEOUS PROVISIONS

Section V.1.    **Filing of Agreement**

. An executed copy of this Agreement shall be filed with the Managers of the LLCs.

Section V.2.    **Notice Provision**

.  Any notice, payment, demand or communication required or permitted to be given by any provision of this Agreement shall be deemed to have been effectively given and received on the date personally delivered to the respective Party to whom it is directed, or when deposited by registered or certified mail, with postage and charges prepaid and addressed to the Party at the address set forth in Exhibit "C" to this Agreement.  A Party may change its notice address by delivering a written change of address to all of the other Parties in the manner set forth in this Section.

Section V.3.    **Amendment of Agreement**

.  No amendment, modification or alteration of the terms of this Agreement shall be binding unless in writing, dated subsequent to the date of this Agreement, and executed by all the Parties.

Section V.4.    **Specific Performance**

.  The Parties hereby agree that it is impossible to measure in money the damages which will accrue to a Party by reason of a failure to perform any of the obligations under this Agreement. Therefore, if any Party shall institute any action or proceeding to enforce the provisions of this Agreement, any person against whom such action or proceeding is brought hereby waives the claim or defense that such party has an adequate remedy at law, and such person shall not urge in any such action or proceeding the claim or defense that such remedy at law exists.

Section V.5.    **Attorney Fees**

17

App.A 0075

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

. If any action at law or equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing Party shall be entitled to recover reasonable attorney's fees and all other costs and expenses of litigation from the other Party, which amounts may be set by the court in the trial of such action or may be enforced in a separate action brought for that purpose, and which amounts shall be in addition to any other relief which may be awarded.

### Section V.6.    **Termination of Agreement**

. This Agreement shall terminate upon the mutual written agreement of the Parties.

### Section V.7.    **Binding Effect**

. This Agreement shall be binding upon and inure to the benefit of the Parties to this Agreement and their respective estates, legal representatives, successors, transferees, heirs and assigns.

### Section V.8.    **Execution of Multiple Agreements**

. This Agreement may be executed in several counterparts, and all so executed shall constitute one Agreement, binding on all of the Parties hereto, notwithstanding that all of the Parties are not a signatory to the original or the same counterpart.

### Section V.9.    **Provisions Severable**

. In the event any sentence, paragraph, provision, Section or Article of this Agreement is declared by a court of competent jurisdiction to be void, such sentence, paragraph, provision, Section or Article shall be deemed severed from the remainder of the Agreement and the balance of the Agreement shall remain in effect.

### Section V.10.  **Construction of Agreement**

. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas. Title or captions contained in this Agreement are inserted only as a matter of convenience

18

App.A 0076

and reference. Such titles and captions shall not be construed to define, limit, extend or describe the scope or the intent of any provision of this Agreement. This Agreement shall not be strictly construed against any Party. Whenever required by the context hereof, the singular shall include the plural, and vice versa; the masculine gender shall include the feminine and neuter genders, and vice versa; and the word "person" shall include an estate, trust, corporation, partnership, or other form of business entity when necessary.

### Section V.11. **Entire Agreement**

. This Agreement constitutes the entire understanding of the Parties and supersedes all prior understandings, whether written or oral, between the Parties with respect to the subject matter of the Agreement.

### Section V.12. **Execution of Additional Documents**

. The Parties, their legal representatives, executors, successors and assigns, hereby agree to execute such other and further documents and instruments and take such further action as may be necessary or desirable to carry out the purpose of this Agreement and to comply with all laws which may be applicable to the Restricted Interests, the Policies, and the LLC.

### Section V.13. **Incorporation by Reference of Exhibits**

. All Exhibits referred to in this Agreement are hereby incorporated in this Agreement by reference for all purposes.

### Section V.14. **Effective Date**

. This Agreement is executed on the dates set opposite the signatures below, but is effective as of May 1, 2023.

App.A 0077

**DATES:**

6/16/2023

7/20/2023

7/21/2023

6/15/2023

6/16/2023

**SIGNATURES:**

Tom Durant

THOMAS R. DURANT

Jeff Sebastian

Michael Jeffrey Sebastian

Tiffany Sebastian

Tiffany Sebastian

THE DURANT CLASSIC DYNASTY TRUST

By: Mark Escamilla

Marin "Mark" Escamilla, Trustee

CLASSIC CHEVROLET SUGAR LAND, LLC
CLASSIC CHEVROLET WEST HOUSTON LLC
CLASSIC ELITE BUICK GMC, LLC.
16835 CADET PARTNERS, LLC

By: Tom Durant

Thomas R. Durant, President

20

App.A 0078

## CONSENT OF SPOUSES

For purposes of binding my current and/or future community and/or other interests in the Restricted Interests, if any, I hereby acknowledge that I have reviewed, understand and agree to the terms and provisions of this Agreement.

**DATES:**

6/15/2023

7/20/2023

7/21/2023

**SIGNATURES:**

DocuSigned by:

*Susan Durant*

SUSAN R. DURANT

DocuSigned by:

*Jeff Sebastian*

MICHAEL JEFFREY SEBASTIAN

DocuSigned by:

*Tiffany Sebastian*

TIFFANY SEBASTIAN

21

App.A 0079

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

## EXHIBIT "A"
## RESTRICTED INTERESTS

| MEMBER | CLASS | PERCENTAGE |
|---|---|---|
| Thomas R. Durant | Class A | 0.7% |
| Michael Jeffrey Sebastian | Class A | 0.3% |
| The Durant Classic Dynasty Trust | Class B | 69.3% |
| Michael Jeffrey Sebastian | Class B | 29.7% |

Example membership interest structure. Ownership interest varies with each LLC.

App.A 0080

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

**EXHIBIT "B"**
**PROMISSORY NOTE**

Date:

Maker:

Maker's Mailing Address (including county): _____
_____

Payee:

Place for Payment (including county): _____
_____

Principal Amount: _____ ($_____)

Annual Interest Rate on Unpaid
Principal from Date of Note:

      The applicable Federal rate as determined for purposes of Section 7872(f)(2)(B) of the Internal Revenue Code of 1986, as amended, as of the date of this Note, which rate is PERCENT (___%) per annum.

Terms of Payment (principal and interest):

      Interest on the unpaid principal on this note shall be payable in FIVE (5) equal annual installments commencing ONE (1) year after the date hereof.

      All principal plus any accrued interest shall be paid on or before FIVE (5) years from the date hereof.

Annual Interest Rate on
Matured, Unpaid Amounts:

      Applicable Federal Rate, as determined above, compounded annually

      Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amount shall be due by the final scheduled payment date.

App.A 0081

Maker shall have the right to prepay this Note at any time in whole or in part without penalty. Partial prepayments shall be applied first to accrued but unpaid interest, and then to the outstanding principal balance of this Note. Maker shall have the absolute and unilateral right to redesignate the interest rate, applicable to the unpaid principal after each such prepayment, in effect for the month during which such prepayment of principal is made by Maker.

On default of in the payment of this note and Maker's failure to cure the default within NINETY (90) days after written notice from payee of the default, it shall become immediately due at the election of Payee. Except for such written notice of default, Maker and each surety, endorser and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, protest and notices of protest to the extent permitted by applicable law.

If this note is given to any attorney for collection, or if suit is brought for collection, or if it is collected through probate, bankruptcy or other judicial proceedings, then Maker shall pay Payee reasonable attorneys' fees in addition to other amounts due. Reasonable attorneys' fees shall be due unless either party pleads otherwise.

This Note shall be subject to the terms of that certain BUYSELL AGREEMENT dated _____, 2009.

Nothing in this note shall authorize the collection of interest in excess of the highest rate allowed by law.

MAKER:

[Exhibit OnlyNot For Execution]
_____, Maker

24

App.A 0082

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

**EXHIBIT "C"**
**NOTICE ADDRESSES**

THOMAS R. DURANT
1101 SH 114, P.O. Box 1717
Grapevine, TX 76051

SUSAN R. DURANT
1101 SH 114, P.O. Box 1717
Grapevine, TX 76051

Michael Jeffrey Sebastian and Tiffany Sebastian


THE DURANT CLASSIC DYNASTY TRUST
c/o Mark Escamilla, Trustee
1101 SH 114, P.O. Box 1717
Grapevine, TX 76051

CLASSIC CHEVROLET SUGAR LAND, LLC
1101 SH 114, P.O. Box 1717
Grapevine, TX 76051

App.A 0083

# MARIN "MARK" ESCAMILLA

### TRUSTEE
### THE DURANT CLASSIC DYNASTY TRUST
### BOX 1717, GRAPEVINE TEXAS 76099
Office 817.421.7207
MarkE@Classicchevrolet.com

October 11, 2024

Jeff Sebastian
℅ Michelle Bohreer
Bohreer Law Firm PLLC
777 Post Oak Blvd., Suite 950
Houston Texas 77056
Via Fedex
And Via Email to michelle@bohreerlaw.com and sharont@bohreerlaw.com

Tiffany Sebastian
℅ Bobby K. Newman
3355 W Alabama St, Suite 444
Houston, TX 77098
Via Fedex
And Via Email to Bobby@bobbyknewman.com

Re: Exercise of Option to Purchase pursuant to that certain Buysell Agreement for interests in Classic Chevrolet Sugar Land, LLC, Classic Chevrolet West Houston, LLC, Classic Elite Buick GMC, LLC *[sic]*, and 16835 Cadet Partners, LLC dated effective May 1, 2023 (the "Agreement"), by and among Classic Chevrolet Sugar Land, LLC, Classic Chevrolet West Houston, LLC, Classic Elite Buick GMC, Inc., 16835 Cadet Partners, LLC, Thomas R. Durant, Michael Jeffrey Sebastian, Tiffany Sebastian, and The Durant Classic Dynasty Trust, created by a Trust Agreement dated January 31, 2000 (the "Trust")

Dear Mr. and Mrs. Sebastian,

I regret to inform you that the undersigned parties, being the holders of a majority of the interests in each of (i) Classic Chevrolet Sugar Land, LLC, a Texas limited liability company ("Classic Chevrolet Sugar Land"), (ii) Classic Chevrolet West Houston, LLC, a Texas limited liability company ("Classic Chevrolet West Houston"), (iii) Classic Elite Buick GMC, Inc., a Texas corporation ("Classic Elite Buick GMC"), and 16835 Cadet Partners, LLC, a Texas limited liability company ("16835 Cadet Partners"), all being the "LLC" as defined in the Agreement, have and hereby do make a vote of no confidence in Michael Jeffrey Sebastian and Tiffany Sebastian (collectively, the "Sebastians") pursuant to, and in accordance with, Section III.1.(iv) of the Agreement. All capitalized terms used in this letter and not other defined herein shall have the respective meanings ascribed to such terms in the Agreement.

# Exhibit 3

App.A 0084

As a result of such vote of no confidence in the Sebastians, you are hereby notified that the Trust has, and hereby does, elect to repurchase all of the Sebastians' interests (and the other Sellers' interests, if applicable) in the LLC pursuant to Section III.1., Section III.2.(c), and all other applicable provisions of the Agreement.

Per the terms of Section III of the Agreement, the purchase price to be paid for the Sebastians' interests in each LLC will be determined as follows:

1. Mutual agreement of the Trust and the Sebastians, as Purchaser and Sellers, if possible;
2. To the extent a loan from the Trust remains outstanding with respect to an LLC, the lesser of the Sebastians' initial contribution to such LLC or the appraised fair market value of Sebastians' interest in such LLC determined pursuant to clause 3 below; and
3. To the extent all loans from the Trust have been paid in full with respect to an LLC, the appraised fair market value of Sebastians' interest in such LLC determined by an independent appraiser selected by the mutual agreement of the Trust and the Sebastians.

Unless the parties can reach an agreement under clause 1 above, the Trust believes that the purchase price would be determined under clause 2 with respect to Classic Chevrolet Sugar Land, Classic Elite Buick GMC, and 16835 Cadet Partners and under clause 3 with respect to Classic Chevrolet West Houston. All purchase prices payable to the Sebastians will be offset by the amount of the Sebastians' existing debt to, and any claims against the Sebastians by, the LLC and the undersigned parties and the net purchase price will be paid at closing by the Trust executing and delivering a promissory note to the Sebastians in substantially the same form as set forth in Exhibit B of the Agreement.

We are still gathering information and calculating an estimated net purchase price for each LLC, and I will furnish those estimates to you for consideration once that process has been completed.

Since valid notice addresses for the Sebastians are not set forth on Exhibit C of the Agreement, please confirm their receipt of this notice in accordance with Section V.2. of the Agreement or provide valid addresses for notice on a timely basis.

*[Remainder of page left blank.]*

App.A 0085

Sincerely,

_____
Marin "Mark" Escamilla, Trustee
The Durant Classic Dynasty Trust

_____
Thomas R. Durant

_____
T. Bently Durant

App.A 0086

Filed
9/18/2024 4:47 PM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Xenia Carbajal

### NO. 24-DCV-318087

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TIFFANY LYNN SEBASTIAN | § | |
| AND | § | |
| MICHAEL JEFFREY SEBASTIAN | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| ████████████ A CHILD | § | 387TH JUDICIAL DISTRICT |
| _____ | § | |
| | § | |
| CLASSIC CHEVROLET SUGAR LAND, LLC, | § | |
| CLASSIC CHEVROLET WEST HOUSTON LLC, | § | |
| CLASSIC ELITE BUICK GMC, INC, | § | |
| 16835 CADET PARTNERS, LLC, | § | |
| *Co-Respondents* | § | FORT BEND COUNTY, TEXAS |

## COUNTERPETITION FOR DIVORCE

### 1. Discovery Level

Discovery in this case is intended to be conducted under level 2 of rule 190 of the Texas Rules of Civil Procedure.

### 2. Objection to Assignment of Case to Associate Judge

Counterpetitioner objects to the assignment of this matter to an associate judge for a trial on the merits or presiding at a jury trial.

### 3. Parties

This suit is brought by MICHAEL JEFFREY SEBASTIAN, Counterpetitioner. The last three numbers of MICHAEL JEFFREY SEBASTIAN's driver's license number are ███ The last three numbers of MICHAEL JEFFREY SEBASTIAN's Social Security number are ███

TIFFANY LYNN SEBASTIAN is Petitioner/Counterrespondent.

CLASSIC CHEVROLET SUGAR LAND, LLC is a Co-Respondent.

CLASSIC CHEVROLET WEST HOUSTON, LLC is a Co-Respondent.

CLASSIC ELITE BUICK GMC, INC is a Co-Respondent.

16835 CADET PARTNERS, LLC is a Co-Respondent.

Co-Respondents CLASSIC CHEVROLET SUGAR LAND, LLC, CLASSIC CHEVROLET WEST HOUSTON, LLC, CLASSIC ELITE BUICK GMC, INC and 16835 CADET PARTNERS, LLC are collectively referred to as the "Classic Dealerships")

App.A 0087

Exhibit 4

## 4. Domicile

Counterpetitioner has been a domiciliary of Texas for the preceding six-month period and a resident of this county for the preceding ninety-day period.

## 5. Service

Tiffany Lynn Sebastian is the Petitioner/Counterrespondent in this divorce action. Service of this document may be had in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving her attorneys of record, Bobby K. Newman, 3355 West Alabama, Suite 444, Houston, Texas 77098, and Randall B. Wilhite, 515 Post Oak Blvd, Suite 800, Houston, Texas 77027, via e-service as set forth below:

Classic Chevrolet Sugar Land, LLC is a limited liability company in Texas and can be served with process through its registered agent, Thomas R. Durant, 1101 West State Highway 114, Grapevine, Texas 76051.

Classic Chevrolet West Houston, LLC, is a limited liability company in Texas and can be served with process through its registered agent, Thomas R. Durant, 1101 West State Highway 114, Grapevine, Texas 76051.

Classic Elite Buick GMC, Inc is a Texas corporation and can be served with process through its registered agent, Thomas R. Durant, 1101 West State Highway 114, Grapevine, Texas 76051.

16835 Cadet Partners, LLC is a limited liability company in Texas and can be served with process through its registered agent, Thomas R. Durant, 1101 West State Highway 114, Grapevine, Texas 76051.

## 6. Protective Order Statement

No protective order under title 4 of the Texas Family Code, protective order under subchapter A of chapter 7B of the Texas Code of Criminal Procedure, or order for emergency protection under Article 17.292 of the Texas Code of Criminal Procedure is in effect in regard to a party to this suit and no application for any such order is pending.

## 7. Dates of Marriage and Separation

The parties were married on or about July 4, 1999, and ceased to live together as spouses.

## 8. Grounds for Divorce

The marriage has become insupportable because of discord or conflict of personalities between Counterpetitioner and Counterrespondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

Petitioner/Counterrespondent is guilty of cruel treatment toward Counterpetitioner/Respondent of a nature that renders further living together insupportable.

App.A 0088

## 9. Children of the Marriage

At the time of this filing, there is no child under eighteen years of age or otherwise entitled to support who was born or adopted of this marriage, and none is expected as the child who was initially before the court is not over the age of eighteen and has graduated from high school.

## 10. Division of Community Property

MICHAEL JEFFREY SEBASTIAN requests the Court to divide the estate of MICHAEL JEFFREY SEBASTIAN and TIFFANY LYNN SEBASTIAN in a manner that the Court deems just and right, as provided by law.

MICHAEL JEFFREY SEBASTIAN should be awarded a disproportionate share of the parties' estate for the following reasons, including but not limited to:

a) fault in the breakup of the marriage;
b) community indebtedness and liabilities;
c) tax consequences of the division of property;
d) earning power, business opportunities, capacities, and abilities of the spouses;
e) nature of the property involved in the division;
f) wasting of community assets by his spouse;
g) attorney's fees to be paid; and
h) constructive fraud committed by a spouse.

## 11. Breach of Fiduciary Duty

Petitioner, TIFFANY LYNN SEBASTIAN, as Respondent's spouse, had a fiduciary relationship with and a fiduciary duty to Respondent, MICHAEL JEFFREY SEBASTIAN. As a result of their fiduciary relationship, Respondent reposed a special confidence in Petitioner, and Petitioner had a duty in equity and good conscience to act in good faith and with due regard for Respondent's interests.

TIFFANY LYNN SEBASTIAN, in violation of her fiduciary duty to Respondent, has breached her duty to Respondent on or around June 2024 and continuing thereafter, TIFFANY LYNN SEBASTIAN, without justification or excuse, willfully and intentionally breached her fiduciary duty by interfering with an existing contract between MICHAEL JEFFREY SEBASTIAN and the Classic Dealerships, including causing a triggering event under a Buy-Sell Agreement with the Classic Dealerships that affects the Community's business interest in the Classic Dealerships .

This action proximately resulted in damages to MICHAEL JEFFREY SEBASTIAN for which MICHAEL JEFFREY SEBASTIAN now seeks relief. Those damages include loss of compensation, loss of profits, loss of equity, mental anguish, and loss of reputation.

TIFFANY LYNN SEBASTIAN acted with malice in engaging in this conduct, thus entitling MICHAEL JEFFREY SEBASTIAN to exemplary damages within the jurisdictional limits of this Court.

MICHAEL JEFFREY SEBASTIAN prays for judgment against TIFFANY LYNN SEBASTIAN in a sum within the jurisdictional limits of this Court for his actual damages as alleged, for exemplary

damages, for prejudgment and postjudgment interest as allowed by law, for costs of court, and for general relief.

## 12. Tortious Interference with Business Relations

On or around June 2024 and continuing thereafter, TIFFANY LYNN SEBASTIAN, without privilege or justification, engaged in conduct that intentionally and willfully interfered with the business relationship of MICHAEL JEFFREY SEBASTIAN and the Classic Dealerships. At the time that conduct occurred, MICHAEL JEFFREY SEBASTIAN had a reasonable expectation of a continuing business relationship with the Classic Dealerships and TIFFANY LYNN SEBASTIAN knew of that reasonable expectation. TIFFANY LYNN SEBASTIAN's interference with the business relationship induced or caused the termination of this expectancy, including causing a triggering event under a Buy-Sell Agreement with the Classic Dealerships that affects the Community's business interest in the Classic Dealerships.

This action proximately resulted in damages to MICHAEL JEFFREY SEBASTIAN for which MICHAEL JEFFREY SEBASTIAN now seeks relief. Those damages include loss of compensation, loss of profits, loss of equity, mental anguish, and loss of reputation.

TIFFANY LYNN SEBASTIAN acted with malice in engaging in this conduct, thus entitling MICHAEL JEFFREY SEBASTIAN to exemplary damages within the jurisdictional limits of this Court.

MICHAEL JEFFREY SEBASTIAN prays for judgment against TIFFANY LYNN SEBASTIAN in a sum within the jurisdictional limits of this Court for his actual damages as alleged, for exemplary damages, for prejudgment and postjudgment interest as allowed by law, for costs of court, and for general relief.

## 13. Wrongful Interference with an Existing Contract

On or around June 2024 and continuing thereafter, TIFFANY LYNN SEBASTIAN, without justification or excuse, willfully and intentionally interfered with an existing contract between MICHAEL JEFFREY SEBASTIAN and the Classic Dealerships.

This action proximately resulted in damages to MICHAEL JEFFREY SEBASTIAN for which MICHAEL JEFFREY SEBASTIAN now seeks relief. Those damages include loss of compensation, loss of profits, loss of equity, mental anguish, and loss of reputation, as well as loss of value to the Community caused by TIFFANY LYNN SEBASTIAN's conduct resulting in a triggering event under the Buy-Sell between the Classic Dealerships and the Community well before any expected sale of such interest.

TIFFANY LYNN SEBASTIAN acted with malice in engaging in this conduct, thus entitling MICHAEL JEFFREY SEBASTIAN to exemplary damages within the jurisdictional limits of this Court.

MICHAEL JEFFREY SEBASTIAN prays for judgment against TIFFANY LYNN SEBASTIAN in a sum within the jurisdictional limits of this Court for his actual damages as alleged, for exemplary

damages, for prejudgment and postjudgment interest as allowed by law, for costs of court, and for general relief.

## 14. Separate Property

MICHAEL JEFFREY SEBASTIAN owns certain separate property that is not part of the community estate of the parties, and MICHAEL JEFFREY SEBASTIAN requests the Court to confirm that separate property as MICHAEL JEFFREY SEBASTIAN's separate property and estate.

## 15. Standing Order

Counterpetitioner hereby provides notice to Counterrespondent that effective October 11, 2023, the Fort Bend County District Courts have issued the *Standing Order Regarding Temporary Injunctions for the 328th, 387th, and 505th District Courts,* of which Standing Order applies in every divorce and every suit affecting the parent-child relationship filed in Fort Bend County, Texas.

A true and correct copy of this Standing Order was attached to the Original Petition for Divorce filed by TIFFANY LYNN SEBASTIAN on July 11, 2024, as "Exhibit P-1" and "Exhibit A", both of which are attached again to this Counterpetition for Divorce and incorporated herein by reference for all intents and purposes.

## 16. Request for Temporary Orders Concerning Use of Property

MICHAEL JEFFREY SEBASTIAN requests the Court, after notice and hearing, for the preservation of the property and protection of the parties, to make temporary orders and issue any appropriate temporary injunctions respecting the temporary use of the parties' property as deemed necessary and equitable, including but not limited to the following:

Awarding MICHAEL JEFFREY SEBASTIAN the exclusive use and possession of the residence located at 25510 and 25702 Zion Lutheran Cemetery Road, Tomball, Texas 77375, as well as the furniture, furnishings, and other personal property at that residence, while this case is pending, and enjoining TIFFANY LYNN SEBASTIAN from entering or remaining on the premises of the residence and exercising possession or control of any of this personal property, except as authorized by order of this Court.

Awarding MICHAEL JEFFREY SEBASTIAN exclusive use and control of any vehicle titled solely in his name or in his possession and enjoining TIFFANY LYNN SEBASTIAN from entering, operating, or exercising control over any vehicle titled solely in his name or in his possession.

Awarding MICHAEL JEFFREY SEBASTIAN exclusive use and control of the yellow Yamaha golf cart currently garaged at 5002 Shiloh Lake Dr., Richmond, Texas 77407, and enjoining TIFFANY LYNN SEBASTIAN from entering, operating, or exercising control over the same.

Awarding MICHAEL JEFFREY SEBASTIAN exclusive management and control of the parties' financial accounts but limited by the standing injunctions of this Court.

Awarding MICHAEL JEFFREY SEBASTIAN exclusive management and control of the business interests of the parties in the Classic Dealerships

Awarding MICHAEL JEFFREY SEBASTIAN the exclusive use of all credit cards held solely in his name.

## 17. Attorney's Fees, Expenses, Costs, and Interest

It was necessary for MICHAEL JEFFREY SEBASTIAN to secure the services of LAURA D. DALE, a licensed attorney, and E. Michelle Bohreer, a licensed attorney, to prepare and prosecute this suit. To effect an equitable division of the estate of the parties and as a part of the division, judgment for attorney's fees, expenses, and costs through trial and appeal should be granted against Respondent and in favor of MICHAEL JEFFREY SEBASTIAN for the use and benefit of MICHAEL JEFFREY SEBASTIAN's attorney; or, in the alternative, MICHAEL JEFFREY SEBASTIAN requests that reasonable attorney's fees, expenses, and costs through trial and appeal be taxed as costs and be ordered paid directly to MICHAEL JEFFREY SEBASTIAN 's attorney, who may enforce the order in the attorney's own name. MICHAEL JEFFREY SEBASTIAN requests postjudgment interest as allowed by law.

## 18. Prayer

Counterpetitioner MICHAEL JEFFREY SEBASTIAN prays that citation and notice issue as required by law and that the Court grant a divorce and all other relief requested in this petition.

Counterpetitioner MICHAEL JEFFREY SEBASTIAN prays for attorney's fees, expenses, and costs as requested above.

Counterpetitioner MICHAEL JEFFREY SEBASTIAN prays for general relief and all other relief to which Counterpetitioner is entitled based on the facts or pleadings of this case.

Respectfully submitted,

LAURA DALE & ASSOCIATES, P.C.


  /s/ Laura D. Dale
LAURA D. DALE (LEAD COUNSEL)
State Bar No. 24030270
eserviceldd@dalefamilylaw.com (Eservice only)
MARJORIE A. MAXWELL
State Bar No. 24060239
eservicemam@dalefamilylaw.com (Eservice only)
1800 St. James Place, Suite 620
Houston, Texas 77056
Telephone: (713) 600-1717
Facsimile: (713) 600-1718
Attorneys for MICHAEL JEFFREY SEBASTIAN

App.A 0092

**BOHREER LAW FIRM PLLC**

_[signature]_

E. Michelle Bohreer
State Bar No. 06717100
Pritesh Soni
State Bar No. 24063926
777 Post Oak Blvd., Ste 950
Houston, Texas 77056
Telephone: (832) 856-3006
Facsimile: (832) 856-2891
Emails: michelle@bohreerlaw.com
   pritesh@bohreerlaw.com
   E-service: e-service@bohreerlaw.com

## CERTIFICATE OF SERVICE

   I certify that a true copy of this Counterpetition for Divorce was served in accordance with rule 21a of the Texas Rules of Civil Procedure on the following on September 18, 2024:

Bobby K. Newman
Bobby K. Newman, P.C.
3355 W. Alabama, Ste 444
Houston, Texas 77098
**VIA E-SERVICE: bknservice@bobbyknewman.com**

Randall B, Wilhite
Fullenwider Wilhite, LLP
4265 San Felipe Drive, Suite 1400
Houston TX 77027
**VIA E-SERVICE: rwilhite@fullenweider.com**

     /s/ Laura D. Dale
     LAURA D. DALE
     Attorney for MICHAEL JEFFREY SEBASTIAN

App.A 0093

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Martha Calderon on behalf of Laura Dale
Bar No. 24030270
mcalderon@dalefamilylaw.com
Envelope ID: 92187898
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Counterpetition for Divorce
Status as of 9/19/2024 8:47 AM CST

Associated Case Party: TiffanyLynnSebastian

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bobby  Newman | | bknservice@bobbyknewman.com | 9/18/2024 4:47:23 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Randall Wilhite | 21476400 | service@fullenweider.com | 9/18/2024 4:47:23 PM | SENT |

App.A 0094

Filed
12/3/2024 6:31 PM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Brette Sansom

NO. 24-DCV-318087

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | § § § | IN THE DISTRICT COURT |
| TIFFANY LYNN SEBASTIAN<br>AND<br>MICHAEL JEFFREY SEBASTIAN | § § § § § | |
| AND IN THE INTEREST OF<br>█████████████, A CHILD | § § § § § | |
| MICHAEL JEFFREY SEBASTIAN and<br>TIFFANY LYNN SEBASTIAN,<br>INDIVIDUALLY, ON BEHALF OF THE<br>SEBASTIAN COMMUNITY ESTATE,<br>AND DERIVATIVELY ON BEHALF OF<br>THE CLASSIC DEALERSHIPS, and<br>16835 CADET PARTNERS, LLC<br>    *Third-Party Plaintiff,* | § § § § § § § § § | 387TH JUDICIAL DISTRICT |
| v. | § § § | |
| T. BENTLY DURANT, THOMAS R.<br>DURANT, and THE DURANT CLASSIC<br>DYNASTY TRUST<br>    *Third-Party Defendants,* | § § § § § | |
| 8100 PARTNERS, LTD., AND<br>8100 MANAGEMENT LLC<br>    *Nominal Third-Parties.* | § § § | FORT BEND COUNTY, TEXAS |

## THIRD-PARTY PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Michael Jeffrey Sebastian, Tiffany Lynn Sebastian, the Classic Dealerships

(as defined below), and 16835 Cadet Partners, LLC (collectively, "Third Party Plaintiffs") and file

this Third-Party Petition. In support thereof, Third-Party Plaintiffs would respectfully show unto

this Court the following:



Exhibit 5                    App.A 0095

# I.
## DISCOVERY PLAN

1.     Third-Party Plaintiffs intend to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.

# II.
## CLAIM FOR RELIEF

2.     Third-Party Plaintiffs seek monetary relief of over $1,000,000 and non-monetary relief under Texas Rule of Civil Procedure 47.

# III.
## PARTIES

***Third-Party Plaintiffs***

3.     This suit is brought by Michael Jeffrey Sebastian ("Jeff Sebastian"), individually, and as a member of the community estate of Jeff Sebastian and Tiffany Sebastian (the "Sebastian Estate"). Jeff Sebastian is a natural person who resides in Fort Bend County, Texas, and may be served through the undersigned counsel.

4.     This suit is also brought by Tiffany Sebastian ("Tiffany Sebastian"), individually, and as a member of the Sebastian Estate. Tiffany Sebastian is a natural person who resides in Fort Bend County, Texas, and may be served through the undersigned counsel. Tiffany Sebastian and Jeff Sebastian are sometimes referred to collectively herein as "the Sebastians."

5.     This suit is additionally brought by the Sebastians derivatively, on behalf of the following entities (collectively, the "Classic Dealerships") against the Third-Party Defendants named herein.

    a.     CLASSIC CHEVROLET SUGAR LAND, LLC, a Texas limited liability company whose principal office is located at 1101 State Highway 114, Grapevine, Texas

2

76099.

  b.  CLASSIC CHEVROLET WEST HOUSTON, LLC, a Texas limited liability company whose principal office is located at 1101 State Highway 114, Grapevine, Texas 76099.

  c.  CLASSIC ELITE BUICK GMC, INC., a Texas corporation whose principal office is located at 1101 State Highway 114, Grapevine, Texas 76099.

6.  This suit is additionally brought by the Sebastians derivatively, on behalf of 16835 Cadet Partners, LLC ("Cadet"), a Texas limited liability company whose principal office is located at 1101 State Highway 114, Grapevine, Texas 76099.

***Third-Party Defendants***

7.  T. Bently Durant ("Bently Durant") is Third-Party Defendant herein and a natural person who is a resident of Tarrant County, Texas. Bently Durant may be served at 1101 State Highway 114, Grapevine, Texas 76099, or wherever he may be found.

8.  Thomas R. Durant ("Tom Durant") is a Third-Party Defendant herein and a natural person who is a resident of Tarrant County, Texas. Bently Durant may be served at 1101 State Highway 114, Grapevine, Texas 76099, or wherever he may be found.

9.  The Durant Classic Dynasty Trust ("Dynasty Trust") is a Third-Party Defendant and a Texas trust. The Dynasty Trust may be served with process by serving its Trustee, Marin "Mark" Escamilla, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever Trustee may be found. Bently Durant, Tom Durant, and the Dynasty Trust are sometimes collectively referred to herein as "the Durant Defendants."

***Nominal Third Parties***

3

10.     8100 Partners, LTD. ("8100 Partners") is a Nominal Third Party and a Texas limited partnership. 8100 Partners can be served through its registered agent, Thomas R. Durant, or any officer or director of 8100 Partners, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found.

11.     8100 Management LLC ("8100 Management") is a Nominal Third Party and a Texas limited liability company. 8100 Management can be served through its registered agent, Thomas R. Durant, or any officer or director of 8100 Management, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found.

## IV.
## JURISDICTION AND VENUE

12.     The Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

13.     The Court has personal jurisdiction over all parties to the litigation because they are individual residents of Texas, or are legal entities organized and exist under the laws of the state of Texas that are registered to and conduct business in Texas.

14.     Venue is property in Fort Bend County, Texas pursuant to Texas Civil Practice and Remedies Code §§ 15.002 and 15.005, as it is the county in which the underlying divorce is pending and it is where all or a substantial part of the events or omissions giving rise to the claim occurred.

## V.
## FACTUAL BACKGROUND

15.     Jeff and Tiffany Sebastian are spouses who have been married for more than twenty years prior to the filing of this divorce proceeding. They met one another in Houston in 1998 at a time when they both were launching careers in the local automotive industry. In fact, Tiffany started

4

App.A 0098

work at a small used car dealership on the west side of town that summer and Jeff joined her shortly thereafter.

16.     By the following year, the Sebastians were married and had worked hard to ensure that, separately and together, they were a recognized force in the automotive sales industry. As the decades subsequently passed, they continued to develop a massive talent for sales, management, and economics, and created a vast professional network and strong reputations for driving growth and profit.

17.     In 2016, that dedication and ambition led Jeff Sebastian to accept a position as General Manager of Classic Chevrolet Sugar Land. At that time, the Sugar Land dealership was principally owned by Defendant Tom Durant and suffered from poor performance under current management.[1] Accordingly, the Sebastians identified it as an opportunity to further prove their effectiveness in the Houston market with the anticipation that such efforts would generate an opportunity for partnership. With that goal in mind, the Sebastians set to work (Jeff serving as the name General Manager and Tiffany working directly alongside him) and ultimately caused Classic Chevrolet Sugar Land to tectonically shift from a struggling enterprise to a dominant industry presence. In fact, after only a few short years of exponential growth under the Sebastians' management, Classic Chevrolet Sugar Land became one of the top performing Chevrolet dealers in the entire country.

18.     Based on that success, the Sebastians were invited to become owners of Classic Chevrolet Sugar Land, LLC and acquired a Membership Interest in the company in 2018.[2] (The Class A

---

[1] The other Member of Classic Chevrolet Sugar Land, LLC were/are Defendants Bently Durant and the Durant Classic Dynasty Trust.
[2] On January 1, 2018, Jeff Sebastian (and the Sebastian Estate) purchased a 30% Class A Membership Interest, and a 29.7% Class B Membership Interest, in Classic Chevrolet Sugar Land, LLC.

5

App.A 0099

Members became Jeff Sebastian, Defendant Tom Durant, and Defendant Bently Durant, and the Class B Members became Jeff Sebastian, Defendant Dynasty Trust, Defendant Tom Durant, and Defendant Bently Durant. Meanwhile, both Sebastians continued to operate the dealership, with Jeff being elevated to managing partner and Dealer-Operator.)

19.     The Sebastians also located, spear-headed, and became partners with the Durant Defendants in the purchase and management of Classic Chevrolet West Houston, LLC in 2019.[3] At that time, Classic Chevrolet West Houston was an AutoNation dealership in total collapse. However, given the Sebastians' tireless pursuit of efficiency and growth, it quickly became a Top 10 performing Chevrolet dealer in Houston. (The Class A Members became Jeff Sebastian and Defendant Tom Durant, and the Class B Members became Jeff Sebastian, Defendant Tom Durant, and Defendant Dynasty Trust. Meanwhile, both Sebastians operated the dealership, with Tiffany Sebastian serving as Executive Manager until 2023—when she became Executive Manager of Classic Elite Buick GMC, Inc.—and Jeff Sebastian serving as Dealer-Operator.)

20.     The Sebastians were also integral in the purchase and management of Classic Elite Buick GMC, Inc., another Houston dealership, in 2023.[4] And, like the other dealerships the Sebastians operate, the GMC store became a Top performing Houston GMC dealer. (The Class A Shareholders became Jeff Sebastian and Defendant Tom Durant, and the Class B Shareholders became Jeff Sebastian, Tiffany Sebastian, and Defendant Dynasty Trust. Meanwhile, both Sebastians operated the dealership, with Tiffany Sebastian serving as Executive Manager and Jeff Sebastian served as Dealer-Operator.)

---

[3] On November 29, 2019, Jeff Sebastian (and the Sebastian Estate) purchased a 51% Class A Membership Interest, and a 39.49% Class B Membership Interest, in Classic Chevrolet West Houston, LLC.
[4] On January 26, 2023, Jeff Sebastian (and the Sebastian Estate) purchased a 51% Class A Membership Interest, and a 19.49% Class B Membership Interest, in Classic Elite Buick GMC, Inc.

6

App.A 0100

21.     On May 1, 2023, Classic Elite Buick GMC, Inc. entered into a Lease Agreement ("Lease") with 16835 Cadet Partners, LLC which is the owner of the real property upon which the Classic Dealership operates at 16835 Katy Freeway. (The Class A Shareholders of Cadet are Jeff Sebastian and Defendant Tom Durant, and the Class B Shareholders of Cadet are Jeff Sebastian, Tiffany Sebastian, and Defendant Dynasty Trust).

22.     By 2024, the Sebastians were far and away the most successful and profitable partners within the whole Durant Organization. The Sebastians and the dealerships they operated received numerous prestigious accolades and awards from the manufacturers and the Durant Organization. Neither Jeff nor Tiffany Sebastian had ever received a warning or as much as a write up. In fact, the Sebastians were commonly recognized as one of the best partners within the Durant Organization. Indeed, the Sebastians co-owned and operated a total of three dealerships—that were staffed with approximately 600 trained employees, preferred by the manufacturers, and generating incredible profits—as well as the Cadet property. (The Sebastians' interest in the Classic Dealerships, 16835 Cadet Partners and 8100 Partners represent the largest community assets in the pending divorce and mandate protection against reductions is fair market value).

23.     Unfortunately, however, the Sebastians soon learned that great success can also generate greed.

24.     In this case, the Durant Defendants began to work with one another to expel the Sebastians from Cadet and the Classic Dealerships in contravention of their governing agreements and applicable law. The initiative actually developed into a complete plan to strip the Sebastians of 100% of their Member/Shareholder Interests in Cadet and the Classic Dealerships without payment of just compensation therefore, in a scheme to divert millions of dollars in equity and

7

App.A 0101

profits owed to the Sebastians over to the Durant Defendants. Moreover, the Durant Defendants actually began to implement their plan in the summer of 2024.

25. By way of example, the Durant Defendants began reaching out to the Sebastians individually with the intent of separating and dividing the couple and increasing conflict among them. In fact, the Durant Defendants relocated Mike Ward, a general manager, from Dallas to Houston and planted him in the Classic Dealerships with a mission of creating division, dissension, and relaying personal information about the Sebastians back to the Durant Defendants. The Durant Defendants then utilized that information and division to disparage the Sebastians' character and capabilities, both publically and privately, endeavoring to erode/diminish the Sebastians' control of the Classic Dealerships. The defendants also chose to execute expensive and unnecessary service contracts, cut ties with local vendors, fire experienced staff members, hire new staff members, restructure operations, and re-allocate time and resources to wasteful projects.

26. Eventually, the Durant Defendants unceremoniously purported to fire Jeff Sebastian on July 22, 2024, followed by Tiffany Sebastian on September 13, 2024, and replaced them with select loyalists, including the same individual that spear-headed the dissension, Mike Ward. The Durant Defendants then completely ignored the Sebastians' management control and immediately caused the Sebastians' access to all Cadet and Classic Dealership information to be severed (Jeff Sebastian lost access on July 22, 2024)—including access to all books and records, account information, budgets, inventory and sales data, payroll records, and emails—and Durant Defendants refused to make required payments and approved distributions to the Sebastians as owners. Instead, the Durant Defendants quickly began diverting millions of dollars in distributable revenues and rents back to themselves, including via by pouring money into needless capital improvements at the Classic Dealership locations (several of which properties are majority-owned

8

App.A 0102

by the Durant Defendants and leased back to the Classic Dealerships on a Net-Net-Net basis). These illegal and self-interested measures constitute an effort, in part, to cause a short-term devaluation of the Classic Dealerships and to diminish the Sebastians' contractually anticipated financial liquidity in order to leverage their cooperation. On numerous occasions, Jeff Sebastian asked to speak directly with Tom Durant, but was told by Bently Durant, that in no way shape or form would he be allowed to do so. Jeff also pleaded for access to his emails, communication threads, and basic financial information. However, on each occasion, he was denied and told that the Durant Defendants wanted him to stay away from the business and the dealerships.

27.     Now, the Durant Defendants have demanded that the Sebastians relinquish 100% of their Membership/Shareholder Interests in Cadet, 8100 Partners and all three Classic Dealerships for a pithy fraction of their true value in violation of a myriad of contractual obligations, including applicable company/operating agreements, and a Buy-Sell Agreement the parties executed dated effective May 1, 2023. Therefore, the Sebastians, Cadet, and the Classic Dealerships seek relief therefrom, including via the issuance of a declaratory judgment.

**VI.**
**CAUSES OF ACTION**

*Count 1 - Breach of Contract*

28.     All of the preceding paragraphs are incorporated herein as though fully set forth below.

   *a.     The Management Agreements*

29.     The Durant Defendants and the Sebastians entered into a number of valid and enforceable contracts that govern the management and operation of the Classic Dealerships. Those agreements include the Limited Liability Company Agreement for Classic Chevrolet Sugar Land, LLC ("Sugar Land Agreement"), the Company Agreement of Classic Chevrolet West Houston, LLC ("West

9

App.A 0103

Houston Agreement"), the Bylaws of Classic Buick GMC of Houston, Inc. ("GMC Bylaws"), and the Limited Liability Company Agreement for 16835 Cadet Partners, LLC ("Cadet Agreement") (collectively, the "Management Agreements"). However, the Durant Defendants proceeded to materially breach terms of those Management Agreements at great cost to the Sebastians, Cadet, and the Classic Dealerships.

30.     Particularly, and without limitation, the Durant Defendants caused the Sebastians to be removed from their employment/management positions at Cadet and the Classic Dealerships without complying with the voting and approval requirements set forth in the Management Agreements. The Durant Defendants have also caused Cadet and the Classic Dealerships to engage in acts and expenditures that are directly adverse to the necessary and/or advisable interests of the Sebastians, Cadet, and the Classic Dealerships, and in breach of the Management Agreements, including (i) causing the Classic Dealerships to spend millions of dollars on wasteful capital improvements to properties that the Classic Dealerships do not own (and which are instead majority-owned by the Durant Defendants), (ii) preventing Cadet and the Classic Dealerships from paying dividends/distributions to their owners, (iii) decreasing the Classic Dealerships' revenue and profitability, and (iv) damaging the Classic Dealerships' valuable relationships and ability to transact business within the industry.

31.     The Durant Defendants' material breaches of the Management Agreements have caused, and continue to cause, in excess of $10,000,000 in damages to the Sebastians (including the Sebastian Estate), Cadet, and the Classic Dealerships.

### b.     The Buy-Sell Agreement

32.     Defendant Tom Durant, Defendant Dynasty Trust, and the Sebastians are also parties to a Buy-Sell Agreement for Interests in Classic Chevrolet Sugar Land, LLC, Classic Chevrolet West

App.A 0104

Houston, LLC, Classic Elite Buick GMC, Inc., and 16835 Cadet Partners, LLC (the "Buy-Sell Agreement"). The Buy-Sell Agreement governs certain rights and restrictions pertaining to the sale or transfer of the parties' ownership interests in Cadet and the Classic Dealerships, including a rendition of the purchase options and the means/methods of determining share price if such options are validly exercised. In particular, the Buy-Sell Agreement stipulates that an option to purchase the Sebastians' interest in Cadet and the Classic Dealerships shall arise upon the occurrence of certain events, including "the cessation of the performance of the Dealership Business Duties of the Sebastians (including termination of either of the Sebastians as an officer or Manager of the LLC)". Jeff Sebastian was terminated on July 22, 2024, which, by contract, which alleged termination would have expressly triggered the applicable Buy-Sell Agreement and established the Valuation Date.

33.     In October, 2024, incident to the Sebastians' unlawful firing/exclusion, Defendant Dynasty Trust, by and through its Trustee, Mark Escamilla, issued an "Exercise of Option to Purchase" letter ("Exercise Notice") to the Sebastians stating that it was electing to repurchase all of the Sebastians' interest in Cadet and the Classic Dealerships. However, no valid triggering event had occurred that would render that kind of involuntary repurchase demand an available option for Defendant Dynasty Trust. Furthermore, the repurchase price demanded was and is directly opposed to the valuation method dictated by the Buy-Sell Agreement.

34.     As such, the repurchase demand made by Defendant Dynasty Trust is in direct breach and violation of the Buy-Sell Agreement and has caused, and continues to cause, direct financial damage to the Sebastians for which they seek recovery by this lawsuit.

### Count 2 - Suit for Declaratory Judgment

35.     All of the preceding paragraphs are incorporated herein as though fully set forth below.

11

App.A 0105

36.     Pursuant to the Exercise Notice, Defendant Dynasty Trust demands that the Sebastians relinquish 100% of their Shareholder/Membership interests in Cadet and the Classic Dealerships for a small fraction of what the applicable Buy-Sell Agreement requires.

37.     Particularly, Defendant Dynasty Trust refuses to recognize the fact that, in the event of a buy-out, the Sebastians are entitled to payment of fair market value for all of their shares in Cadet and each of the Classic Dealerships.[5] Instead, Defendant Dynasty Trust alleges the Sebastians' shares in Classic Chevrolet West Houston are the only ones that should receive such valuation and that the Sebastians' shares in Cadet and the other Classic Dealerships merely entitle them to a return of their capital contributions to those entities.

38.     The Buy-Sell Agreement dictates that the Sebastians are entitled to fair market value for all of their member shares in Cadet and the Classic Dealerships unless certain loans that Defendant Dynasty Trust extended to the Sebastians remain unpaid.[6] The Sebastians, however, paid their loans associated with Classic Chevrolet Sugar Land and Classic Chevrolet West Houston in full on or before September 1, 2023. The Sebastians also diligently made repeated efforts to pay the loans associated with Classic Elite Buick GMC and Cadet after the loans were made, but were consistently denied any documentation of the loans or a way to repay them. (Many such requests were made directly to Defendant Bently Durant or Defendant Tom Durant). Consequently, the Durant Defendants are estopped from now denying the Sebastians fair market value for their

---

[5] Buy-Out Agreement, Section III.6.

[6] The Sebastians received separate loans from Defendant Dynasty Trust in varying amounts necessary to fund the initial purchases of their member shares in Cadet and each of the Classic Dealerships. The Buy-Sell Agreement dictates that the Sebastians are entitled to receive fair market value for their membership interests in Cadet and each of the Classic Dealerships in the event of a buy-out unless the associated purchase loan remains unpaid. In the event a particular purchase loan remains unpaid upon the exercise of a buy-out option, the membership shares that were purchased with such funds are only entitled to capital contribution cash-out.

12

member shares in Classic Elite Buick GMC and/or Cadet by reason of their concerted acts in furtherance thereof.

39.     The Buy-Sell Agreement additionally specifies that the Durant Defendants' option to re-purchase the Sebastians' member shares in the Classic Dealerships vests "upon the occurrence of a specified event" (*e.g.* Jeff's forced cessation of duty). Accordingly, in the event of a buy-out, the Sebastians are entitled to fair market value for their shares as of July 22, 2024 (*i.e.* the date Jeff was evicted from Cadet and the Classic Dealerships and prevented from continuing to perform his Dealership Business Duties).

40.     Therefore, in accordance with Texas Civil Practice and Remedies Code Sections 37.003 and 37.004, the Sebastians seek an affirmative judgment from the court declaring: (a) their right under the Buy-Sell Agreement to receive fair market value for all of their member shares in Classic Dealership and Cadet upon a buyout by any of the Durant Defendants, including Defendant Dynasty Trust; and (b) that the valuation date for all shares subject to the buy-out is July 22, 2024.

41.     A justiciable controversy related to the valuation and pricing of the Sebastians' Classic Dealership and Cadet shares exists and will be resolved by the declaration sought.

## VII.
## ENTITLEMENT TO ATTORNEY FEES

42.     All of the preceding paragraphs are incorporated herein as though fully set forth below.

43.     The actions of the Durant Defendants have required the retention of the undersigned counsel to prosecute, defend, and enforce the Third Party Plaintiffs' legal and equitable interests. Therefore, the Third Party Plaintiffs' are additionally entitled to an award of their reasonable and necessary attorney fees against the Durant Defendants, jointly and severally, pursuant to Texas Civil Practice and Remedies Code Section 38.001.

13

App.A 0107

## IX.
## CONDITIONS PRECEDENT

44.     All conditions precedent to the Third Party Plaintiffs' claims for relief have been performed or occurred.

## X.
## RULE 193.7 NOTICE

45.     Pursuant to Texas Rule of Civil Procedure 193.7, the Third Party Plaintiffs' hereby give notice to all parties that any documents produced may be used against the party producing the documents at any pretrial proceeding and/or trial of this matter without necessity of authenticating the documents.

## PRAYER

For these reasons, the Sebastians, Cadet, and the Classic Dealerships pray that the Court, after notice and hearing or trial, render judgment, jointly and severally, against the Durant Defendants for the following:

    a.     Actual damages;

    b.     Consequential damages;

    c.     A declaration in accordance with Section VI of this Complaint;

    d.     Attorney fees;

    e.     Litigation costs and costs of court;

    f.     Pre-judgment and post-judgment interest; and

    g.     All other relief to which Third Party Plaintiffs may be justly entitled, as law or in equity.

14

App.A 0108

Respectfully submitted,

**BOHREER LAW FIRM PLLC**

By: /s/ E. Michelle Bohreer
E. Michelle Bohreer
State Bar No. 06717100
Pritesh Soni
State Bar No. 24063926
777 Post Oak Blvd., Ste 950
Houston, Texas 77056
Telephone: (832) 856-3006
Facsimile: (832) 856-2891
Emails:   michelle@bohreerlaw.com
           pritesh@bohreerlaw.com
E-service: e-service@bohreerlaw.com

**ATTORNEYS FOR THIRD-PARTY
PLAINTIFF, MICHAEL JEFFREY
SEBASTIAN, INDIVIDUALLY, ON
BEHALF OF THE SEBASTIAN
COMMUNITY ESTATE, AND
DERIVATIVELY ON BEHALF
OF THE CLASSIC DEALERSHIPS**


**SCHEEF & STONE, L.L.P.**

By: /s/ J. Mitchell Little
J. Mitchell Little
State Bar No. 24043788
mitch.little@solidcounsel.com
Steven Ovando
State Bar No. 24128862
steven.ovando@solidcounsel.com
2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100 Telephone
(214) 472-2150 Telecopier

**ATTORNEYS FOR THIRD-PARTY
PLAINTIFF, TIFFANY LYNN
SEBASTIAN, INDIVIDUALLY, ON
BEHALF OF THE SEBASTIAN
COMMUNITY ESTATE, AND
DERIVATIVELY ON BEHALF
OF THE CLASSIC DEALERSHIPS**

**GORDON REES SCULLY MANSUKHANI LLP**

By: _____
Joseph W. DiCecco
State Bar No. 05812520
jdicecco@grsm.com
John A. Coselli
State Bar No. 24100163
jcoselli@grsm.com
Nicholas A. Ocampo
State Bar No. 24126423
nocampo@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
(713) 490-4879 - Telephone
(713) 961-3938 - Facisimile

**ATTORNEYS FOR THIRD-PARTY
PLAINTIFF, TIFFANY LYNN
SEBASTIAN, INDIVIDUALLY, ON
BEHALF OF THE SEBASTIAN
COMMUNITY ESTATE, AND
DERIVATIVELY ON BEHALF
OF THE CLASSIC DEALERSHIPS**

15

App.A 0109

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Lim on behalf of Joseph DiCecco
Bar No. 5812520
llim@grsm.com
Envelope ID: 94904449
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Third-Party Petition
Status as of 12/4/2024 11:46 AM CST

Associated Case Party: TiffanyLynnSebastian

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Haley K.Burnside | | hburnside@fullenweider.com | 12/3/2024 6:31:31 PM | SENT |
| Nicole Ross | | nross@fullenweider.com | 12/3/2024 6:31:31 PM | SENT |
| Eliza Cabrera | | ecabrera@fullenweider.com | 12/3/2024 6:31:31 PM | SENT |
| Bobby Newman | | bknservice@bobbyknewman.com | 12/3/2024 6:31:31 PM | SENT |

Associated Case Party: MichaelJefferySebastian

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marjorie Maxwell | 24060239 | eservicemam@dalefamilylaw.com | 12/3/2024 6:31:31 PM | SENT |
| Laura DDale | | eservicedd@dalefamilylaw.com | 12/3/2024 6:31:31 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Randall Wilhite | 21476400 | service@fullenweider.com | 12/3/2024 6:31:31 PM | SENT |
| Charlotte Rainwater | 24007889 | service@rainwaterfamilylaw.legal | 12/3/2024 6:31:31 PM | SENT |
| Joseph DiCecco | | jdicecco@grsm.com | 12/3/2024 6:31:31 PM | SENT |
| John Coselli III | | jcoselli@grsm.com | 12/3/2024 6:31:31 PM | SENT |
| Dennis Slate | 24029836 | Service@Slatelaw.com | 12/3/2024 6:31:31 PM | SENT |
| Nicholas Ocampo | | nocampo@grsm.com | 12/3/2024 6:31:31 PM | SENT |
| E Service | | e-service@bohreerlaw.com | 12/3/2024 6:31:31 PM | SENT |
| E. Michelle Bohreer | | michelle@bohreerlaw.com | 12/3/2024 6:31:31 PM | SENT |
| Lisa Lim | | llim@grsm.com | 12/3/2024 6:31:31 PM | SENT |

App A 0110

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Lim on behalf of Joseph DiCecco
Bar No. 5812520
llim@grsm.com
Envelope ID: 94904449
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Third-Party Petition
Status as of 12/4/2024 11:46 AM CST

Case Contacts

| Lisa Lim | | llim@grsm.com | 12/3/2024 6:31:31 PM | SENT |
|---|---|---|---|---|
| Sharon Taylor | | sharont@bohreerlaw.com | 12/3/2024 6:31:31 PM | SENT |
| Pritesh Soni | | pritesh@bohreerlaw.com | 12/3/2024 6:31:31 PM | SENT |
| Derek DRollins | | DRollins@Shackelford.law | 12/3/2024 6:31:31 PM | SENT |
| Joshua HNortham | | jnortham@shackelford.law | 12/3/2024 6:31:31 PM | SENT |

App.A 0111

Filed
12/20/2024 5:37 PM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Vanessa Vasquez

NO. 24-DCV-318087

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | § § § | IN THE DISTRICT COURT |
| TIFFANY LYNN SEBASTIAN<br>AND<br>MICHAEL JEFFREY SEBASTIAN | § § § § § | |
| AND IN THE INTEREST OF<br>████████████, A CHILD | § § § § | |
| MICHAEL JEFFREY SEBASTIAN and<br>TIFFANY LYNN SEBASTIAN,<br>INDIVIDUALLY, ON BEHALF OF THE<br>SEBASTIAN COMMUNITY ESTATE,<br>AND DERIVATIVELY ON BEHALF OF<br>THE CLASSIC DEALERSHIPS, and<br>16835 CADET PARTNERS, LLC<br>*Third-Party Plaintiffs,* | § § § § § § § § § | 387TH JUDICIAL DISTRICT |
| v. | § § | |
| T. BENTLY DURANT, THOMAS R.<br>DURANT, THE DURANT CLASSIC<br>DYNASTY TRUST, MICHAEL A.<br>WARD, 8100 PARTNERS, LTD., 8100<br>MANAGEMENT LLC, 8705<br>PARTNERS, LTD., and 8705<br>MANAGEMENT LLC<br>*Third-Party Defendants.* | § § § § § § § § | |
| | § | FORT BEND COUNTY, TEXAS |

## FIRST AMENDED THIRD-PARTY PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Michael Jeffrey Sebastian, Tiffany Lynn Sebastian, the Classic Dealerships

(as defined below), and 16835 Cadet Partners, LLC (collectively, "Third-Party Plaintiffs") and file

this First Amended Third-Party Petition. In support thereof, Third-Party Plaintiffs would

respectfully show unto this Court the following:



Exhibit 6

App.A 0112

1

# I.
# DISCOVERY PLAN

1.      Third-Party Plaintiffs intend to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.

# II.
# CLAIM FOR RELIEF

2.      Third-Party Plaintiffs seek monetary relief of over $1,000,000 and non-monetary relief under Texas Rule of Civil Procedure 47.

# III.
# PARTIES

*Third-Party Plaintiffs*

3.      This suit is brought by Michael Jeffrey Sebastian ("Jeff Sebastian"), individually, and as a member of the community estate of Jeff Sebastian and Tiffany Sebastian (the "Sebastian Estate"). Jeff Sebastian is a natural person who resides in Fort Bend County, Texas, and may be served through the undersigned counsel.

4.      This suit is also brought by Tiffany Sebastian ("Tiffany Sebastian"), individually, and as a member of the Sebastian Estate. Tiffany Sebastian is a natural person who resides in Fort Bend County, Texas, and may be served through the undersigned counsel. Tiffany Sebastian and Jeff Sebastian are sometimes referred to collectively herein as "the Sebastians."

5.      This suit is additionally brought by the Sebastians derivatively, on behalf of the following entities (collectively, the "Classic Dealerships") against the Third-Party Defendants named herein.

      a.      CLASSIC CHEVROLET SUGAR LAND, LLC, a Texas limited liability company whose registered office is located at 1101 State Highway 114, Grapevine, Texas 76099 and whose principal office is located at 13115 Southwest Freeway, Sugar Land, TX 77478.

2

App.A 0113

b.   CLASSIC CHEVROLET WEST HOUSTON, LLC, a Texas limited liability company whose registered office is located at 1101 State Highway 114, Grapevine, Texas 76099 and whose principal office is located at 8100 S Texas 6, Houston, TX 77083.

c.   CLASSIC ELITE BUICK GMC, INC., a Texas corporation whose registered office is located at 1101 State Highway 114, Grapevine, Texas 76099 and whose principal office is located at 16835 Katy Fwy, Houston, TX 77094.

6.   This suit is additionally brought by the Sebastians derivatively, on behalf of 16835 Cadet Partners, LLC ("Cadet"), a Texas limited liability company whose registered office is located at 1101 State Highway 114, Grapevine, Texas 76099.

***Third-Party Defendants***

7.   T. Bently Durant ("Bently Durant") is Third-Party Defendant herein and a natural person who is a resident of Tarrant County, Texas. Bently Durant may be served at 1101 State Highway 114, Grapevine, Texas 76099, or wherever he may be found.

8.   Thomas R. Durant ("Tom Durant") is a Third-Party Defendant herein and a natural person who is a resident of Tarrant County, Texas. Bently Durant may be served at 1101 State Highway 114, Grapevine, Texas 76099, or wherever he may be found.

9.   The Durant Classic Dynasty Trust ("Dynasty Trust") is a Third-Party Defendant and a Texas trust. The Dynasty Trust may be served with process by serving its Trustee, Marin "Mark" Escamilla, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever Trustee may be found. Bently Durant, Tom Durant, and the Dynasty Trust are sometimes collectively referred to herein as "the Durant Defendants."

3

App.A 0114

10. Michael A. Ward ("Mike Ward") is a Third-Party Defendant herein and a natural person who is a resident of Denton County, Texas. Mike Ward may be served at 1422 Amherst Drive, Denton, Texas 76201, or wherever he may be found.

11. 8100 Partners, LTD. ("8100 Partners") is a Third-Party Defendant and a Texas limited partnership. 8100 Partners can be served through its registered agent, Thomas R. Durant, or any officer, director, or partner of 8100 Partners, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found.

12. 8100 Management LLC ("8100 Management") is a Third-Party Defendant and a Texas limited liability company. 8100 Management can be served through its registered agent, Thomas R. Durant, or any officer or director of 8100 Management, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found.

13. 8705 Partners, LTD. ("8705 Partners") is a Third-Party Defendant and a Texas limited partnership. 8705 Partners can be served through its registered agent, Thomas R. Durant, or any officer, director, or partner of 8705 Partners, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found.

14. 8705 Management LLC ("8705 Management") is a Third-Party Defendant and a Texas limited liability company. 8100 Management can be served through its registered agent, Thomas R. Durant, or any officer or director of 8100 Management, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found. 8100 Partners, 8100 Management, 8705 Partners, and 8705 Management are sometimes collectively referred to herein as "the Real Estate Defendants."

App.A 0115

## JURISDICTION AND VENUE

15. The Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

16. The Court has personal jurisdiction over all parties to the litigation because they are individual residents of Texas, or are legal entities organized and exist under the laws of the state of Texas that are registered to and conduct business in Texas.

17. Venue is proper in Fort Bend County, Texas pursuant to Texas Civil Practice & Remedies Code sections 15.002 and 15.005, as it is the county in which the underlying divorce occurred, and it is where all or a substantial part of the events or omissions giving rise to the claim occurred.

18. Venue is mandatory in Fort Bend County, Texas under Texas Civil Practice & Remedies Code section 64.071 and Texas Business Organizations Code section 11.402 because this is a suit to appoint a receiver for a corporation (or corporations) with property in Texas, and this is the county where the principal office of the corporation is located. Concerning venue, "'[p]rincipal office'" means a principal office of the corporation, unincorporated association, or partnership in this state in which the decision makers of the organization within this state conduct the daily affairs of the organization. Tex. Civ. Prac. & Rem. Code § 15.001(a). This suit seeks to appoint a receiver for the Classic Dealerships and Cadet, the principal offices of which for the purposes of venue are in Fort Bend County, Texas.

V.
## FACTUAL BACKGROUND

19. Jeff and Tiffany Sebastian are spouses who have been married for more than twenty years prior to the filing of this divorce proceeding. They met one another in Houston in 1998 at a time when they both were launching careers in the local automotive industry. In fact, Tiffany started

5

App.A 0116

work at a small used car dealership on the west side of town that summer and Jeff joined her shortly thereafter.

20.     By the following year, the Sebastians were married and had worked hard to ensure that, separately and together, they were a recognized force in the automotive sales industry. As the decades subsequently passed, they continued to develop a massive talent for sales, management, and economics, and created a vast professional network and strong reputations for driving growth and profit.

***Classic Chevrolet Sugar Land***

21.     In 2016, that dedication and ambition led Jeff Sebastian to accept a position as General Manager of Classic Chevrolet Sugar Land. At that time, the Sugar Land dealership was principally owned by Defendant Tom Durant and suffered from poor performance under current management.[1] Accordingly, the Sebastians identified it as an opportunity to further prove their effectiveness in the Houston market with the anticipation that such efforts would generate an opportunity for partnership. With that goal in mind, the Sebastians set to work with Jeff serving as the name General Manager and Tiffany working directly alongside him.  Through their combined efforts, the Sebastians ultimately caused Classic Chevrolet Sugar Land to tectonically shift from a struggling enterprise to a dominant industry presence. In fact, after only a few short years of exponential growth under the Sebastians' management, Classic Chevrolet Sugar Land became one of the top performing Chevrolet dealers in the entire country.

22.     Based on that success, the Sebastians were invited to become owners of Classic Chevrolet Sugar Land, LLC and acquired a Membership Interest in the company in 2018.[2] The Class A

---

[1] The other Member of Classic Chevrolet Sugar Land, LLC were/are Defendants Bently Durant and the Durant Classic Dynasty Trust.

[2] On January 1, 2018, Jeff Sebastian (and the Sebastian Estate) purchased a 30% Class A Membership

6

App.A 0117

Members of Classic Chevrolet Sugar Land became Jeff Sebastian, Defendant Tom Durant, and Defendant Bently Durant, and the Class B Members became Jeff Sebastian, Defendant Dynasty Trust, Defendant Tom Durant, and Defendant Bently Durant. Meanwhile, both Sebastians continued to operate the dealership, with Jeff being elevated to managing partner and Dealer-Operator.

*Classic Chevrolet West Houston*

23.    The Sebastians also located, spear-headed, and became partners with the Durant Defendants in the purchase and management of Classic Chevrolet West Houston, LLC in 2019.[3] At that time, Classic Chevrolet West Houston was an AutoNation dealership in total collapse. However, given the Sebastians' tireless pursuit of efficiency and growth, it quickly became a Top 10 performing Chevrolet dealer in Houston.

24.    The Class A Members of Classic Chevrolet West Houston became Jeff Sebastian and Defendant Tom Durant, and the Class B Members became Jeff Sebastian, Defendant Tom Durant, and Defendant Dynasty Trust. Meanwhile, both Sebastians operated the dealership, with Tiffany Sebastian serving as Executive Manager until 2023—when she became Executive Manager of Classic Elite Buick GMC, Inc.—and Jeff Sebastian serving as Dealer-Operator.

*Classic Elite Buick GMC*

25.    The Sebastians were also integral in the purchase and management of Classic Elite Buick GMC, Inc., another Houston dealership, in 2023.[4] And, like the other dealerships the Sebastians

---

Interest, and a 29.7% Class B Membership Interest, in Classic Chevrolet Sugar Land, LLC.

[3] On November 29, 2019, Jeff Sebastian (and the Sebastian Estate) purchased a 51% Class A Membership Interest, and a 39.49% Class B Membership Interest, in Classic Chevrolet West Houston, LLC.

[4] On January 26, 2023, Jeff Sebastian (and the Sebastian Estate) purchased a 51% Class A Membership Interest, and a 19.49% Class B Membership Interest, in Classic Elite Buick GMC, Inc.

App.A 0118

operate, the GMC store became a top performing Houston GMC dealer. The Class A Shareholders of Classic Elite Buick GMC became Jeff Sebastian and Defendant Tom Durant, and the Class B Shareholders became Jeff Sebastian, Tiffany Sebastian, and Defendant Dynasty Trust. Meanwhile, both Sebastians operated the dealership, with Tiffany Sebastian serving as Executive Manager and Jeff Sebastian served as Dealer-Operator.

26.     On May 1, 2023, Classic Elite Buick GMC, Inc. entered into a Lease Agreement ("Lease") with 16835 Cadet Partners, LLC which is the owner of the real property upon which the Classic Dealership operates at 16835 Katy Freeway. The Class A Shareholders of Cadet are Jeff Sebastian and Defendant Tom Durant, and the Class B Shareholders of Cadet are Jeff Sebastian, Tiffany Sebastian, and Defendant Dynasty Trust.

### *Accolades for the Sebastians and Community Property*

27.     By 2024, the Sebastians were far and away the most successful and profitable partners within the whole Durant Organization. The Sebastians and the dealerships they operated received numerous prestigious accolades and awards from the manufacturers and the Durant Organization. Neither Jeff nor Tiffany Sebastian had ever received a warning or as much as a write up. In fact, the Sebastians were commonly recognized as one of the best partners within the Durant Organization. Indeed, the Sebastians co-owned and operated a total of three dealerships—that were staffed with approximately 600 trained employees, preferred by the manufacturers, and generating incredible profits—as well as the Cadet property. The Sebastians' interest in the Classic Dealerships, 16835 Cadet Partners and 8100 Partners represent the largest community assets in the pending divorce and mandate protection against reductions their fair market value and the consequent diminution of the value of the community estate.

8

App.A 0119

28. Unfortunately, however, the Sebastians soon learned that success and money can also generate greed and theft.

### *The Durant Conspiracy and Scheme*

29. In this case, the Durant Defendants began to conspire with one another, as well as one of their local operators, Defendant Mike Ward, to unjustifiably expel the Sebastians from Cadet and the Classic Dealerships in contravention of the entities' governing agreements and applicable law. The conspiracy actually developed into a complete plan to strip the Sebastians of 100% of their Member/Shareholder Interests in Cadet and the Classic Dealerships without payment of just compensation therefore, in a scheme to divert millions of dollars in equity and profits owed to the Sebastians over to the Durant Defendants. Moreover, the Durant Defendants and Mike Ward began to implement their plan in the summer of 2024.

30. By way of example, the Durant Defendants began reaching out to the Sebastians individually with the intent of separating and dividing the couple and increasing conflict among them. In fact, after ousting Jeff Sebastian in late July 2024, the Durant Defendants relocated Mike Ward, a general manager, from Dallas to Houston and planted him in the Classic Dealerships with a mission of creating division, dissension, and relaying personal information about the Sebastians back to the Durant Defendants. The Durant Defendants then worked with Mike Ward to utilize that information to disparage the Sebastians' character and capabilities, both publicly and privately, endeavoring to erode/diminish the Sebastians' control of the Classic Dealerships and the Sebastians' professional reputation. The Durant Defendants and Mike Ward also executed expensive and unnecessary service contracts, cut ties with local vendors, fired experienced staff members, hired new staff members, restructured operations, and re-allocated time and resources to wasteful projects over the objections of the Sebastians. Upon information and belief, the Durant

App.A 0120

Defendants and Mike Ward continue to aggressively pursue such activities, which cripple and irreparably damage the Classic Dealerships, Cadet, and the Sebastians.

31. Eventually and unceremoniously, after the Durant Defendants purported to fire Jeff Sebastian on July 22, 2024, they then followed by illegally terminating Tiffany Sebastian on September 13, 2024, and replaced Jeff and Tiffany with select loyalists, including the same individual who helped orchestrate their scheme, Mike Ward. The Durant Defendants and Mike Ward then completely ignored the Sebastians' management and control, immediately causing the Sebastians' access to all Cadet and Classic Dealership information to be severed at the time of their purported terminations—including access to all books and records, account information, budgets, inventory and sales data, payroll records, and emails—and then refusing to make required payments and distributions to the Sebastians in their capacity as owners. Instead, the Durant Defendants quickly began diverting millions of dollars in distributable revenue away from the Sebastians and back to themselves, including by pouring Classic Dealership money into needless capital improvements at the Classic Dealership locations that only inure to the benefit of the property owners, which happen to be the Real Estate Defendants, which in turn are majority-owned by the Durant Defendants. In Classic Elite GMC, for example, cash was reduced by more than $10 million in the month of November alone. It is a blatant and shameless kickback and self-dealing scheme.

32. These illegal and self-interested measures constitute an effort to cause a short-term devaluation of the Classic Dealerships and to diminish the Sebastians' contractually anticipated financial liquidity in order to leverage their cooperation. On numerous occasions, Jeff Sebastian asked to speak directly with Tom Durant, but was told by Bently Durant, that "in no way, shape, or form" would he be allowed to do so. Jeff also pleaded for access to his emails, communication

App.A 0121

threads, and basic financial information on multiple occasions. On each occasion, the Durant Defendants denied his pleas and told him to stay away from the business and the dealerships.

33. Now, the Durant Defendants have demanded that the Sebastians relinquish 100% of their Membership/Shareholder Interests in Cadet, 8100 Partners, all three Classic Dealerships for a pitiable fraction of their true value in violation of a myriad of contractual and fiduciary obligations, including the Classic Dealerships' Management Agreements, and a Buy-Sell Agreement the parties executed dated effective May 1, 2023. Therefore, the Sebastians and the Classic Dealerships seek relief therefrom, including the issuance of a declaratory judgment and the critical appointment of a Receiver for specific assets of the Classic Dealerships or their rehabilitation.

## VI.
## CAUSES OF ACTION

### *Count 1 - Breach of Fiduciary Duty*

34. All of the preceding paragraphs are incorporated herein as though fully set forth below.

35. Each of the Durant Defendants currently are, and have at all relevant times been, Officers, Members, and/or Shareholders of Cadet and the Classic Dealerships. Specifically, Defendant Tom Durant is a Member and Manager of Cadet, a Member and Director of Classic Chevrolet Sugar Land, LLC, a Member and Manager of Classic Chevrolet West Houston, LLC, and a Shareholder and President of Classic Buick GMC of Houston, Inc. Similarly, Defendant Bently Durant is a Member/Shareholder of the Classic Dealerships, General Counsel to the Classic Dealerships and Cadet, and Secretary of Classic Buick GMC of Houston, Inc. Likewise, Defendant Dynasty Trust is a Member/Shareholder and Director of the Classic Dealerships and Cadet through its Trustee, Mark Escamilla.

36. Consequently, the Durant Defendants each owe the following fiduciary duties to the Sebastians, Cadet, and the Classic Dealerships:

11

a. Duty of loyalty and utmost good faith;

b. Duty of candor;

c. Duty to refrain from self-dealing;

d. Duty to act with integrity of the strictest kind;

e. Duty of fair, honest dealing; and

f. Duty of full disclosure.

37. Nevertheless, the Durant Defendants materially breached their fiduciary duties by, without limitation, (i) conspiring to obstruct the Sebastians' ability to successfully operate Cadet and the Classic Dealerships, (ii) disparaging the Sebastians to one another and the public, both personally and professionally, (iii) conspiring to and illegally and unjustly purporting to fire the Sebastians from their employment with Cadet and the Classic Dealerships, (iv) conspiring to and illegally cutting the Sebastians' access to the corporate and financial information of Cadet and the Classic Dealerships, (v) conspiring to and breaching the Membership and Management Agreements of Cadet and the Classic Dealerships, (vi) conspiring to and illegally refusing to make Cadet and Classic Dealership Member distributions, and (vii) illegally diverting Member/Shareholder profit from Cadet and the Classic Dealerships to unapproved and wasteful projects that directly benefit the Durant Defendants and their separate interests at the expense of the Sebastians, Cadet, and the Classic Dealerships.

38. "It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 574, 160 S.W.2d 509, 514 (1942). Mike Ward and the Real Estate Defendants knew the Durant Defendants were fiduciaries and knowingly participated in the Durant Defendants' breach of their fiduciary duties.

12

App.A 0123

Thus, Mike Ward and the Real Estate Defendants are joint tortfeasors with the Durant Defendants and are liable as such.

39.     The Durant Defendants', Ward's, and the Real Estate Defendants' breaches have caused, and continue to cause, in excess of $10,000,000 in damages to the Sebastians (including the Sebastian Estate), Cadet, and the Classic Dealerships. The Sebastians are therefore entitled to recover actual damages, the equitable remedy of disgorgement, and exemplary damages from

### *Count 2 - Breach of Contract*

40.     All of the preceding paragraphs are incorporated herein as though fully set forth below.

#### *a.     The Management Agreements*

41.     The Durant Defendants and the Sebastians entered into a number of valid and enforceable contracts that govern the management and operation of the Classic Dealerships. Those agreements include the Limited Liability Company Agreement for Classic Chevrolet Sugar Land, LLC ("Sugar Land Agreement"), the Company Agreement of Classic Chevrolet West Houston, LLC ("West Houston Agreement"), the Bylaws of Classic Buick GMC of Houston, Inc. ("GMC Bylaws"), and the Limited Liability Company Agreement for 16835 Cadet Partners, LLC ("Cadet Agreement") (collectively, the "Management Agreements"). However, the Durant Defendants proceeded to materially breach terms of those Management Agreements at great cost to the Sebastians, Cadet, and the Classic Dealerships.

42.     Particularly, and without limitation, the Durant Defendants caused the Sebastians to be removed from their employment/management positions at Cadet and the Classic Dealerships without complying with the voting and approval requirements set forth in the Management Agreements. The Durant Defendants have also caused Cadet and the Classic Dealerships to engage in acts and expenditures that are directly adverse to the necessary and/or advisable interests of the

13

App.A 0124

Sebastians, Cadet, and the Classic Dealerships, and in breach of the Management Agreements, including (i) causing the Classic Dealerships to spend millions of dollars on wasteful capital improvements to properties that the Classic Dealerships do not own (and which are instead majority-owned by the Durant Defendants), (ii) preventing Cadet and the Classic Dealerships from paying dividends/distributions to their owners, (iii) decreasing the Classic Dealerships' revenue and profitability, and (iv) damaging the Classic Dealerships' valuable relationships and ability to transact business within the industry.

43. The Durant Defendants' material breaches of the Management Agreements have caused, and continue to cause, in excess of $10,000,000 in damages to the Sebastians (including the Sebastian Estate), Cadet, and the Classic Dealerships.

### b. The Buy-Sell Agreement

44. Defendant Tom Durant, Defendant Dynasty Trust, and the Sebastians are also parties to a Buy-Sell Agreement for Interests in Classic Chevrolet Sugar Land, LLC, Classic Chevrolet West Houston, LLC, Classic Elite Buick GMC, Inc., and 16835 Cadet Partners, LLC (the "Buy-Sell Agreement"). The Buy-Sell Agreement governs certain rights and restrictions pertaining to the sale or transfer of the parties' ownership interests in Cadet and the Classic Dealerships, including a rendition of the purchase options and the means/methods of determining share price if such options are validly exercised. In particular, the Buy-Sell Agreement stipulates that an option to purchase the Sebastians' interest in Cadet and the Classic Dealerships shall arise upon the occurrence of certain events, including "the cessation of the performance of the Dealership Business Duties of the Sebastians (including termination of either of the Sebastians as an officer or Manager of the LLC)". Purportedly, Jeff Sebastian was terminated on July 22, 2024, which, by

14

contract, would have expressly triggered the applicable Buy-Sell Agreement and established the Valuation Date.

45.     In October, 2024, incident to the Sebastians' unlawful firing/exclusion, Defendant Dynasty Trust, by and through its Trustee, Mark Escamilla, issued an "Exercise of Option to Purchase" letter ("Exercise Notice") to the Sebastians stating that it was electing to repurchase all of the Sebastians' interest in Cadet and the Classic Dealerships. However, no valid triggering event had occurred that would render that kind of involuntary repurchase demand an available option for Defendant Dynasty Trust. Furthermore, the repurchase price demanded was and is directly opposed to the valuation method dictated by the Buy-Sell Agreement.

46.     As such, the repurchase demand made by Defendant Dynasty Trust is in direct breach and violation of the Buy-Sell Agreement and has caused, and continues to cause, direct financial damage to the Sebastians in excess of $10,000,000 for which they seek recovery by this lawsuit.

## *Count 3 - Suit for Declaratory Judgment*

47.     All of the preceding paragraphs are incorporated herein as though fully set forth below.

48.     Pursuant to the Exercise Notice, Defendant Dynasty Trust demands that the Sebastians relinquish 100% of their Shareholder/Membership interests in Cadet and the Classic Dealerships. Moreover, Defendant Dynasty Trust demands that the Sebastians' Cadet and Classic Dealership shares be valued at a small fraction of what the applicable Buy-Sell Agreement requires.

49.     Therefore, in accordance with Texas Civil Practice & Remedies Code sections 37.003 and 37.004, the Sebastians seek an affirmative judgment from the court declaring their right under the Buy-Sell Agreement to receive fair market value for their Cadet and Classic Dealership shares in the event of a buyout by any of the Durant Defendants, including Defendant Dynasty Trust. A

15

App.A 0126

justiciable controversy related to the pricing of the Sebastians' Classic Dealership shares exists and will be resolved by the declaration sought.

### Count 4 - Conversion

50. All of the preceding paragraphs are incorporated herein as though fully set forth below.

51. The Sebastians are entitled to certain property currently in the Durant Defendants' possession and control – specifically, owner dividends and distributions from the revenues of Cadet and the Classic Dealerships. The Durant Defendants unlawfully obtained such monies by, without limitation, firing and excluding the Sebastians from Cadet and the Classic Dealerships, cutting their access to the Cadet and Classic Dealership books and records, and diverting/re-allocating millions of dollars owed to the Sebastians back to themselves and/or separate entities that they own and control. The Durant Defendants have additionally demanded that the Sebastians transfer their ownership interests in Cadet and the Classic Dealerships over to them in exchange for a fraction of their contractual and marketable value.

52. The Sebastians are entitled to recover their converted property from the Durant Defendants, as well as their actual and consequential damages caused thereby which exceed $10,000,000.

### Count 5 – Money Had and Received

53. All of the preceding paragraphs are incorporated herein as though fully set forth below.

54. The Durant Defendants are in receipt and possession of millions of dollars that in equity and good conscience belong to the Sebastians. Particularly, the Durant Defendants obtained such monies from the Sebastians by, without limitation, firing and excluding the Sebastians from Cadet and the Classic Dealerships, cutting their access to the Cadet and Classic Dealership books and records, and diverting/re-allocating millions of dollars owed to the Sebastians back to themselves

16

App.A 0127

and/or separate entities that they own and control. The Durant Defendants have additionally demanded that the Sebastians transfer their ownership interests in Cadet and the Classic Dealerships over to them in exchange for a fraction of their contractual and marketable value.

55.     Accordingly, the Sebastians are entitled to recover such monies from the Durant Defendants, as well as their actual and consequential damages caused thereby which exceed $10,000,000.

### *Count 6 - Tortious Interference with a Contract*

56.     All of the preceding paragraphs are incorporated herein as though fully set forth below.

57.     Defendant Mike Ward willfully, intentionally, and tortiously interfered with the performance of the Management Agreements and the Buy-Sell Agreement. Particularly, he lied to and conspired with the Durant Defendants in an aggressive yet calculated campaign to cause a breach of the Agreements for his own personal gain.

58.     Prior to the summer of 2024, Defendant Mike Ward was the General Manager of another automotive dealership that the Durant family owns in Grapevine, Texas. As such, Defendant Ward knew from experience the Grapevine dealership does not present the same level of professional/financial opportunity and partnership potential that Cadet and the Classic Dealerships do – particularly if their owners and managers (*i.e.,* the Sebastians) were forcibly expelled.

59.     Therefore, Defendant Ward engaged in an effort to ensure that the Sebastians' unjust expulsion from Cadet and the Classic Dealerships in violation of the Agreements actually occurred. Particularly, and without limitation, Defendant Ward proceeded to re-locate to Houston and relayed materially false information about the Sebastians' and their professional capabilities to the Durant Defendants, the Cadet and Classic Dealership employees, and other key figures in the automotive industry. He also made derogatory and sexist comments about Tiffany Sebastian,

17

peddled deceit, and was an avid force in the decision to systematically fire the Sebastians. Meanwhile, Defendant Ward inserted himself into a de facto management position at the Classic Dealerships.

60. Defendant Ward's targeted acts of contractual interference unfortunately paid off in the summer of 2024 in that they were a proximate cause of the Sebastians' professional and financial eviction from Cadet and the Classic Dealerships in direct violation of the Agreements. Defendant Ward's intentional malfeasance has caused the Sebastians to suffer in excess of $10,000,000 in financial and non-financial damage.

### *Count 7 –Fraud by Misrepresentation*

61. All of the preceding paragraphs are incorporated herein as though fully set forth below.

62. The Sebastians and the Durant Defendants were parties to multiple transactions involving stock.

63. During the transactions, the Durant Defendants made a false promise to the Sebastians with the intent not to fulfill it, and the promise was material to the transaction.  The promise concerned the valuation of the Sebastians' stock ownership and the attendant rights of access and control, which was material to the Sebastians' acquiring the stock.  It is clear by the conduct of the Durant Defendants that they had no intention of fulfilling their promises to the Sebastians.

64. The Durant Defendants made the false promise for the purpose of inducing the Sebastians to enter into the contracts.

65. The Sebastians justifiably relied on the Durant Defendants' false promise by entering into the contract.  Had the Sebastians known that the Durant Defendants would unjustifiably and illegally terminate their access and control associated with their ownership of stock and would engage in self-dealing conduct to devalue the Sebastians' stock, the Sebastians would not have

18

App.A 0129

entered into the agreement. The Sebastians justifiably relied on the guiding principle of law-abiding citizens—do not engage in unlawful and tortious conduct.

66. The Durant Defendants' false promise proximately caused injury to the Sebastians resulting in damages in excess of $10,000,000.00.

67. The Durant Defendants violated Texas Business & Commerce Code section 27.01, which is the basis of this suit, with actual awareness of the falsity of their representation or promise, which entitled the Sebastians to exemplary damages under section 27.01(c).

68. The Sebastians are entitled to recover reasonable and necessary attorney fees, expert-witness fees, court costs, and costs for copies of depositions under Texas Business & Commerce Code section 27.01(e).

### *Count 8 –Fraudulent Transfer*

69. The Durant Defendants made transfers and incurred obligations with the actual intent to hinder, delay, or defraud the Sebastians concerning value of their stock. The Durant Defendants made transfers to and incurred obligations from entities that are owned and controlled by the Durant Defendants, such as the Real Estate Defendants. Thus, the Real Estate Defendants are insiders under the definition of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code section 24.001, *et seq. See* Tex. Bus. & Com. Code § 24.002(7). Therefore, these transfers of assets from the Classic Dealerships to the Real Estate Defendants by the Durant Defendants are fraudulent as to the Sebastians.

70. The transfers were done with actual intent because (1) the transfers were to insiders; (2) the Durant Defendants ostensibly retained possession or control of the property transferred after the transfer; (3) the transfer was concealed from Plaintiff; (4) the Durant Defendants have absconded and concealed the assets; (5) upon information and belief, the Classic Dealerships

19

App.A 0130

received no consideration for the assets transferred; and (6) the transfer occurred proximate to the incursion of a substantial payout to the Sebastians as a result of the divorce proceedings. *See* Tex. Bus. & Com. Code § 24.005(b).

71.     Therefore, the Sebastians seek (1) avoidance of the transfer(s) or obligation(s) to the extent necessary to satisfy their claims; (2) an attachment or other provisional remedy against the asset(s) transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice & Remedies Code relating to ancillary proceedings; and/or (3) subject applicable principles of equity and in accordance with applicable rules of civil procedure: (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset(s) transferred or of other property; (B) appointment of a receiver to take charge of the asset transferred or other property of the transferee; or (C) any other relief the circumstances may requires. *See* Tex. Bus. & Com. Code § 24.008(a).

72.     The Sebastians also request that the court award them the costs and reasonable attorney fees as are equitable and just incurred by the Sebastians in the prosecution of their rights. *See* Tex. Bus. & Com. Code § 24.013.

## VII.
## <u>APPLICATION FOR APPOINTMENT OF RECEIVER FOR SPECIFIC ASSETS AND/OR TO REHABILITATE</u>

73.     All of the preceding paragraphs are incorporated herein as though fully set forth below.

74.     The Sebastians, Cadet, and the Classic Dealerships are entitled to the appointment of a receiver to preserve the financial assets of Cadet and the Classic Dealerships, as well as the Sebastians' owner-interests therein and/or to rehabilitate Cadet and the Classic Dealerships, pursuant to Texas Civil Practice & Remedies Code section 64.001(3) *et. seq.*; Texas Business Organizations Code section 11.401, *et seq.*; Texas Business & Commerce Code section 24.008;

20

App.A 0131

and the laws of equity. Indeed, the Sebastians, and the Sebastian Estate, own a right to a substantial percentage of the equity and profits of Cadet and the Classic Dealerships as core Members/Shareholders. In fact, Jeff Sebastian presently owns a majority of the Class A voting shares of Classic Buick GMC of Houston, Inc. and Classic Chevrolet of West Houston, LLC. Furthermore, the Durant Defendants, in their capacity as *de facto* "governing persons" of Cadet and the Classic Dealerships, since the unlawful and unjustifiable exclusion of the Sebastians, have taken actions that are illegal, oppressive, and fraudulent and have misapplied or wasted the property of Cadet and the Classic Dealerships. *See* Tex. Bus. Org. Code § 11.404(A)(1)(C) and (D).

75. Similarly, Cadet and the Classic Dealerships have a right and interest in/to the property they own, as well as in preventing waste, loss, and injury associated with their businesses and equity.

76. As described above, and supported by the affidavits attached hereto, the Durant Defendants have, are, and will continue to (i) deny Member/Shareholder access to the Cadet and Classic Dealerships' books and records, (ii) deny Member/Shareholder access to the Cadet and Classic Dealerships' budgets and accounting records, (iii) prevent Cadet and the Classic Dealerships from distributing contractual payments and distributions owed to their Members/Shareholders, (iv) transfer all profits, and additional revenues, generated by Cadet and the Classic Dealerships to themselves and the various entities they own and control, (v) implement inventory pricing and sales policies that significantly depress Cadet and the Classic Dealerships' revenues and profits, (vi) implement contracting, spending, pricing, and sales protocols for that depress the equitable value of Cadet and the Classic Dealerships, and (vii) initiate transactions that negatively impact Cadet and the Classic Dealerships' ability to conduct business in the local automotive industry.

21

App.A 0132

77. Further, the Sebastians, as major or majority Members/Shareholders of Cadet and the Classic Dealerships, maintain a right and obligation to enforce the Cadet and Classic Dealerships' Management Agreements for purposes of preventing waste, loss, and corporate abuse. They are also entitled to the preservation and distribution of their ownership interests in the Cadet and Classic Dealerships' valuable property. Such property is currently either already removed, or in severe danger of being lost, removed, or damaged, in such a way that is materially adverse to the purpose of Cadet and the Classic Dealerships.

78. Therefore, the Sebastians, Cadet, and Classic Dealerships petition the Court to appoint a receiver to protect and conserve the purpose and interests of Cadet and the Classic Dealerships during the pendency of this lawsuit between its Members/Shareholder. Injunctive relief will not protect such interests as the Durant Defendants have forcefully taken (and maintain in) full possession and control of Cadet and the Classic Dealerships and have demonstrated that they will continue to act in violation of any restraints placed on them. They have already breached their fiduciary duties, disregarded multiple key agreements (the Management Agreements and the Buy-Sell Agreement), fraudulently transferred assets, and have illegally converted in excess of $3,000,000 in the past several months alone.

79. The Sebastians, Cadet, and Classic Dealerships specifically request that the Court order the appointment of a receiver with all power and authority to take possession and control of the following property and business:

    a.    All Member Units/Shares of Cadet and the Classic Dealerships, including distributions, payments, transfers, conveyances, sales, acquisitions, and options;

    b.    All expenditures made from the revenues of Cadet and the Classic Dealerships to the extent such expenditures are out of the ordinary course of daily business,

22

App.A 0133

including expenditures in excess of $10,000 and expenditures associated with any renovations or capital improvements to Cadet and/or the Classic Dealership properties;

c. All actions/inactions that may cause Cadet and/or the Classic Dealerships to accrue any financial obligations or debts that are outside of the ordinary course of daily business, including any financial obligations or debts associated with any renovations or capital improvements to Cadet and/or the Classic Dealerships;

d. Modifications or amendments to any existing contracts/agreements to which Cadet, the Classic Dealerships, or their affiliates are a party, including any real property lease agreements, credit agreements, and marketing agreements;

e. All Management/C-Suite decisions pertaining to the hiring, firing, removal, promotion, or demotion of Cadet and/or Classic Dealership department leadership;

f. All actions that serve to transfer Cadet and/or Classic Dealership revenues to any Member or Shareholder of Cadet or the Classic Dealerships either directly or indirectly.

**VIII.**

**ACTION FOR AUDIT UNDER RULE 172,**

80. All of the preceding paragraphs are incorporated herein as though fully set forth below.

81. Third-Party Plaintiffs are owners of each of the Classic Entities.

82. Under the applicable Company Agreements, Third-Party Plaintiffs are entitled to certain monetary benefits arising from the operations of Cadet and each of the Classic Dealerships.

83. Third-Party Plaintiffs are without knowledge of the amount of profit realized or to be realized by, or the distributions required to be made by each of the Classic Dealerships (other than

23

App.A 0134

distribution that would have resulted in $3.5 million paid to Third-Party Plaintiffs and the Community, which the Durant Defendants, advised had been reallocated for unnecessary capital expenditures, including self-dealing transactions), or other amounts due to Third-Party Plaintiffs under the applicable Company Agreements. Further, despite repeated requests, Third-Party Plaintiffs have been unable to obtain from Cadet and the Classic Dealerships documentation for these aspects of Cadet and each of the Classic Dealerships' financial affairs. Third-Party Plaintiffs cannot obtain such knowledge, ascertain those amounts, or receive relevant documentation without an accounting from Cadet and each of the Classic Dealerships. To the extent such audit reveals monies transferred from Cadet or any of the Classic Dealerships to any other dealership or entity owned by the Durant Defendants, Third-Party Petitioners contend an audit of each such dealership or entity should be ordered.

84.    Third-Party Plaintiffs seek to have an auditor appointed under Rule 172 to audit the books and records of Cadet and each of the Classic Dealerships. Third-Party Plaintiffs anticipate the Auditor will discover further breaches of fiduciary duty by the Durant Defendants. The Durant Defendants should be ordered to pay all costs associated with such audits.

## IX.
## ENTITLEMENT TO EXEMPLARY DAMAGES AND ATTORNEY FEES

85.    All of the preceding paragraphs are incorporated herein as though fully set forth below.

86.    The Durant Defendants and Defendant Mike Ward have engaged in the acts described herein intentionally, in bad faith, with malice, and with willful disregard for the critical interests of the Sebastians, Cadet, and the Classic Dealerships. Accordingly, the Sebastians, Cadet, and the Classic Dealerships are entitled to exemplary damages against the Durant Defendants and Defendant Mike Ward, jointly and severally, pursuant to Texas Civil Practice & Remedies Code section 41.003.

24

App.A 0135

87.     The actions of the Durant Defendants and Defendant Mike Ward have also required the retention of the undersigned counsel to prosecute, defend, and enforce the Sebastians', Cadet's, and the Classic Dealerships' legal and equitable interests. Therefore, the Sebastians, Cadet, and the Classic Dealerships are additionally entitled to an award of their reasonable and necessary attorney fees against the Durant Defendants and Defendant Mike Ward, jointly and severally, pursuant to Texas Civil Practice & Remedies Code section 38.001.

## X.
## CONDITIONS PRECEDENT

88.     All conditions precedent to the Sebastians', Cadet's, and the Classic Dealerships' claims for relief have been performed or occurred.

## XI.
## RULE 193.7 NOTICE

89.     Pursuant to Texas Rule of Civil Procedure 193.7, the Sebastians, Cadet, and the Classic Dealerships hereby give notice to all parties that any documents produced may be used against the party producing the documents at any pretrial proceeding and/or trial of this matter without necessity of authenticating the documents.

## PRAYER

For these reasons, the Sebastians, Cadet, and the Classic Dealerships pray that the Court, after notice and hearing or trial, render judgment, jointly and severally, against the Durant Defendants and Defendant Mike Ward for the following:

a.      Actual damages;

b.      Consequential damages;

c.      Disgorgement;

d.      Exemplary damages;

25

App.A 0136

e.    Attorney fees;

f.    Litigation costs and costs of court;

g.    Appointment of a receiver;

h.    Pre-judgment and post-judgment interest; and

i.    All other relief to which Third Party Plaintiffs may be justly entitled, as law or in

equity.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI LLP**

By: /s/ Joseph W. DiCecco
Joseph W. DiCecco
State Bar No. 05812520
jdicecco@grsm.com
John A. Coselli
State Bar No. 24100163
jcoselli@grsm.com
Nicholas A. Ocampo
State Bar No. 24126423
nocampo@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
(713) 490-4879 - Telephone
(713) 961-3938 – Facisimile

**ATTORNEYS FOR THIRD-PARTY
PLAINTIFF, TIFFANY LYNN
SEBASTIAN, INDIVIDUALLY, ON
BEHALF OF THE SEBASTIAN
COMMUNITY ESTATE, AND
DERIVATIVELY ON BEHALF
OF CADET AND THE CLASSIC
DEALERSHIPS**

26

App.A 0137

**SCHEEF & STONE, L.L.P.**

By: */s/ J. Mitchell Little*
        J. Mitchell Little
        State Bar No. 24043788
        mitch.little@solidcounsel.com
        Steven Ovando
        State Bar No. 24128862
        steven.ovando@solidcounsel.com
        2600 Network Blvd., Suite 400
        Frisco, Texas 75034
        (214) 472-2100 Telephone
        (214) 472-2150 Telecopier
        **ATTORNEYS FOR THIRD-PARTY
        PLAINTIFF, TIFFANY LYNN
        SEBASTIAN, INDIVIDUALLY, ON
        BEHALF OF THE SEBASTIAN
        COMMUNITY ESTATE, AND
        DERIVATIVELY ON BEHALF
        OF THE CLASSIC DEALERSHIPS**

        **-And-**

        **BOHREER LAW FIRM PLLC**

By: */s/ E. Michelle Bohreer*
        E. Michelle Bohreer
        State Bar No. 06717100
        Pritesh Soni
        State Bar No. 24063926
        777 Post Oak Blvd., Ste 950
        Houston, Texas 77056
        Telephone: (832) 856-3006
        Facsimile: (832) 856-2891
        Emails:    michelle@bohreerlaw.com
                  pritesh@bohreerlaw.com
        E-service: e-service@bohreerlaw.com
        **ATTORNEYS FOR THIRD-PARTY
        PLAINTIFF, MICHAEL JEFFREY
        SEBASTIAN, INDIVIDUALLY, ON
        BEHALF OF THE SEBASTIAN
        COMMUNITY ESTATE, AND
        DERIVATIVELY ON BEHALF
        OF CADET AND THE CLASSIC
        DEALERSHIPS**

27

App.A 0138

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Lim on behalf of Joseph DiCecco
Bar No. 5812520
llim@grsm.com
Envelope ID: 95574422
Filing Code Description: Amended Filing
Filing Description: First Amended Third-Party Petition
Status as of 12/23/2024 8:40 AM CST

Associated Case Party: TiffanyLynnSebastian

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Haley K.Burnside | | hburnside@fullenweider.com | 12/20/2024 5:37:03 PM | SENT |
| Nicole Ross | | nross@fullenweider.com | 12/20/2024 5:37:03 PM | SENT |
| Eliza Cabrera | | ecabrera@fullenweider.com | 12/20/2024 5:37:03 PM | SENT |
| Bobby  Newman | | bknservice@bobbyknewman.com | 12/20/2024 5:37:03 PM | SENT |
| John Coselli III | | jcoselli@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| Joseph DiCecco | | jdicecco@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| Lisa Lim | | llim@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| Nicholas Ocampo | | nocampo@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| J. MitchellLittle | | mitch.little@solidcounsel.com | 12/20/2024 5:37:03 PM | SENT |
| Steven Ovando | | steven.ovando@solidcounsel.com | 12/20/2024 5:37:03 PM | SENT |

Associated Case Party: MichaelJefferySebastian

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|
| Marjorie Maxwell | 24060239 | eservicemam@dalefamilylaw.com | 12/20/2024 5:37:03 PM | SENT |
| Laura DDale | | eserviceldd@dalefamilylaw.com | 12/20/2024 5:37:03 PM | SENT |
| E. MichelleBohreer | | michelle@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| Pritesh Soni | | pritesh@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| E. Service | | e-service@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|---------------------|--------|

App.A 0139

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Lim on behalf of Joseph DiCecco
Bar No. 5812520
llim@grsm.com
Envelope ID: 95574422
Filing Code Description: Amended Filing
Filing Description: First Amended Third-Party Petition
Status as of 12/23/2024 8:40 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Randall Wilhite | 21476400 | service@fullenweider.com | 12/20/2024 5:37:03 PM | SENT |
| Charlotte Rainwater | 24007889 | service@rainwaterfamilylaw.legal | 12/20/2024 5:37:03 PM | SENT |
| Joseph DiCecco | | jdicecco@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| John Coselli III | | jcoselli@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| Dennis Slate | 24029836 | Service@Slatelaw.com | 12/20/2024 5:37:03 PM | SENT |
| E Service | | e-service@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| E. Michelle Bohreer | | michelle@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| Sharon Taylor | | sharont@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| Lisa Lim | | llim@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| Pritesh Soni | | pritesh@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| Derek DRollins | | DRollins@Shackelford.law | 12/20/2024 5:37:03 PM | SENT |
| Joshua HNortham | | jnortham@shackelford.law | 12/20/2024 5:37:03 PM | SENT |

App.A 0140

E-filed in the Office of the Clerk
for the Business Court of Texas
1/2/2025 5:39 PM
Accepted by: Beverly Crumley
Case Number: 25-BC11A-0001

NO. ___25-BC11A-0001___

| | | |
|---|---|---|
| TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFREY SEBASTIAN, INDIVIDUALLY AND DERIVATELY ON BEHALF OF THE CLASSIC DEALERSHIPS, and 16835 CADET PARTNERS, LLC, | § § § § § § § § | IN THE BUSINESS COURT |
| *Plaintiffs,* | § § | |
| v. | § § § | OF THE STATE OF TEXAS |
| T. BENTLY DURANT, THOMAS R. DURANT, THE DURANT CLASSIC DYNASTY TRUST, MICHAEL A. WARD, 8100 PARTNERS, LTD., 8100 MANAGEMENT LLC, 8705 PARTNERS, LTD., and 8705 MANAGEMENT LLC, | § § § § § § § § § | |
| *Defendants.* | § | ELEVENTH DIVISION |

## DEFENDANTS' NOTICE OF REMOVAL TO TEXAS BUSINESS COURT

TO THE HONORABLE JUDGE OF SAID COURT:

**PLEASE TAKE NOTICE** that T. Bently Durant, Thomas R. Durant, The Durant Classic Dynasty Trust, Michael A. Ward, 8100 Partners, Ltd., 8100 Management LLC, 8705 Partners, Ltd., 8705 Management LLC, Classic Chevrolet Sugar Land, LLC, Classic Chevrolet West Houston, LLC, Classic Elite Buick GMC, Inc., and 16835 Cadet Partners, LLC (sometimes collectively, "Defendants"), pursuant to Texas Rule of Civil Procedure 355, hereby remove the individual and derivative claims asserted by Plaintiffs Tiffany Lynn Sebastian ("Tiffany") and Michael Jeffrey Sebastian ("Jeff") (sometimes collectively, "Plaintiffs" or "Sebastians") against Defendants[1] in Case No. 24-DCV-318087, currently pending in Fort Bend County, 387th Judicial

---

[1] As explained herein, cross-petitions for divorce filed by and between Jeff and Tiffany under the Texas Family Code are also pending in this same action. As such claims are not related to the case and controversy within the Texas


Exhibit 7

District (the "Fort Bend Litigation"), for proceedings before the Eleventh Division of the Texas Business Court. Pursuant to Texas Rule of Civil Procedure 355(e), the Clerk of Court for Fort Bend County, Texas "must immediately transfer the action to the business court."

## BACKGROUND

1.      Defendants T. Bently Durant, Thomas R. Durant (collectively, the "Durants") and The Durant Classic Dynasty Trust (the "Trust") (collectively with the Durants, "Classic") are the principals of the Classic dealership group, with automobile dealerships located throughout the Southwest U.S. Plaintiff Jeff and his wife Tiffany formerly managed Classic Chevrolet Sugar Land, LLC ("Classic Sugar Land"), Classic Chevrolet West Houston, LLC ("Classic West Houston"), and Classic Elite Buick GMC, Inc. ("Classic Buick GMC") (collectively, the "Classic Dealerships"), which dealerships are located in the greater Houston area. During his tenure, Jeff was also given a conditional equity interest in the Classic Dealerships.

2.      On or about July 2024, information was brought to Classic's attention that raised significant red flags regarding Jeff's ability to continue to effectively operate the Classic Dealerships. On or about July 18, 2024, Classic Sugar Land suspended Jeff from his position as officer and general manager, and appointed Tiffany as temporary general manager. Classic West Houston and Classic Buick GMC later took the same corrective action.

3.      On or about September 2024, Classic removed Tiffany from her position as temporary general manager of the Classic Dealerships due to her failure to correct improper business practices that she and Jeff had implemented without Classic's knowledge. At that time, Classic replaced Tiffany as temporary general manager with Defendant James Michael Ward ("Ward").

---

Business Court's jurisdiction, such claims are not within the supplemental jurisdiction of the Texas Business Court. TEX. GOV'T CODE § 25A.004(f). Alternatively, Defendants do not agree to submit the determination of such claims to the Texas Business Court. *Id.*

App.A 0142

4.	On July 12, 2024, Tiffany initiated the Fort Bend Litigation by filing an Original Petition for Divorce from Jeff. On September 18, 2024, Jeff filed a "Counterpetition for Divorce" naming the Classic Dealerships and 16835 Cadet Partners, LLC, as "Co-Respondents" (the "Counterpetition"). See Exhibit "A." Notably, the Counterpetition asserted no claims against the "Co-Respondents" or any other third parties, and in fact, asserted that Tiffany was responsible for Jeff's removal as officer and general manager of the Classic Dealerships. On December 3, 2024, the Sebastians jointly filed a Third-Party Petition in the Fort Bend Litigation, for the first time naming the Durants and the Trust as Third-Party Defendants, and naming 8100 Partners, Ltd., and 8100 Management, LLC (the "8100 Defendants") as "Nominal Third-Parties." See Exhibit "B." The Sebastians subsequently amended, filing a First Amended Third Party Petition on December 20, 2024, thereby joining 8100 Defendants, 8705 Partners, Ltd., 8705 Management, LLC, and Ward for the first time as Third-Party Defendants (the "Petition"). See Exhibit "C."

5.	The Petition sets forth a number of claims against Defendants, including alleged breaches of organizational documents, conversion of corporate assets, violations of the Texas Business & Commerce Code, and breaches of fiduciary duty, including the alleged orchestration of a conspiracy to "unjustifiably expel the Sebastians from [16835 Cadet Partners, Ltd.] and the Classic Dealerships in contravention of the entities governing agreements and applicable law." See Ex. C, ¶ 29. The Sebastians also request a declaratory judgment pertaining to their interests in the Classic Dealerships pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code and have requested the appointment of a receiver to assume control of the financial assets of the Classic Dealerships pursuant to the Texas Business Organizations Code.

## BASIS FOR REMOVAL

6.	The Sebastians have not agreed to the removal of their claims against Defendants. This

App.A 0143

Notice of Removal is thus filed as opposed pursuant to Texas Rule of Civil Procedure 355(c)(2) and Section 25A.006 of the Texas Government Code. The Sebastians filed their first third-party action on December 3, 2024. As far as the undersigned counsel are aware, and as of the filing of this Notice of Removal, the Sebastians have not served any of the Defendants with the third-party petitions. Accordingly, this Notice of Removal is timely filed pursuant to Rule 355(c)(2).

7.      The Texas Business Court has jurisdiction over the claims in the Petition pursuant to Section 25A.004 of the Texas Government Code because the amount in controversy, exclusive of interest, statutory damages, exemplary damages, penalties, attorney's fees, and court costs, exceeds $5,000,000, and the operative claims involve one or more of the following:

(a) a derivative proceeding;
(b) relate to the governance, governing documents, or internal affairs of Texas businesses;
(c) by an organization or its owner against an organization's owner, controlling person, or managerial official, alleging acts or omissions in their capacity as owner, controlling person, or managerial official;
(d) allege breaches of fiduciary duties by owners, controlling persons, or managerial officials owed to an organization or its owners; and
(e) arise under the Texas Business Organizations Code.

See TEX. GOV'T CODE § 24.004(b)(1), (2), (4), (5), (7); cf. Ex. C, ¶¶ 34-84 (Plaintiffs' operative petition setting forth numerous causes of action intertwined with the foregoing bases for this Court's jurisdiction.).

8.      Venue is proper in Fort Bend County because it is where all or a substantial part of the events or omissions giving rise to the Sebastians' claims against Defendants occurred. Venue is thus proper in the Eleventh Division of the Texas Business Court because venue is proper in Fort Bend County, Texas, which is a county in the Eleventh Operating Division of the Texas Business Court.

9.      Pursuant to Texas Rule of Civil Procedure 355(b)(3), a copy of the Fort Bend District

App.A 0144

Court's docket sheet and all other process, pleadings, and orders <u>that Defendants have been able to obtain in the Fort Bend Litigation</u> as of the time of this filing are attached hereto as <u>Exhibit "D."</u> The pleadings containing the claims and matters to be removed are detailed in the third-party pleadings provided herewith as <u>Exhibits "B" and "C."</u> Defendants are in the process of obtaining the other filings, and will provide those to this Court upon receipt.

10. Pursuant to Local Rule 8, according to the Fort Bend District Court's docket sheet, a hearing on Plaintiffs' Application for Receiver and Action for Audit has been set or requested in the Fort Bend Litigation for February 24, 2024.

## PRESERVATION OF RIGHTS AND DEFENSES

11. The filing of this Notice is not subject to the due order of pleading rule and does not constitute an appearance or waive a party's right to challenge personal jurisdiction. TEX. GOV'T CODE § 25A.006(i), (j); TEX. R. CIV. P. 355(d). The filing of this Notice of Removal is subject to, and without waiver of, any such defenses and objections.

## CONCLUSION

12. WHEREFORE, Defendants respectfully give notice that the above-captioned civil action pending in the 387th Judicial District Court, Fort Bend County, Texas, is hereby removed to the Texas Business Court pursuant to Texas Rules of Civil Procedure 355 and 356, and Chapter 25A of the Texas Government Code.

Respectfully submitted,

App.A 0145

SHACKELFORD, MCKINLEY & NORTON, LLP

By:___ /s/ Derek D. Rollins_____
Derek D. Rollins
State Bar No. 24029803
Lucas Peterson
State Bar No. 24121469

9201 N. Central Expressway, Fourth Floor
Dallas, Texas 75231
T: 214.780.1400 | F: 214.780.1401
drollins@shackelford.law
lpeterson@shackelford.law

Timothy D. Zeiger
State Bar No 22255950
tzeiger@shackelford.law
2600 Via Fortuna, Suite 150
Austin, Texas 78746
Phone: (512) 469-0900
Fax: (512) 469-0930

**ATTORNEYS FOR DEFENDANTS
T. BENTLY DURANT, THOMAS R. DURANT,
THE DURANT CLASSIC DYNASTY TRUST,
MICHAEL A. WARD, 8100 PARTNERS, LTD.,
8100, MANAGEMENT LLC, 8705 PARTNERS,
LTD., - 8705 MANAGEMENT LLC, CLASSIC
CHEVROLET SUGAR LAND, LLC, CLASSIC
CHEVROLET WEST HOUSTON, LLC,
CLASSIC ELITE BUICK GMC, INC., AND
16835 CADET PARTNERS, LLC.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 2, 2025, a true and correct copy of the above and foregoing was served in accordance with Rule 21a on all counsel of record.

/s/ Derek D. Rollins_____
Derek D. Rollins

App.A 0146

# EXHIBIT A

Filed
9/18/2024 4:47 PM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Xenia Carbajal

NO. 24-DCV-318087

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | §<br>§<br>§ | IN THE DISTRICT COURT |
| TIFFANY LYNN SEBASTIAN<br>AND<br>MICHAEL JEFFREY SEBASTIAN | §<br>§<br>§<br>§<br>§ | |
| AND IN THE INTEREST OF<br>███████████ A CHILD | §<br>§<br>§<br>§ | 387TH JUDICIAL DISTRICT |
| CLASSIC CHEVROLET SUGAR LAND, LLC,<br>CLASSIC CHEVROLET WEST HOUSTON LLC,<br>CLASSIC ELITE BUICK GMC, INC,<br>16835 CADET PARTNERS, LLC,<br>*Co-Respondents* | §<br>§<br>§<br>§<br>§<br>§ | FORT BEND COUNTY, TEXAS |

## COUNTERPETITION FOR DIVORCE

### 1. Discovery Level

Discovery in this case is intended to be conducted under level 2 of rule 190 of the Texas Rules of Civil Procedure.

### 2. Objection to Assignment of Case to Associate Judge

Counterpetitioner objects to the assignment of this matter to an associate judge for a trial on the merits or presiding at a jury trial.

### 3. Parties

This suit is brought by MICHAEL JEFFREY SEBASTIAN, Counterpetitioner. The last three numbers of MICHAEL JEFFREY SEBASTIAN's driver's license number are ███ The last three numbers of MICHAEL JEFFREY SEBASTIAN's Social Security number are ███

TIFFANY LYNN SEBASTIAN is Petitioner/Counterrespondent.

CLASSIC CHEVROLET SUGAR LAND, LLC is a Co-Respondent.

CLASSIC CHEVROLET WEST HOUSTON, LLC is a Co-Respondent.

CLASSIC ELITE BUICK GMC, INC is a Co-Respondent.

16835 CADET PARTNERS, LLC is a Co-Respondent.

Co-Respondents CLASSIC CHEVROLET SUGAR LAND, LLC, CLASSIC CHEVROLET WEST HOUSTON, LLC, CLASSIC ELITE BUICK GMC, INC and 16835 CADET PARTNERS, LLC are collectively referred to as the "Classic Dealerships")

App.A 0147

## 4. Domicile

Counterpetitioner has been a domiciliary of Texas for the preceding six-month period and a resident of this county for the preceding ninety-day period.

## 5. Service

Tiffany Lynn Sebastian is the Petitioner/Counterrespondent in this divorce action. Service of this document may be had in accordance with Rule 21a, Texas Rules of Civil Procedure, by serving her attorneys of record, Bobby K. Newman, 3355 West Alabama, Suite 444, Houston, Texas 77098, and Randall B. Wilhite, 515 Post Oak Blvd, Suite 800, Houston, Texas 77027, via e-service as set forth below:

Classic Chevrolet Sugar Land, LLC is a limited liability company in Texas and can be served with process through its registered agent, Thomas R. Durant, 1101 West State Highway 114, Grapevine, Texas 76051.

Classic Chevrolet West Houston, LLC, is a limited liability company in Texas and can be served with process through its registered agent, Thomas R. Durant, 1101 West State Highway 114, Grapevine, Texas 76051.

Classic Elite Buick GMC, Inc is a Texas corporation and can be served with process through its registered agent, Thomas R. Durant, 1101 West State Highway 114, Grapevine, Texas 76051.

16835 Cadet Partners, LLC is a limited liability company in Texas and can be served with process through its registered agent, Thomas R. Durant, 1101 West State Highway 114, Grapevine, Texas 76051.

## 6. Protective Order Statement

No protective order under title 4 of the Texas Family Code, protective order under subchapter A of chapter 7B of the Texas Code of Criminal Procedure, or order for emergency protection under Article 17.292 of the Texas Code of Criminal Procedure is in effect in regard to a party to this suit and no application for any such order is pending.

## 7. Dates of Marriage and Separation

The parties were married on or about July 4, 1999, and ceased to live together as spouses.

## 8. Grounds for Divorce

The marriage has become insupportable because of discord or conflict of personalities between Counterpetitioner and Counterrespondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation.

Petitioner/Counterrespondent is guilty of cruel treatment toward Counterpetitioner/Respondent of a nature that renders further living together insupportable.

App.A 0148

## 9. Children of the Marriage

At the time of this filing, there is no child under eighteen years of age or otherwise entitled to support who was born or adopted of this marriage, and none is expected as the child who was initially before the court is not over the age of eighteen and has graduated from high school.

## 10. Division of Community Property

MICHAEL JEFFREY SEBASTIAN requests the Court to divide the estate of MICHAEL JEFFREY SEBASTIAN and TIFFANY LYNN SEBASTIAN in a manner that the Court deems just and right, as provided by law.

MICHAEL JEFFREY SEBASTIAN should be awarded a disproportionate share of the parties' estate for the following reasons, including but not limited to:

   a)  fault in the breakup of the marriage;
   b)  community indebtedness and liabilities;
   c)  tax consequences of the division of property;
   d)  earning power, business opportunities, capacities, and abilities of the spouses;
   e)  nature of the property involved in the division;
   f)  wasting of community assets by his spouse;
   g)  attorney's fees to be paid; and
   h)  constructive fraud committed by a spouse.

## 11. Breach of Fiduciary Duty

Petitioner, TIFFANY LYNN SEBASTIAN, as Respondent's spouse, had a fiduciary relationship with and a fiduciary duty to Respondent, MICHAEL JEFFREY SEBASTIAN. As a result of their fiduciary relationship, Respondent reposed a special confidence in Petitioner, and Petitioner had a duty in equity and good conscience to act in good faith and with due regard for Respondent's interests.

TIFFANY LYNN SEBASTIAN, in violation of her fiduciary duty to Respondent, has breached her duty to Respondent on or around June 2024 and continuing thereafter, TIFFANY LYNN SEBASTIAN, without justification or excuse, willfully and intentionally breached her fiduciary duty by interfering with an existing contract between MICHAEL JEFFREY SEBASTIAN and the Classic Dealerships, including causing a triggering event under a Buy-Sell Agreement with the Classic Dealerships that affects the Community's business interest in the Classic Dealerships .

This action proximately resulted in damages to MICHAEL JEFFREY SEBASTIAN for which MICHAEL JEFFREY SEBASTIAN now seeks relief. Those damages include loss of compensation, loss of profits, loss of equity, mental anguish, and loss of reputation.

TIFFANY LYNN SEBASTIAN acted with malice in engaging in this conduct, thus entitling MICHAEL JEFFREY SEBASTIAN to exemplary damages within the jurisdictional limits of this Court.

MICHAEL JEFFREY SEBASTIAN prays for judgment against TIFFANY LYNN SEBASTIAN in a sum within the jurisdictional limits of this Court for his actual damages as alleged, for exemplary

App.A 0149

damages, for prejudgment and postjudgment interest as allowed by law, for costs of court, and for general relief.

## 12. Tortious Interference with Business Relations

On or around June 2024 and continuing thereafter, TIFFANY LYNN SEBASTIAN, without privilege or justification, engaged in conduct that intentionally and willfully interfered with the business relationship of MICHAEL JEFFREY SEBASTIAN and the Classic Dealerships. At the time that conduct occurred, MICHAEL JEFFREY SEBASTIAN had a reasonable expectation of a continuing business relationship with the Classic Dealerships and TIFFANY LYNN SEBASTIAN knew of that reasonable expectation. TIFFANY LYNN SEBASTIAN's interference with the business relationship induced or caused the termination of this expectancy, including causing a triggering event under a Buy-Sell Agreement with the Classic Dealerships that affects the Community's business interest in the Classic Dealerships.

This action proximately resulted in damages to MICHAEL JEFFREY SEBASTIAN for which MICHAEL JEFFREY SEBASTIAN now seeks relief. Those damages include loss of compensation, loss of profits, loss of equity, mental anguish, and loss of reputation.

TIFFANY LYNN SEBASTIAN acted with malice in engaging in this conduct, thus entitling MICHAEL JEFFREY SEBASTIAN to exemplary damages within the jurisdictional limits of this Court.

MICHAEL JEFFREY SEBASTIAN prays for judgment against TIFFANY LYNN SEBASTIAN in a sum within the jurisdictional limits of this Court for his actual damages as alleged, for exemplary damages, for prejudgment and postjudgment interest as allowed by law, for costs of court, and for general relief.

## 13. Wrongful Interference with an Existing Contract

On or around June 2024 and continuing thereafter, TIFFANY LYNN SEBASTIAN, without justification or excuse, willfully and intentionally interfered with an existing contract between MICHAEL JEFFREY SEBASTIAN and the Classic Dealerships.

This action proximately resulted in damages to MICHAEL JEFFREY SEBASTIAN for which MICHAEL JEFFREY SEBASTIAN now seeks relief. Those damages include loss of compensation, loss of profits, loss of equity, mental anguish, and loss of reputation, as well as loss of value to the Community caused by TIFFANY LYNN SEBASTIAN's conduct resulting in a triggering event under the Buy-Sell between the Classic Dealerships and the Community well before any expected sale of such interest.

TIFFANY LYNN SEBASTIAN acted with malice in engaging in this conduct, thus entitling MICHAEL JEFFREY SEBASTIAN to exemplary damages within the jurisdictional limits of this Court.

MICHAEL JEFFREY SEBASTIAN prays for judgment against TIFFANY LYNN SEBASTIAN in a sum within the jurisdictional limits of this Court for his actual damages as alleged, for exemplary

App.A 0150

damages, for prejudgment and postjudgment interest as allowed by law, for costs of court, and for general relief.

## 14. Separate Property

MICHAEL JEFFREY SEBASTIAN owns certain separate property that is not part of the community estate of the parties, and MICHAEL JEFFREY SEBASTIAN requests the Court to confirm that separate property as MICHAEL JEFFREY SEBASTIAN's separate property and estate.

## 15. Standing Order

Counterpetitioner hereby provides notice to Counterrespondent that effective October 11, 2023, the Fort Bend County District Courts have issued the *Standing Order Regarding Temporary Injunctions for the 328th, 387th, and 505th District Courts,* of which Standing Order applies in every divorce and every suit affecting the parent-child relationship filed in Fort Bend County, Texas.

A true and correct copy of this Standing Order was attached to the Original Petition for Divorce filed by TIFFANY LYNN SEBASTIAN on July 11, 2024, as "Exhibit P-1" and "Exhibit A", both of which are attached again to this Counterpetition for Divorce and incorporated herein by reference for all intents and purposes.

## 16. Request for Temporary Orders Concerning Use of Property

MICHAEL JEFFREY SEBASTIAN requests the Court, after notice and hearing, for the preservation of the property and protection of the parties, to make temporary orders and issue any appropriate temporary injunctions respecting the temporary use of the parties' property as deemed necessary and equitable, including but not limited to the following:

Awarding MICHAEL JEFFREY SEBASTIAN the exclusive use and possession of the residence located at 25510 and 25702 Zion Lutheran Cemetery Road, Tomball, Texas 77375, as well as the furniture, furnishings, and other personal property at that residence, while this case is pending, and enjoining TIFFANY LYNN SEBASTIAN from entering or remaining on the premises of the residence and exercising possession or control of any of this personal property, except as authorized by order of this Court.

Awarding MICHAEL JEFFREY SEBASTIAN exclusive use and control of any vehicle titled solely in his name or in his possession and enjoining TIFFANY LYNN SEBASTIAN from entering, operating, or exercising control over any vehicle titled solely in his name or in his possession.

Awarding MICHAEL JEFFREY SEBASTIAN exclusive use and control of the yellow Yamaha golf cart currently garaged at 5002 Shiloh Lake Dr., Richmond, Texas 77407, and enjoining TIFFANY LYNN SEBASTIAN from entering, operating, or exercising control over the same.

Awarding MICHAEL JEFFREY SEBASTIAN exclusive management and control of the parties' financial accounts but limited by the standing injunctions of this Court.

Awarding MICHAEL JEFFREY SEBASTIAN exclusive management and control of the business interests of the parties in the Classic Dealerships

App.A 0151

Awarding MICHAEL JEFFREY SEBASTIAN the exclusive use of all credit cards held solely in his name.

## 17. Attorney's Fees, Expenses, Costs, and Interest

It was necessary for MICHAEL JEFFREY SEBASTIAN to secure the services of LAURA D. DALE, a licensed attorney, and E. Michelle Bohreer, a licensed attorney, to prepare and prosecute this suit. To effect an equitable division of the estate of the parties and as a part of the division, judgment for attorney's fees, expenses, and costs through trial and appeal should be granted against Respondent and in favor of MICHAEL JEFFREY SEBASTIAN for the use and benefit of MICHAEL JEFFREY SEBASTIAN's attorney; or, in the alternative, MICHAEL JEFFREY SEBASTIAN requests that reasonable attorney's fees, expenses, and costs through trial and appeal be taxed as costs and be ordered paid directly to MICHAEL JEFFREY SEBASTIAN 's attorney, who may enforce the order in the attorney's own name. MICHAEL JEFFREY SEBASTIAN requests postjudgment interest as allowed by law.

## 18. Prayer

Counterpetitioner MICHAEL JEFFREY SEBASTIAN prays that citation and notice issue as required by law and that the Court grant a divorce and all other relief requested in this petition.

Counterpetitioner MICHAEL JEFFREY SEBASTIAN prays for attorney's fees, expenses, and costs as requested above.

Counterpetitioner MICHAEL JEFFREY SEBASTIAN prays for general relief and all other relief to which Counterpetitioner is entitled based on the facts or pleadings of this case.

Respectfully submitted,

LAURA DALE & ASSOCIATES, P.C.

/s/ Laura D. Dale
LAURA D. DALE (LEAD COUNSEL)
State Bar No. 24030270
eserviceldd@dalefamilylaw.com (Eservice only)
MARJORIE A. MAXWELL
State Bar No. 24060239
eservicemam@dalefamilylaw.com (Eservice only)
1800 St. James Place, Suite 620
Houston, Texas 77056
Telephone: (713) 600-1717
Facsimile: (713) 600-1718
Attorneys for MICHAEL JEFFREY SEBASTIAN

App.A 0152

**BOHREER LAW FIRM PLLC**

_[signature: E. Michelle Bohreer]_

E. Michelle Bohreer
State Bar No. 06717100
Pritesh Soni
State Bar No. 24063926
777 Post Oak Blvd., Ste 950
Houston, Texas 77056
Telephone: (832) 856-3006
Facsimile: (832) 856-2891
Emails: michelle@bohreerlaw.com
          pritesh@bohreerlaw.com
       E-service: e-service@bohreerlaw.com

## CERTIFICATE OF SERVICE

I certify that a true copy of this Counterpetition for Divorce was served in accordance with rule 21a of the Texas Rules of Civil Procedure on the following on September 18, 2024:

Bobby K. Newman
Bobby K. Newman, P.C.
3355 W. Alabama, Ste 444
Houston, Texas 77098
**VIA E-SERVICE: bknservice@bobbyknewman.com**

Randall B, Wilhite
Fullenwider Wilhite, LLP
4265 San Felipe Drive, Suite 1400
Houston TX 77027
**VIA E-SERVICE: rwilhite@fullenweider.com**

            /s/ Laura D. Dale
            LAURA D. DALE
            Attorney for MICHAEL JEFFREY SEBASTIAN

App.A 0153

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Martha Calderon on behalf of Laura Dale
Bar No. 24030270
mcalderon@dalefamilylaw.com
Envelope ID: 92187898
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Counterpetition for Divorce
Status as of 9/19/2024 8:47 AM CST

Associated Case Party: TiffanyLynnSebastian

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bobby Newman | | bknservice@bobbyknewman.com | 9/18/2024 4:47:23 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Randall Wilhite | 21476400 | service@fullenweider.com | 9/18/2024 4:47:23 PM | SENT |

App.A 0154

Filed
12/3/2024 6:31 PM
**Beverley McGrow Walker**
District Clerk
Fort Bend County, Texas
Brette Sansom

# EXHIBIT B

NO. 24-DCV-318087

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF<br><br>TIFFANY LYNN SEBASTIAN<br>AND<br>MICHAEL JEFFREY SEBASTIAN<br><br>AND IN THE INTEREST OF<br><br>████████████████, A CHILD | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| MICHAEL JEFFREY SEBASTIAN and<br>TIFFANY LYNN SEBASTIAN,<br>INDIVIDUALLY, ON BEHALF OF THE<br>SEBASTIAN COMMUNITY ESTATE,<br>AND DERIVATIVELY ON BEHALF OF<br>THE CLASSIC DEALERSHIPS, and<br>16835 CADET PARTNERS, LLC<br><br>*Third-Party Plaintiff,*<br><br>v.<br><br>T. BENTLY DURANT, THOMAS R.<br>DURANT, and THE DURANT CLASSIC<br>DYNASTY TRUST<br>*Third-Party Defendants,*<br><br>8100 PARTNERS, LTD., AND<br>8100 MANAGEMENT LLC<br>*Nominal Third-Parties.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 387TH JUDICIAL DISTRICT<br><br><br><br><br><br>FORT BEND COUNTY, TEXAS |

## THIRD-PARTY PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Michael Jeffrey Sebastian, Tiffany Lynn Sebastian, the Classic Dealerships

(as defined below), and 16835 Cadet Partners, LLC (collectively, "Third Party Plaintiffs") and file

this Third-Party Petition. In support thereof, Third-Party Plaintiffs would respectfully show unto

this Court the following:

App.A 0155

# I.
## DISCOVERY PLAN

1.      Third-Party Plaintiffs intend to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.

# II.
## CLAIM FOR RELIEF

2.      Third-Party Plaintiffs seek monetary relief of over $1,000,000 and non-monetary relief under Texas Rule of Civil Procedure 47.

# III.
## PARTIES

### *Third-Party Plaintiffs*

3.      This suit is brought by Michael Jeffrey Sebastian ("Jeff Sebastian"), individually, and as a member of the community estate of Jeff Sebastian and Tiffany Sebastian (the "Sebastian Estate"). Jeff Sebastian is a natural person who resides in Fort Bend County, Texas, and may be served through the undersigned counsel.

4.      This suit is also brought by Tiffany Sebastian ("Tiffany Sebastian"), individually, and as a member of the Sebastian Estate. Tiffany Sebastian is a natural person who resides in Fort Bend County, Texas, and may be served through the undersigned counsel. Tiffany Sebastian and Jeff Sebastian are sometimes referred to collectively herein as "the Sebastians."

5.      This suit is additionally brought by the Sebastians derivatively, on behalf of the following entities (collectively, the "Classic Dealerships") against the Third-Party Defendants named herein.

   a.      CLASSIC CHEVROLET SUGAR LAND, LLC, a Texas limited liability company whose principal office is located at 1101 State Highway 114, Grapevine, Texas

2

App.A 0156

76099.

b. CLASSIC CHEVROLET WEST HOUSTON, LLC, a Texas limited liability company whose principal office is located at 1101 State Highway 114, Grapevine, Texas 76099.

c. CLASSIC ELITE BUICK GMC, INC., a Texas corporation whose principal office is located at 1101 State Highway 114, Grapevine, Texas 76099.

6. This suit is additionally brought by the Sebastians derivatively, on behalf of 16835 Cadet Partners, LLC ("Cadet"), a Texas limited liability company whose principal office is located at 1101 State Highway 114, Grapevine, Texas 76099.

***Third-Party Defendants***

7. T. Bently Durant ("Bently Durant") is Third-Party Defendant herein and a natural person who is a resident of Tarrant County, Texas. Bently Durant may be served at 1101 State Highway 114, Grapevine, Texas 76099, or wherever he may be found.

8. Thomas R. Durant ("Tom Durant") is a Third-Party Defendant herein and a natural person who is a resident of Tarrant County, Texas. Bently Durant may be served at 1101 State Highway 114, Grapevine, Texas 76099, or wherever he may be found.

9. The Durant Classic Dynasty Trust ("Dynasty Trust") is a Third-Party Defendant and a Texas trust. The Dynasty Trust may be served with process by serving its Trustee, Marin "Mark" Escamilla, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever Trustee may be found. Bently Durant, Tom Durant, and the Dynasty Trust are sometimes collectively referred to herein as "the Durant Defendants."

***Nominal Third Parties***

3

App.A 0157

10.   8100 Partners, LTD. ("8100 Partners") is a Nominal Third Party and a Texas limited partnership. 8100 Partners can be served through its registered agent, Thomas R. Durant, or any officer or director of 8100 Partners, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found.

11.   8100 Management LLC ("8100 Management") is a Nominal Third Party and a Texas limited liability company. 8100 Management can be served through its registered agent, Thomas R. Durant, or any officer or director of 8100 Management, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found.

## IV.
## JURISDICTION AND VENUE

12.   The Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

13.   The Court has personal jurisdiction over all parties to the litigation because they are individual residents of Texas, or are legal entities organized and exist under the laws of the state of Texas that are registered to and conduct business in Texas.

14.   Venue is property in Fort Bend County, Texas pursuant to Texas Civil Practice and Remedies Code §§ 15.002 and 15.005, as it is the county in which the underlying divorce is pending and it is where all or a substantial part of the events or omissions giving rise to the claim occurred.

## V.
## FACTUAL BACKGROUND

15.   Jeff and Tiffany Sebastian are spouses who have been married for more than twenty years prior to the filing of this divorce proceeding. They met one another in Houston in 1998 at a time when they both were launching careers in the local automotive industry. In fact, Tiffany started

4

App.A 0158

work at a small used car dealership on the west side of town that summer and Jeff joined her shortly thereafter.

16.    By the following year, the Sebastians were married and had worked hard to ensure that, separately and together, they were a recognized force in the automotive sales industry. As the decades subsequently passed, they continued to develop a massive talent for sales, management, and economics, and created a vast professional network and strong reputations for driving growth and profit.

17.    In 2016, that dedication and ambition led Jeff Sebastian to accept a position as General Manager of Classic Chevrolet Sugar Land. At that time, the Sugar Land dealership was principally owned by Defendant Tom Durant and suffered from poor performance under current management.[1] Accordingly, the Sebastians identified it as an opportunity to further prove their effectiveness in the Houston market with the anticipation that such efforts would generate an opportunity for partnership. With that goal in mind, the Sebastians set to work (Jeff serving as the name General Manager and Tiffany working directly alongside him) and ultimately caused Classic Chevrolet Sugar Land to tectonically shift from a struggling enterprise to a dominant industry presence. In fact, after only a few short years of exponential growth under the Sebastians' management, Classic Chevrolet Sugar Land became one of the top performing Chevrolet dealers in the entire country.

18.    Based on that success, the Sebastians were invited to become owners of Classic Chevrolet Sugar Land, LLC and acquired a Membership Interest in the company in 2018.[2] (The Class A

_____

[1] The other Member of Classic Chevrolet Sugar Land, LLC were/are Defendants Bently Durant and the Durant Classic Dynasty Trust.

[2] On January 1, 2018, Jeff Sebastian (and the Sebastian Estate) purchased a 30% Class A Membership Interest, and a 29.7% Class B Membership Interest, in Classic Chevrolet Sugar Land, LLC.

5

App.A 0159

Members became Jeff Sebastian, Defendant Tom Durant, and Defendant Bently Durant, and the Class B Members became Jeff Sebastian, Defendant Dynasty Trust, Defendant Tom Durant, and Defendant Bently Durant. Meanwhile, both Sebastians continued to operate the dealership, with Jeff being elevated to managing partner and Dealer-Operator.)

19.     The Sebastians also located, spear-headed, and became partners with the Durant Defendants in the purchase and management of Classic Chevrolet West Houston, LLC in 2019.[3] At that time, Classic Chevrolet West Houston was an AutoNation dealership in total collapse. However, given the Sebastians' tireless pursuit of efficiency and growth, it quickly became a Top 10 performing Chevrolet dealer in Houston. (The Class A Members became Jeff Sebastian and Defendant Tom Durant, and the Class B Members became Jeff Sebastian, Defendant Tom Durant, and Defendant Dynasty Trust. Meanwhile, both Sebastians operated the dealership, with Tiffany Sebastian serving as Executive Manager until 2023—when she became Executive Manager of Classic Elite Buick GMC, Inc.—and Jeff Sebastian serving as Dealer-Operator.)

20.     The Sebastians were also integral in the purchase and management of Classic Elite Buick GMC, Inc., another Houston dealership, in 2023.[4] And, like the other dealerships the Sebastians operate, the GMC store became a Top performing Houston GMC dealer. (The Class A Shareholders became Jeff Sebastian and Defendant Tom Durant, and the Class B Shareholders became Jeff Sebastian, Tiffany Sebastian, and Defendant Dynasty Trust. Meanwhile, both Sebastians operated the dealership, with Tiffany Sebastian serving as Executive Manager and Jeff Sebastian served as Dealer-Operator.)

---

[3] On November 29, 2019, Jeff Sebastian (and the Sebastian Estate) purchased a 51% Class A Membership Interest, and a 39.49% Class B Membership Interest, in Classic Chevrolet West Houston, LLC.
[4] On January 26, 2023, Jeff Sebastian (and the Sebastian Estate) purchased a 51% Class A Membership Interest, and a 19.49% Class B Membership Interest, in Classic Elite Buick GMC, Inc.

6

App.A 0160

21.     On May 1, 2023, Classic Elite Buick GMC, Inc. entered into a Lease Agreement ("Lease") with 16835 Cadet Partners, LLC which is the owner of the real property upon which the Classic Dealership operates at 16835 Katy Freeway. (The Class A Shareholders of Cadet are Jeff Sebastian and Defendant Tom Durant, and the Class B Shareholders of Cadet are Jeff Sebastian, Tiffany Sebastian, and Defendant Dynasty Trust).

22.     By 2024, the Sebastians were far and away the most successful and profitable partners within the whole Durant Organization. The Sebastians and the dealerships they operated received numerous prestigious accolades and awards from the manufacturers and the Durant Organization. Neither Jeff nor Tiffany Sebastian had ever received a warning or as much as a write up. In fact, the Sebastians were commonly recognized as one of the best partners within the Durant Organization. Indeed, the Sebastians co-owned and operated a total of three dealerships—that were staffed with approximately 600 trained employees, preferred by the manufacturers, and generating incredible profits—as well as the Cadet property. (The Sebastians' interest in the Classic Dealerships, 16835 Cadet Partners and 8100 Partners represent the largest community assets in the pending divorce and mandate protection against reductions is fair market value).

23.     Unfortunately, however, the Sebastians soon learned that great success can also generate greed.

24.     In this case, the Durant Defendants began to work with one another to expel the Sebastians from Cadet and the Classic Dealerships in contravention of their governing agreements and applicable law. The initiative actually developed into a complete plan to strip the Sebastians of 100% of their Member/Shareholder Interests in Cadet and the Classic Dealerships without payment of just compensation therefore, in a scheme to divert millions of dollars in equity and

7

profits owed to the Sebastians over to the Durant Defendants. Moreover, the Durant Defendants actually began to implement their plan in the summer of 2024.

25. By way of example, the Durant Defendants began reaching out to the Sebastians individually with the intent of separating and dividing the couple and increasing conflict among them. In fact, the Durant Defendants relocated Mike Ward, a general manager, from Dallas to Houston and planted him in the Classic Dealerships with a mission of creating division, dissension, and relaying personal information about the Sebastians back to the Durant Defendants. The Durant Defendants then utilized that information and division to disparage the Sebastians' character and capabilities, both publically and privately, endeavoring to erode/diminish the Sebastians' control of the Classic Dealerships. The defendants also chose to execute expensive and unnecessary service contracts, cut ties with local vendors, fire experienced staff members, hire new staff members, restructure operations, and re-allocate time and resources to wasteful projects.

26. Eventually, the Durant Defendants unceremoniously purported to fire Jeff Sebastian on July 22, 2024, followed by Tiffany Sebastian on September 13, 2024, and replaced them with select loyalists, including the same individual that spear-headed the dissension, Mike Ward. The Durant Defendants then completely ignored the Sebastians' management control and immediately caused the Sebastians' access to all Cadet and Classic Dealership information to be severed (Jeff Sebastian lost access on July 22, 2024)—including access to all books and records, account information, budgets, inventory and sales data, payroll records, and emails—and Durant Defendants refused to make required payments and approved distributions to the Sebastians as owners. Instead, the Durant Defendants quickly began diverting millions of dollars in distributable revenues and rents back to themselves, including via by pouring money into needless capital improvements at the Classic Dealership locations (several of which properties are majority-owned

8

App.A 0162

by the Durant Defendants and leased back to the Classic Dealerships on a Net-Net-Net basis). These illegal and self-interested measures constitute an effort, in part, to cause a short-term devaluation of the Classic Dealerships and to diminish the Sebastians' contractually anticipated financial liquidity in order to leverage their cooperation. On numerous occasions, Jeff Sebastian asked to speak directly with Tom Durant, but was told by Bently Durant, that in no way shape or form would he be allowed to do so. Jeff also pleaded for access to his emails, communication threads, and basic financial information. However, on each occasion, he was denied and told that the Durant Defendants wanted him to stay away from the business and the dealerships.

27. Now, the Durant Defendants have demanded that the Sebastians relinquish 100% of their Membership/Shareholder Interests in Cadet, 8100 Partners and all three Classic Dealerships for a pithy fraction of their true value in violation of a myriad of contractual obligations, including applicable company/operating agreements, and a Buy-Sell Agreement the parties executed dated effective May 1, 2023. Therefore, the Sebastians, Cadet, and the Classic Dealerships seek relief therefrom, including via the issuance of a declaratory judgment.

## VI.
### CAUSES OF ACTION

### Count 1 - Breach of Contract

28. All of the preceding paragraphs are incorporated herein as though fully set forth below.

### a. The Management Agreements

29. The Durant Defendants and the Sebastians entered into a number of valid and enforceable contracts that govern the management and operation of the Classic Dealerships. Those agreements include the Limited Liability Company Agreement for Classic Chevrolet Sugar Land, LLC ("Sugar Land Agreement"), the Company Agreement of Classic Chevrolet West Houston, LLC ("West

9

App.A 0163

Houston Agreement"), the Bylaws of Classic Buick GMC of Houston, Inc. ("GMC Bylaws"), and the Limited Liability Company Agreement for 16835 Cadet Partners, LLC ("Cadet Agreement") (collectively, the "Management Agreements"). However, the Durant Defendants proceeded to materially breach terms of those Management Agreements at great cost to the Sebastians, Cadet, and the Classic Dealerships.

30. Particularly, and without limitation, the Durant Defendants caused the Sebastians to be removed from their employment/management positions at Cadet and the Classic Dealerships without complying with the voting and approval requirements set forth in the Management Agreements. The Durant Defendants have also caused Cadet and the Classic Dealerships to engage in acts and expenditures that are directly adverse to the necessary and/or advisable interests of the Sebastians, Cadet, and the Classic Dealerships, and in breach of the Management Agreements, including (i) causing the Classic Dealerships to spend millions of dollars on wasteful capital improvements to properties that the Classic Dealerships do not own (and which are instead majority-owned by the Durant Defendants), (ii) preventing Cadet and the Classic Dealerships from paying dividends/distributions to their owners, (iii) decreasing the Classic Dealerships' revenue and profitability, and (iv) damaging the Classic Dealerships' valuable relationships and ability to transact business within the industry.

31. The Durant Defendants' material breaches of the Management Agreements have caused, and continue to cause, in excess of $10,000,000 in damages to the Sebastians (including the Sebastian Estate), Cadet, and the Classic Dealerships.

### b. The Buy-Sell Agreement

32. Defendant Tom Durant, Defendant Dynasty Trust, and the Sebastians are also parties to a Buy-Sell Agreement for Interests in Classic Chevrolet Sugar Land, LLC, Classic Chevrolet West

10

App.A 0164

Houston, LLC, Classic Elite Buick GMC, Inc., and 16835 Cadet Partners, LLC (the "Buy-Sell Agreement"). The Buy-Sell Agreement governs certain rights and restrictions pertaining to the sale or transfer of the parties' ownership interests in Cadet and the Classic Dealerships, including a rendition of the purchase options and the means/methods of determining share price if such options are validly exercised. In particular, the Buy-Sell Agreement stipulates that an option to purchase the Sebastians' interest in Cadet and the Classic Dealerships shall arise upon the occurrence of certain events, including "the cessation of the performance of the Dealership Business Duties of the Sebastians (including termination of either of the Sebastians as an officer or Manager of the LLC)". Jeff Sebastian was terminated on July 22, 2024, which, by contract, which alleged termination would have expressly triggered the applicable Buy-Sell Agreement and established the Valuation Date.

33.     In October, 2024, incident to the Sebastians' unlawful firing/exclusion, Defendant Dynasty Trust, by and through its Trustee, Mark Escamilla, issued an "Exercise of Option to Purchase" letter ("Exercise Notice") to the Sebastians stating that it was electing to repurchase all of the Sebastians' interest in Cadet and the Classic Dealerships. However, no valid triggering event had occurred that would render that kind of involuntary repurchase demand an available option for Defendant Dynasty Trust. Furthermore, the repurchase price demanded was and is directly opposed to the valuation method dictated by the Buy-Sell Agreement.

34.     As such, the repurchase demand made by Defendant Dynasty Trust is in direct breach and violation of the Buy-Sell Agreement and has caused, and continues to cause, direct financial damage to the Sebastians for which they seek recovery by this lawsuit.

### *Count 2 - Suit for Declaratory Judgment*

35.     All of the preceding paragraphs are incorporated herein as though fully set forth below.

11

App.A 0165

36. Pursuant to the Exercise Notice, Defendant Dynasty Trust demands that the Sebastians relinquish 100% of their Shareholder/Membership interests in Cadet and the Classic Dealerships for a small fraction of what the applicable Buy-Sell Agreement requires.

37. Particularly, Defendant Dynasty Trust refuses to recognize the fact that, in the event of a buy-out, the Sebastians are entitled to payment of fair market value for all of their shares in Cadet and each of the Classic Dealerships.[5] Instead, Defendant Dynasty Trust alleges the Sebastians' shares in Classic Chevrolet West Houston are the only ones that should receive such valuation and that the Sebastians' shares in Cadet and the other Classic Dealerships merely entitle them to a return of their capital contributions to those entities.

38. The Buy-Sell Agreement dictates that the Sebastians are entitled to fair market value for all of their member shares in Cadet and the Classic Dealerships unless certain loans that Defendant Dynasty Trust extended to the Sebastians remain unpaid.[6] The Sebastians, however, paid their loans associated with Classic Chevrolet Sugar Land and Classic Chevrolet West Houston in full on or before September 1, 2023. The Sebastians also diligently made repeated efforts to pay the loans associated with Classic Elite Buick GMC and Cadet after the loans were made, but were consistently denied any documentation of the loans or a way to repay them. (Many such requests were made directly to Defendant Bently Durant or Defendant Tom Durant). Consequently, the Durant Defendants are estopped from now denying the Sebastians fair market value for their

---

[5] Buy-Out Agreement, Section III.6.

[6] The Sebastians received separate loans from Defendant Dynasty Trust in varying amounts necessary to fund the initial purchases of their member shares in Cadet and each of the Classic Dealerships. The Buy-Sell Agreement dictates that the Sebastians are entitled to receive fair market value for their membership interests in Cadet and each of the Classic Dealerships in the event of a buy-out unless the associated purchase loan remains unpaid. In the event a particular purchase loan remains unpaid upon the exercise of a buy-out option, the membership shares that were purchased with such funds are only entitled to capital contribution cash-out.

12

App.A 0166

member shares in Classic Elite Buick GMC and/or Cadet by reason of their concerted acts in furtherance thereof.

39. The Buy-Sell Agreement additionally specifies that the Durant Defendants' option to re-purchase the Sebastians' member shares in the Classic Dealerships vests "upon the occurrence of a specified event" (*e.g.* Jeff's forced cessation of duty). Accordingly, in the event of a buy-out, the Sebastians are entitled to fair market value for their shares as of July 22, 2024 (*i.e.* the date Jeff was evicted from Cadet and the Classic Dealerships and prevented from continuing to perform his Dealership Business Duties).

40. Therefore, in accordance with Texas Civil Practice and Remedies Code Sections 37.003 and 37.004, the Sebastians seek an affirmative judgment from the court declaring: (a) their right under the Buy-Sell Agreement to receive fair market value for all of their member shares in Classic Dealership and Cadet upon a buyout by any of the Durant Defendants, including Defendant Dynasty Trust; and (b) that the valuation date for all shares subject to the buy-out is July 22, 2024.

41. A justiciable controversy related to the valuation and pricing of the Sebastians' Classic Dealership and Cadet shares exists and will be resolved by the declaration sought.

## VII.
## ENTITLEMENT TO ATTORNEY FEES

42. All of the preceding paragraphs are incorporated herein as though fully set forth below.

43. The actions of the Durant Defendants have required the retention of the undersigned counsel to prosecute, defend, and enforce the Third Party Plaintiffs' legal and equitable interests. Therefore, the Third Party Plaintiffs' are additionally entitled to an award of their reasonable and necessary attorney fees against the Durant Defendants, jointly and severally, pursuant to Texas Civil Practice and Remedies Code Section 38.001.

13

App.A 0167

## IX.
## CONDITIONS PRECEDENT

44.     All conditions precedent to the Third Party Plaintiffs' claims for relief have been performed or occurred.

## X.
## RULE 193.7 NOTICE

45.     Pursuant to Texas Rule of Civil Procedure 193.7, the Third Party Plaintiffs' hereby give notice to all parties that any documents produced may be used against the party producing the documents at any pretrial proceeding and/or trial of this matter without necessity of authenticating the documents.

## PRAYER

For these reasons, the Sebastians, Cadet, and the Classic Dealerships pray that the Court, after notice and hearing or trial, render judgment, jointly and severally, against the Durant Defendants for the following:

a.      Actual damages;

b.      Consequential damages;

c.      A declaration in accordance with Section VI of this Complaint;

d.      Attorney fees;

e.      Litigation costs and costs of court;

f.      Pre-judgment and post-judgment interest; and

g.      All other relief to which Third Party Plaintiffs may be justly entitled, as law or in equity.

14

App.A 0168

Respectfully submitted,

**BOHREER LAW FIRM PLLC**

By: /s/ E. Michelle Bohreer
E. Michelle Bohreer
State Bar No. 06717100
Pritesh Soni
State Bar No. 24063926
777 Post Oak Blvd., Ste 950
Houston, Texas 77056
Telephone: (832) 856-3006
Facsimile: (832) 856-2891
Emails: michelle@bohreerlaw.com
pritesh@bohreerlaw.com
E-service: e-service@bohreerlaw.com

**ATTORNEYS FOR THIRD-PARTY PLAINTIFF, MICHAEL JEFFREY SEBASTIAN, INDIVIDUALLY, ON BEHALF OF THE SEBASTIAN COMMUNITY ESTATE, AND DERIVATIVELY ON BEHALF OF THE CLASSIC DEALERSHIPS**

**SCHEEF & STONE, L.L.P.**

By: /s/ J. Mitchell Little
J. Mitchell Little
State Bar No. 24043788
mitch.little@solidcounsel.com
Steven Ovando
State Bar No. 24128862
steven.ovando@solidcounsel.com
2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100 Telephone
(214) 472-2150 Telecopier

**ATTORNEYS FOR THIRD-PARTY PLAINTIFF, TIFFANY LYNN SEBASTIAN, INDIVIDUALLY, ON BEHALF OF THE SEBASTIAN COMMUNITY ESTATE, AND DERIVATIVELY ON BEHALF OF THE CLASSIC DEALERSHIPS**

**GORDON REES SCULLY MANSUKHANI LLP**

By: _____
Joseph W. DiCecco
State Bar No. 05812520
jdicecco@grsm.com
John A. Coselli
State Bar No. 24100163
jcoselli@grsm.com
Nicholas A. Ocampo
State Bar No. 24126423
nocampo@grsm.com
1900 West Loop South, Suite 1000
Houston, Texas 77027
(713) 490-4879 - Telephone
(713) 961-3938 - Facisimile

**ATTORNEYS FOR THIRD-PARTY PLAINTIFF, TIFFANY LYNN SEBASTIAN, INDIVIDUALLY, ON BEHALF OF THE SEBASTIAN COMMUNITY ESTATE, AND DERIVATIVELY ON BEHALF OF THE CLASSIC DEALERSHIPS**

15

App.A 0169

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Lim on behalf of Joseph DiCecco
Bar No. 5812520
llim@grsm.com
Envelope ID: 94904449
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Third-Party Petition
Status as of 12/4/2024 11:46 AM CST

Associated Case Party: TiffanyLynnSebastian

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Haley K.Burnside | | hburnside@fullenweider.com | 12/3/2024 6:31:31 PM | SENT |
| Nicole Ross | | nross@fullenweider.com | 12/3/2024 6:31:31 PM | SENT |
| Eliza Cabrera | | ecabrera@fullenweider.com | 12/3/2024 6:31:31 PM | SENT |
| Bobby  Newman | | bknservice@bobbyknewman.com | 12/3/2024 6:31:31 PM | SENT |

Associated Case Party: MichaelJefferySebastian

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Marjorie Maxwell | 24060239 | eservicemam@dalefamilylaw.com | 12/3/2024 6:31:31 PM | SENT |
| Laura DDale | | eserviceldd@dalefamilylaw.com | 12/3/2024 6:31:31 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Randall Wilhite | 21476400 | service@fullenweider.com | 12/3/2024 6:31:31 PM | SENT |
| Charlotte Rainwater | 24007889 | service@rainwaterfamilylaw.legal | 12/3/2024 6:31:31 PM | SENT |
| Joseph DiCecco | | jdicecco@grsm.com | 12/3/2024 6:31:31 PM | SENT |
| John Coselli III | | jcoselli@grsm.com | 12/3/2024 6:31:31 PM | SENT |
| Dennis Slate | 24029836 | Service@Slatelaw.com | 12/3/2024 6:31:31 PM | SENT |
| Nicholas Ocampo | | nocampo@grsm.com | 12/3/2024 6:31:31 PM | SENT |
| E Service | | e-service@bohreerlaw.com | 12/3/2024 6:31:31 PM | SENT |
| E. Michelle Bohreer | | michelle@bohreerlaw.com | 12/3/2024 6:31:31 PM | SENT |
| Lisa Lim | | llim@grsm.com | 12/3/2024 6:31:31 PM | SENT |

App.A 0170

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Lim on behalf of Joseph DiCecco
Bar No. 5812520
llim@grsm.com
Envelope ID: 94904449
Filing Code Description: Counter Claim/Cross Action/Interpleader/Intervention/Third Party
Filing Description: Third-Party Petition
Status as of 12/4/2024 11:46 AM CST

Case Contacts

| Lisa Lim | | llim@grsm.com | 12/3/2024 6:31:31 PM | SENT |
|---|---|---|---|---|
| Sharon Taylor | | sharont@bohreerlaw.com | 12/3/2024 6:31:31 PM | SENT |
| Pritesh Soni | | pritesh@bohreerlaw.com | 12/3/2024 6:31:31 PM | SENT |
| Derek DRollins | | DRollins@Shackelford.law | 12/3/2024 6:31:31 PM | SENT |
| Joshua HNortham | | jnortham@shackelford.law | 12/3/2024 6:31:31 PM | SENT |

App.A 0171

# EXHIBIT C

Filed
12/20/2024 5:37 PM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Vanessa Vasquez

NO. 24-DCV-318087

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF<br><br>TIFFANY LYNN SEBASTIAN<br>AND<br>MICHAEL JEFFREY SEBASTIAN<br><br>AND IN THE INTEREST OF<br>███████████████, A CHILD | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| MICHAEL JEFFREY SEBASTIAN and<br>TIFFANY LYNN SEBASTIAN,<br>INDIVIDUALLY, ON BEHALF OF THE<br>SEBASTIAN COMMUNITY ESTATE,<br>AND DERIVATIVELY ON BEHALF OF<br>THE CLASSIC DEALERSHIPS, and<br>16835 CADET PARTNERS, LLC<br>*Third-Party Plaintiffs,*<br><br>v.<br><br>T. BENTLY DURANT, THOMAS R.<br>DURANT, THE DURANT CLASSIC<br>DYNASTY TRUST, MICHAEL A.<br>WARD, 8100 PARTNERS, LTD., 8100<br>MANAGEMENT LLC, 8705<br>PARTNERS, LTD., and 8705<br>MANAGEMENT LLC<br>*Third-Party Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 387TH JUDICIAL DISTRICT<br><br><br><br><br><br><br><br><br>FORT BEND COUNTY, TEXAS |

## FIRST AMENDED THIRD-PARTY PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Michael Jeffrey Sebastian, Tiffany Lynn Sebastian, the Classic Dealerships

(as defined below), and 16835 Cadet Partners, LLC (collectively, "Third-Party Plaintiffs") and file

this First Amended Third-Party Petition. In support thereof, Third-Party Plaintiffs would

respectfully show unto this Court the following:

1

<span style="color:red">App.A 0172</span>

# I.
# DISCOVERY PLAN

1.      Third-Party Plaintiffs intend to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.

# II.
# CLAIM FOR RELIEF

2.      Third-Party Plaintiffs seek monetary relief of over $1,000,000 and non-monetary relief under Texas Rule of Civil Procedure 47.

# III.
# PARTIES

*Third-Party Plaintiffs*

3.      This suit is brought by Michael Jeffrey Sebastian ("Jeff Sebastian"), individually, and as a member of the community estate of Jeff Sebastian and Tiffany Sebastian (the "Sebastian Estate"). Jeff Sebastian is a natural person who resides in Fort Bend County, Texas, and may be served through the undersigned counsel.

4.      This suit is also brought by Tiffany Sebastian ("Tiffany Sebastian"), individually, and as a member of the Sebastian Estate. Tiffany Sebastian is a natural person who resides in Fort Bend County, Texas, and may be served through the undersigned counsel. Tiffany Sebastian and Jeff Sebastian are sometimes referred to collectively herein as "the Sebastians."

5.      This suit is additionally brought by the Sebastians derivatively, on behalf of the following entities (collectively, the "Classic Dealerships") against the Third-Party Defendants named herein.

      a.      CLASSIC CHEVROLET SUGAR LAND, LLC, a Texas limited liability company whose registered office is located at 1101 State Highway 114, Grapevine, Texas 76099 and whose principal office is located at 13115 Southwest Freeway, Sugar Land, TX 77478.

2

App.A 0173

b. CLASSIC CHEVROLET WEST HOUSTON, LLC, a Texas limited liability company whose registered office is located at 1101 State Highway 114, Grapevine, Texas 76099 and whose principal office is located at 8100 S Texas 6, Houston, TX 77083.

c. CLASSIC ELITE BUICK GMC, INC., a Texas corporation whose registered office is located at 1101 State Highway 114, Grapevine, Texas 76099 and whose principal office is located at 16835 Katy Fwy, Houston, TX 77094.

6. This suit is additionally brought by the Sebastians derivatively, on behalf of 16835 Cadet Partners, LLC ("Cadet"), a Texas limited liability company whose registered office is located at 1101 State Highway 114, Grapevine, Texas 76099.

***Third-Party Defendants***

7. T. Bently Durant ("Bently Durant") is Third-Party Defendant herein and a natural person who is a resident of Tarrant County, Texas. Bently Durant may be served at 1101 State Highway 114, Grapevine, Texas 76099, or wherever he may be found.

8. Thomas R. Durant ("Tom Durant") is a Third-Party Defendant herein and a natural person who is a resident of Tarrant County, Texas. Bently Durant may be served at 1101 State Highway 114, Grapevine, Texas 76099, or wherever he may be found.

9. The Durant Classic Dynasty Trust ("Dynasty Trust") is a Third-Party Defendant and a Texas trust. The Dynasty Trust may be served with process by serving its Trustee, Marin "Mark" Escamilla, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever Trustee may be found. Bently Durant, Tom Durant, and the Dynasty Trust are sometimes collectively referred to herein as "the Durant Defendants."

3

App.A 0174

10. Michael A. Ward ("Mike Ward") is a Third-Party Defendant herein and a natural person who is a resident of Denton County, Texas. Mike Ward may be served at 1422 Amherst Drive, Denton, Texas 76201, or wherever he may be found.

11. 8100 Partners, LTD. ("8100 Partners") is a Third-Party Defendant and a Texas limited partnership. 8100 Partners can be served through its registered agent, Thomas R. Durant, or any officer, director, or partner of 8100 Partners, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found.

12. 8100 Management LLC ("8100 Management") is a Third-Party Defendant and a Texas limited liability company. 8100 Management can be served through its registered agent, Thomas R. Durant, or any officer or director of 8100 Management, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found.

13. 8705 Partners, LTD. ("8705 Partners") is a Third-Party Defendant and a Texas limited partnership. 8705 Partners can be served through its registered agent, Thomas R. Durant, or any officer, director, or partner of 8705 Partners, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found.

14. 8705 Management LLC ("8705 Management") is a Third-Party Defendant and a Texas limited liability company. 8100 Management can be served through its registered agent, Thomas R. Durant, or any officer or director of 8100 Management, at 1101 State Highway 114, Grapevine, Texas 76099, or wherever they may be found. 8100 Partners, 8100 Management, 8705 Partners, and 8705 Management are sometimes collectively referred to herein as "the Real Estate Defendants."

4

App.A 0175

## IV.
## JURISDICTION AND VENUE

15. The Court has subject-matter jurisdiction over the lawsuit because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

16. The Court has personal jurisdiction over all parties to the litigation because they are individual residents of Texas, or are legal entities organized and exist under the laws of the state of Texas that are registered to and conduct business in Texas.

17. Venue is proper in Fort Bend County, Texas pursuant to Texas Civil Practice & Remedies Code sections 15.002 and 15.005, as it is the county in which the underlying divorce occurred, and it is where all or a substantial part of the events or omissions giving rise to the claim occurred.

18. Venue is mandatory in Fort Bend County, Texas under Texas Civil Practice & Remedies Code section 64.071 and Texas Business Organizations Code section 11.402 because this is a suit to appoint a receiver for a corporation (or corporations) with property in Texas, and this is the county where the principal office of the corporation is located. Concerning venue, "'[p]rincipal office'" means a principal office of the corporation, unincorporated association, or partnership in this state in which the decision makers of the organization within this state conduct the daily affairs of the organization. Tex. Civ. Prac. & Rem. Code § 15.001(a). This suit seeks to appoint a receiver for the Classic Dealerships and Cadet, the principal offices of which for the purposes of venue are in Fort Bend County, Texas.

## V.
## FACTUAL BACKGROUND

19. Jeff and Tiffany Sebastian are spouses who have been married for more than twenty years prior to the filing of this divorce proceeding. They met one another in Houston in 1998 at a time when they both were launching careers in the local automotive industry. In fact, Tiffany started

5

App.A 0176

work at a small used car dealership on the west side of town that summer and Jeff joined her shortly thereafter.

20. By the following year, the Sebastians were married and had worked hard to ensure that, separately and together, they were a recognized force in the automotive sales industry. As the decades subsequently passed, they continued to develop a massive talent for sales, management, and economics, and created a vast professional network and strong reputations for driving growth and profit.

*Classic Chevrolet Sugar Land*

21. In 2016, that dedication and ambition led Jeff Sebastian to accept a position as General Manager of Classic Chevrolet Sugar Land. At that time, the Sugar Land dealership was principally owned by Defendant Tom Durant and suffered from poor performance under current management.[1] Accordingly, the Sebastians identified it as an opportunity to further prove their effectiveness in the Houston market with the anticipation that such efforts would generate an opportunity for partnership. With that goal in mind, the Sebastians set to work with Jeff serving as the name General Manager and Tiffany working directly alongside him. Through their combined efforts, the Sebastians ultimately caused Classic Chevrolet Sugar Land to tectonically shift from a struggling enterprise to a dominant industry presence. In fact, after only a few short years of exponential growth under the Sebastians' management, Classic Chevrolet Sugar Land became one of the top performing Chevrolet dealers in the entire country.

22. Based on that success, the Sebastians were invited to become owners of Classic Chevrolet Sugar Land, LLC and acquired a Membership Interest in the company in 2018.[2] The Class A

---

[1] The other Member of Classic Chevrolet Sugar Land, LLC were/are Defendants Bently Durant and the Durant Classic Dynasty Trust.

[2] On January 1, 2018, Jeff Sebastian (and the Sebastian Estate) purchased a 30% Class A Membership

6

App.A 0177

Members of Classic Chevrolet Sugar Land became Jeff Sebastian, Defendant Tom Durant, and Defendant Bently Durant, and the Class B Members became Jeff Sebastian, Defendant Dynasty Trust, Defendant Tom Durant, and Defendant Bently Durant. Meanwhile, both Sebastians continued to operate the dealership, with Jeff being elevated to managing partner and Dealer-Operator.

### *Classic Chevrolet West Houston*

23.    The Sebastians also located, spear-headed, and became partners with the Durant Defendants in the purchase and management of Classic Chevrolet West Houston, LLC in 2019.[3] At that time, Classic Chevrolet West Houston was an AutoNation dealership in total collapse. However, given the Sebastians' tireless pursuit of efficiency and growth, it quickly became a Top 10 performing Chevrolet dealer in Houston.

24.    The Class A Members of Classic Chevrolet West Houston became Jeff Sebastian and Defendant Tom Durant, and the Class B Members became Jeff Sebastian, Defendant Tom Durant, and Defendant Dynasty Trust. Meanwhile, both Sebastians operated the dealership, with Tiffany Sebastian serving as Executive Manager until 2023—when she became Executive Manager of Classic Elite Buick GMC, Inc.—and Jeff Sebastian serving as Dealer-Operator.

### *Classic Elite Buick GMC*

25.    The Sebastians were also integral in the purchase and management of Classic Elite Buick GMC, Inc., another Houston dealership, in 2023.[4] And, like the other dealerships the Sebastians

---

Interest, and a 29.7% Class B Membership Interest, in Classic Chevrolet Sugar Land, LLC.
[3] On November 29, 2019, Jeff Sebastian (and the Sebastian Estate) purchased a 51% Class A Membership Interest, and a 39.49% Class B Membership Interest, in Classic Chevrolet West Houston, LLC.
[4] On January 26, 2023, Jeff Sebastian (and the Sebastian Estate) purchased a 51% Class A Membership Interest, and a 19.49% Class B Membership Interest, in Classic Elite Buick GMC, Inc.

7

App.A 0178

operate, the GMC store became a top performing Houston GMC dealer. The Class A Shareholders of Classic Elite Buick GMC became Jeff Sebastian and Defendant Tom Durant, and the Class B Shareholders became Jeff Sebastian, Tiffany Sebastian, and Defendant Dynasty Trust. Meanwhile, both Sebastians operated the dealership, with Tiffany Sebastian serving as Executive Manager and Jeff Sebastian served as Dealer-Operator.

26. On May 1, 2023, Classic Elite Buick GMC, Inc. entered into a Lease Agreement ("Lease") with 16835 Cadet Partners, LLC which is the owner of the real property upon which the Classic Dealership operates at 16835 Katy Freeway. The Class A Shareholders of Cadet are Jeff Sebastian and Defendant Tom Durant, and the Class B Shareholders of Cadet are Jeff Sebastian, Tiffany Sebastian, and Defendant Dynasty Trust.

*Accolades for the Sebastians and Community Property*

27. By 2024, the Sebastians were far and away the most successful and profitable partners within the whole Durant Organization. The Sebastians and the dealerships they operated received numerous prestigious accolades and awards from the manufacturers and the Durant Organization. Neither Jeff nor Tiffany Sebastian had ever received a warning or as much as a write up. In fact, the Sebastians were commonly recognized as one of the best partners within the Durant Organization. Indeed, the Sebastians co-owned and operated a total of three dealerships—that were staffed with approximately 600 trained employees, preferred by the manufacturers, and generating incredible profits—as well as the Cadet property. The Sebastians' interest in the Classic Dealerships, 16835 Cadet Partners and 8100 Partners represent the largest community assets in the pending divorce and mandate protection against reductions their fair market value and the consequent diminution of the value of the community estate.

8

App.A 0179

28.     Unfortunately, however, the Sebastians soon learned that success and money can also generate greed and theft.

### The Durant Conspiracy and Scheme

29.     In this case, the Durant Defendants began to conspire with one another, as well as one of their local operators, Defendant Mike Ward, to unjustifiably expel the Sebastians from Cadet and the Classic Dealerships in contravention of the entities' governing agreements and applicable law. The conspiracy actually developed into a complete plan to strip the Sebastians of 100% of their Member/Shareholder Interests in Cadet and the Classic Dealerships without payment of just compensation therefore, in a scheme to divert millions of dollars in equity and profits owed to the Sebastians over to the Durant Defendants. Moreover, the Durant Defendants and Mike Ward began to implement their plan in the summer of 2024.

30.     By way of example, the Durant Defendants began reaching out to the Sebastians individually with the intent of separating and dividing the couple and increasing conflict among them. In fact, after ousting Jeff Sebastian in late July 2024, the Durant Defendants relocated Mike Ward, a general manager, from Dallas to Houston and planted him in the Classic Dealerships with a mission of creating division, dissension, and relaying personal information about the Sebastians back to the Durant Defendants. The Durant Defendants then worked with Mike Ward to utilize that information to disparage the Sebastians' character and capabilities, both publicly and privately, endeavoring to erode/diminish the Sebastians' control of the Classic Dealerships and the Sebastians' professional reputation. The Durant Defendants and Mike Ward also executed expensive and unnecessary service contracts, cut ties with local vendors, fired experienced staff members, hired new staff members, restructured operations, and re-allocated time and resources to wasteful projects over the objections of the Sebastians. Upon information and belief, the Durant

9

App.A 0180

Defendants and Mike Ward continue to aggressively pursue such activities, which cripple and irreparably damage the Classic Dealerships, Cadet, and the Sebastians.

31. Eventually and unceremoniously, after the Durant Defendants purported to fire Jeff Sebastian on July 22, 2024, they then followed by illegally terminating Tiffany Sebastian on September 13, 2024, and replaced Jeff and Tiffany with select loyalists, including the same individual who helped orchestrate their scheme, Mike Ward. The Durant Defendants and Mike Ward then completely ignored the Sebastians' management and control, immediately causing the Sebastians' access to all Cadet and Classic Dealership information to be severed at the time of their purported terminations—including access to all books and records, account information, budgets, inventory and sales data, payroll records, and emails—and then refusing to make required payments and distributions to the Sebastians in their capacity as owners. Instead, the Durant Defendants quickly began diverting millions of dollars in distributable revenue away from the Sebastians and back to themselves, including by pouring Classic Dealership money into needless capital improvements at the Classic Dealership locations that only inure to the benefit of the property owners, which happen to be the Real Estate Defendants, which in turn are majority-owned by the Durant Defendants. In Classic Elite GMC, for example, cash was reduced by more than $10 million in the month of November alone. It is a blatant and shameless kickback and self-dealing scheme.

32. These illegal and self-interested measures constitute an effort to cause a short-term devaluation of the Classic Dealerships and to diminish the Sebastians' contractually anticipated financial liquidity in order to leverage their cooperation. On numerous occasions, Jeff Sebastian asked to speak directly with Tom Durant, but was told by Bently Durant, that "in no way, shape, or form" would he be allowed to do so. Jeff also pleaded for access to his emails, communication

10

App.A 0181

threads, and basic financial information on multiple occasions. On each occasion, the Durant Defendants denied his pleas and told him to stay away from the business and the dealerships.

33.    Now, the Durant Defendants have demanded that the Sebastians relinquish 100% of their Membership/Shareholder Interests in Cadet, 8100 Partners, all three Classic Dealerships for a pitiable fraction of their true value in violation of a myriad of contractual and fiduciary obligations, including the Classic Dealerships' Management Agreements, and a Buy-Sell Agreement the parties executed dated effective May 1, 2023. Therefore, the Sebastians and the Classic Dealerships seek relief therefrom, including the issuance of a declaratory judgment and the critical appointment of a Receiver for specific assets of the Classic Dealerships or their rehabilitation.

## VI.
## CAUSES OF ACTION

### *Count 1 - Breach of Fiduciary Duty*

34.    All of the preceding paragraphs are incorporated herein as though fully set forth below.

35.    Each of the Durant Defendants currently are, and have at all relevant times been, Officers, Members, and/or Shareholders of Cadet and the Classic Dealerships. Specifically, Defendant Tom Durant is a Member and Manager of Cadet, a Member and Director of Classic Chevrolet Sugar Land, LLC, a Member and Manager of Classic Chevrolet West Houston, LLC, and a Shareholder and President of Classic Buick GMC of Houston, Inc. Similarly, Defendant Bently Durant is a Member/Shareholder of the Classic Dealerships, General Counsel to the Classic Dealerships and Cadet, and Secretary of Classic Buick GMC of Houston, Inc. Likewise, Defendant Dynasty Trust is a Member/Shareholder and Director of the Classic Dealerships and Cadet through its Trustee, Mark Escamilla.

36.    Consequently, the Durant Defendants each owe the following fiduciary duties to the Sebastians, Cadet, and the Classic Dealerships:

11

App.A 0182

a. Duty of loyalty and utmost good faith;

b. Duty of candor;

c. Duty to refrain from self-dealing;

d. Duty to act with integrity of the strictest kind;

e. Duty of fair, honest dealing; and

f. Duty of full disclosure.

37. Nevertheless, the Durant Defendants materially breached their fiduciary duties by, without limitation, (i) conspiring to obstruct the Sebastians' ability to successfully operate Cadet and the Classic Dealerships, (ii) disparaging the Sebastians to one another and the public, both personally and professionally, (iii) conspiring to and illegally and unjustly purporting to fire the Sebastians from their employment with Cadet and the Classic Dealerships, (iv) conspiring to and illegally cutting the Sebastians' access to the corporate and financial information of Cadet and the Classic Dealerships, (v) conspiring to and breaching the Membership and Management Agreements of Cadet and the Classic Dealerships, (vi) conspiring to and illegally refusing to make Cadet and Classic Dealership Member distributions, and (vii) illegally diverting Member/Shareholder profit from Cadet and the Classic Dealerships to unapproved and wasteful projects that directly benefit the Durant Defendants and their separate interests at the expense of the Sebastians, Cadet, and the Classic Dealerships.

38. "It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 574, 160 S.W.2d 509, 514 (1942). Mike Ward and the Real Estate Defendants knew the Durant Defendants were fiduciaries and knowingly participated in the Durant Defendants' breach of their fiduciary duties.

12

App.A 0183

Thus, Mike Ward and the Real Estate Defendants are joint tortfeasors with the Durant Defendants and are liable as such.

39.     The Durant Defendants', Ward's, and the Real Estate Defendants' breaches have caused, and continue to cause, in excess of $10,000,000 in damages to the Sebastians (including the Sebastian Estate), Cadet, and the Classic Dealerships. The Sebastians are therefore entitled to recover actual damages, the equitable remedy of disgorgement, and exemplary damages from

### *Count 2 - Breach of Contract*

40.     All of the preceding paragraphs are incorporated herein as though fully set forth below.

#### a.     *The Management Agreements*

41.     The Durant Defendants and the Sebastians entered into a number of valid and enforceable contracts that govern the management and operation of the Classic Dealerships. Those agreements include the Limited Liability Company Agreement for Classic Chevrolet Sugar Land, LLC ("Sugar Land Agreement"), the Company Agreement of Classic Chevrolet West Houston, LLC ("West Houston Agreement"), the Bylaws of Classic Buick GMC of Houston, Inc. ("GMC Bylaws"), and the Limited Liability Company Agreement for 16835 Cadet Partners, LLC ("Cadet Agreement") (collectively, the "Management Agreements"). However, the Durant Defendants proceeded to materially breach terms of those Management Agreements at great cost to the Sebastians, Cadet, and the Classic Dealerships.

42.     Particularly, and without limitation, the Durant Defendants caused the Sebastians to be removed from their employment/management positions at Cadet and the Classic Dealerships without complying with the voting and approval requirements set forth in the Management Agreements. The Durant Defendants have also caused Cadet and the Classic Dealerships to engage in acts and expenditures that are directly adverse to the necessary and/or advisable interests of the

13

App.A 0184

Sebastians, Cadet, and the Classic Dealerships, and in breach of the Management Agreements, including (i) causing the Classic Dealerships to spend millions of dollars on wasteful capital improvements to properties that the Classic Dealerships do not own (and which are instead majority-owned by the Durant Defendants), (ii) preventing Cadet and the Classic Dealerships from paying dividends/distributions to their owners, (iii) decreasing the Classic Dealerships' revenue and profitability, and (iv) damaging the Classic Dealerships' valuable relationships and ability to transact business within the industry.

43.     The Durant Defendants' material breaches of the Management Agreements have caused, and continue to cause, in excess of $10,000,000 in damages to the Sebastians (including the Sebastian Estate), Cadet, and the Classic Dealerships.

   *b.*   ***The Buy-Sell Agreement***

44.     Defendant Tom Durant, Defendant Dynasty Trust, and the Sebastians are also parties to a Buy-Sell Agreement for Interests in Classic Chevrolet Sugar Land, LLC, Classic Chevrolet West Houston, LLC, Classic Elite Buick GMC, Inc., and 16835 Cadet Partners, LLC (the "Buy-Sell Agreement"). The Buy-Sell Agreement governs certain rights and restrictions pertaining to the sale or transfer of the parties' ownership interests in Cadet and the Classic Dealerships, including a rendition of the purchase options and the means/methods of determining share price if such options are validly exercised. In particular, the Buy-Sell Agreement stipulates that an option to purchase the Sebastians' interest in Cadet and the Classic Dealerships shall arise upon the occurrence of certain events, including "the cessation of the performance of the Dealership Business Duties of the Sebastians (including termination of either of the Sebastians as an officer or Manager of the LLC)". Purportedly, Jeff Sebastian was terminated on July 22, 2024, which, by

14

App.A 0185

contract, would have expressly triggered the applicable Buy-Sell Agreement and established the Valuation Date.

45. In October, 2024, incident to the Sebastians' unlawful firing/exclusion, Defendant Dynasty Trust, by and through its Trustee, Mark Escamilla, issued an "Exercise of Option to Purchase" letter ("Exercise Notice") to the Sebastians stating that it was electing to repurchase all of the Sebastians' interest in Cadet and the Classic Dealerships. However, no valid triggering event had occurred that would render that kind of involuntary repurchase demand an available option for Defendant Dynasty Trust. Furthermore, the repurchase price demanded was and is directly opposed to the valuation method dictated by the Buy-Sell Agreement.

46. As such, the repurchase demand made by Defendant Dynasty Trust is in direct breach and violation of the Buy-Sell Agreement and has caused, and continues to cause, direct financial damage to the Sebastians in excess of $10,000,000 for which they seek recovery by this lawsuit.

### Count 3 - Suit for Declaratory Judgment

47. All of the preceding paragraphs are incorporated herein as though fully set forth below.

48. Pursuant to the Exercise Notice, Defendant Dynasty Trust demands that the Sebastians relinquish 100% of their Shareholder/Membership interests in Cadet and the Classic Dealerships. Moreover, Defendant Dynasty Trust demands that the Sebastians' Cadet and Classic Dealership shares be valued at a small fraction of what the applicable Buy-Sell Agreement requires.

49. Therefore, in accordance with Texas Civil Practice & Remedies Code sections 37.003 and 37.004, the Sebastians seek an affirmative judgment from the court declaring their right under the Buy-Sell Agreement to receive fair market value for their Cadet and Classic Dealership shares in the event of a buyout by any of the Durant Defendants, including Defendant Dynasty Trust. A

15

App.A 0186

justiciable controversy related to the pricing of the Sebastians' Classic Dealership shares exists and will be resolved by the declaration sought.

### Count 4 - Conversion

50. All of the preceding paragraphs are incorporated herein as though fully set forth below.

51. The Sebastians are entitled to certain property currently in the Durant Defendants' possession and control – specifically, owner dividends and distributions from the revenues of Cadet and the Classic Dealerships. The Durant Defendants unlawfully obtained such monies by, without limitation, firing and excluding the Sebastians from Cadet and the Classic Dealerships, cutting their access to the Cadet and Classic Dealership books and records, and diverting/re-allocating millions of dollars owed to the Sebastians back to themselves and/or separate entities that they own and control. The Durant Defendants have additionally demanded that the Sebastians transfer their ownership interests in Cadet and the Classic Dealerships over to them in exchange for a fraction of their contractual and marketable value.

52. The Sebastians are entitled to recover their converted property from the Durant Defendants, as well as their actual and consequential damages caused thereby which exceed $10,000,000.

### Count 5 – Money Had and Received

53. All of the preceding paragraphs are incorporated herein as though fully set forth below.

54. The Durant Defendants are in receipt and possession of millions of dollars that in equity and good conscience belong to the Sebastians. Particularly, the Durant Defendants obtained such monies from the Sebastians by, without limitation, firing and excluding the Sebastians from Cadet and the Classic Dealerships, cutting their access to the Cadet and Classic Dealership books and records, and diverting/re-allocating millions of dollars owed to the Sebastians back to themselves

16

App.A 0187

and/or separate entities that they own and control. The Durant Defendants have additionally demanded that the Sebastians transfer their ownership interests in Cadet and the Classic Dealerships over to them in exchange for a fraction of their contractual and marketable value.

55. Accordingly, the Sebastians are entitled to recover such monies from the Durant Defendants, as well as their actual and consequential damages caused thereby which exceed $10,000,000.

### Count 6 - Tortious Interference with a Contract

56. All of the preceding paragraphs are incorporated herein as though fully set forth below.

57. Defendant Mike Ward willfully, intentionally, and tortiously interfered with the performance of the Management Agreements and the Buy-Sell Agreement. Particularly, he lied to and conspired with the Durant Defendants in an aggressive yet calculated campaign to cause a breach of the Agreements for his own personal gain.

58. Prior to the summer of 2024, Defendant Mike Ward was the General Manager of another automotive dealership that the Durant family owns in Grapevine, Texas. As such, Defendant Ward knew from experience the Grapevine dealership does not present the same level of professional/financial opportunity and partnership potential that Cadet and the Classic Dealerships do – particularly if their owners and managers (*i.e.,* the Sebastians) were forcibly expelled.

59. Therefore, Defendant Ward engaged in an effort to ensure that the Sebastians' unjust expulsion from Cadet and the Classic Dealerships in violation of the Agreements actually occurred. Particularly, and without limitation, Defendant Ward proceeded to re-locate to Houston and relayed materially false information about the Sebastians' and their professional capabilities to the Durant Defendants, the Cadet and Classic Dealership employees, and other key figures in the automotive industry. He also made derogatory and sexist comments about Tiffany Sebastian,

17

App.A 0188

peddled deceit, and was an avid force in the decision to systematically fire the Sebastians. Meanwhile, Defendant Ward inserted himself into a de facto management position at the Classic Dealerships.

60. Defendant Ward's targeted acts of contractual interference unfortunately paid off in the summer of 2024 in that they were a proximate cause of the Sebastians' professional and financial eviction from Cadet and the Classic Dealerships in direct violation of the Agreements. Defendant Ward's intentional malfeasance has caused the Sebastians to suffer in excess of $10,000,000 in financial and non-financial damage.

### Count 7 – Fraud by Misrepresentation

61. All of the preceding paragraphs are incorporated herein as though fully set forth below.

62. The Sebastians and the Durant Defendants were parties to multiple transactions involving stock.

63. During the transactions, the Durant Defendants made a false promise to the Sebastians with the intent not to fulfill it, and the promise was material to the transaction. The promise concerned the valuation of the Sebastians' stock ownership and the attendant rights of access and control, which was material to the Sebastians' acquiring the stock. It is clear by the conduct of the Durant Defendants that they had no intention of fulfilling their promises to the Sebastians.

64. The Durant Defendants made the false promise for the purpose of inducing the Sebastians to enter into the contracts.

65. The Sebastians justifiably relied on the Durant Defendants' false promise by entering into the contract. Had the Sebastians known that the Durant Defendants would unjustifiably and illegally terminate their access and control associated with their ownership of stock and would engage in self-dealing conduct to devalue the Sebastians' stock, the Sebastians would not have

18

App.A 0189

entered into the agreement. The Sebastians justifiably relied on the guiding principle of law-abiding citizens—do not engage in unlawful and tortious conduct.

66. The Durant Defendants' false promise proximately caused injury to the Sebastians resulting in damages in excess of $10,000,000.00.

67. The Durant Defendants violated Texas Business & Commerce Code section 27.01, which is the basis of this suit, with actual awareness of the falsity of their representation or promise, which entitled the Sebastians to exemplary damages under section 27.01(c).

68. The Sebastians are entitled to recover reasonable and necessary attorney fees, expert-witness fees, court costs, and costs for copies of depositions under Texas Business & Commerce Code section 27.01(e).

### *Count 8 –Fraudulent Transfer*

69. The Durant Defendants made transfers and incurred obligations with the actual intent to hinder, delay, or defraud the Sebastians concerning value of their stock. The Durant Defendants made transfers to and incurred obligations from entities that are owned and controlled by the Durant Defendants, such as the Real Estate Defendants. Thus, the Real Estate Defendants are insiders under the definition of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code section 24.001, *et seq. See* Tex. Bus. & Com. Code § 24.002(7). Therefore, these transfers of assets from the Classic Dealerships to the Real Estate Defendants by the Durant Defendants are fraudulent as to the Sebastians.

70. The transfers were done with actual intent because (1) the transfers were to insiders; (2) the Durant Defendants ostensibly retained possession or control of the property transferred after the transfer; (3) the transfer was concealed from Plaintiff; (4) the Durant Defendants have absconded and concealed the assets; (5) upon information and belief, the Classic Dealerships

19

App.A 0190

received no consideration for the assets transferred; and (6) the transfer occurred proximate to the incursion of a substantial payout to the Sebastians as a result of the divorce proceedings. *See* Tex. Bus. & Com. Code § 24.005(b).

71. Therefore, the Sebastians seek (1) avoidance of the transfer(s) or obligation(s) to the extent necessary to satisfy their claims; (2) an attachment or other provisional remedy against the asset(s) transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice & Remedies Code relating to ancillary proceedings; and/or (3) subject applicable principles of equity and in accordance with applicable rules of civil procedure: (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset(s) transferred or of other property; (B) appointment of a receiver to take charge of the asset transferred or other property of the transferee; or (C) any other relief the circumstances may requires. *See* Tex. Bus. & Com. Code § 24.008(a).

72. The Sebastians also request that the court award them the costs and reasonable attorney fees as are equitable and just incurred by the Sebastians in the prosecution of their rights. *See* Tex. Bus. & Com. Code § 24.013.

**VII.**
**APPLICATION FOR APPOINTMENT OF RECEIVER FOR SPECIFIC ASSETS**
**AND/OR TO REHABILITATE**

73. All of the preceding paragraphs are incorporated herein as though fully set forth below.

74. The Sebastians, Cadet, and the Classic Dealerships are entitled to the appointment of a receiver to preserve the financial assets of Cadet and the Classic Dealerships, as well as the Sebastians' owner-interests therein and/or to rehabilitate Cadet and the Classic Dealerships, pursuant to Texas Civil Practice & Remedies Code section 64.001(3) *et. seq.*; Texas Business Organizations Code section 11.401, *et seq.*; Texas Business & Commerce Code section 24.008;

20

App.A 0191

and the laws of equity. Indeed, the Sebastians, and the Sebastian Estate, own a right to a substantial percentage of the equity and profits of Cadet and the Classic Dealerships as core Members/Shareholders. In fact, Jeff Sebastian presently owns a majority of the Class A voting shares of Classic Buick GMC of Houston, Inc. and Classic Chevrolet of West Houston, LLC. Furthermore, the Durant Defendants, in their capacity as *de facto* "governing persons" of Cadet and the Classic Dealerships, since the unlawful and unjustifiable exclusion of the Sebastians, have taken actions that are illegal, oppressive, and fraudulent and have misapplied or wasted the property of Cadet and the Classic Dealerships. *See* Tex. Bus. Org. Code § 11.404(A)(1)(C) and (D).

75.     Similarly, Cadet and the Classic Dealerships have a right and interest in/to the property they own, as well as in preventing waste, loss, and injury associated with their businesses and equity.

76.     As described above, and supported by the affidavits attached hereto, the Durant Defendants have, are, and will continue to (i) deny Member/Shareholder access to the Cadet and Classic Dealerships' books and records, (ii) deny Member/Shareholder access to the Cadet and Classic Dealerships' budgets and accounting records, (iii) prevent Cadet and the Classic Dealerships from distributing contractual payments and distributions owed to their Members/Shareholders, (iv) transfer all profits, and additional revenues, generated by Cadet and the Classic Dealerships to themselves and the various entities they own and control, (v) implement inventory pricing and sales policies that significantly depress Cadet and the Classic Dealerships' revenues and profits, (vi) implement contracting, spending, pricing, and sales protocols for that depress the equitable value of Cadet and the Classic Dealerships, and (vii) initiate transactions that negatively impact Cadet and the Classic Dealerships' ability to conduct business in the local automotive industry.

21

App.A 0192

77. Further, the Sebastians, as major or majority Members/Shareholders of Cadet and the Classic Dealerships, maintain a right and obligation to enforce the Cadet and Classic Dealerships' Management Agreements for purposes of preventing waste, loss, and corporate abuse. They are also entitled to the preservation and distribution of their ownership interests in the Cadet and Classic Dealerships' valuable property. Such property is currently either already removed, or in severe danger of being lost, removed, or damaged, in such a way that is materially adverse to the purpose of Cadet and the Classic Dealerships.

78. Therefore, the Sebastians, Cadet, and Classic Dealerships petition the Court to appoint a receiver to protect and conserve the purpose and interests of Cadet and the Classic Dealerships during the pendency of this lawsuit between its Members/Shareholder. Injunctive relief will not protect such interests as the Durant Defendants have forcefully taken (and maintain in) full possession and control of Cadet and the Classic Dealerships and have demonstrated that they will continue to act in violation of any restraints placed on them. They have already breached their fiduciary duties, disregarded multiple key agreements (the Management Agreements and the Buy-Sell Agreement), fraudulently transferred assets, and have illegally converted in excess of $3,000,000 in the past several months alone.

79. The Sebastians, Cadet, and Classic Dealerships specifically request that the Court order the appointment of a receiver with all power and authority to take possession and control of the following property and business:

    a. All Member Units/Shares of Cadet and the Classic Dealerships, including distributions, payments, transfers, conveyances, sales, acquisitions, and options;

    b. All expenditures made from the revenues of Cadet and the Classic Dealerships to the extent such expenditures are out of the ordinary course of daily business,

22

App.A 0193

including expenditures in excess of $10,000 and expenditures associated with any renovations or capital improvements to Cadet and/or the Classic Dealership properties;

c. All actions/inactions that may cause Cadet and/or the Classic Dealerships to accrue any financial obligations or debts that are outside of the ordinary course of daily business, including any financial obligations or debts associated with any renovations or capital improvements to Cadet and/or the Classic Dealerships;

d. Modifications or amendments to any existing contracts/agreements to which Cadet, the Classic Dealerships, or their affiliates are a party, including any real property lease agreements, credit agreements, and marketing agreements;

e. All Management/C-Suite decisions pertaining to the hiring, firing, removal, promotion, or demotion of Cadet and/or Classic Dealership department leadership;

f. All actions that serve to transfer Cadet and/or Classic Dealership revenues to any Member or Shareholder of Cadet or the Classic Dealerships either directly or indirectly.

## VIII.

### ACTION FOR AUDIT UNDER RULE 172,

80. All of the preceding paragraphs are incorporated herein as though fully set forth below.

81. Third-Party Plaintiffs are owners of each of the Classic Entities.

82. Under the applicable Company Agreements, Third-Party Plaintiffs are entitled to certain monetary benefits arising from the operations of Cadet and each of the Classic Dealerships.

83. Third-Party Plaintiffs are without knowledge of the amount of profit realized or to be realized by, or the distributions required to be made by each of the Classic Dealerships (other than

23

App.A 0194

distribution that would have resulted in $3.5 million paid to Third-Party Plaintiffs and the Community, which the Durant Defendants, advised had been reallocated for unnecessary capital expenditures, including self-dealing transactions), or other amounts due to Third-Party Plaintiffs under the applicable Company Agreements. Further, despite repeated requests, Third-Party Plaintiffs have been unable to obtain from Cadet and the Classic Dealerships documentation for these aspects of Cadet and each of the Classic Dealerships' financial affairs. Third-Party Plaintiffs cannot obtain such knowledge, ascertain those amounts, or receive relevant documentation without an accounting from Cadet and each of the Classic Dealerships. To the extent such audit reveals monies transferred from Cadet or any of the Classic Dealerships to any other dealership or entity owned by the Durant Defendants, Third-Party Petitioners contend an audit of each such dealership or entity should be ordered.

84.     Third-Party Plaintiffs seek to have an auditor appointed under Rule 172 to audit the books and records of Cadet and each of the Classic Dealerships. Third-Party Plaintiffs anticipate the Auditor will discover further breaches of fiduciary duty by the Durant Defendants. The Durant Defendants should be ordered to pay all costs associated with such audits.

## IX.
## ENTITLEMENT TO EXEMPLARY DAMAGES AND ATTORNEY FEES

85.     All of the preceding paragraphs are incorporated herein as though fully set forth below.

86.     The Durant Defendants and Defendant Mike Ward have engaged in the acts described herein intentionally, in bad faith, with malice, and with willful disregard for the critical interests of the Sebastians, Cadet, and the Classic Dealerships. Accordingly, the Sebastians, Cadet, and the Classic Dealerships are entitled to exemplary damages against the Durant Defendants and Defendant Mike Ward, jointly and severally, pursuant to Texas Civil Practice & Remedies Code section 41.003.

24

App.A 0195

87.   The actions of the Durant Defendants and Defendant Mike Ward have also required the retention of the undersigned counsel to prosecute, defend, and enforce the Sebastians', Cadet's, and the Classic Dealerships' legal and equitable interests. Therefore, the Sebastians, Cadet, and the Classic Dealerships are additionally entitled to an award of their reasonable and necessary attorney fees against the Durant Defendants and Defendant Mike Ward, jointly and severally, pursuant to Texas Civil Practice & Remedies Code section 38.001.

## X.
## CONDITIONS PRECEDENT

88.   All conditions precedent to the Sebastians', Cadet's, and the Classic Dealerships' claims for relief have been performed or occurred.

## XI.
## RULE 193.7 NOTICE

89.   Pursuant to Texas Rule of Civil Procedure 193.7, the Sebastians, Cadet, and the Classic Dealerships hereby give notice to all parties that any documents produced may be used against the party producing the documents at any pretrial proceeding and/or trial of this matter without necessity of authenticating the documents.

## PRAYER

For these reasons, the Sebastians, Cadet, and the Classic Dealerships pray that the Court, after notice and hearing or trial, render judgment, jointly and severally, against the Durant Defendants and Defendant Mike Ward for the following:

a.   Actual damages;

b.   Consequential damages;

c.   Disgorgement;

d.   Exemplary damages;

25

App.A 0196

e.   Attorney fees;

f.   Litigation costs and costs of court;

g.   Appointment of a receiver;

h.   Pre-judgment and post-judgment interest; and

i.   All other relief to which Third Party Plaintiffs may be justly entitled, as law or in equity.

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI LLP

By: /s/ Joseph W. DiCecco
    Joseph W. DiCecco
    State Bar No. 05812520
    jdicecco@grsm.com
    John A. Coselli
    State Bar No. 24100163
    jcoselli@grsm.com
    Nicholas A. Ocampo
    State Bar No. 24126423
    nocampo@grsm.com
    1900 West Loop South, Suite 1000
    Houston, Texas 77027
    (713) 490-4879 - Telephone
    (713) 961-3938 – Facisimile

**ATTORNEYS FOR THIRD-PARTY PLAINTIFF, TIFFANY LYNN SEBASTIAN, INDIVIDUALLY, ON BEHALF OF THE SEBASTIAN COMMUNITY ESTATE, AND DERIVATIVELY ON BEHALF OF CADET AND THE CLASSIC DEALERSHIPS**

26

App.A 0197

**SCHEEF & STONE, L.L.P.**

By: /s/ J. Mitchell Little
      J. Mitchell Little
      State Bar No. 24043788
      mitch.little@solidcounsel.com
      Steven Ovando
      State Bar No. 24128862
      steven.ovando@solidcounsel.com
      2600 Network Blvd., Suite 400
      Frisco, Texas 75034
      (214) 472-2100 Telephone
      (214) 472-2150 Telecopier
      **ATTORNEYS FOR THIRD-PARTY PLAINTIFF, TIFFANY LYNN SEBASTIAN, INDIVIDUALLY, ON BEHALF OF THE SEBASTIAN COMMUNITY ESTATE, AND DERIVATIVELY ON BEHALF OF THE CLASSIC DEALERSHIPS**

-And-

**BOHREER LAW FIRM PLLC**

By: /s/ E. Michelle Bohreer
      E. Michelle Bohreer
      State Bar No. 06717100
      Pritesh Soni
      State Bar No. 24063926
      777 Post Oak Blvd., Ste 950
      Houston, Texas 77056
      Telephone: (832) 856-3006
      Facsimile: (832) 856-2891
      Emails:   michelle@bohreerlaw.com
                pritesh@bohreerlaw.com
      E-service: e-service@bohreerlaw.com
      **ATTORNEYS FOR THIRD-PARTY PLAINTIFF, MICHAEL JEFFREY SEBASTIAN, INDIVIDUALLY, ON BEHALF OF THE SEBASTIAN COMMUNITY ESTATE, AND DERIVATIVELY ON BEHALF OF CADET AND THE CLASSIC DEALERSHIPS**

27

App.A 0198

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Lim on behalf of Joseph DiCecco
Bar No. 5812520
llim@grsm.com
Envelope ID: 95574422
Filing Code Description: Amended Filing
Filing Description: First Amended Third-Party Petition
Status as of 12/23/2024 8:40 AM CST

Associated Case Party: TiffanyLynnSebastian

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Haley K.Burnside | | hburnside@fullenweider.com | 12/20/2024 5:37:03 PM | SENT |
| Nicole Ross | | nross@fullenweider.com | 12/20/2024 5:37:03 PM | SENT |
| Eliza Cabrera | | ecabrera@fullenweider.com | 12/20/2024 5:37:03 PM | SENT |
| Bobby Newman | | bknservice@bobbyknewman.com | 12/20/2024 5:37:03 PM | SENT |
| John Coselli III | | jcoselli@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| Joseph DiCecco | | jdicecco@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| Lisa Lim | | llim@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| Nicholas Ocampo | | nocampo@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| J. MitchellLittle | | mitch.little@solidcounsel.com | 12/20/2024 5:37:03 PM | SENT |
| Steven Ovando | | steven.ovando@solidcounsel.com | 12/20/2024 5:37:03 PM | SENT |

Associated Case Party: MichaelJefferySebastian

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Marjorie Maxwell | 24060239 | eservicemam@dalefamilylaw.com | 12/20/2024 5:37:03 PM | SENT |
| Laura DDale | | eserviceldd@dalefamilylaw.com | 12/20/2024 5:37:03 PM | SENT |
| E. MichelleBohreer | | michelle@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| Pritesh Soni | | pritesh@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| E. Service | | e-service@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|

App.A 0199

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Lim on behalf of Joseph DiCecco
Bar No. 5812520
llim@grsm.com
Envelope ID: 95574422
Filing Code Description: Amended Filing
Filing Description: First Amended Third-Party Petition
Status as of 12/23/2024 8:40 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Randall Wilhite | 21476400 | service@fullenweider.com | 12/20/2024 5:37:03 PM | SENT |
| Charlotte Rainwater | 24007889 | service@rainwaterfamilylaw.legal | 12/20/2024 5:37:03 PM | SENT |
| Joseph DiCecco | | jdicecco@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| John Coselli III | | jcoselli@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| Dennis Slate | 24029836 | Service@Slatelaw.com | 12/20/2024 5:37:03 PM | SENT |
| E Service | | e-service@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| E. Michelle Bohreer | | michelle@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| Sharon Taylor | | sharont@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| Lisa Lim | | llim@grsm.com | 12/20/2024 5:37:03 PM | SENT |
| Pritesh Soni | | pritesh@bohreerlaw.com | 12/20/2024 5:37:03 PM | SENT |
| Derek DRollins | | DRollins@Shackelford.law | 12/20/2024 5:37:03 PM | SENT |
| Joshua HNortham | | jnortham@shackelford.law | 12/20/2024 5:37:03 PM | SENT |

App.A 0200

# EXHIBIT D

## REGISTER OF ACTIONS
### CASE NO. 24-DCV-318087

In the Matter of the Marriage of Tiffany Lynn Sebastian and Michael Jeffery Sebastian and in the Interest of Minor Child(ren)

§
§
§
§
§

Case Type: **Divorce - With Children**
Date Filed: **07/11/2024**
Location: **387th District Court**

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| Counter-Defendant | **16835 Cadet Partners, LLC**<br>Grapevine, TX 76051-3991 | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Counter-Defendant | **Classic Chevrolet Sugar Land, LLC**<br>Grapevine, TX 76051-3991 | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Counter-Defendant | **Classic Chevrolet West Houston, LLC**<br>Grapevine, TX 76051-3991 | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Counter-Defendant | **Classic Elite Buick GMC, Inc**<br>Grapevine, TX 76051-3991 | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Counter-Defendant | **Sebastian, Tiffany Lynn** | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W)<br><br>Bobby King Newman<br>*Retained*<br>713-322-0000(W) |
| Counter-Plaintiff | **Sebastian, Michael Jeffery** | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W)<br><br>Laura D. Dale<br>*Retained*<br>713-600-1717(W) |
| Defendant or Respondent | **16835 Cadet Partners, LLC**<br>Grapevine, TX 76051-3991 | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Defendant or Respondent | **Classic Chevrolet Sugar Land, LLC**<br>Grapevine, TX 76051-3991 | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Defendant or Respondent | **Classic Chevrolet West Houston, LLC**<br>Grapevine, TX 76051-3991 | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Defendant or Respondent | **Classic Elite Buick GMC, Inc**<br>Grapevine, TX 76051-3991 | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Defendant or Respondent | **Sebastian, Michael Jeffery** | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |

<span style="color:red">App.A 0201</span>

|  |  |  | Laura D. Dale<br>*Retained*<br>713-600-1717(W) |
|---|---|---|---|
| Minor | **Confidential** | 0' 0", 0 lbs | |
| Plaintiff or<br>Petitioner | Sebastian, Tiffany Lynn | | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W)<br><br>Bobby King Newman<br>*Retained*<br>713-322-0000(W) |
| Third Party<br>Defendant | 8100 Management LLC  8100 Management<br>Grapevine, TX 76099 | | |
| Third Party<br>Defendant | 8100 Partners, LTD  8100 Partners<br>Grapevine, TX 76099 | | |
| Third Party<br>Defendant | 8705 Management LLC<br>8705 Management<br>Grapevine, TX 76099 | | |
| Third Party<br>Defendant | 8705 Partners Ltd.<br>8705 Partners<br>Grapevine, TX 76099 | | |
| Third Party<br>Defendant | Durant, T. Bently  Durant, Bently<br>Grapevine, TX 76099 | | |
| Third Party<br>Defendant | Durant, Thomas R.  Durant, Tom<br>Grapevine, TX 76099 | | |
| Third Party<br>Defendant | The Durant Classic Dynasty Trust  Dynasty<br>Trust<br>Grapevine, TX 76099 | | |
| Third Party<br>Defendant | Ward, Michael A.<br>Mike Ward<br>Denton, TX 76201-1769 | | |
| Third Party<br>Plaintiff | 16835 Cadet Partners, LLC<br>Grapevine, TX 76051-3991 | | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Third Party<br>Plaintiff | Classic Chevrolet Sugar Land, LLC<br>Grapevine, TX 76051-3991 | | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Third Party<br>Plaintiff | Classic Chevrolet West Houston, LLC<br>Grapevine, TX 76051-3991 | | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Third Party<br>Plaintiff | Classic Elite Buick GMC, Inc<br>Grapevine, TX 76051-3991 | | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |
| Third Party<br>Plaintiff | Sebastian, Michael Jeffery | | Joseph Wayne Di Cecco<br>*Retained*<br>713-961-3366(W) |

Laura D. Dale
*Retained*

App A 0202

713-600-1717(W)

| | | |
|---|---|---|
| **Third Party Plaintiff** | Sebastian, Tiffany Lynn | **Joseph Wayne Di Cecco** *Retained* 713-961-3366(W) |
| | | **Bobby King Newman** *Retained* 713-322-0000(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | |
|---|---|---|
| 07/11/2024 | **Petition** Index # 1 | *Original Petition for Divorce* |
| 07/12/2024 | **Order** Index # 2 | *Standing Temporary Mutual Injunctions Divorce with Children* |
| 07/12/2024 | **Request** Index # 3 | *Request for Process* |
| 07/17/2024 | **Issuance** Index # 4 | *Citation Issued to Michael Jeffery Sebastian* |
| 07/17/2024 | **Citation** | *e-Service* |
| | Sebastian, Michael Jeffery | Unserved |
| 07/17/2024 | **Letters** | *Refund Check Issuance* |
| 08/02/2024 | **Answer/Contest/Response/Waiver** Index # 5 | *Respondent's Original Answer* |
| 08/29/2024 | **No Fee Documents** Index # 6 | *Designation and Entry of Appearance of Counsel* |
| 08/30/2024 | **Proposed Order** Index # 7 | *Motion for Substitution of Counsel* |
| 09/17/2024 | **Order** Index # 8 | *Order on Motion for Substitution of Counsel* |
| 09/17/2024 | **Judge Docket Entry** | *A/O - Substitution of Counsel Signed - RB* |
| 09/18/2024 | **Counter Claim/Cross Action/Intervention/Third Party - Family** Index # 9 | *Counterpetition for Divorce* |
| 09/18/2024 | **Request** Index # 10 | *Request for Process* |
| 09/18/2024 | **Request** Index # 11 | *Request for Process* |
| 09/18/2024 | **Request** Index # 12 | *Request for Process* |
| 09/18/2024 | **Request** Index # 13 | *Request for Process* |
| 09/23/2024 | **Copy of Order/Judgment Sent - Rule 21 (f) (10)** Index # 14 | *Index #8 Sent to all Parties* |
| 09/23/2024 | **Issuance** Index # 15 | *Citation issued to Classic Chevrolet Sugar Land LLC by and through Registered Agent, Thomas R. Durant* |
| 09/23/2024 | **Citation** | *E-Service* |
| | Classic Chevrolet Sugar Land, LLC | Unserved |
| 09/23/2024 | **Issuance** Index # 16 | *Citation issued to Classic Chevrolet West Houston LLC by and through Registered Agent, Thomas R. Durant* |
| 09/23/2024 | **Citation** | *E-Service* |
| | Classic Chevrolet West Houston, LLC | Unserved |
| 09/23/2024 | **Issuance** Index # 17 | *Citation issued to Classic Elite Buic GMC, Inc by and through Registered Agent, Thomas R. Durantt* |
| 09/23/2024 | **Citation** | *E-Service* |
| | Classic Elite Buick GMC, Inc | Unserved |
| 09/23/2024 | **Issuance** Index # 18 | *Citation issued to 16835 Cadet Partner, LLC ny and through Registered Agent, Thomas R. Durant* |
| 09/23/2024 | **Citation** | *E-Service* |
| | 16835 Cadet Partners, LLC | Unserved |
| 10/15/2024 | **No Fee Documents** Index # 19 | *Rule 11 Abating Discovery* |
| 10/31/2024 | **Officers Return** Index # 20 | *Citation Return - Classic Chevrolet West Houston* |
| 10/31/2024 | **Officers Return** Index # 21 | *Citation Return - Classic Chevrolet Sugar Land LLC* |
| 10/31/2024 | **Officers Return** Index # 22 | *Citation Return - Classic Elite Buick GMC* |
| 10/31/2024 | **Officers Return** Index # 23 | *Citation Return - 16835 Cadet Partner* |
| 11/08/2024 | **No Fee Documents** Index # 24 | *Rule 11 Agreement* |

App.A 0203

| 12/03/2024 | **Counter Claim/Cross Action/Intervention/Third Party - Family**          Index # 25 |
|---|---|
| | *Third-Party Petition* |
| 12/06/2024 | **Issuance**          **Index # 27** |
| | *Citation Issued to T. Bently Durant "Bently Durant"* |
| 12/06/2024 | **Citation** |
| | *e-Service* |

*Durant, T. Bently*                                        Unserved

| 12/06/2024 | **Issuance**          **Index # 28** |
|---|---|
| | *Citation Issued to Thomas R. Durant "Tom Durant"* |
| 12/06/2024 | **Citation** |
| | *e-Service* |

*Durant, Thomas R.*                                        Unserved

| 12/06/2024 | **Issuance**          **Index # 29** |
|---|---|
| | *Citation Issued to The Durant Classic Dynasty Trust "Dynasty Trust"* |
| 12/06/2024 | **Citation** |
| | *e-Service* |

*The Durant Classic Trust*                                Unserved

| 12/06/2024 | **Issuance**          **Index # 30** |
|---|---|
| | *Citation Issued to 8100 Partners, LTD "8100 Partners"* |
| 12/06/2024 | **Citation** |
| | *e-Service* |

*8100 Partners, LTD*                                        Unserved

| 12/06/2024 | **Issuance**          **Index # 31** |
|---|---|
| | *Citation Issued to 8100 Management LLC "8100 Management"* |
| 12/06/2024 | **Citation** |
| | *e-Service* |

*8100 Management LLC*                                      Unserved

| 12/20/2024 | **Amended Filing**          **Index # 32** |
|---|---|
| | *First Amended Third-Party Petition* |
| 02/24/2025 | **M/Hearing**  (9:00 AM) (Judicial Officer Heppard, Janet B) |
| | *per DaleLaw=3to4Hrs.on Application for Receiver and Action for Audit* |

---

**FINANCIAL INFORMATION**

**Counter-Defendant Sebastian, Tiffany Lynn**

| Total Financial Assessment | 550.00 |
|---|---|
| Total Payments and Credits | 550.00 |
| **Balance Due as of 01/01/2025** | **0.00** |

| 07/12/2024 | Transaction Assessment | | | 350.00 |
|---|---|---|---|---|
| 07/12/2024 | E-filing | Receipt # 2024-26108-DCLK | SEBASTIAN, TIFFANY LYNN | (213.00) |
| 07/12/2024 | State Credit | | | (137.00) |
| 07/12/2024 | Transaction Assessment | | | 16.00 |
| 07/12/2024 | E-filing | Receipt # 2024-26177-DCLK | Sebastian, Tiffany Lynn | (16.00) |
| 07/29/2024 | Transaction Assessment | | | 8.00 |
| 12/04/2024 | Transaction Assessment | | | 120.00 |
| 12/04/2024 | E-filing | Receipt # 2024-47243-DCLK | Sebastian, Tiffany Lynn | (75.00) |
| 12/04/2024 | State Credit | | | (45.00) |
| 12/23/2024 | Transaction Assessment | | | 64.00 |
| 12/23/2024 | E-filing | Receipt # 2024-49481-DCLK | Sebastian, Tiffany Lynn | (64.00) |

**Counter-Plaintiff Sebastian, Michael Jeffery**

| Total Financial Assessment | 112.00 |
|---|---|
| Total Payments and Credits | 112.00 |
| **Balance Due as of 01/01/2025** | **0.00** |

| 09/19/2024 | Transaction Assessment | | | 112.00 |
|---|---|---|---|---|
| 09/19/2024 | E-filing | Receipt # 2024-37053-DCLK | Sebastian, Michael Jeffery | (67.00) |
| 09/19/2024 | State Credit | | | (45.00) |

App.A 0204

**THE STATE OF TEXAS**
**CITATION**

TO:   CLASSIC CHEVROLET SUGAR LAND, LLC BY
      AND THROUGH REGISTERED AGENT, THOMAS R. DURANT
      1101 W STATE HIGHWAY 114
      GRAPEVINE TX  76051

**NOTICE:**

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** filed on **July 12, 2024; September 18, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**, CHILD**

The name and address of the attorney for **PETITIONER** is:

LAURA D. DALE
1800 ST. JAMES PLACE, SUITE 620
HOUSTON TX 77056
713-600-1717

The nature of the demands of said **PETITIONER** is shown by a true and correct copy of the **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 23rd day of September, 2024.**

BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
Deputy District Clerk LONG PHAM
Telephone: (281) 238-3338

App.A 0205

24-DCV-318087                                  **387th Judicial District Court**
**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **, CHILD**

### OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20_____, at _____ o'clock ____M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named     _____

_____, in person, a true copy of this citation together with the accompanying copy of the **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce**, having first attached such copy of such **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce** to such copy of citation and endorsed on such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**
Came to hand the _____ day of _____ 20_____ at _____o'clock _____M     and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____, my date of birth is
                        (First, Middle, Last)

_____, and my address is _____
                                                              (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the day of _____

_____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

THE STATE OF TEXAS
CITATION

TO:   CLASSIC CHEVROLET SUGAR LAND, LLC BY
      AND THROUGH REGISTERED AGENT, THOMAS R. DURANT
      1101 W STATE HIGHWAY 114
      GRAPEVINE TX  76051

NOTICE:

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** filed on **July 12, 2024; September 18, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, **CHILD**

The name and address of the attorney for **PETITIONER** is:

LAURA D. DALE
1800 ST. JAMES PLACE, SUITE 620
HOUSTON TX 77056
713-600-1717

The nature of the demands of said PETITIONER is shown by a true and correct copy of the **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 23rd day of September, 2024.**

BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
Deputy District Clerk LONG PHAM
Telephone: (281 238-3338

SERVICE

App.A 0207

24-DCV-318087                          387th Judicial District Court
IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE
INTEREST OF ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CHILD

### OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ___M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named        _____

_____, in person, a true copy of this citation together with the accompanying copy of the **Standing
Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce**, having first attached such copy of such
**Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce** to such copy of citation and
endorsed on such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**
Came to hand the _____ day of _____ 20_____ at _____o'clock _____M    and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is
not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed
under penalty of perjury and contain the following statement:

"My name is _____, my date of birth is
                        (First, Middle, Last)

_____, and my address is _____
                                                (Street, City, Zip)

_____ ."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the day of

_____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

Citation (Other) issued to Classic Chevrolet Sugar Land, LLC on 9/23/2024

**SERVICE**

App.A 0208

THE STATE OF TEXAS
CITATION

TO:  CLASSIC CHEVROLET WEST HOUSTON, LLC BY
AND THROUGH REGISTERED AGENT, THOMAS R. DURANT
1101 WEST STATE HIGHWAY 114
GRAPEVINE TX  76051

**NOTICE:**

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** filed on **July 12, 2024; September 18, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▉▉▉▉▉▉▉▉▉▉▉▉▉, **CHILD**

The name and address of the attorney for **PETITIONER** is:

**LAURA D. DALE
1800 ST. JAMES PLACE, SUITE 620
HOUSTON TX 77056
713-600-1717**

The nature of the demands of said **PETITIONER** is shown by a true and correct copy of the **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 23rd day of September, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
**Deputy District Clerk LONG PHAM
Telephone: (281) 238-3338**

App.A 0209

24-DCV-318087            **387th Judicial District Court**

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▆▆▆▆▆▆▆▆▆▆▆▆▆ **, CHILD**

### OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20_____, at _____ o'clock ____M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy of the **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce**, having first attached such copy of such **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce** to such copy of citation and endorsed on such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____

Name of Officer or Authorized Person

_____County, Texas

By:_____

Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M   and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7 days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____

Name of Officer or Authorized Person

_____County, Texas

By:_____

Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____, my date of birth is

              (First, Middle, Last)

_____, and my address is _____

                                     (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the day of

_____.

_____

Declarant / Authorized Process Server

_____

(Id # & expiration of certification)

SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK

THE STATE OF TEXAS
CITATION

TO:    CLASSIC CHEVROLET WEST HOUSTON, LLC BY
       AND THROUGH REGISTERED AGENT, THOMAS R. DURANT
       1101 WEST STATE HIGHWAY 114
       GRAPEVINE TX  76051

**NOTICE:**

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** filed on **July 12, 2024; September 18, 2024,** a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ████████████████████ **CHILD**

The name and address of the attorney for **PETITIONER** is:

LAURA D. DALE
1800 ST. JAMES PLACE, SUITE 620
HOUSTON TX 77056
713-600-1717

The nature of the demands of said **PETITIONER** is shown by a true and correct copy of the **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 23rd day of September, 2024.**

BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
Deputy District Clerk LONG PHAM
Telephone: (281 238-3338

SERVICE

App.A 0211

24-DCV-318087             **387th Judicial District Court**
IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF ▮▮▮▮▮▮▮▮▮▮▮ CHILD

### OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ___M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy of the **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce**, having first attached such copy of such **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce** to such copy of citation and endorsed on such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____, my date of birth is
           (First, Middle, Last)

_____, and my address is _____
                       (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the day of

_____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

Citation (Other) issued to Classic Chevrolet West Houston, LLC on 9/23/2024

### SERVICE

App.A 0212

**SERVICE FEE NOT COLLECTED BY DISTRICT CLERK**

**THE STATE OF TEXAS**
**CITATION**

TO:    CLASSIC ELITE BUICK GMC, INC BY AND
       THROUGH REGISTERED AGENT, THOMAS R. DURANT
       1101 WEST STATE HIGHWAY 114
       GRAPEVINE TX 76051

**NOTICE:**

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** filed on **July 12, 2024; September 18, 2024,** a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ███████████████████, **CHILD**

The name and address of the attorney for **PETITIONER** is:

LAURA D. DALE
1800 ST. JAMES PLACE, SUITE 620
HOUSTON TX 77053
713-600-1717

The nature of the demands of said **PETITIONER** is shown by a true and correct copy of the **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 23rd day of September, 2024.**

BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
      Deputy District Clerk LONG PHAM
      Telephone: (281) 238-3338

App.A 0213

24-DCV-318087                                387th Judicial District Court
IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE
INTEREST OF ███████████████████████, CHILD

### OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20_____, at _____ o'clock ____M.

Executed at _____, within the County of _____

_____, at _____o'clock ____M on the _____ day of _____

_____ 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy of the **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce**, having first attached such copy of such **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce** to such copy of citation and endorsed on such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M    and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____, my date of birth is _____
                      (First, Middle, Last)

_____, and my address is _____
                                                                      (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the day of

_____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

THE STATE OF TEXAS
CITATION

TO:    CLASSIC ELITE BUICK GMC, INC BY AND
THROUGH REGISTERED AGENT, THOMAS R. DURANT
1101 WEST STATE HIGHWAY 114
GRAPEVINE TX  76051

**NOTICE:**

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** filed on **July 12, 2024; September 18, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ██████████████████ **CHILD**

The name and address of the attorney for **PETITIONER** is:

LAURA D. DALE
1800 ST. JAMES PLACE, SUITE 620
HOUSTON TX 77053
713-600-1717

The nature of the demands of said PETITIONER is shown by a true and correct copy of the **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 23rd day of September, 2024.**

BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
Deputy District Clerk LONG PHAM
Telephone: (281 238-3338

SERVICE

App.A 0215

24-DCV-318087                    **387th Judicial District Court**
IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE
INTEREST OF ███████████████████, CHILD

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ___M.

Executed at _____, within the County of _____

_____, at _____ o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named    _____

_____, in person, a true copy of this citation together with the accompanying copy of the **Standing**

**Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce**, having first attached such copy of such

**Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce** to such copy of citation and

endorsed on such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M    and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____, my date of birth is
                              (First, Middle, Last)

_____, and my address is _____
                                                              (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the day of

_____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

Citation (Other) issued to Classic Elite Buick GMC, Inc on 9/23/2024

**SERVICE**

App.A 0216

SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK

THE STATE OF TEXAS
CITATION

TO:     16835 CADET PARTNERS, LLC BY AND THROUGH
        REGISTERED AGENT, THOMAS R. DURANT
        1101 WEST STATE HIGHWAY 114
        GRAPEVINE TX 76051

NOTICE:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** filed on **July 12, 2024; September 18, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF ███████████████████████, CHILD**

The name and address of the attorney for **PETITIONER** is:

LAURA D. DALE
1800 ST. JAMES PLACE, SUITE 620
HOUSTON TX 77056
713-600-1717

The nature of the demands of said **PETITIONER** is shown by a true and correct copy of the **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 23rd day of September, 2024.**

BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
      Deputy District Clerk LONG PHAM
      Telephone: (281) 238-3338

Citation (Other) issued to 16835 Cadet Partners, LLC on 9/23/2024

App.A 0217

24-DCV-318087            **387th Judicial District Court**

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **CHILD**

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20_____, at _____ o'clock ___M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named      _____

_____, in person, a true copy of this citation together with the accompanying copy of the **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce**, having first attached such copy of such **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce** to such copy of citation and endorsed on such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M    and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7 days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____, my date of birth is
          (First, Middle, Last)

_____, and my address is _____
                         (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the day of

_____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

App.A 0218

SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK

THE STATE OF TEXAS
CITATION

TO:    16835 CADET PARTNERS, LLC BY AND THROUGH
REGISTERED AGENT, THOMAS R. DURANT
1101 WEST STATE HIGHWAY 114
GRAPEVINE TX 76051

**NOTICE:**

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** filed on **July 12, 2024; September 18, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ████████████████████ **CHILD**

The name and address of the attorney for **PETITIONER** is:

LAURA D. DALE
1800 ST. JAMES PLACE, SUITE 620
HOUSTON TX 77056
713-600-1717

The nature of the demands of said **PETITIONER** is shown by a true and correct copy of the **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 23rd day of September, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK**
**FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
Deputy District Clerk LONG PHAM
Telephone: (281) 238-3338

SERVICE

App.A 0219

**24-DCV-318087**  **387th Judicial District Court**

IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF ███████████████████, CHILD

### OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ___M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy of the **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce**, having first attached such copy of such **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce** to such copy of citation and endorsed on such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M  and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7 days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee ......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____, my date of birth is
              (First, Middle, Last)

_____, and my address is _____
                                                        (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the day of

_____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

Citation (Other) issued to 16835 Cadet Partners, LLC on 9/23/2024

**SERVICE**

App.A 0220

SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK

THE STATE OF TEXAS

CITATION

TO:    T. BENTLY DURANT ("BENTLY DURANT")
        1101 STATE HIGHWAY 114
        GRAPEVINE TX 76099
        OR WHEREVER HE MAY BE FOUND

**NOTICE:**

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **THIRD-PARTY PETITION** filed on **December 03, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST O̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶, CHILD**

The name and address of the attorney for **THIRD- PARTY PETITIONER** is:

JOSEPH W. DICECCO
1900 WESTLOOP SOUTH, SUITE 1000
HOUSTON TX 77027
713-490-4879

The nature of the demands of said **THIRD- PARTY PETITIONER** is shown by a true and correct copy of the **THIRD-PARTY PETITION** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 6th day of December, 2024.**

BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
    Deputy District Clerk Christian Reems
    Telephone: (281) 341-4524

Citation (Original Petition) issued to T. Bently Durant on 12/6/2024

App.A 0221

24-DCV-318087                 **387th Judicial District Court**
In The Matter Of The Marriage Of Tiffany Lynn Sebastian And Michael Jeffery Sebastian And In The Interest Of ███████

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ___M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy of the

**Third-party Petition**, having first attached such copy of such **Third-party Petition** to such copy of citation and endorsed on

such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M    and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____,
                     (First, Middle, Last)

my date of birth is_____, and my address is _____
                                            (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the

day of _____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK

THE STATE OF TEXAS

CITATION

**TO:** T. BENTLY DURANT ("BENTLY DURANT")
1101 STATE HIGHWAY 114
GRAPEVINE TX 76099
OR WHEREVER HE MAY BE FOUND

**NOTICE:**

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **THIRD-PARTY PETITION** filed on **December 03, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ██████████████████████ **CHILD**

The name and address of the attorney for **THIRD- PARTY PETITIONER** is:

**JOSEPH W. DICECCO**
**1900 WESTLOOP SOUTH, SUITE 1000**
**HOUSTON TX 77027**
**713-490-4879**

The nature of the demands of said **THIRD- PARTY PETITIONER** is shown by a true and correct copy of the **THIRD-PARTY PETITION** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 6th day of December, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK**
**FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
Deputy District Clerk Christian Reems
Telephone: (281) 341-4524

SERVICE

App.A 0223

24-DCV-318087          387th Judicial District Court

In The Matter Of The Marriage Of Tiffany Lynn Sebastian And Michael Jeffery Sebastian And In The Interest Of ████

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ___M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy of the

**Third-party Petition**, having first attached such copy of such **Third-party Petition** to such copy of citation and endorsed on

such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____

Name of Officer or Authorized Person

_____County, Texas

By:_____

Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M    and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____

Name of Officer or Authorized Person

_____County, Texas

By:_____

Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____,

             (First, Middle, Last)

my date of birth is_____, and my address is _____

                                        (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the

day of _____.

_____

Declarant / Authorized Process Server

_____

(Id # & expiration of certification)

SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK

THE STATE OF TEXAS

CITATION

TO:   THOMAS R. DURANT ("TOM DURANT")
      1101 STATE HIGHWAY 114
      GRAPEVINE TX 76099
      OR WHEREVER HE MAY BE FUND

NOTICE:

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **THIRD-PARTY PETITION** filed on **December 03, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ███████████████████ **CHILD**

The name and address of the attorney for **THIRD- PARTY PETITIONER** is:

**JOSEPH W. DICECCO**
**1900 WESTLOOP SOUTH, SUITE 1000**
**HOUSTON TX 77027**
**713-490-4879**

The nature of the demands of said **THIRD- PARTY PETITIONER** is shown by a true and correct copy of the **THIRD-PARTY PETITION** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 6th day of December, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK**
**FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
Deputy District Clerk Christian Reems
Telephone: (281) 341-4524

Citation (Original Petition) issued to Thomas R. Durant on 12/6/2024

App.A 0225

24-DCV-318087         **387th Judicial District Court**
**In The Matter Of The Marriage Of Tiffany Lynn Sebastian And Michael Jeffery Sebastian And In The Interest Of** ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮ **d**

### OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ___M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy of the

**Third-party Petition**, having first attached such copy of such **Third-party Petition** to such copy of citation and endorsed on

such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
       Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M    and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
       Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____,
                  (First, Middle, Last)

my date of birth is_____, and my address is _____
                                      (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the

day of _____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

App.A 0226

THE STATE OF TEXAS

CITATION

TO:    THOMAS R. DURANT ("TOM DURANT")
       1101 STATE HIGHWAY 114
       GRAPEVINE TX 76099
       OR WHEREVER HE MAY BE FUND

**NOTICE:**

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **THIRD-PARTY PETITION** filed on **December 03, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ████████████████████████ ILD

The name and address of the attorney for **THIRD- PARTY PETITIONER** is:

**JOSEPH W. DICECCO**
**1900 WESTLOOP SOUTH, SUITE 1000**
**HOUSTON TX 77027**
**713-490-4879**

The nature of the demands of said **THIRD- PARTY PETITIONER** is shown by a true and correct copy of the **THIRD-PARTY PETITION** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 6th day of December, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK**
**FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
    Deputy District Clerk Christian Reems
    Telephone: (281) 341-4524

SERVICE

App.A 0227

24-DCV-318087            **387th Judicial District Court**
In The Matter Of The Marriage Of Tiffany Lynn Sebastian And Michael Jeffery Sebastian And In The Interest O █████
█████████ Child

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ___M.

Executed at _____, within the County of ____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named     _____

_____, in person, a true copy of this citation together with the accompanying copy of the

**Third-party Petition**, having first attached such copy of such **Third-party Petition** to such copy of citation and endorsed on

such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
     Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M   and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
  Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____,
               (First, Middle, Last)

my date of birth is_____, and my address is _____
                                           (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the

day of _____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

App.A 0228

SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK

THE STATE OF TEXAS

CITATION

TO:    THE DURANT CLASSIC DYNASTY TRUST ("DYNASTY TRUST")
       TRUSTEE, MARIN "MARK" ESCAMILLA
       1101 STATE HIGHWAY 114
       GRAPEVINE TX  76099
       OR WHEREVER TRUSTEE MAY BE FOUND

**NOTICE:**

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **THIRD-PARTY PETITION** filed on **December 03, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉**HILD**

The name and address of the attorney for **THIRD- PARTY PETITIONER** is:

**JOSEPH W. DICECCO**
**1900 WESTLOOP SOUTH, SUITE 1000**
**HOUSTON TX  77027**
**713-490-4879**

The nature of the demands of said **THIRD- PARTY PETITIONER** is shown by a true and correct copy of the **THIRD-PARTY PETITION** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 6th day of December, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK**
**FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
    Deputy District Clerk Christian Reems
    Telephone: (281) 341-4524

Citation (Original Petition) issued to The Durant Classic Trust on 12/6/2024

App.A 0229

24-DCV-318087                                       **387th Judicial District Court**

■■■■■■ Marriage Of Tiffany Lynn Sebastian And Michael Jeffery Sebastian And In The Interest Of ■■■■■■



### OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20___, at _____ o'clock ____M.

Executed at _____, within the County of _____

_____, at _____ o'clock ____M on the _____ day of _____

_____ 20___, by delivering to the within named   _____

_____, in person, a true copy of this citation together with the accompanying copy of the

**Third-party Petition**, having first attached such copy of such **Third-party Petition** to such copy of citation and endorsed on

such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____

Name of Officer or Authorized Person

_____County, Texas

By:_____

Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M    and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____

Name of Officer or Authorized Person

_____County, Texas

By:_____

Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____,

(First, Middle, Last)

my date of birth is_____, and my address is _____

(Street, City, Zip)

_____ "

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the

day of _____.

_____

Declarant / Authorized Process Server

_____

(Id # & expiration of certification)

SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK

THE STATE OF TEXAS

CITATION

TO: THE DURANT CLASSIC DYNASTY TRUST ("DYNASTY TRUST")
TRUSTEE, MARIN "MARK" ESCAMILLA
1101 STATE HIGHWAY 114
GRAPEVINE TX 76099
OR WHEREVER TRUSTEE MAY BE FOUND

**NOTICE:**

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **THIRD-PARTY PETITION** filed on **December 03, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▆▆▆▆▆▆▆▆▆▆▆▆ **,CHILD**

The name and address of the attorney for **THIRD- PARTY PETITIONER** is:

JOSEPH W. DICECCO
1900 WESTLOOP SOUTH, SUITE 1000
HOUSTON TX 77027
713-490-4879

The nature of the demands of said **THIRD- PARTY PETITIONER** is shown by a true and correct copy of the **THIRD-PARTY PETITION** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 6th day of December, 2024.**

BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
Deputy District Clerk Christian Reems
Telephone: (281) 341-4524

SERVICE

App.A 0231

24-DCV-318087            387th Judicial District Court

In The Matter Of The Marriage Of Tiffany Lynn Sebastian And Michael Jeffery Sebastian And In The Interest Of ▮▮▮▮
▮▮▮▮▮▮▮▮ hild

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ___M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy of the

**Third-party Petition**, having first attached such copy of such **Third-party Petition** to such copy of citation and endorsed on

such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
       Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of_____ 20_____ at _____o'clock _____M    and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
       Signature of Deputy or Authorized Person

---

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____,

              (First, Middle, Last)

my date of birth is_____, and my address is _____

                            (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the

day of _____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

Citation (Original Petition) issued to The Durant Classic Trust on 12/6/2024

**SERVICE**                App.A 0232

THE STATE OF TEXAS

CITATION

TO:  8100 PARTNERS, LTD ("8100 PARTNERS")
REGISTERED AGENT, THOMAS R. DURANT
OR ANY OFFICER OF DIRECTOR OF 8100 PARTNERS
1101 STATE HIGHWAY 114
GRAPEVINE TX  76099
OR WHEREVER THEY MAY BE FOUND

NOTICE:

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **THIRD-PARTY PETITION** filed on **December 03, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **CHILD**

The name and address of the attorney for **THIRD- PARTY PETITIONER** is:

JOSEPH W. DICECCO
1900 WESTLOOP SOUTH, SUITE 1000
HOUSTON TX  77027
713-490-4879

The nature of the demands of said **THIRD- PARTY PETITIONER** is shown by a true and correct copy of the **THIRD-PARTY PETITION** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 6th day of December, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK**
**FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
Deputy District Clerk Christian Reems
Telephone: (281) 341-4524

Citation (Original Petition) issued to 8100 Partners, LTD on 12/6/2024

App.A 0233

24-DCV-318087    387th Judicial District Court
In The Matter Of The Marriage Of Tiffany Lynn Sebastian And Michael Jeffery Sebastian And In The Interest Of ███████

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ____M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named    _____

_____, in person, a true copy of this citation together with the accompanying copy of the

**Third-party Petition**, having first attached such copy of such **Third-party Petition** to such copy of citation and endorsed on

such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M    and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107:  The officer or authorized person who serves, or attempts to serve, a citation shall sign the return.  The signature is not required to be verified.  If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____,

                              (First, Middle, Last)

my date of birth is_____, and my address is _____

                                                                                              (Street, City, Zip)

_____;"

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the

day of _____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK

THE STATE OF TEXAS

CITATION

TO:    8100 PARTNERS, LTD ("8100 PARTNERS")
       REGISTERED AGENT, THOMAS R. DURANT
       OR ANY OFFICER OF DIRECTOR OF 8100 PARTNERS
       1101 STATE HIGHWAY 114
       GRAPEVINE TX  76099
       OR WHEREVER THEY MAY BE FOUND

NOTICE:

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **THIRD-PARTY PETITION** filed on **December 03, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ████████████████████, **CHILD**

The name and address of the attorney for **THIRD- PARTY PETITIONER** is:

**JOSEPH W. DICECCO**
**1900 WESTLOOP SOUTH, SUITE 1000**
**HOUSTON TX  77027**
**713-490-4879**

The nature of the demands of said **THIRD- PARTY PETITIONER** is shown by a true and correct copy of the **THIRD-PARTY PETITION** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 6th day of December, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK**
**FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
**Deputy District Clerk** Christian Reems
**Telephone:** (281) 341-4524

SERVICE

24-DCV-318087            **387th Judicial District Court**
In The Matter Of The Marriage Of Tiffany Lynn Sebastian And Michael Jeffery Sebastian And In The Interest Of █████████

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ___M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy of the **Third-party Petition**, having first attached such copy of such **Third-party Petition** to such copy of citation and endorsed on such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
      Signature of Deputy or Authorized Person

**RETURN BY POSTING:**
Came to hand the _____ day of _____ 20_____ at _____o'clock _____M   and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
     Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____,
                (First, Middle, Last)

my date of birth is_____, and my address is _____
                                (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the

day of _____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK

THE STATE OF TEXAS

CITATION

TO:    8100 MANAGEMENT LLC ("8100 MANAGEMENT")
       REGISTERED AGENT, THOMAS R. DURANT
       OR ANY OFFICER OF DIRECTOR OF 8100 MANAGEMENT
       1101 STATE HIGHWAY 114
       GRAPEVINE TX  76099
       OR WHEREVER THEY MAY BE FOUND

NOTICE:

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **THIRD-PARTY PETITION** filed on **December 03, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▉▉▉▉▉▉▉▉▉▉▉▉ **CHILD**

The name and address of the attorney for **THIRD- PARTY PETITIONER** is:

JOSEPH W. DICECCO
1900 WESTLOOP SOUTH, SUITE 1000
HOUSTON TX  77027
713-490-4879

The nature of the demands of said **THIRD- PARTY PETITIONER** is shown by a true and correct copy of the **THIRD-PARTY PETITION** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 6th day of December, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK**
**FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
Deputy District Clerk Christian Reems
Telephone: (281) 341-4524

Citation (Original Petition) issued to 8100 Management LLC on 12/6/2024

App.A 0237

24-DCV-318087
In The Matter Of The Marriage Of Tiffany Lynn Sebastian And Michael Jeffery Sebastian And In The Interest Of ▮▮▮▮▮▮▮ ld

387th Judicial District Court

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20__, at _____ o'clock ___M.

Executed at _____, within the County of _____

_____, at _____o'clock ___M on the _____ day of _____

_____ 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy of the

**Third-party Petition**, having first attached such copy of such **Third-party Petition** to such copy of citation and endorsed on

such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M      and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee .......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____.

                        (First, Middle, Last)

my date of birth is_____, and my address is _____

                                          (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the

day of _____.

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

App.A 0238

**SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK**

THE STATE OF TEXAS

**CITATION**

TO:    8100 MANAGEMENT LLC ("8100 MANAGEMENT")
       REGISTERED AGENT, THOMAS R. DURANT
       OR ANY OFFICER OF DIRECTOR OF 8100 MANAGEMENT
       1101 STATE HIGHWAY 114
       GRAPEVINE TX  76099
       OR WHEREVER THEY MAY BE FOUND

NOTICE:

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **THIRD-PARTY PETITION** filed on **December 03, 2024**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ **CHILD**

The name and address of the attorney for **THIRD- PARTY PETITIONER** is:

JOSEPH W. DICECCO
1900 WESTLOOP SOUTH, SUITE 1000
HOUSTON TX  77027
713-490-4879

The nature of the demands of said **THIRD- PARTY PETITIONER** is shown by a true and correct copy of the **THIRD-PARTY PETITION** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 6th day of December, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By:_____
Deputy District Clerk Christian Reema
Telephone: (281) 341-4524

**SERVICE**

App.A 0239

**SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK**

Filed
10/31/2024 8:12 PM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Long Pham

**THE STATE OF TEXAS
CITATION**

**TO:** 16835 CADET PARTNERS, LLC BY AND THROUGH
REGISTERED AGENT, THOMAS R. DURANT
1101 WEST STATE HIGHWAY 114
GRAPEVINE TX 76051

**NOTICE:**

You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** filed on **July 12, 2024; September 18, 2024,** a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF ▬▬▬▬▬▬▬▬▬▬ CHILD**

The name and address of the attorney for **PETITIONER** is:

**LAURA D. DALE
1800 ST. JAMES PLACE, SUITE 620
HOUSTON TX 77056
713-600-1717**

The nature of the demands of said **PETITIONER** is shown by a true and correct copy of the **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 23rd day of September, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
**Deputy District Clerk** LONG PHAM
Telephone: (281) 238-3338

Citation (Other) issued to 16835 Cadet Partners, LLC on 9/23/2024

App.A 0240

24-DCV-318087                **387th Judicial District Court**
**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, **CHILD**

### OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20____, at _____ o'clock ____M.

Executed at <span style="color:red">SEE ATACHED SECRETARY OF STATE CERTIFICATE OF SERVICE</span> _____, within the County of _____

_____, at _____ o'clock ____M on the _____ day of _____

_____ 20__, by delivering to the within named _____

_____, in person, a true copy of this citation together with the accompanying copy of the **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce**, having first attached such copy of such **Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce** to such copy of citation and endorsed on such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20____ at _____o'clock _____M   and

executed on the _____ day of _____ 20____, by posting a copy of the within citation for 7 days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee ......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**

In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____, my date of birth is
             (First, Middle, Last)

_____, and my address is _____
                       (Street, City, Zip)

_____."

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the day of _____

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)



# The State of Texas
### Secretary of State

2025-370416-4

I, the undersigned, as Secretary of State of the State of Texas, DO HEREBY CERTIFY that according to the records of this office, a copy of the Citation and Counterpetition for Divorce in the cause styled:

> In the matter of the marriage of Tiffany Lynn Sebastian and Michael Jeffery Sebastian and in the interest of ████████████████, child
> 387th Judicial District Court of Fort Bend County, Texas
> Cause No: 24DCV318087

was received by this office on September 30, 2024, and that a copy was forwarded on October 15, 2024, by CERTIFIED MAIL, return receipt requested to:

> 16835 Cadet Partners, LLC
> Registered Agent Thomas R. Drurant
> 1101 West State Highway 114
> Grapevine, TX 76051

The RETURN RECEIPT was received in this office dated October 18, 2024, bearing signature.



Date issued: October 21, 2024

_Jane Nelson_

**Jane Nelson**
Secretary of State
GF/mo

App.A 0242

Filed
10/31/2024 8:12 PM
**Beverley McGrew Walker**
District Clerk
Fort Bend County, Texas
Long Pham

**SERVICE FEE NOT COLLECTED
BY DISTRICT CLERK**

**THE STATE OF TEXAS
CITATION**

TO:     CLASSIC CHEVROLET WEST HOUSTON, LLC BY
        AND THROUGH REGISTERED AGENT, THOMAS R. DURANT
        1101 WEST STATE HIGHWAY 114
        GRAPEVINE TX  76051

**NOTICE:**

You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on Monday next following the expiration of twenty days after you were served this citation and **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** filed on **July 12, 2024; September 18, 2024,** a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no longer than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org.

The case is presently pending before the **387TH JUDICIAL DISTRICT COURT** of Fort Bend County sitting in Richmond, Texas. It bears cause number **24-DCV-318087** and is styled:

**IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE INTEREST OF ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, CHILD**

The name and address of the attorney for **PETITIONER** is:

**LAURA D. DALE
1800 ST. JAMES PLACE, SUITE 620
HOUSTON TX 77056
713-600-1717**

The nature of the demands of said **PETITIONER** is shown by a true and correct copy of the **STANDING TEMPORARY MUTUAL INJUNCTIONS DIVORCE WITH CHILDREN; COUNTERPETITION FOR DIVORCE** accompanying this citation and made a part hereof.

If this Citation is not served, it shall be returned unserved. Issued under my hand and seal of said Court, at Richmond, Texas, **on this the 23rd day of September, 2024.**

**BEVERLEY MCGREW WALKER, DISTRICT CLERK
FORT BEND COUNTY, TEXAS**
Physical Address:
1422 Eugene Heimann Circle, Room 31004
Richmond, Texas 77469
Mailing Address:
301 Jackson Street, Room 101
Richmond, Texas 77469

By: _____
    **Deputy District Clerk** LONG PHAM
    Telephone: (281) 238-3338

Citation (Other) issued to Classic Chevrolet West Houston, LLC on 9/23/2024

App.A 0243

24-DCV-318087                           **387th Judicial District Court**
IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFERY SEBASTIAN AND IN THE
INTEREST OF ███████████████████████, CHILD

## OFFICER'S OR AUTHORIZED PERSON'S RETURN

Came to hand on the _____ day of _____, 20_____, at _____ o'clock ____M.

Executed at __SEE ATACHED SECRETARY OF STATE CERTIFICATE OF SERVICE_____, within the County of _____

_____, at _____o'clock ____M on the _____ day of _____

_____ 20__, by delivering to the within named    _____

_____, in person, a true copy of this citation together with the accompanying copy of the **Standing**

**Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce**, having first attached such copy of such

**Standing Temporary Mutual Injunctions Divorce With Children; Counterpetition For Divorce** to such copy of citation and

endorsed on such copy of citation the date of delivery.

Total fee for serving _____ citation at $80.00 each $_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**RETURN BY POSTING:**

Came to hand the _____ day of _____ 20_____ at _____o'clock _____M      and

executed on the _____ day of _____ 20_____, by posting a copy of the within citation for 7

days, exclusive of the day of posting, before the return day hereof, at the County Courthouse door of _____

_____ County, Texas or at the place in or near the said courthouse where public notice customarily are posted.

Fee ......$_____

_____
Name of Officer or Authorized Person

_____County, Texas

By:_____
Signature of Deputy or Authorized Person

**COMPLETE IF YOU ARE A PERSON OTHER THAN A SHERIFF, CONSTABLE, OR CLERK OF THE COURT.**
In accordance with Rule 107: The officer or authorized person who serves, or attempts to serve, a citation shall sign the return. The signature is not required to be verified. If the return is signed by a person other than a sheriff, constable, or the clerk of the court, the return shall be signed under penalty of perjury and contain the following statement:

"My name is _____, my date of birth is
                    (First, Middle, Last)

_____, and my address is _____
                                                      (Street, City, Zip)

_____,"

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed in _____ County, State of _____, on the day of

_____

_____
Declarant / Authorized Process Server

_____
(Id # & expiration of certification)

App.A 0244



# The State of Texas
## Secretary of State

2025-370416-2

I, the undersigned, as Secretary of State of the State of Texas, DO HEREBY CERTIFY that according to the records of this office, a copy of the Citation and Counterpetition for Divorce in the cause styled:

In the matter of the marriage of Tiffany Lynn Sebastian and Michael Jeffery Sebastian and in the interest of ████████████████, child
387th Judicial District Court of Fort Bend County, Texas
Cause No: 24DCV318087

was received by this office on September 30, 2024, and that a copy was forwarded on October 15, 2024, by CERTIFIED MAIL, return receipt requested to:

Classic Chevrolet West Houston, LLC
Registered Agent Thomas R. Durant
1101 West State Highway 114
Grapevine, TX 76051

The RETURN RECEIPT was received in this office dated October 18, 2024, bearing signature.

Date issued: October 21, 2024

Jane Nelson
Secretary of State
-GF/mo



App.A 0245

Filed
07/12/2024 09:27:45
Beverley McGrew Walker
District Clerk
Fort Bend County, Texas
Self, Sarah

CAUSE NO. (24-DCV-318087)

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| | § | |
| AND | § | |
| | § | (387) TH JUDICIAL DISTRICT |
| | § | |
| AND IN THE INTEREST OF | § | |
| | § | |
| | § | |
| MINOR CHILD(REN) | § | FORT BEND COUNTY, TEXAS |

### STANDING TEMPORARY MUTUAL INJUNCTIONS
### DIVORCE WITH CHILDREN

**THE PARTIES TO THE ABOVE PENDING LAWSUIT ARE ORDERED TO COMPLY WITH THE FOLLOWING ORDERS OF THE COURT WHILE THE LAWSUIT IS PENDING. THE TEMPORARY INJUNCTION APPLIES TO THE PETITIONER AND RESPONDENT AND IS EFFECTIVE IMMEDIATELY.**

I.  **CONDUCT OF THE PARTIES AND PRESERVATION OF PROPERTY.**

All parties to the marriage are ORDERED to refrain from doing the following acts:

1. Intentionally communicating in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing, or electronic messaging, with the other party by use of vulgar, profane, obscene or indecent language or in a coarse or offensive manner, with intent to annoy or alarm the other party;

2. Threatening another party in person or in any other manner, including by telephone or another electronic voice transmission, video chat, in writing, or electronic messaging, to take unlawful action against any person, intending by this action to annoy or alarm the other party;

3. Placing a telephone call, anonymously, at an unreasonable hour, in an offensive and repetitious manner, or without a legitimate purpose of communication with the intent to annoy or alarm the other party;

App.A 0246

4.  Intentionally, knowingly, or recklessly causing bodily injury to the other party or to a child of either party;

5.  Threatening the other party or a child of either party with imminent bodily injury;

6.  Intentionally, knowingly, or recklessly destroying, removing, concealing, encumbering, transferring or otherwise harming or reducing the value of the property of the parties or either party with intent to obstruct the authority of the court to order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage;

7.  Intentionally falsifying a writing or record, including an electronic record, relating to the property of either party;

8.  Intentionally misrepresenting or refusing to disclose to the other party or to the court, on proper request, the existence, amount or location of any tangible or intellectual property of the parties or either party, including electronically stored or recorded information;

9.  Intentionally or knowingly damaging or destroying the tangible or intellectual property of the parties or either party, including electronically stored or recorded information;

10. Intentionally or knowingly tampering with the tangible or intellectual property of the parties or either party, including electronically stored or recorded information, and causing pecuniary loss or substantial inconvenience to the other party;

11. Except as authorized by the court:

    A.  Selling, transferring, assigning, mortgaging, encumbering, or in any other manner alienating any of the property of the parties or either party, regardless of whether the property is: (i) personal property, real property, or intellectual property, or (ii) separate or community property;

    B.  Incurring any debt, other than legal expenses in connection with the suit for dissolution of marriage;

    C.  Withdrawing money from any checking or savings account in a financial institution for any purpose;

App.A 0247

D. Spending any money in either party's possession or subject to either party's control for any purpose;

E. Withdrawing or borrowing money in any manner for any purpose from a retirement, profit-sharing, pension, death, or other employee benefit plan, employee savings plan, individual retirement account, or Keogh account of either part; or

F. Withdrawing or borrowing in any manner all or any part of the cash surrender value of a life insurance policy on the life of either party or a child of the parties;

12. Entering any safe-deposit box in the name of or subject to the control of the parties or either party, whether individually or jointly with others;

13. Changing or in any manner altering the beneficiary designation on any life insurance policy on the life of either party or a child of the parties;

14. Canceling, altering, failing to renew or pay premiums on, or in any manner affecting the level of coverage that existed at the time the suit was filed of any life, casualty, automobile, or health insurance policy insuring the parties' property or persons, including a child of the parties;

15. Opening or diverting mail or email or any other electronic communication addressed to the other party;

16. Signing or endorsing the other party's name on any negotiable instrument, check or draft, including a tax refund, insurance payment, and dividend, or attempting to negotiate any negotiable instrument payable to the other party without the personal signature of the other party;

17. Taking any action to terminate or limit credit or charge credit cards in the name of the other party;

18. Discontinuing or reducing the withholding for federal income taxes from either party's wages or salary;

19. Destroying, disposing of, or altering any financial records of the parties, including a canceled check, deposit clip, and other records from a financial institution, a record of credit purchases or cash advances, a tax return, and a financial statement;

App.A 0248

20. Destroying, disposing of, or altering any email, text message, video message, or chat message or other electronic data or electronically stored information relevant to the subject matter of the suit for dissolution of marriage, regardless of whether the information is stored on a hard drive, in a removable storage device, in cloud storage, or in another electronic storage medium;

21. Modifying, changing, or altering the native format or metadata of any electronic data or electronically stored information relevant to the subject matter of the suit for dissolution of marriage, regardless of whether the information is stored on a hard drive, in a removable storage device, in cloud storage, or in another electronic storage medium;

22. Deleting any data or content from any social network profile used or created by either party or a child of the parties;

23. Using any password or personal identification number to gain access to the other party's email account, bank account social media account, or any other electronic account;

24. Terminating or in any manner affecting the service of water, electricity, gas, telephone, cable television, or any other contractual service, including security, pest control, landscaping or yard maintenance at the residence of either party, or in any manner attempting to withdraw any deposit paid in connection with any of those services;

25. Excluding the other party from the use and enjoyment of a specifically identified residence of the other party; or

26. Entering, operating, or exercising control over a motor vehicle in the possession of the other party; or

27. Tracking or monitoring personal property or a motor vehicle in the possession of a party, without that party's effective consent, including by:

    A. Using a tracking application on a personal electronic device in the possession of that party or using a tracking device; or

    B. Physically following that party or causing another to physically follow that party.

App.A 0249

## II. **SPECIFIC AUTHORIZATIONS IN DIVORCE CASE.**

All parties to the marriage are specifically authorized to do the following:

1. To engage in acts reasonable and necessary to conduct each party's usual business and occupation.

2. To make expenditures and incur indebtedness for reasonable and necessary attorney's fees and expenses in connection with this suit.

3. To make expenditures and incur indebtedness for reasonable and necessary living expenses.

## III. **NO DISRUPTION OF A CHILD WHO IS THE SUBJECT OF THIS CASE.**

All parties are ORDERED to refrain from doing the following acts concerning any child who is the subject of a case without a written agreement of all parties or an order of the Court:

1. Removing a child from the State of Texas for the purpose of changing the residence of the child or evading the jurisdiction of the Court, acting directly or in concert with others.

2. Disrupting or withdrawing a child from the school or day-care facility where a child is presently enrolled.

3. Hiding or secreting a child from the other parent or changing the child's current place of abode.

4. Disturbing the peace of the child or the other party.

5. Making disparaging remarks regarding the other party or the other party's family in the presence or within the hearing of a child.

SIGNED this 11ᵗʰ day of ___October___, 2023.

_Monica Rawlins_
Monica Rawlins
Presiding Judge

_Janet B Heppard_
Janet Heppard
Presiding Judge

_Kali Morgan_
Kali Morgan
Presiding Judge

App.A 0250

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rebecca Duckworth on behalf of Derek Rollins
Bar No. 24029803
rduckworth@shackelford.law
Envelope ID: 95809113
Filing Code Description: Notice of Removal to Business Court
Filing Description: Defendants' Notice of Removal to Texas Business Court
Status as of 1/3/2025 7:41 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John LucasPeterson | | lpeterson@shackelford.law | 1/2/2025 5:39:59 PM | SENT |
| Derek D.Rollins | | drollins@shackelford.law | 1/2/2025 5:39:59 PM | SENT |
| Rebecca DeeDuckworth | | rduckworth@shackelford.law | 1/2/2025 5:39:59 PM | SENT |

App.A 0251

**Classic Chevrolet West Houston, LLC**

**Notice of Special Meeting of Managers**

Notice is hereby given that a Special Meeting of the Managers of Classic Chevrolet West Houston, LLC, a Texas Limited Liability Company, ("Classic West Houston"), will be held on Saturday, February 22, 2025, at 10:30 a.m. at The Law Office of Richard L. Tate, 206 S 2nd St., Richmond, Texas. This Special Meeting is being noticed pursuant to Section 3.26 of the Company Agreement for Classic West Houston, dated November 29, 2019 (the "Company Agreement")

The purpose of the meeting is the consideration of (i) the removal of Thomas R. Durant as a Manager pursuant to Section 3.20 of the Company Agreement; (ii) the appointment of a new Manager to fill the vacancy created if Thomas R. Durant is removed, as authorized by Section 3.17 of the Company Agreement; (iii) Removal of Thomas R. Durant as President pursuant to Section 3.22 (d) (i) of the Company Agreement; (iv) appointment of Michael Jeffrey Sebastian as President if Thomas R. Durant is removed as President, as authorized by Section 3.22 (d) (iii) of the Company Agreement and (iv) compensation of the Managers pursuant to Section 3.10 of the Company Agreement.

Manager signature: *MJS*

Michael Jeffrey Sebastian (Feb 18, 2025 17:12 CST)

Michael Jeffrey Sebastian,
Manager and
.51% Class A Member Interest Owner

**Notice given**: Tuesday, February 18, 2025

**Via Federal Express**
Thomas R. Durant
1101 W. State Highway 114
Grapevine, Texas 76051

**Via Email: DRollins@shackelford.com**
Derek D. Rollins
Shackelford, McKinnley & Norton, LLP
9201 N. Central Expy, 4th Floor, Dallas TX 75231
Counsel for Thomas R. Durant

*NOTICE OF SPECIAL MEETING OF MANAGERS- Page 1*

Exhibit 8    App.A 0252



**Shackelford**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS & COUNSELORS

**Derek D. Rollins**
9201 N. Central Expressway
Fourth Floor
Dallas, Texas 75231
(214) 780-1400 (Main)
(214) 780-1401(Fax)
drollins@shackelford.law

February 21, 2025

**VIA EMAIL TO** michelle@bohreerlaw.com
E. Michelle Bohreer
Bohreer Law Firm PLLC
777 Post Oak Blvd. Suite 950
Houston, Texas 77056

> RE:   Classic Chevrolet West Houston, LLC – Purported Notice of Special Meeting of Managers

Ms. Bohreer:

I write in response to your client's purported February 18, 2025 Notice of Special Meeting of Managers ("the Notice") of Classic Chevrolet West Houston, LLC ("the Company"). The Notice states that it is issued pursuant to Section 3.26 of the Company Agreement, dated as of November 29, 2019 ("the Agreement").

Pursuant to the Notice, Mr. Sebastian apparently intends to convene a purported meeting of the Company Managers on Saturday, February 22, 2025 at 10:30 a.m., at The Law Office of Richard L. Tate, 206 S. 2nd St., Richmond, TX. According to the Notice, the stated purpose of the meeting is (i) the removal of Thomas R. Durant as a Manager pursuant to Section 3.20 of the Agreement; (ii) the appointment of a new Manager if Mr. Durant is removed; (iii) removal of Mr. Durant as the Company President; (iv) appointment of Mr. Sebastian as the Company President; and (v) compensation of the Managers.

As you are well aware, on July 22, 2024, a vote of no confidence in Mr. Sebastian's management of the Company was taken by the members holding a majority in interest in the Company pursuant to that certain BuySell Agreement ("the BuySell"). As a result of the vote of no confidence, Mr. Sebastian was suspended, and then later permanently removed from all positions with the Company, including without limitation as an officer, employee, and Manager of the Company pending the repurchase of his interests in the Company pursuant to the BuySell. These facts were confirmed by you in written correspondence to the Company, Mr. Durant, and others dated September 17, 2024. Accordingly, Mr. Sebastian has no standing to notice or participate in any special meeting of the Company.

Indeed, neither Sebastian has the authority to take the proposed actions set forth in the Notice, which require a unanimous vote of the Managers. *See* Company Agreement, §§ 1.1(bb), 3.14. Furthermore, attendance of all Company Managers is required to meet a Quorum pursuant to section 3.27 of the Company Agreement.

<span style="color:red">Exhibit 9</span>

**Shackelford, McKinley & Norton, LLP**
Dallas   Austin   Fort Worth   Houston   New Orleans



<span style="color:red">App.A 0253</span>

For each of the foregoing independent reasons, Mr. Sebastian's purported attempt notice a special meeting of the Company Managers is ineffective and unauthorized, as are any and all actions that Mr. Sebastian purports to take during any such meeting. Accordingly, Mr. Durant will not be attending the meeting, nor recognizing any purported actions taken during the same.

Sincerely,

Derek D. Rollins

cc:     Client
        Joe DiCecco (via Email)
        Mitch Little (via Email)

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | § § § | IN THE DISTRICT COURT OF |
| TIFFANY LYNN SEBASTIAN<br>AND<br>MICHAEL JEFFREY SEBASTIAN | § § § § § | |
| AND IN THE INTEREST OF<br>███████████, A CHILD | § § § § § | |
| MICHAEL JEFFREY SEBASTIAN and TIFFANY LYNN SEBASTIAN, INDIVIDUALLY, ON BEHALF OF THE SEBASTIAN COMMUNITY ESTATE, AND DERIVATIVELY ON BEHALF OF THE CLASSIC DEALERSHIPS, and 16835 CADET PARTNERS, LLC,<br>      *Third-Party Plaintiff*, | § § § § § § § § § | 387TH JUDUCIAL DISTRICT |
| v. | § § | |
| T. BENTLEY DURANT, THOMAS R. DURANT, and THE DURANT CLASSIC DYNASTY TRUST,<br>      *Third-Party Defendants*, | § § § § § | |
| 8100 PARTNERS, LTD., AND 8100 MANAGEMENT LLC,<br>      *Nominal Third-Parties*. | § § § | FORT BEND COUNTY, TEXAS |

<u>JOINT EMERGENCY APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION</u>

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, Petitioner** TIFFANY LYNN SEBASTIAN ("Tiffany") and Respondent MICHAEL JEFFREY SEBASTIAN ("Jeff" and collectively "the Sebastians"), and file this Joint Emergency Application for Temporary Restraining Order and Temporary Injunction under Tex. R. Civ. P. 680 et seq. and in support thereof shows the following:

**Factual Background**

1. The Sebastians own the controlling management interest in Classic Chevrolet West Houston, LLC, with the right to control all management decisions related to the same. Jeff owns the controlling management interest in Classic Elite Buick GMC, Inc., giving him management control. The Sebastians also own a collective thirty (30%) percent ownership interest in Co-Defendants/Nominal Third-Party, Classic Chevrolet Sugar Land, LLC. The Community's ownership interest in these dealerships (collectively, "Classic Dealerships"), along with ownership interests in other entities addressed in footnote 1 below



represent more than ninety percent (90%) of the value of the Community estate.[1]

2.  On July 22, 2024, the Third-Party Defendants (specifically the Durant Defendants as referred to herein) illegally kicked Jeff out of the dealerships. This action triggered the terms of a Buy-Sell Agreement signed by Jeff, Tiffany and the Third-Party Defendants on July 21, 2023. A copy of the Buy-Sell Agreement is attached hereto as **EXHIBIT 1** and incorporated herein by reference. Tiffany was illegally ousted from the dealerships on September 13, 2024.  Under the terms of the Agreement, on or before the 90th day following a Specified Event, the "remaining members" are to notify Respondent/Counter-Petitioner/Third-Party Plaintiff if any such members desire to buy all or part of the Community's interests in any of the Classic Entities.

3.  Since Jeff's wrongful removal, the Third-Party Defendants have continued to ignore the law, refused to comply with the Buy-Sell Agreement that Third-Party Defendants insisted Jeff and Tiffany sign, and to date, have refused, despite multiple requests, to comply with the obligations under the Texas Business Organization Code, to provide access to the books and records of the Classic Chevrolet Sugar Land, LLC, Classic Chevrolet West Houston, LLC and Classic Elite Buick GMC, INC. (collectively, "Classic Dealerships").

4.  The entire process under the Buy-Sell Agreement should have concluded within 180-days of Jeff's removal.  It has been more than n 200-days since the wrongful acts that occurred on July 22, 2024, with Jeff and Tiffany no closer to being paid the Fair Market Value the Community is owed under the Buy-Sell Agreement. The Community's appraiser must have access to corporate financial books and records to determine the fair market value of the entities per the terms of the Buy-Sell Agreement.  The Third-Party Defendants continue to delay and put up roadblocks, causing irreparable harm to the community estate.

5.  Additionally, and most urgently, Jeff learned on February 13, 2025, that he remains the "Dealer Principal" of record for all three Classic Dealerships. The Dealer Principal is responsible and accountable for all rules, audits, and liability pertaining to consumer lenders, floorplan lenders, the manufacturer, warranty companies, the Department of Motor Vehicles, the Federal Trade Commission and other state and federal agencies. As the Dealer Principal, Jeff is personally exposed to significant legal and financial

---

[1]  Effective January 1, 2018, Jeff and Tiffany purchased thirty (30%) percent of the Class A Member Interests and twenty-nine and 70/100 (29.70%) percent of the Class B Member Interests in Classic Chevrolet Sugar Land, LLC.  Jeff and Tiffany own a collective thirty (30%) percent ownership interest in Co-Respondent/Nominal Third-Party, Classic Chevrolet Sugar Land, LLC. The remaining members of Co-Defendants/Nominal Third-Party, Classic Chevrolet Sugar Land, LLC are Third-Party Defendants, Thomas R. Durant (.69% Class A and 14.31% Class B); T. Bently Durant (.01% Class A and .99% Class B) and The Durant Classic Dynasty Trust (54% Class B).

Effective October 10, 2019, Classic Chevrolet West Houston, LLC was formed.  Jeff and Tiffany `own 51% of the Class A membership interests giving them control of all management decisions related to Classic Chevrolet West Houston, LLC.  Jeff and Tiffany own 39.6% of the Class B Interests. Two of the Third-Party Defendants own the remaining interest: Thomas R. Durant (.49% Class A and .11% Class B) and The Durant Classic Dynasty Trust (59.4% Class B). Classic Chevrolet West Houston, LLC is governed by its Company Agreement. At all relevant times, Jeff  was a Manager and Officer of Classic Chevrolet West Houston, LLC, owning controlling management interest. Third-Party Defendant, Thomas R. Durant, was a Manager and Officer of Classic Chevrolet West Houston, LLC. Third-Party Defendant, T. Bently Durant, was an officer and general counsel of Classic Chevrolet West Houston, LLC. Classic Elite Buick GMC, Inc. was formed on January 26, 2023. Jeff owns 51% of the Class A shares (giving him management control) and 19.49% of the Class B Shares.  Tiffany owns 20% of the Class B Shares.  Classic Elite Buick GMC, Inc is governed by its Bylaws effective March 15, 2023. Jeff is a director, as is Petitioner/Counter-Respondent, Tiffany, as well as Third-Party Defendants, Thomas R. Durant and T. Bently Durant, as well as Marin "Mark" Escamilla, who is also trustee of Third-Party Defendant, The Durant Classic Dynasty Trust.

In addition to Respondent/Counter-Petitioner/Third-Party Plaintiff's (and the Community) ownership in the Classic Dealerships, they own an interest in 8100 Partners, Ltd., and 8100 Management, LLC., along with the Third-Party Defendants, Thomas R. Durant and T. Bently Durant and The Durant Classic Dynasty Trust. Likewise, Jeff and Tiffany own an interest in Co-Respondent/Nominal Third-Party, 16835 Cadet Partners, LLC, (collectively, the "Classic Entities"). The Classic Dealerships, represent the single largest asset in the community estate.

On May 1, 2023, Classic Elite Buick GMC, Inc. entered into a Lease Agreement ("Lease") with 16835 16835 Cadet Partners, LLC ("Cadet"), the owner of the real property upon which the Classic Dealerships operates at 16835 Katy Freeway. The Class A Shareholders of Cadet are Jeff and Defendant, Thomas R. Durant, and the Class B Shareholders of Cadet are Jeff Tiffany and Third-Party Defendant, The Durant Classic Dynasty Trust.

risks. He is liable, without limitation, for compliance with employment and labor laws, state regulations, the terms of franchise agreements, operational and manufacturer requirements, employee conduct, advertising regulations, truth-in-lending, and consumer protection laws.

6. Since Jeff's illegal removal, multiple detrimental events have occurred that underscore the growing liability that he faces as Dealer Principal. Manufacturer Customer Service Scores have plummeted. Alarming reviews are being posted online, including one that describes an employee threatening a customer. The dealerships withdrew from the Better Business Bureau. Classic Chevrolet Sugar Land, LLC has fallen into financial turmoil. Finance chargebacks have skyrocketed, increasing by more than 300% since Jeff was illegally removed. This drastic increase alone is a glaring red flag, signaling substantial exposure and risk from lenders, manufacturers, consumers, warranty companies, and regulatory agencies.

7. Additional land has been purchased for the Classic Elite Buick GMC, Inc. dealership over which Jeff has management control. Jeff has been denied any information for financing despite his liability for the same. The Third-Party Defendants (specifically the Durant Defendants as referred to herein) have made transfers of assets and incurred obligations with the actual intent to hinder, delay, or defraud the Sebastians concerning the value of their interests.

8. Third Party Co-Defendants wrongfully terminated the Sebastians' pay, diverted millions of dollars of approved distributions, and terminated access to corporate emails and financial records, thereby triggering the terms of the Buy-Sell Agreement.

9. Jeff notified Third-Party Defendants of the Specified Event (triggering event) under the Buy-Sell Agreement and made a formal request to inspect the books and records of each of the Classic Dealerships. Both the notice and request were ignored by the Third-Party Defendants.

10. On October 15, 2024, Third-Party Defendant Durant Classic Dynasty Trust, sent a letter to offer to purchase the community's interest in one of the Classic Entities in a manner contrary to the Buy-Sell Agreement and at a fraction of its value. The Durant Classic Dynasty Trust's October 15th letter triggered the mandatory calculation of the Fair Market Value of the entities under the terms of the Buy-Sell Agreement and the purchase mechanism set forth therein.

11. Despite repeated efforts of the Sebastians and their legal counsel, the Classic Entities have stonewalled and refused to comply with the very Buy-Sell Agreement that the Classic Entities' general counsel and interest holder, T. Bently Durant, prepared and insisted that the Sebastians sign without any changes. **Until the process under the Buy-Sell Agreement is acted upon and the Fair Market Values of the entities are established or the Sebastians become free to sell their interest to an interested third-party, the divorce proceedings are effectively stalled**.

12. Given that so much time has passed and no progress has been made under the Buy-Sell Agreement, which calls for closing within 180-days of notice of intent to purchase, and that Jeff remains liable for essentially all aspects of dealership operations, the Sebastians jointly seek this emergency relief as the harm that the Sebastians and their estate is being subjected to on a daily basis is irreparable.

13. Since Jeff's wrongful and illegal removal, the Third-Party Defendants have continued to ignore the law, blatantly refused to comply with the parties' Buy-Sell Agreement, and have refused, despite multiple requests to comply with the mandatory obligations under the Texas Business Organization Code to provide access to the books and records of the Classic Dealerships.

14. Not only are the Sebastians' expert appraisers entitled to access to the businesses' financial records and books under the terms of the parties' Buy Sell Agreement, the Sebastians are entitled to these records under the Texas Business Organization Code.

15. Even so, the Third-Party Defendants continue to delay access to and put up roadblocks to corporate records in violation of the Sebastians' absolute rights to access those records which are needed to value their interest so that this court may proceed with the parties' right to divorce and the award of the community estate.

16. Additional land has been purchased for the Classic Elite Buick GMC, Inc. dealership over which Jeff has management control, yet Jeff has been denied any information regarding financing despite his liability for the same.

17. The Third-Party Defendants, specifically the Durant Defendants, have transferred assets and incurred obligations with the actual intent to hinder, delay, or defraud the Sebastians concerning the value of their stock holdings, which constitutes 90% of the community estate's value.

18. The Durant Defendants, in their capacity as *de facto* "governing persons" of Cadet and the Classic Dealerships, since the unlawful and unjustifiable exclusion of the Sebastians, have taken actions that are wrongful, illegal, oppressive, and fraudulent and have misapplied or wasted property of Cadet and the Classic Dealerships. See Tex. Bus. & Com. Code § 11.404(A)(1)(C) and (D).

19. Despite bearing the burden of all risk and liability associated with the dealerships and entities, Jeff is receiving no income whatsoever and neither is Tiffany. The Sebastians are being forced to drain their savings just to survive, while the Third-Party Defendants continue to stall compliance with the Buy-Sell Agreement and needlessly and intentionally escalate the costs of this litigation.

20. The defendants have caused and will continue to cause immediate and irreparable harm to plaintiffs unless immediately restrained and enjoined.

## PLAINTIFFS' PETITION

21. On December 20, 2024, Third-Party Plaintiffs filed their First Amended Third-Party Petition ("Petition") in this action. In their Petition, plaintiff alleges the following causes of action against defendant that are pertinent to this application:

   a. **Breach of Fiduciary Duty**: The Third-Party Defendants have breached their fiduciary duties owed to the Sebastians, 16835 Cadet Partners, LLC, and the Classic Dealerships, by, without limitation, (i) conspiring to obstruct the Sebastians' ability to successfully operate Cadet and the Classic Dealerships, (ii) disparaging the Sebastians to one another and the public, both personally and professionally, (iii) conspiring to and illegally and unjustly purporting to fire the Sebastians from their employment with Cadet and the Classic Dealerships, (iv) conspiring to and illegally cutting the Sebastians' access to the corporate and financial information of Cadet and the Classic Dealerships, (v) conspiring to and breaching the Membership and Management Agreements of Cadet and the Classic Dealerships, (vi) conspiring to and illegally refusing to make Cadet and Classic Dealership Member distributions, and (vii) illegally diverting Member/Shareholder profit from Cadet and the Classic Dealerships to unapproved and wasteful projects that directly benefit the Durant Defendants and their separate interests at the expense of the Sebastians, Cadet, and the Classic Dealerships. These breaches of fiduciary duties owed have caused, and continue to cause, in excess of $10,000,000 in damages to the Sebastians (including the Sebastian community estate), Cadet, and the Classic

Dealerships. The Sebastians are therefore entitled to recover actual damages, the equitable remedy of disgorgement, and exemplary damages.

b. **Breach of Contract**: Management Agreements--Third-Party Defendants have materially breached terms valid and enforceable contracts that govern the management and operation of the Classic Dealerships ("Management Agreements"). Particularly, and without limitation, the Durant Defendants caused the Sebastians to be removed from their employment/management positions at Cadet and the Classic Dealerships without complying with the voting and approval requirements set forth in the Management Agreements. The Durant Defendants have also caused Cadet and the Classic Dealerships to engage in acts and expenditures that are directly adverse to the necessary and/or advisable interests of the Sebastians, Cadet, and the Classic Dealerships, and in breach of the Management Agreements, including (i) causing the Classic Dealerships to spend millions of dollars on wasteful capital improvements to properties that the Classic Dealerships do not own (and which are instead majority-owned by the Durant Defendants), (ii) preventing Cadet and the Classic Dealerships from paying dividends/distributions to their owners, (iii) decreasing the Classic Dealerships' revenue and profitability, and (iv) damaging the Classic Dealerships' valuable relationships and ability to transact business within the industry. These material breaches of the Management Agreements have caused and continue to cause in excess of $10,000,000 in damages to the Sebastians (their community estate), Cadet and the Classic Dealerships.

c. **Breach of Contract**: Buy-Sell Agreement—Third-Party Defendants are in direct breach and violation of the Buy-Sell Agreement that governs certain rights and restrictions pertaining to the sale or transfer of the parties' ownership interests in Cadet and the Classic Dealerships, including a rendition of the purchase options and the means/methods of determining share price if such options are validly exercised. In particular, the Buy-Sell Agreement stipulates that an option to purchase the Sebastians' interest in Cadet and the Classic Dealerships shall arise upon the occurrence of certain events, including "the cessation of the performance of the Dealership Business Duties of the Sebastians (including termination of either of the Sebastians as an officer or Manager of the LLC)". Purportedly, Jeff Sebastian was terminated on July 22, 2024, which, by contract, would have expressly triggered the applicable Buy-Sell Agreement and established the Valuation Date. In October, 2024, incident to the Sebastians' unlawful firing/exclusion, Defendant Dynasty Trust, by and through its Trustee, Mark Escamilla, issued an "Exercise of Option to Purchase" letter ("Exercise Notice") to the Sebastians stating that it was electing to repurchase all of the Sebastians' interest in Cadet and the Classic Dealerships. However, no valid triggering event had occurred that would render that kind of involuntary repurchase demand an available option for Defendant Dynasty Trust. Furthermore, the repurchase price demanded was and is directly opposed to the valuation method dictated by the Buy-Sell Agreement. As such, the repurchase demand made by Defendant Dynasty Trust is in direct breach and violation of the Buy-Sell Agreement and has caused, and continues to cause, direct financial damage to the Sebastians in excess of $10,000,000 for which they seek recovery by this lawsuit.

d. **Conversion**: The Sebastians are entitled to certain property currently in the Durant Defendants' possession and control – specifically, owner dividends and distributions from the revenues of Cadet and the Classic Dealerships. The Durant Defendants unlawfully obtained such monies by, without limitation, firing and excluding the Sebastians from Cadet and the Classic Dealerships, cutting their access to the Cadet and Classic Dealership books and records, and diverting/reallocating millions of dollars owed to the Sebastians back to themselves and/or separate entities that they own and control. The Durant Defendants have additionally demanded that the Sebastians transfer their ownership interests in Cadet and the Classic Dealerships over to them in exchange for a fraction of their contractual and marketable value. The Sebastians are

entitled to recover their converted property from the Durant Defendants, as well as their actual and consequential damages caused thereby which exceed $10,000,000.

e. **Money Had and Received**: The Durant Defendants are in receipt and possession of millions of dollars that in equity and good conscience belong to the Sebastians. Particularly, the Durant Defendants obtained such monies from the Sebastians by, without limitation, firing and excluding the Sebastians from Cadet and the Classic Dealerships, cutting their access to the Cadet and Classic Dealership books and records, and diverting/re-allocating millions of dollars owed to the Sebastians back to themselves and/or separate entities that they own and control. The Durant Defendants have additionally demanded that the Sebastians transfer their ownership interests in Cadet and the Classic Dealerships over to them in exchange for a fraction of their contractual and marketable value. the Sebastians are entitled to recover such monies from the Durant Defendants, as well as their actual and consequential damages caused thereby which exceed $10,000,000.

f. **Fraudulent Transfer**: The Durant Defendants made transfers and incurred obligations with the actual intent to hinder, delay, or defraud the Sebastians concerning value of their stock. The Durant Defendants made transfers to and incurred obligations from entities that are owned and controlled by the Durant Defendants, such as the Real Estate Defendants. Thus, the Real Estate Defendants are insiders under the definition of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code section 24.001, et seq. See Tex. Bus. & Com. Code § 24.002(7). Therefore, these transfers of assets from the Classic Dealerships to the Real Estate Defendants by the Durant Defendants are fraudulent as to the Sebastians. The transfers were done with actual intent because (1) the transfers were to insiders; (2) the Durant Defendants ostensibly retained possession or control of the property transferred after the transfer; (3) the transfer was concealed from Plaintiff; (4) the Durant Defendants have absconded and concealed the assets; (5) upon information and belief, the Classic Dealerships received no consideration for the assets transferred; and (6) the transfer occurred proximate to the incursion of a substantial payout to the Sebastians as a result of the divorce proceedings. See Tex. Bus. & Com. Code § 24.005(b). Therefore, the Sebastians seek (1) avoidance of the transfer(s) or obligation(s) to the extent necessary to satisfy their claims; (2) an attachment or other provisional remedy against the asset(s) transferred or other property of the transferee in accordance with the applicable Texas Rules of Civil Procedure and the Civil Practice & Remedies Code relating to ancillary proceedings; and/or (3) subject applicable principles of equity and in accordance with applicable rules of civil procedure: (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset(s) transferred or of other property; (B) appointment of a receiver to take charge of the asset transferred or other property of the transferee; or (C) any other relief the circumstances may require. See Tex. Bus. & Com. Code § 24.008(a). The Sebastians also request that the court award them the costs and reasonable attorney fees as are equitable and just incurred by the Sebastians in the prosecution of their rights. See Tex. Bus. & Com. Code § 24.013.

## ARGUMENT AND AUTHORITY IN SUPPORT OF APPLICATION FOR ISSUANCE OF EX PARTE TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

### 1. <u>Court's Authority to Issue Ex Parte Temporary Restraining Order</u>

This court has authority to grant a temporary restraining order without notice to the adverse party if "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon." Tex. R. Civ. P. 680.

App.A 0260

Irreparable injuries are those for which the injured party cannot be adequately compensated by damages or for which damages cannot be measured by a pecuniary standard. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

### 2.    Immediate and Irreparable Harm to Plaintiffs

As shown by the attached Declarations of the Sebastians, the wrongful conduct of the defendants described above has caused and will continue to cause immediate and irreparable harm to plaintiffs before notice can be served on defendant and a hearing held on plaintiff's application for a temporary injunction, in that:

a. The Durant Defendants will continue to interfere with Jeff's legal right and mandatory obligation to control all management decisions related to Classic Chevrolet West Houston, LLC;

b. The Durant Defendants will continue to interfere with Jeff's legal right and mandatory obligation to control all management decisions related to Classic Elite Buick GMC, Inc.;

c. Jeff will continue to be exposed to all risk and liability associated with operations and actions over which he is currently being denied any control despite his legal right of control;

d. The Durant Defendants will continue to transfer all profits, and additional revenues generated by Cadet and Classic Dealerships to themselves and the various entities that they own and control;

e. The Durant Defendants will continue to implement inventory pricing and sales policies that significantly depress Cadet and the Classic Dealerships' revenues and profits;

f. The Durant Defendants will continue to implement contracting, spending, pricing, and sales protocols that depress the equitable value of Cadet and the Classic Dealerships;

g. The Durant Defendants will initiate additional transactions that negatively impact Cadet and the Classic Dealerships' ability to conduct business in the local automotive industry;

h. The Durant Defendants will continue to deny Member/Shareholder access to Cadet and Classic Dealerships' books and records;

i. The Durant Defendants will continue to deny Member/Shareholder access to Cadet and Classic Dealerships' budgets and accounting;

j. The Durant Defendants will continue to ignore the law and refuse to comply with the Buy-Sell Agreement.

### 3.    Terms of Requested Temporary Restraining Order

To prevent the immediate and irreparable harm to plaintiffs described above, plaintiffs request that the court issue a temporary restraining order restraining the defendants, including the defendant's agents, servants, employees, independent contractors, attorneys, representatives, and those persons or entities in active concert or participation with them (collectively, the "Restrained Parties"), as follows, pending a hearing on the plaintiff's application for a temporary injunction:

a. Enjoin any interference with Jeff's legal right to control all management decisions related to

Classic Chevrolet West Houston, LLC;

b. Enjoin any interference with Jeff's legal right to control all management decisions related Classic Elite Buick GMC Inc.;

c. Enjoin any interference with any of Jeff's acts as Dealer Principal;

d. Enjoin any disposition of any asset owned by Cadet and the Classic Dealerships;

e. Enjoin dissipation of any assets owned by Cadet and Classic Dealerships;

f. Enjoin the use, spending and/or transfer of any profits and/or additional revenues generated by Cadet and Classic Dealerships;

g. Enjoin denial of Member/Shareholder access to Cadet and Classic Dealerships' books and records;

h. Enjoin denial of Member/Shareholder access to Cadet and Classic Dealerships' budgets and accounting;

i. Order compliance with all terms of the Buy-Sell Agreement;

j. Order compliance with all terms of the mechanism for determining Fair Market Value pursuant to the Buy-Sell Agreement;

k. Order compliance with all terms of the Bylaws and Company Agreements;

l. Order reporting to this Court as to compliance under the Buy-Sell Agreement every twenty (20) days beginning on the date that this Court grants this Temporary Restraining Order;

**4.  Plaintiffs Will Furnish Bond**

Plaintiff is willing to post a reasonable bond as a condition for the injunctive relief requested in this application and requests the court to set the amount of such bond.

**5.  APPLICATION FOR ISSUANCE OF TEMPORARY INJUNCTION**

After notice to the defendant and an opportunity for hearing, the court may issue a temporary injunction to preserve the status quo pending a trial on the merits of the action. See Tex. R. Civ. P. 681; Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). The court may issue a temporary injunction if the plaintiff pleads and proves:

a. A cause of action against the defendant.

b. A probable right to the relief sought.

c. A probable, imminent, and irreparable injury before trial on the merits can be held.

Butnaru, 84 S.W.3d at 204

**6.  Cause of Action Against Defendants**

In Third-Party Plaintiffs First Amended Third-Party Petition, plaintiff have alleged causes of action against

defendant as set forth above in section *"Plaintiffs Petition"* beginning at paragraph 21 of this Application.

### 7. Probable Right to Relief Sought

As shown by the attached Declaration of Jeff Sebastian, plaintiffs have a probable right to the relief sought against defendants on the causes of action alleged in the First Amended Third-Party Petition in that the Sebastians indisputably own the controlling management interest of Classic Chevrolet West Houston, LLC and Classic Elite Buick GMC, Inc. Jeff has the right to control all management decisions of these entities which he is clearly being denied and has been denied since July 22, 2024. Jeff learned on February 23, 2025, that he remains personally liable and responsible for the conduct of the Classic dealerships as the "Dealer Operator" The Sebastians have express contractual rights under the valid and enforceable Bylaws and Company Agreements and Buy-Sell Agreement of which the Defendants are in direct breach and violation.

### 8. Probable, Imminent, Irreparable Injury to Plaintiff

As shown by the attached Declaration of Jeff Sebastian, the wrongful conduct of the defendants described above has caused and will continue to cause immediate and irreparable harm to plaintiffs before trial on the merits and entry of judgment in this action, in that:

a. The Durant Defendants will continue to interfere with Jeff's legal right to control all management decisions related to Classic Chevrolet West Houston, LLC;

b. The Durant Defendants will continue to interfere with Jeff's legal right to control all management decisions related Classic Elite Buick GMC, Inc.;

c. Jeff's will continue to be exposed to all risk and liability associated with operations and actions over which he is currently being denied any control despite his legal right of control;

d. The Durant Defendants will continue to transfer all profits, and additional revenues generated by Cadet and Classic Dealerships to themselves and the various entities that they own and control;

e. The Durant Defendants will continue to implement inventory pricing and sales policies that significantly depress Cadet and the Classic Dealerships' revenues and profits;

f. The Durant Defendants will continue to implement contracting, spending, pricing, and sales protocols that depress the equitable value of Cadet and the Classic Dealerships;

g. The Durant Defendants will initiate additional transactions that negatively impact Cadet and the Classic Dealerships' ability to conduct business in the local automotive industry;

h. The Durant Defendants will continue to deny Member/Shareholder access to Cadet and Classic Dealerships' books and records;

i. The Durant Defendants will continue to deny Member/Shareholder access to Cadet and Classic Dealerships' budgets and accounting;

j. The Durant Defendants will continue to ignore the law and refuse to comply with the Buy-Sell Agreement.

### 9. Terms of Requested Temporary Injunction

To prevent the immediate and irreparable harm to plaintiffs described above, plaintiffs request that the court issue a temporary injunction restraining the defendants and the Restrained Parties (as defined above), as follows, pending trial on the merits and entry of judgment in this action:

a. Enjoin any interference with Jeff's legal right to control all management decisions related to Classic Chevrolet West Houston, LLC;

b. Enjoin any interference with Jeff's legal right to control all management decisions related Classic Elite Buick GMC, Inc.;

c. Enjoin any interference with any of Jeff's acts as Dealer Principal

d. Enjoin any disposition of any asset owned by Cadet and the Classic Dealerships;

e. Enjoin dissipation of any assets owned by Cadet and Classic Dealerships;

f. Enjoin the use, spending and/or transfer of any profits and/or additional revenues generated by Cadet and Classic Dealerships;

g. Enjoin denial of Member/Shareholder access to Cadet and Classic Dealerships' books and records;

h. Enjoin denial of Member/Shareholder access to Cadet and Classic Dealerships' budgets and accounting;

i. Mandate immediate compliance with all terms of the Buy-Sell Agreement;

j. Mandate immediate compliance with all terms of the mechanism for determining Fair Market Value pursuant to the Buy-Sell Agreement;

k. Mandate immediate compliance with all terms of the Bylaws and Company Agreements;

l. Mandate reporting to this Court as to compliance under the Buy-Sell Agreement every twenty (20) days, beginning on the date that this Court grants this Temporary Restraining Order.

WHEREFORE, the plaintiff requests that the court grant this application and provide the following relief to plaintiff:

1. Entry of an *ex parte* temporary restraining order, as set forth in Section 3, "*Terms of Requested Temporary Restraining Order",* a.-l. of this application, pending hearing of plaintiff's application for a temporary injunction;

2. After notice and hearing, entry of a temporary injunction, as set forth in Section 9, "*Terms of Requested Temporary Injunction",* a.-l. of this application, pending trial on the merits and entry of judgment in this action; and

3. Any other relief to which the plaintiff may be justly entitled.

App.A 0264

Respectfully submitted,

BOHREER LAW FIRM PLLC


E. Michelle Bohreer
State Bar No. 06717100
Pritesh Soni
State Bar No. 24063926
777 Post Oak Blvd., Suite 950
Houston, Texas 77056
Telephone: (832) 856-3006
Facsimile: (832) 856-2891
Emails:michelle@bohreerlaw.com
         pritesh@bohreerlaw.com
E-service:  e-service@bohreerlaw.com

/s/ *Richard L. Tate*
Richard L. Tate
State Bar No. 19664460
206 South Second Street
Richmond, Texas 77469
Tel. (281) 341-0077
Fax (281) 341-1003
rltate@tate-law.com


LAURA DALE & ASSOCIATES, P.C.



 /s/ Laura D. Dale
LAURA D. DALE (LEAD COUNSEL)
State Bar No. 24030270
eserviceldd@dalefamilylaw.com (Eservice only)
MARJORIE A. MAXWELL
State Bar No. 24060239
eservicemam@dalefamilylaw.com (Eservice only)
1800 St. James Place, Suite 620
Houston, Texas 77056
Telephone: (713) 600-1717
Facsimile: (713) 600-1718

***ATTORNEYS FOR THIRD-PARTY
PLAINTIFF, MICHAEL JEFFREY
SEBASTIAN, INDIVIDUALLY, ON
BEHALF OF THE SEBASTIAN
COMMUNITY ESTATE, AND
DERIVATIVELY ON BEHALF OF THE CLASSIC
DEALERSHIPS***

App.A 0265

**SCHEEF & STONE, L.L.P.**

/s/ J. Mitchell Little
J. Mitchell Little
State Bar No. 24043788
mitch.little@solidcounsel.com
Steven Ovando
State Bar No. 24128862
steven.ovando@solidcounsel.com
2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100 Telephone
(214) 472-2150 Facsimile
**ATTORNEYS FOR THIRD PARTY PLAINTIFF
TIFFANY LYNN SEBASTIAN**

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a true and correct copy of the foregoing document has been delivered or forwarded to all counsel and unrepresented persons as listed below, **[   ] by personal delivery or receipted delivery service**, or **[   ] by certified or registered mail**, return receipt requested, by depositing the same, postpaid, in an official deposit under the care and custody of the United States Postal Service, or **[   ] by facsimile** to the recipient's facsimile number identified below, or **[ X ] by e-service** to the recipient's email address identified below and the electronic transmission was reported as complete, on this the **21st** day of **February 2025**, in accordance with the Rule 21a of the Texas Rules of Civil Procedure:

| | |
|---|---|
| Bobby K. Newman<br>Bobby K. Newman PC<br>3355 W Alabama St., Suite 444<br>Houston, TX 77098<br>Email: bobby@bobbyknewman.com<br><br><br>Randall B. Wilhite<br>Fullenweider Wilhite<br>515 Post Oak Blvd., Suite 800<br>Houston, TX 77027<br>Email: rwilhite@fullenweider.com<br>***ATTORNEY FOR PETITIONER /<br>COUNTER-RESPONDENT, TIFFANY LYNN<br>SEBASTIAN*** | Laura Dale<br>Laura Dale & Associates P.C.<br>1800 Saint James Place, Suite 620<br>Houston, Texas 77056<br>Telephone: 713-489-6674<br>Facsimile: 713-600-1718<br>Email: ldale@dalefamilylaw.com<br><br>***ATTORNEYS FOR RESPONDENT /<br>COUNTER-PETITIONER, MICHAEL<br>JEFFREY SEBASTIAN*** |

| | |
|---|---|
| Joseph W. DiCecco<br>State Bar No. 05812520<br>joe@diceccolawpartners.com<br>John A. Coselli<br>State Bar No. 24100163<br>john@diceccolawpartners.com<br>Jill Evangelista<br>State Bar No. 24010505<br>jill@diceccolawpartners.com<br>DICECCO LAW PARTNERS PLLC<br>777 Post Oak Blvd., Suite 900<br>Houston, TX 77056<br>Telephone: 713-496-1700<br>Facsimile: 713-589-3392<br>***ATTORNEYS FOR THIRD-PARTY PLAINTIFF, TIFFANY LYNN SEBASTIAN, INDIVIDUALLY, ON BEHALF OF THE SEBASTIAN COMMUNITY ESTATE, AND DERIVATIVELY ON BEHALF OF THE CLASSIC DEALERSHIPS*** | J. Mitchell Little<br>State Bar No. 24043788<br>Mitch.little@solidcounsel.com<br>Steven Ovando<br>State Bar No. 24128862<br>Steven.ovando@solidcounsel.com<br>SCHEEF & STONE, L.L.P.<br>2600 Network Blvd., Suite 400<br>Frisco, TX 75034<br>Telephone: 214-472-2100<br>Facsimile: 214-472-2150<br>***ATTORNEYS FOR THIRD-PARTY PLAINTIFF, TIFFANY LYNN SEBASTIAN, INDIVIDUALLY, ON BEHALF OF THE SEBASTIAN COMMUNITY ESTATE, AND DERIVATIVELY ON BEHALF OF THE CLASSIC DEALERSHIPS*** |
| Derek D Rollins<br>State Bar No. 24029803<br>Lucas Peterson<br>State Bar No. 24121469<br>Shackelford, McKinley & Norton LLP<br>9201 N Central Expressway, Fourth Floor<br>Dallas, TX 75231<br>Telephone: 214-780-1400<br>Facsimile: 214-780-1401<br>Email: drollins@shackelford.law<br>      lpeterson@shackelford.law<br><br>and<br><br>Timothy D. Zeiger<br>State Bar No. 22255950<br>Shackelford, McKinley & Norton LLP<br>2600 Via Fortuna, Suite 150<br>Austin, Texas 78746<br>Telephone:512-469-0900<br>Facsimile: 512-469-0930<br>Email: tzeiger@shackelford.law<br>***ATTORNEYS FOR THIRD-PARTY DEFENDANTS, T. BENTLY DURANT, THOMAS R. DURANT, THE DURANT CLASSIC DYNASTY TRUST, MICHAEL A. WARD, 8100 PARTNERS, LTD., 8100 MANAGEMENT LLC, 8705 PARTNERS, LTD., 8705 MANAGEMENT LLC, CLASSIC CHEVROLET SUGAR LAND, LLC, CLASSIC CHEVROLET WEST HOUSTON,*** | |

App.A 0267

App.A 0268

| **LLC, CLASSIC ELITE BUICK GMC, INC., AND 16835 CADET PARTNERS, LLC** | |

E. Michelle Bohreer

NO. <u>24-DCV-318087</u>

| | | |
|---|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF<br><br>TIFFANY LYNN SEBASTIAN<br>AND<br>MICHAEL JEFFREY SEBASTIAN<br><br>AND IN THE INTEREST OF<br>████████████, A CHILD<br><br><br>MICHAEL JEFFREY SEBASTIAN and TIFFANY LYNN SEBASTIAN, INDIVIDUALLY, ON BEHALF OF THE SEBASTIAN COMMUNITY ESTATE, AND DERIVATIVELY ON BEHALF OF THE CLASSIC DEALERSHIPS, and 16835 CADET PARTNERS, LLC,<br>*Third-Party Plaintiff,*<br><br>v.<br><br>T. BENTLEY DURANT, THOMAS R. DURANT, and THE DURANT CLASSIC DYNASTY TRUST,<br>*Third-Party Defendants,*<br><br>8100 PARTNERS, LTD., AND 8100 MANAGEMENT LLC,<br>*Nominal Third-Parties.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT OF<br><br><br><br><br><br><br><br><br><br>387TH JUDUCIAL DISTRICT<br><br><br><br><br><br><br><br><br><br>FORT BEND COUNTY, TEXAS |

## <u>MIICHAEL JEFFREY SEBASTIAN'S SUPPORTING DECLARATION</u>

"My name is Michael Jeffrey Sebastian. I am above the age of eighteen and I am fully competent to make this declaration. The facts stated in this declaration are within my personal knowledge and are true and correct.

I am the Counter-Petitioner/Respondent and Third-Party Plaintiff in this case. I am married to Tiffany Lynn Sebastian who is the Petitioner/Counter-Respondent and Third-Party Plaintiff in this case, and who joins me in this Joint Emergency Application for Temporary Restraining Order and Temporary Injunction. Tiffany and I have 3 children. I have read the Joint Emergency Application for Temporary Restraining Order and Temporary Injunction. I have personal knowledge of the facts therein and such facts are true and correct.

I own 51% of the Class A Shares of both Classic Chevrolet West Houston, LLC and Classic Elite Buick GMC, Inc. (the "Majority Owned Entities") which gives me the controlling interest and the right to control all management decisions of the Majority Owned Entities. I also own 30% of Classic Chevy Sugar Land, and a portion of the dealership real estate holdings. 40% of 8100 Partners, LTD,

App.A 0269

40% of 8100 Management LLC, and, together with Tiffany, we own 40% of Cadet Partners. At all relevant times, I have been the manager, officer, owner-operator and Dealer Principal of the Majority Owned Entities. On July 22, 2024, Third-Party Defendants, Thomas R. Durant and T. Bently Durant, purported to expel me from my positions as manager, officer, owner-operator and Dealer Principal of the Majority Owned Entities.

On February 13, 2025, I discovered that I continue to be the Dealer Principal of record for the Classic Chevrolet Sugar Land Dealership. As the Dealer Principal of all three of the Classic Dealerships with approximately 600 employees, I am and remain responsible for thousands of customers and vehicles, with over $100 million in liability at stake. I bear substantial financial obligations and risk, including floor plan financing debt, real estate and lease commitments, operating expenses, lender violations, and potential manufacturer chargebacks. My obligations as the Dealer Principal also involve significant legal risks, such as consumer fraud claims, financing compliance violations, contract disputes, employee lawsuits, product liability claims, and third-party accidents. Additionally, I must adhere to strict regulatory compliance, including federal and state consumer protection laws, lemon law and warranty regulations, OSHA standards, environmental laws, and data privacy requirements. Through their wrongful and unlawful acts, the Durant Defendants have placed me in a position where I have the burden of very substantial risk and liability with no ability to control or protect against the same. Operational risks also remain substantial, including inventory management challenges, service department liabilities, finance and insurance compliance, customer complaints, and potential errors in vehicle title and registration processing. Further, I am obligated to meet franchise requirements, including being present at the dealerships, compliance with advertising rules, warranty and recall responsibilities, and facility upgrades.

During my tenure with the Classic Organization, I never received a written or verbal warning. On the contrary, my partners and the manufacturer consistently acknowledged my exceptional performance, recognizing me frequently as a great partner. By every measurable standard, my tenure has been tremendously successful. My partners and I were actually allowed to purchase our majority interest in these dealerships because of my involvement and the work done to increase the value of Classic Chevrolet Sugar Land. Under my direction, Classic Chevrolet Sugar Land earned the prestigious Chevrolet Dealer of the Year award every year and consistently maintained outstanding Customer Service Index ("CSI") scores, which exceeded the national average.

Following my unlawful removal by the Third-Party Defendants, and Tiffany's subsequent removal shortly thereafter, CSI scores dropped significantly and have remained well below the national average. Numerous customer complaints have arisen—issues I am unable to address—and finance chargebacks have increased by over 200%, yet I remain personally liable for them because, as I just learned, I remain the Dealer Principal at the Majority Owned Dealerships and Classic Chevrolet Sugar Land. Furthermore, as a direct result of these unlawful actions, I have not received any income or owner distributions, more than $3.5 million in distributions, which were manager approved before I was ousted in July.

The Third-Party Defendants used utterly baseless accusations, manipulation, and intimidation tactics to trigger the terms of a Buy-Sell Agreement that Bently Durant drafted and forced Tiffany and I to sign without modification in July of 2023. In mid-2023, as we were closing on Classic Elite Buick GMC, Bently presented Tiffany and me with a new Buy-Sell Agreement. Concerned about its terms, we had our attorney review and redline the document. Bently responded that no changes would be made and that if we wanted to remain partners, we had to sign it as is. Feeling pressured and unwilling to risk losing our partnership, we ultimately signed

the agreement, trusting our partner, Tom Durant. Now, the same Buy-Sell Agreement they insisted we sign is the one they refuse to honor.

Once the Third-Party Defendants triggered the terms of the valid and enforceable Buy-Sell Agreement, I immediately requested the financial data that I am entitled to under the terms of the Company Agreement of West Houston Chevrolet, LLC, the by-laws of Classic Elite Buick GMC, Inc. and under the Texas Business Organization Code provisions relating to LLCs and corporations. Even though Bently Durant acknowledged that the majority owned entities and the Third-Party Defendants are obligated to provide the information and records I requested, he and his co-defendants have continually refused to provide them to me and instructed me to 'stay away from the dealerships'. My notice and multiple requests to Third-Party Defendants continue to be completely ignored in violation of my rights and Tiffany's rights. Further, Thomas Durant told me that he has no intention of paying my wife and I the fair market value of our interest and therefore, he has no intention of complying with the terms of the Buy-Sell Agreement.

The Third-Party Defendants' course of self-dealing continues today. My salary was terminated and instead of paying the millions of dollars of owner distributions that were approved, they diverted these profits to fund unneeded and unapproved capital expenditures to eliminate cash. My physical access to the premises was blocked along with my access to emails, financial records and all management systems, which not only places me in an intolerable position because of my responsibilities as the Dealer Principal, but because these acts blatantly violate my rights as a majority interest holder. Since my unlawful and unjustifiable exclusion from the businesses, the Durant Defendants, in their capacity as de facto "governing persons" of the Majority Owned Entities have taken actions that are wrongful, illegal, oppressive, and fraudulent and have misapplied or wasted property of the Majority Owned Entities with the actual intent to hinder, delay, and defraud me and Tiffany and cheat us out of the value of our stock holdings, which constitutes 90% of our community estate.

Despite my repeated efforts and the efforts of my legal counsel, the Classic Entities continue to stonewall us and refuse to comply with the very Buy-Sell Agreement that Bently Durant prepared and insisted that Tiffany and I sign without any changes. Until the process under the Buy-Sell Agreement is acted upon and the fair market values of the entities are established as required under the terms of the agreement, or Tiffany and I become free to sell our interests to an interested third-party, the divorce proceedings are effectively stalled.

Until the Durant Defendants are made to comply with valid and enforceable terms of the Buy-Sell Agreement, Tiffany and I will be forced to continue to incur needlessly escalated costs of this litigation which the Buy-Sell Agreement was intended to prevent. Furthermore, as long as I remain an owner and Dealer Principal of these entities, securing another job in the automotive industry is impossible. Not only am I receiving no income from the Classic Entities, but I also have no ability to generate income elsewhere. The Durant's are fully aware of this and are using it as leverage to inflict financial harm on our family. The Durant Defendants are clearly attempting to damage our position, and they will continue their efforts to starve us out financially if they are not enjoined from continuing their wrongful acts. If they are not stopped, we will continue to suffer irreparable harm.

*Michael Jeffrey Sebastian*
Michael Jeffrey Sebastian (Feb 20, 2025 11:53 CSI)

_____
MICHAEL JEFFREY SEBASTIAN

My name is MICHAEL JEFFREY SEBASTIAN, my date of birth is 07/04/1977, and my

App.A 0271

address is 25510 Zion Lutheran Cemetery Road, Tomball, Texas 77375, Texas, United States. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Harris County, Texas, on _20/02/25_____

*Michael Jeffrey Sebastian*
Michael Jeffrey Sebastian (Feb 20, 2025 11:53 CST)

MICHAEL JEFFREY SEBASTIAN, Declarant

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03



EXHIBIT
"1"

**BUYSELL AGREEMENT**
**FOR INTERESTS IN**
**CLASSIC CHEVROLET SUGAR LAND, LLC**
**CLASSIC CHEVROLET WEST HOUSTON LLC**
**CLASSIC ELITE BUICK GMC, LLC.**
**16835 CADET PARTNERS, LLC**

App.A 0273

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

# TABLE OF CONTENTS

ARTICLE I.   1
GENERAL PROVISIONS   1
    Section 1.1.   Interests Subject to Agreement   1
    Section 1.2.   General Definitions for Agreement   2
        (a)   "Code"   2
        (b)   "Disability"   2
        (c)   "Family Members"   2
        (d)   "Family Trust"   2
        (e)   "Restricted Interests"   2
        (f)   "Transfer"   3
    Section 1.3.   Successor Rights and Obligations of Trust Beneficiaries   3

ARTICLE II.   3
RESTRICTIONS ON LIFETIME TRANSFERS OF INTERESTS   3
    Section 2.1.   Restrictions on Lifetime Transfers   3
    Section 2.2.   Lifetime Right of First Refusal   4
        (a)   Transferor's Notice   4
        (b)   Option Granted   4
        (c)   Interest Covered by Options   4
    Section 2.3.   Remaining Parties' Option to Purchase Interest   4
        (a)   Option Period   4
        (b)   Exercise of Option   5
        (c)   Release of Option   5
        (d)   Sale Without Release of Option   5
    Section 2.4.   LLC's Option to Purchase Interest   5
        (a)   Option Period   5
        (b)   Exercise of Option   5
        (c)   Release of Option   5
    Section 2.5.   Purchase and Sale of Offered Interest   6
        (a)   Closing Date of Purchase and Sale   6
        (b)   Terms of Closing   6
    Section 2.6.   Expiration of Lifetime Transfer Restrictions   6
    Section 2.7.   Conditional Exemption of Transfers to Family Members, Family Trusts and Martial Trusts   7
    Section 2.8.   Special Exemption of Transfers to Family Partnerships   7

ARTICLE III.   8
PURCHASE OPTIONS WITH RESPECT TO Sebastians's RESTRICTED   8
INTERESTS UPON OCCURRENCE OF SPECIFIED EVENTS   8
    Section 3.1.   Purchase and Sale Options   8
        (a)   Spouse's Interest In Restricted Non-Membership Interests   8

App.A 0274

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

**Page**

          (b)      References to "Sellers"        8

Section 3.2.    Right of First Refusal     8
    (a)    Notice     8
    (b)    Option Granted     9
    (c)    Interests Covered by Options     9

Section 3.3.    Remaining Parties' Option to Purchase Sebastians's Restricted Interests     9
    (a)    Option Period     9
    (b)    Exercise of Option     9

Section 3.4.    LLC's Option to Purchase Sebastians's Restricted Interests     9
    (a)    Option Period     9
    (b)    Exercise of Option     10

Section 3.5.    Determination of Purchase Price by Agreement     10

Section 3.6.    Alternative Determination of Purchase Price While Guarantee in Effect     10
    (a)    Acquisition Loan     10
    (b)    Purchase Price During Term of Loan Guaranty     10

Section 3.7.    Alternative Determination of Purchase Price if Loan No Longer Outstanding     10
    (a)    Failure to Agree on Appraiser     11
    (b)    Multiple Appraisal     11
    (c)    Costs of Appraisal     11

Section 3.8.    Payment of Purchase Price     11
    (a)    Closing Date     11
    (b)    Terms of Purchase Price     11
    (c)    Prepayment Privilege     11
    (d)    Execution of Documents     12

Section 3.9.    Determination of Disability     12
    (a)    By Mutual Agreement     12
    (b)    In the Event of Disagreement     12

ARTICLE IV.     12
DEATH OR DIVORCE OF A SPOUSE OF A PARTY     12
Section 4.1.    Effect of Death or Divorce     12
Section 4.2.    Party's Option to Purchase Restricted Interests     13
    (a)    Option Period     13
    (b)    Exercise of Option     13
Section 4.3.    Business' Option to Purchase Restricted Interests     13
    (a)    Option Period     13
    (b)    Exercise of Option     14
Section 4.4.    Determination of Purchase Price     14
    (a)    Divorce     14
    (b)    Death     14
Section 4.5.    Payment of Purchase Price     14

377019

App.A 0275

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

|  |  |  |
|---|---|---|
| (a) | Closing Date of Purchase/Sale | 14 |
| (b) | Terms of Purchase Price | 14 |
| (c) | Prepayment Privileges | 15 |

ARTICLE V. — 15
MISCELLANEOUS PROVISIONS — 15

| Section 5.1. | Filing of Agreement | 15 |
| Section 5.2. | Notice Provision | 15 |
| Section 5.3. | Amendment of Agreement | 15 |
| Section 5.4. | Specific Performance | 15 |
| Section 5.5. | Attorney Fees | 16 |
| Section 5.6. | Termination of Agreement | 16 |
| Section 5.7. | Binding Effect | 16 |
| Section 5.8. | Execution of Multiple Agreements | 16 |
| Section 5.9. | Provisions Severable | 16 |
| Section 5.10. | Construction of Agreement | 17 |
| Section 5.11. | Entire Agreement | 17 |
| Section 5.12. | Execution of Additional Documents | 17 |
| Section 5.13. | Incorporation by Reference of Exhibits | 17 |
| Section 5.14. | Effective Date | 17 |

SIGNATURES — 19
EXHIBIT "A" RESTRICTED INTERESTS — 20
EXHIBIT "B" PROMISSORY NOTE — 21
EXHIBIT "C" NOTICE ADDRESSES — 23

377019

App.A 0276

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

**BUYSELL AGREEMENT**
**FOR INTERESTS IN**
**CLASSIC CHEVROLET SUGAR LAND, LLC**
**CLASSIC CHEVROLET WEST HOUSTON LLC**
**CLASSIC ELITE BUICK GMC, LLC.**
**16835 CADET PARTNERS, LLC**

THIS BUYSELL AGREEMENT FOR INTERESTS IN CLASSIC CHEVROLET SUGAR LAND, LLC, CLASSIC CHEVROLET WEST HOUSTON LLC. CLASSIC ELITE BUICK GMC, LLC. 16835 CADET PARTNERS, LLC (the "Agreement") is executed by and between CLASSIC CHEVROLET SUGAR LAND, LLC, CLASSIC CHEVROLET WEST HOUSTON LLC. CLASSIC ELITE BUICK GMC, Inc. 16835 CADET PARTNERS, LLC all Texas limited liability companies (the "LLC"), (the "Business"), and by THOMAS R. DURANT ("DURANT"), Michael Jeffrey Sebastian and Tiffany Sebastian ("Sebastians"), and THE DURANT CLASSIC DYNASTY TRUST, created by a Trust Agreement dated January 31, 2000 (the "DYNASTY TRUST") (collectively referred to as the "Owners") to provide for the orderly disposition of their respective member equity interests in the LLC. The LLC and the Owners, may also be referred to collectively in this Agreement as the "Parties" or individually as a "Party". The Agreement has been modified to covered multiple LLC's and owners, with the intent that it jointly and severally apply to each legal entity and person herein so that the provisions below may be applied where applicable to just one owner, or just one entity, as well as to multiple owners. For this purpose, the term Sebastians may refer to either Michael Jeffrey Sebastian, or Tiffany Sebastian individually, or both collectively as may be necessary to effectuate the intent of this agreement.

**R E C I T A L S**

<span style="color:red">App.A 0277</span>

1.      The primary business of the LLC is the ownership and operation of an automobile dealership.   Sebastians's primary duties are the management of such automobile dealership activities ("Dealership Business Duties").

2.      The Parties desire to impose certain restrictions on the disposition of interests in the LLC, as provided herein.

## ARTICLE I.

## GENERAL PROVISIONS

Section I.1.      **Interests Subject to Agreement**

.   The Parties to this Agreement have agreed that it is in their individual and collective best interests to maintain their collectively owned business assets between themselves in order to provide stability for long term planning purposes, to permit their continued consolidated management thereof, and to provide a mechanism by which the Parties can implement an efficient business successor and continuity plan with respect to such assets.   Accordingly, all member equity interests in the LLC now owned or hereafter acquired by the Parties (the "Restricted Membership Interests") shall be subject to the terms and provisions of this Agreement.

Section I.2.      **General Definitions for Agreement**

. The following terms shall have the indicated meanings in this Agreement:

(a)      **"Code"**
: References in this Agreement to "Code" shall mean the Internal Revenue Code of 1986, as amended.

(b)      **"Disability"**
: References in this Agreement to the "Disability" of Sebastians shall mean the physical and/or mental inability of Sebastians to perform the ordinary and regularly assigned duties in carrying out the Business Duties. The Disability status of

2

<span style="color:red">App.A 0278</span>

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

Sebastians may be determined by the mutual agreement of the LLC and Sebastians [or his representatives]. In this regard, the LLC shall be fully protected and shall have no liability whatsoever for transacting any business with the spouse, custodian or guardian of Sebastians, whether such custodian or guardian is natural or court-appointed. In the event of a disagreement between the LLC and Sebastians [or Sebastians's representatives] as to Sebastians's condition or ability to carry out such employment responsibilities and duties, the LLC shall select a competent, independent medical doctor who shall render a professional opinion as to whether or not Sebastians is subject to Disability as defined herein. The opinion and decision of such medical doctor shall be binding upon both the LLC and Sebastians [and Sebastians's representatives]. The LLC shall bear the costs and expenses of obtaining such professional opinion.

### (c)    "Family Members"

:  References in this Agreement to "Family Members" shall mean the Owners and each of the respective spouses and all of the respective descendants of the Owners.

### (d)    "Family Trust"

:  Any references in this Agreement to "Family Trust" shall mean any trust of which the sole beneficiaries are one or more Family Members.

### (e)    "Restricted Interests"

:  References in this Agreement to the "Restricted Interests" shall mean collectively all of the Restricted Membership Interests owned by the Parties including but not limited to those Restricted Interests specified on the attached Exhibit "A".

### (f)    "Transfer"

:  References in this Agreement to "Transfer" [or "Transferred"] shall mean any sale, transfer, assignment, pledge, encumbrance, alienation or any other disposition or hypothecation of Restricted Interests.

### Section I.3.    Successor Rights and Obligations of Trust Beneficiaries

. All of the Restricted Interests subject to this Agreement are currently owned by the Parties.

The Parties hereby agree that all of the rights, obligations and purchase and sale provisions of

this Agreement shall be applicable to the respective successors of the Parties if and to the extent

that all or any part of such Restricted Interests are distributed by any of the Parties to their

permissible successors and further that this Agreement shall be construed and interpreted

3

<span style="color:red">App.A 0279</span>

thereafter to continue to subject such distributed Restricted Interests to the provisions of this Agreement.

## ARTICLE II.

## RESTRICTIONS ON LIFETIME TRANSFERS OF INTERESTS

Section II.1.    **Restrictions on Lifetime Transfers**

. No Restricted Interests or any interest in any Restricted Interests shall be Transferred while such Restricted Interests are owned by the Parties without (i) the prior written consent of all of the Parties, or (ii) complying with the conditions and provisions of this Article.

Neither the LLC nor its members, managers or officers shall deliver any certificate representing Restricted Interests, execute any agreement affecting Restricted Interests, transfer any Restricted Interests on the LLC's books, or otherwise act to create new rights in Restricted Interests, except in compliance with this Agreement and any attempt to do so shall be void and of no force or effect.

Section II.2.    **Lifetime Right of First Refusal**

. The following provisions shall become applicable in the event a Party proposes to Transfer (referred to in this Article II as the "Transferor") all or any part of its Restricted Interests to other than a Family Member or Family Trust, subject to the limitations and conditions set forth in Section 2.6, below.  For purposes of this Article II, whoever among the Parties is not the Transferor, and owns an interest in the LLC, shall be referred to as the "Remaining Parties".

(a)    **Transferor's Notice**
: The Transferor shall first give written notice [the "Option Notice"] to the Remaining Parties and the LLC, identifying the prospective transferee(s) and setting forth in reasonable detail the consideration to be received and the terms and conditions on which the Transfer is proposed to be made, accompanied by copies of any information furnished to or by the prospective transferee(s).

4

<span style="color:red">App.A 0280</span>

### (b) **Option Granted**

:  The Option Notice shall automatically grant to the Remaining Parties the option to purchase the Restricted Interests proposed to be transferred pursuant to the Transfer [the "Offered Interest"] for the same consideration and on the same terms and conditions as contained in the Option Notice.

### (c) **Interest Covered by Options**

: The respective options may be exercised as to all or any part of the Offered Interest.

## Section II.3.   **Remaining Parties' Option to Purchase Interest**

. The Remaining Parties shall have the option to purchase all or any part of the Offered Interest

pursuant to the follow provisions:

### (a) **Option Period**

: The Remaining Parties may exercise their option to purchase the Offered Interest at any time on or before NINETY (90) days after receipt of the Option Notice [referred to in this Article II as the "Option Period"].  In the event that the Transferor Transfers the Offered Interest to a non-Family Member transferee [the "Transferee"] without the consent of all of the parties [excluding the Transferor], the Transferee shall take the Offered Interest subject to the Remaining Party's option to purchase, and the Transferred Offered Interest will be deemed to be owned by the Transferor for purposes of applying Sections 2.2 and 2.3 of this Agreement.

### (b) **Exercise of Option**

:   The Remaining Parties shall give written notice within such Option Period to the Transferor of its election to purchase the Offered Interest.  Such notice shall be given on or before NINETY (90) days prior to the purchase date proposed by the Remaining Party in such notice.

### (c) **Release of Option**

: Upon the unanimous decision of the Remaining Parties, the Remaining Parties may give written notice within such Option Period to the Transferor of its election to release its option and therefore allow the Transferor to transfer the Offered Interest to the non-Family Member purchaser.  The Transferor's proposed Transfer shall be subject to the option granted to the respective Business in Section 2.4 of this Agreement.

### (d) **Sale Without Release of Option**

:   If the Transferor transfers the Offered Interest to a non-Family Member purchaser and the Remaining Parties have not released their option pursuant to Section 2.3(c) above, then the non-Family Member purchaser takes the Offered

App.A 0281

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

Interest subject to the option of the Remaining Party, and the LLC, described in Sections 2.2, 2.3 and 2.4 of this Agreement.

### Section II.4.    LLC's Option to Purchase Interest

.  In the event the Remaining Parties do not purchase all of the Offered Interest, then the LLC shall have the option to purchase the remaining Offered Interest pursuant to the following provisions:

#### (a)    Option Period

: The LLC may exercise its option to purchase the remaining Offered Interest at any time within the THIRTY (30) day period [the "30-Day Period"] beginning at the earlier of [1] the date the final Remaining Party has released his or her respective option pursuant to Section 2.3(c), above, or [2] the date the Option Period expires as described in Section 2.3(a), above.

#### (b)    Exercise of Option

: The LLC shall give written notice within such 30-Day Period to the Transferor of its election to purchase the Offered Interest.  Such notice shall be given at least THIRTY (30) days prior to the purchase date proposed by the LLC in such notice.

#### (c)    Release of Option

:  Upon the decision of the LLC, it may give written notice within such 30-Day Period to the Transferor of its election to release its option and therefore allow the Transferor to transfer the Offered Interest to the non-Family Member purchaser. The Transferor shall have NINETY (90) days to sell the Offered Interest after the LLC has given written notice of its release of the option.

### Section II.5.    Purchase and Sale of Offered Interest

.  The purchase and sale of the Offered Interest shall be completed pursuant to the following provisions in the event the Remaining Parties or LLC exercise their respective options to purchase the Offered Interest:

#### (a)    Closing Date of Purchase and Sale

: The Transferor and Remaining Party shall agree upon a mutually convenient time and place for the closing.  Unless agreed otherwise, the closing, however, must be within TEN (10) days after the Transferor's receipt of the last written election by the Remaining Parties and/or the LLC.

#### (b)    Terms of Closing

App.A 0282

: The Offered Interest shall be purchased for the consideration equal to the net book value of such Offered Interests, such value to be determined by the accountant regularly engaged by the LLC.

Section II.6.   **Expiration of Lifetime Transfer Restrictions**

. Subject to (b) below, the Transferor shall have the right to Transfer the Offered Interest or any portion thereof to the Transferee named in the Option Notice; provided that the Remaining Parties, and the LLC, have released their respective options to purchase such Offered Interests or any portion thereof or the time for exercise of such option otherwise expires without exercise thereof; and provided further that the Transfer is made for the same consideration and on the same terms and conditions contained in the Option Notice. The Transferor's right to transfer such Offered Interest shall continue for a period of NINETY (90) days after either the final Remaining Parties has given written notice of his or her release of the option specified in this Article II, or the applicable Option Period for the Remaining Parties is allowed to lapse without exercise; and the LLC have either provided written notification declining to exercise the option in Section 2.4 or the applicable 30-Day Period for the LLC is allowed to lapse without exercise.  If the Offered Interest is not transferred within such NINETY (90) day period, or if the Transferor desires to change the Transferee, consideration, terms or conditions contained in the Option Notice, then the Transferor must reoffer the Restricted Interests in accordance with the provisions of this Article II.

Section II.7.   **Conditional Exemption of Transfers to Family Members, Family Trusts and Martial Trusts**

. The Transferor may transfer all or any part of its Restricted Interests to a Family Member and/or a Family Trust without first offering such Interests to the Remaining Party or the LLC.

7

App.A 0283

A Party, as well as any spouse of a Party who acquires an ownership interest in any LLC, may transfer all or any part of its Restricted Interests to a trust for the benefit of the spouse of such Transferor [the "Marital Trust"] provided that (1) such spouse is provided lifetime benefits from such Marital Trust, and (2) by the terms of such Marital Trust Agreement, the Restricted Interests thereof shall be distributed to or held in further trust for one or more Family Members.

All transferee Family Members, Family Trusts and Marital Trusts shall take the Restricted Interests subject to all of the terms, provisions and conditions of this Agreement, including, but not limited to, all of the restrictions, conditions, options and sale obligations contained in this Agreement.

Section II.8.    **Special Exemption of Transfers to Family Partnerships**

. Each Party may transfer all or any part of his or her Restricted Interests to one or more partnerships ["Family Partnerships"] provided that all general partner interests therein are continuously owned by a Party, directly or indirectly through an LLC or other entity which is the general partner (and by a spouse of a Party who has a community property interest therein).

A Family Partnership which owns any Restricted Interests shall be subject to all of the terms and provisions of this Agreement, including but not limited to the mandatory and optional sale and purchase provisions as hereinafter provided, and this Agreement shall be interpreted in a manner consistent with the intent of the Parties to subject such Restricted Interests owned by a Family Partnership to the terms and provisions of this Agreement.

## ARTICLE III.

## PURCHASE OPTIONS WITH RESPECT TO Sebastians'S RESTRICTED INTERESTS UPON OCCURRENCE OF SPECIFIED EVENTS

App.A 0284

Section III.1.  **Purchase and Sale Options**

. Upon the occurrence of a specified event, all Restricted Interests owned by Sebastians shall be subject to the purchase options provided by this Article as herein granted to DURANT and the DYNASTY TRUST (referred to in this Article as the "Remaining Parties") and the LLC. The following items are specified events for purposes of this Article: (i) the death of Sebastians; (ii) the Disability of Sebastians; (iii) the cessation of the performance of the Dealership Business Duties of Sebastians (including termination of either of the Sebastians as an officer or Manager of the LLC); or (iv) a vote of no confidence in the Sebastians by members who hold a majority of the interest in the LLC. The Sebastians, the legal representatives of Sebastians's estate and/or other successors in interest (in the event of Sebastians's death), Sebastians's attorney-in-fact, custodian, guardian or other representative (in the event of Sebastians's disability or cessation of his performance of his Business Duties) shall be referred to as the "Sellers" for purposes of this Article.

(a)  **Spouse's Interest In Restricted Non-Membership Interests**
:  At the occurrence of any of the events set forth in Section 3.1 with respect to Sebastians, his spouse's community property and/or separate property interests in the Restricted Interests [if any] shall be subject to the purchase and sale option provisions of this Agreement.

(b)  **References to "Sellers"**
:  References in this Article to "Sellers", as defined above, shall also include Sebastians's spouse and/or his transferees.

Section III.2.  **Right of First Refusal**

. The following provisions shall become applicable upon the occurrence of a specified event:

(a)  **Notice**
:  Sebastians or Sebastians's estate, as the case may be, shall give written notice [the "Option Notice"] within NINETY (90) days of Sebastians's death or disability to the Remaining Parties and the LLC, setting forth the identity of Sebastians and his

9

App.A 0285

date of death or disability. In the event of the cessation of performance of Sebastians's Dealership Business Duties, the Remaining Parties shall notify Sebastians of such cessation and commencement of the Option Period with respect thereto.

### (b) Option Granted

: The Option Notice shall automatically grant to the Remaining Parties and the LLC options to purchase, in the order specified below, the Restricted Interests owned by the Sellers upon the date of death or disability of Sebastians ["Sebastians's Restricted Interests"].

### (c) Interests Covered by Options

: The respective options may be exercised by the Remaining Parties as to all or any part of Sebastians's Restricted Interests.

### Section III.3. Remaining Parties' Option to Purchase Sebastians's Restricted Interests

. Upon the occurrence of any of the events set forth in Section 3.1, the Remaining Parties shall have the first option to purchase Sebastians's Restricted Interests pursuant to the following provisions:

### (a) Option Period

: The Remaining Parties may exercise their option to purchase Sebastians's Restricted Interests, as described above, at any time within NINETY (90) days after receipt of the Option Notice or notification by the Remaining Parties of the cessation of Sebastians's Dealership Business Duties.

### (b) Exercise of Option

: The Remaining Parties shall each give written notice within such option period to Sebastians's estate of their respective election to purchase Sebastians's Restricted Interests. The failure of the Remaining Parties to notify Sebastians, or Sebastians's estate, as the case may be, within this option period of their election to exercise their option shall constitute a waiver of the option.

### Section III.4. LLC's Option to Purchase Sebastians's Restricted Interests

. In the event the Remaining Parties do not purchase all of Sebastians's Restricted Interests, then the LLC shall have the option to purchase the remaining portion of Sebastians's Restricted Interests pursuant to the following provisions:

10

App.A 0286

### (a)  Option Period

:  The LLC may exercise its option to purchase the remaining portion of Sebastians's Restricted Interests at any time within THIRTY (30) days after the termination of the last option period specified by Section 3.3, above.

### (b)  Exercise of Option

:  The LLC shall give written notice within such option period to Sebastians's estate of its election to purchase the remaining portion of Sebastians's Restricted Interests. The failure of the LLC to notify Sebastians's estate within this option period of its election to exercise its option shall constitute a waiver of the option.

### Section III.5.  Determination of Purchase Price by Agreement

.  The purchase price for Sebastians's Restricted Interests shall be determined by the mutual agreement of the respective Purchasers and Sellers; provided, however, the Purchasers and Sellers shall be bound to the agreed upon valued described below.

### Section III.6.  Alternative Determination of Purchase Price While Guarantee in Effect

.  If such parties fail to mutually agree upon a purchase price for such Restricted Interests and the following provisions in (a) and (b) do not apply, then the purchase price shall be determined by the provisions of Section 3.7.

### (a)  Acquisition Loan

:  In the initial formation of each LLC, Sebastians financed his Capital Contributions by obtaining a loan from The Durant Classic Dynasty Trust (the "Loan").

### (b)  Purchase Price During Term of Loan Guaranty

So long as the Loan remains unpaid, the Parties hereby agree that the applicable Purchase Price for Sebastians's Restricted Interests shall be equal to the lower of: (i) the amount of Sebastians's initial contribution to the LLC for his Restricted Membership Interest or (ii) the appraised value as determined by the appraisal procedures set forth in Section 3.7(a)-(c).  This provision only applies to the specific LLC where the acquisition loan is still in effect and does not extend to other LLC's when their loan has been paid in full either by refinancing through a third party or by payment in full satisfaction of the loan.

App.A 0287

<u>Section III.7.</u>  **Alternative Determination of Purchase Price if Loan No Longer Outstanding**

.  In the event the Loan is repaid in full, and the Remaining Parties and/or the LLC exercise their respective options to purchase Sebastians's Restricted Interests under this Article and the respective parties cannot mutually agree upon a purchase price thereof, then the purchase price of Sebastians's Restricted Interests shall be the appraised fair market value of such interests determined by an independent appraiser selected by the mutual agreement of the Sellers and the persons or entities entitled to purchase the Restricted Interests under this Agreement (the "Purchasers"), subject to the following provisions:

<u>(a)</u>  **Failure to Agree on Appraiser**

:  In the event the Sellers and the Purchasers fail to mutually agree on an independent appraiser, the fair market value of Sebastians's Restricted Interests shall be determined by a Multiple Appraisal as provided in Section 3.6(b), below.

<u>(b)</u>  **Multiple Appraisal**

:  In the event that a Multiple Appraisal is required under this Agreement, the Sellers shall collectively select one appraiser, and the Purchasers shall collectively select one appraiser.  The two appraisers shall then attempt to agree on the required determination of fair market value.  If the two appraisers cannot agree upon the required determination, they shall appoint a third appraiser, and the three appraisers shall determine the required fair market value by majority vote.  The decision of the appraisers shall be binding on all parties.  Any appraiser shall be independent and regionally recognized as an expert appraiser.

<u>(c)</u>  **Costs of Appraisal**

:  All appraisals, legal and accounting costs incurred for purposes of the appraisal shall be paid ONEHALF (1/2) by the Sellers and ONEHALF (1/2) by the Purchasers.  The appraiser or appraisers may retain such additional appraisers, advisors and experts as they deem reasonably necessary and may rely on the opinion of such additional appraisers, advisors and experts. Any additional costs incurred shall be treated as costs of the appraisal of the fair market value of the Restricted Interests.

<u>Section III.8.</u>  **Payment of Purchase Price**

12

<span style="color:red">App.A 0288</span>

. The purchase price of Sebastians's Restricted Interests for purposes of this Article shall be paid

pursuant to the following provisions:

### (a)    Closing Date

: The closing shall occur on or before ONE HUNDRED EIGHTY (180) days following the date of the specified event, and at a time and place mutually agreeable to Sellers and the Purchasers.  In the event that the purchase price has not been determined by such date, then closing shall occur on or before TEN (10) days after the determination of the purchase price.

### (b)    Terms of Purchase Price

: Each respective Purchaser shall deliver at closing a Promissory Note(s), dated as of the Closing Date, the principal amounts of which shall be equal to such pro rata share of the purchase price for each Seller, the form and substance of the Promissory Note(s) being the same as the attached Exhibit "B".

### (c)    Prepayment Privilege

: The respective Purchasers shall have the sole and absolute right to prepay all or any part of the purchase price at any time without penalty.  The Parties further agree that each Purchaser shall have the unilateral option to elect thereafter to pay interest on the unpaid principal at the prevailing interest rate at the time.

### (d)    Execution of Documents

:  The Sellers and the respective Purchasers agree to execute any and all additional documents reasonably necessary to complete the closing as contemplated herein.

### Section III.9.   Determination of Disability

.  The Disability status of Sebastians shall be determined pursuant to the following

provisions:

### (a)    By Mutual Agreement

:  The Disability status of Sebastians may be determined by mutual agreement of the remaining Parties and Sebastians or his respective representatives.  The remaining Parties shall be fully protected and shall have no liability whatsoever for transacting any business with the custodian or guardian of Sebastians, whether such custodian or guardian is natural or court-appointed.

### (b)    In the Event of Disagreement

:   In the event of a disagreement between the remaining Parties and Sebastians, or his representatives, as to the condition or the ability of Sebastians to carry out his duties, the remaining Parties shall select a competent, independent medical doctor, who shall render a professional opinion as to whether or not Sebastians is subject

13

App.A 0289

to Disability as defined in this Agreement. The opinion and decision of such medical doctor shall be binding upon both the remaining Parties, and Sebastians or his representatives. The costs and expenses of obtaining such professional opinion, shall be borne equally by the remaining Parties, collectively, and Sebastians or his representatives.

## ARTICLE IV.

## DEATH OR DIVORCE OF A SPOUSE OF A PARTY

Section IV.1.    **Effect of Death or Divorce**

.  In the event the marital relationship of one of the Parties who owns Restricted Interests is terminated by divorce or by the death of his or her spouse, any Restricted Interests owned by such individual that do not pass to the respective Party, Family Members (other than his or her spouse) or a Family Trust, shall be subject to the options contained in this Article.

Section IV.2.    **Party's Option to Purchase Restricted Interests**

.  The Party who was married (the "Married Party") to the divorced or deceased spouse shall have the option to purchase all or any portion of such Restricted Interests for the purchase price (as determined in Section 4.4 below) of the Restricted Interests determined as of the end of the month preceding the date on which a final judgment of divorce was entered or the date of death, whichever the case may be, pursuant to the following provisions:

(a)    **Option Period**
:  The Married Party may exercise his option to purchase any part of the Restricted Interests at any time within NINETY (90) days after the latter of:  [1] the date on which a final judgment of divorce is entered or the date of death, as the case may be; and [2] the date of the determination of the purchase price of the Restricted Interests.

(b)    **Exercise of Option**
:  The Married Party shall give written notice within such option period to the divorced spouse or the representatives of the deceased spouse's estate [or other successors in interest] and to the LLC of the number of Restricted Interests which he or she agrees to purchase. The failure of the Married Party to notify the divorced spouse or the representatives of the deceased spouse's estate [or other successors in

14

<span style="color:red">App.A 0290</span>

interest] and the LLC within this period of the Married Party's election to exercise his option shall constitute a waiver of the option.

### Section IV.3.   Business' Option to Purchase Restricted Interests

.  In the event the Married Party does not purchase all of the Restricted Interests, then the LLC shall have the option to purchase all or any portion of such remaining Restricted Interests for the purchase price (as determined in accordance with Section 4.4 below) of the Restricted Interests determined as of the end of the month preceding the date on which a final judgment of divorce was entered or the date of death, whichever the case may be, pursuant to the following provisions:

### (a)      Option Period

:  The LLC may exercise its option to purchase any part of such remaining Restricted Interests at any time within NINETY (90) days after the latter of:  [1] the date on which a final judgment of divorce is entered or the date of death, as the case may be; and [2] the date of the determination of the purchase price of the Restricted Interests.

### (b)      Exercise of Option

:  The LLC shall give written notice within such option period to the divorced spouse or the representatives of the deceased spouse's estate [or other successors in interest] of the number of Restricted Interests which it agrees to purchase.  The failure to notify the divorced spouse or the representatives of the deceased spouse's estate [or other successors in interest] within this period of its election to exercise its option, shall constitute a waiver of the option.

### Section IV.4.   Determination of Purchase Price

.  The purchase price of the Restricted Interests purchased under the terms of this Article shall be determined as follows:

### (a)      Divorce

:  In the event of the divorce between the Married Party and his spouse, the purchase price shall be the amount determined by the court having jurisdiction over the divorce proceeding, or if such court does not make such determination, the amount as agreed upon by and between the Married Party [or the LLC] and his or her spouse.  If the divorce court does not make such a value determination and the Married Party and his or her spouse do not agree upon the valuation, then the

15

App.A 0291

purchase price shall be the amount determined in accordance with Section 3.7 [with the Married Party and/or the LLC and his spouse each paying onehalf of the related costs].

### (b)    **Death**

: In the event of the death of a Married Party's spouse, the purchase price shall be the amount as agreed upon by and between the Married Party [or the LLC] and his or her deceased spouse's estate, or if they do not so agree, then the purchase price shall be the amount determined in accordance with Section 3.7 [with the Married Party and/or the LLC and his deceased spouse's estate each paying onehalf of the related costs].

### Section IV.5.   **Payment of Purchase Price**

. In the event the Married Party and/or the LLC exercise their options to purchase all or any portion of such Restricted Interests, the purchase price shall be paid pursuant to the following provisions:

### (a)    **Closing Date of Purchase/Sale**

: The Married Party and/or the LLC shall give the divorced spouse or the representatives of the deceased spouse's estate [or other successors in interest] written notice of the time and place of the closing.  The closing shall be within THIRTY (30) days after the divorced spouse or the representatives of the deceased spouse's estate [or other successors in interest] receives the last written election by the Married Party and/or the respective LLC of their elections to exercise their options.

### (b)    **Terms of Purchase Price**

: The Married Party and/or the LLC shall pay the total purchase price at closing by the execution and delivery of a promissory note or notes at closing, the terms and provisions of which are the same at the form which is attached as Exhibit "B" to this Agreement.

### (c)    **Prepayment Privileges**

: The Married Party and/or the LLC shall have the sole and absolute right to prepay all or any part of the purchase price at any time, without penalty.  The Parties further agree that each Purchaser shall have the unilateral option to elect thereafter to pay interest on the unpaid principal at the prevailing interest rate at the time.

App.A 0292

## ARTICLE V.

## MISCELLANEOUS PROVISIONS

Section V.1.     **Filing of Agreement**

. An executed copy of this Agreement shall be filed with the Managers of the LLCs.

Section V.2.     **Notice Provision**

.  Any notice, payment, demand or communication required or permitted to be given by any provision of this Agreement shall be deemed to have been effectively given and received on the date personally delivered to the respective Party to whom it is directed, or when deposited by registered or certified mail, with postage and charges prepaid and addressed to the Party at the address set forth in Exhibit "C" to this Agreement.  A Party may change its notice address by delivering a written change of address to all of the other Parties in the manner set forth in this Section.

Section V.3.     **Amendment of Agreement**

.  No amendment, modification or alteration of the terms of this Agreement shall be binding unless in writing, dated subsequent to the date of this Agreement, and executed by all the Parties.

Section V.4.     **Specific Performance**

.  The Parties hereby agree that it is impossible to measure in money the damages which will accrue to a Party by reason of a failure to perform any of the obligations under this Agreement. Therefore, if any Party shall institute any action or proceeding to enforce the provisions of this Agreement, any person against whom such action or proceeding is brought hereby waives the claim or defense that such party has an adequate remedy at law, and such person shall not urge in any such action or proceeding the claim or defense that such remedy at law exists.

Section V.5.     **Attorney Fees**

17

App.A 0293

.  If any action at law or equity, including an action for declaratory relief, is brought to enforce or interpret the provisions of this Agreement, the prevailing Party shall be entitled to recover reasonable attorney's fees and all other costs and expenses of litigation from the other Party, which amounts may be set by the court in the trial of such action or may be enforced in a separate action brought for that purpose, and which amounts shall be in addition to any other relief which may be awarded.

Section V.6.    **Termination of Agreement**

. This Agreement shall terminate upon the mutual written agreement of the Parties.

Section V.7.    **Binding Effect**

. This Agreement shall be binding upon and inure to the benefit of the Parties to this Agreement and their respective estates, legal representatives, successors, transferees, heirs and assigns.

Section V.8.    **Execution of Multiple Agreements**

.  This Agreement may be executed in several counterparts, and all so executed shall constitute one Agreement, binding on all of the Parties hereto, notwithstanding that all of the Parties are not a signatory to the original or the same counterpart.

Section V.9.    **Provisions Severable**

.   In the event any sentence, paragraph, provision, Section or Article of this Agreement is declared by a court of competent jurisdiction to be void, such sentence, paragraph, provision, Section or Article shall be deemed severed from the remainder of the Agreement and the balance of the Agreement shall remain in effect.

Section V.10.   **Construction of Agreement**

. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.  Title or captions contained in this Agreement are inserted only as a matter of convenience

App.A 0294

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

and reference.  Such titles and captions shall not be construed to define, limit, extend or describe the scope or the intent of any provision of this Agreement.  This Agreement shall not be strictly construed against any Party.  Whenever required by the context hereof, the singular shall include the plural, and vice versa; the masculine gender shall include the feminine and neuter genders, and vice versa; and the word "person" shall include an estate, trust, corporation, partnership, or other form of business entity when necessary.

Section V.11.   **Entire Agreement**

.  This Agreement constitutes the entire understanding of the Parties and supersedes all prior understandings, whether written or oral, between the Parties with respect to the subject matter of the Agreement.

Section V.12.   **Execution of Additional Documents**

.  The Parties, their legal representatives, executors, successors and assigns, hereby agree to execute such other and further documents and instruments and take such further action as may be necessary or desirable to carry out the purpose of this Agreement and to comply with all laws which may be applicable to the Restricted Interests, the Policies, and the LLC.

Section V.13.   **Incorporation by Reference of Exhibits**

.   All Exhibits referred to in this Agreement are hereby incorporated in this Agreement by reference for all purposes.

Section V.14.   **Effective Date**

.  This Agreement is executed on the dates set opposite the signatures below, but is effective as of May 1, 2023.

App.A 0295

**DATES:**

6/16/2023

7/20/2023

7/21/2023

6/15/2023

6/16/2023

**SIGNATURES:**

Tom Durant

THOMAS R. DURANT

Jeff Sebastian

Michael Jeffrey Sebastian

Tiffany Sebastian

Tiffany Sebastian

THE DURANT CLASSIC DYNASTY TRUST

Mark Escamilla

By: _____

Marin "Mark" Escamilla, Trustee

CLASSIC CHEVROLET SUGAR LAND, LLC
CLASSIC CHEVROLET WEST HOUSTON LLC
CLASSIC ELITE BUICK GMC, LLC.
16835 CADET PARTNERS, LLC

Tom Durant

By: _____

Thomas R. Durant, President

20

App.A 0296

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

## CONSENT OF SPOUSES

For purposes of binding my current and/or future community and/or other interests in the Restricted Interests, if any, I hereby acknowledge that I have reviewed, understand and agree to the terms and provisions of this Agreement.

**DATES:**                                **SIGNATURES:**

6/15/2023

Susan Durant
SUSAN R. DURANT

7/20/2023

Jeff Sebastian
MICHAEL JEFFREY SEBASTIAN

7/21/2023

Tiffany Sebastian
TIFFANY SEBASTIAN

21

App.A 0297

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

## EXHIBIT "A"
## RESTRICTED INTERESTS

| MEMBER | CLASS | PERCENTAGE |
|---|---|---|
| Thomas R. Durant | Class A | 0.7% |
| Michael Jeffrey Sebastian | Class A | 0.3% |
| The Durant Classic Dynasty Trust | Class B | 69.3% |
| Michael Jeffrey Sebastian | Class B | 29.7% |

**Example membership interest structure. Ownership interest varies with each LLC.**

App.A 0298

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

# EXHIBIT "B"
## PROMISSORY NOTE

Date:

Maker:

Maker's Mailing Address (including county): _____
_____

Payee:

Place for Payment (including county): _____
_____

Principal Amount: _____ ($____)

Annual Interest Rate on Unpaid
Principal from Date of Note:

> The applicable Federal rate as determined for purposes of Section 7872(f)(2)(B) of the Internal Revenue Code of 1986, as amended, as of the date of this Note, which rate is PERCENT (___%) per annum.

Terms of Payment (principal and interest):

> Interest on the unpaid principal on this note shall be payable in FIVE (5) equal annual installments commencing ONE (1) year after the date hereof.

> All principal plus any accrued interest shall be paid on or before FIVE (5) years from the date hereof.

Annual Interest Rate on
Matured, Unpaid Amounts:

> Applicable Federal Rate, as determined above, compounded annually

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amount shall be due by the final scheduled payment date.

App.A 0299

Maker shall have the right to prepay this Note at any time in whole or in part without penalty. Partial prepayments shall be applied first to accrued but unpaid interest, and then to the outstanding principal balance of this Note. Maker shall have the absolute and unilateral right to redesignate the interest rate, applicable to the unpaid principal after each such prepayment, in effect for the month during which such prepayment of principal is made by Maker.

On default of in the payment of this note and Maker's failure to cure the default within NINETY (90) days after written notice from payee of the default, it shall become immediately due at the election of Payee. Except for such written notice of default, Maker and each surety, endorser and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, protest and notices of protest to the extent permitted by applicable law.

If this note is given to any attorney for collection, or if suit is brought for collection, or if it is collected through probate, bankruptcy or other judicial proceedings, then Maker shall pay Payee reasonable attorneys' fees in addition to other amounts due. Reasonable attorneys' fees shall be due unless either party pleads otherwise.

This Note shall be subject to the terms of that certain BUYSELL AGREEMENT dated _____, 2009.

Nothing in this note shall authorize the collection of interest in excess of the highest rate allowed by law.

MAKER:

[Exhibit OnlyNot For Execution]_____
_____, Maker

24

App.A 0300

DocuSign Envelope ID: CCF86877-B234-44AB-BBF3-4D7334912B03

**EXHIBIT "C"**
**NOTICE ADDRESSES**

THOMAS R. DURANT
1101 SH 114, P.O. Box 1717
Grapevine, TX 76051

SUSAN R. DURANT
1101 SH 114, P.O. Box 1717
Grapevine, TX 76051

Michael Jeffrey Sebastian and Tiffany Sebastian


THE DURANT CLASSIC DYNASTY TRUST
c/o Mark Escamilla, Trustee
1101 SH 114, P.O. Box 1717
Grapevine, TX 76051

CLASSIC CHEVROLET SUGAR LAND, LLC
1101 SH 114, P.O. Box 1717
Grapevine, TX 76051

**Motion GRANTED AND Order filed February 21, 2025.**



In The

# Fifteenth Court of Appeals

_____

## NO. 15-25-00019-CV
_____

**IN RE T. BENTLY DURANT; THOMAS R. DURANT; THE DURANT CLASSIC DYNASTY TRUST; MICHAEL A. WARD; 8100 PARTNERS, LTD.; 8100 MANAGEMENT LLC; 8705 PARTNERS, LTD.; 8705 MANAGEMENT LLC; CLASSIC CHEVROLET SUGAR LAND LLC; CLASSIC CHEVROLET WEST HOUSTON, LLC; CLASSIC ELITE BUICK GMC, INC.; AND 16835 CADET PARTNERS, LLC, Relators**

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**Business Court Division 11A**
**Trial Court Cause No. 25-BC11A-0001**

---

## ORDER

On Friday, February 21, 2025, relators T. Bently Durant; Thomas R. Durant; The Durant Classic Dynasty Trust; Michael A. Ward; 8100 Partners, Ltd.; 8100

Exhibit 11   App.A 0302

Management LLC; 8705 Partners, Ltd.; 8705 Management LLC; Classic Chevrolet Sugar Land LLC; Classic Chevrolet West Houston, LLC; Classic Elite Buick GMC, Inc.; and 16835 Cadet Partners, LLC, filed a petition for writ of mandamus in this court. Relator asks this court to order the Honorable Stacy Rogers Sharp, Judge of the Business Court Division 11A, in Travis County, Texas, to set aside her order dated February 4, 2024, entered in trial court number 25-BC11A-0001, styled *Sebastian v. Durant*, No. 25-BC11A-0001. Relators have also filed a motion for temporary stay of proceedings below.[1]

It appears from the facts stated in the petition and motion that relator's request for relief requires further consideration and that relator will be prejudiced unless immediate temporary relief is granted. We therefore **GRANT** relator's motion and order that all proceedings in cause no. 25-BC11A-0001, *Sebastian v. Durant* (including proceedings on remand in cause no. 24-DCV-318087) be **STAYED** until a final decision by this court on relator's petition for writ of mandamus, or until further order of this court.

In addition, the court requests Tiffany and Michael Jeffrey Sebastian, the real parties-in-interest, to file a response to the petition for writ of mandamus on or before March 3, 2025.[2] Relators' reply is due by March 13, 2025.

PER CURIAM

Panel consists of Chief Justice Brister and Justices Field and Farris.

---

[1] *See* TEX. R. APP. P. 52.8(b), 52.10.

[2] *See id.* R. 52.4.

**BOHREER LAW FIRM PLLC**
**777 Post Oak Blvd., Suite 950**
**Houston, Texas 77056**
**832-856-3006 (Telephone)**
**832-856-2891 (Facsimile)**
**www.bohreerlaw.com**

February 24, 2025

<u>*Via Email (drollins@shackelford.law)*</u>
Mr. Derek Rollins
Shackelford, McKinley & Norton, LLP
9201 N. Central Expressway, 4th Floor
Dallas, Texas 75231

  Re: Cause No. 24-DCV-318087; *IMMO Tiffany Lynn Sebastian and Michael Jeffrey Sebastian, et al; In the 387th Judicial District Court of Fort Bend County, Texas*

<u>**RULE 408: SETTLEMENT DISCUSSIONS**</u>

Counsel,

  As of Saturday, February 22, 2025, Thomas R. Durant was removed as a Manager of Classic Chevrolet West Houston, LLC. He was also removed as President of Classic Chevrolet West Houston, LLC. Tiffany Sebastian was appointed to fill the Manager vacancy and Jeff Sebastian was appointed President of Classic Chevrolet West Houston, LLC. Reasonable compensation for the Managers was set at $15,000 per month as base compensation and 2% of the dealership gross. The first payment of compensation is due on February 28, 2025, for the base and by March 15, 2025 for two (2%) percent of February dealership gross. The Sebastians are excited to go back to the dealership and do what they love. They intend to fully exercise their rights under the applicable Company Agreement for Classic Chevrolet West Houston, LLC. The Sebastians will notify Ulysess of the compensation decided on Saturday. To be clear, unless and until Mr. Sebastian's ownership is bought out under the terms of the Buy-Sell Agreement, Jeff does not wish to be replaced as "Dealer Principal". He desires to fulfill that role as he previously did before his illegal expulsion. The Sebastians will next proceed with similar actions as to Classic Elite Buick | GMC, LLC. before seeking Chevrolets guidance regarding Classic Chevrolet Sugar Land, LLC

  The Sebastians ask that we provide the Durants a final opportunity to honor the very Buy-Sell Agreement your letter of Friday, February 21, 2025 repeatedly references as enforceable. As of now, the Sebastians intend to be back at the dealership and proceed as outlined above. Likewise, the Sebastians will notify Chevrolet and General Motors of their return to control of Classic Chevrolet West Houston and Mr. Sebastian's desire to continue as "dealer principal". The only way the Sebastians are willing to change these plans is if an agreement to proceed forward under the Buy-Sell Agreement with specific dates for designation of appraisers; information being provided to appraisers as requested by the appraisers; deadline for FMV exchange; the selection

<span style="color:red">Exhibit 12</span>    <span style="color:red">App.A 0304</span>

of a third appraiser, if needed; and ultimately, closing is reached immediately. This agreement would be documented as an enforceable Rule 11 Agreement.

The offer contained in the letter expires at 12:00 noon on Tuesday, February 25, 2025, and must be accepted in writing.

Very Truly Yours,

E. Michelle Bohreer

cc:     Jeff Sebastian (via email)
        Tiffany Sebastian (via email)
        Joe DiCecco (via email)
        John Coselli III (via email)
        Jill Evangelista (via email)
        Mitch Little (via email)
        Richard L. Tate (via email)

App.A 0305

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Rebecca Duckworth on behalf of Derek Rollins
Bar No. 24029803
rduckworth@shackelford.law
Envelope ID: 98420963
Filing Code Description: Petition
Filing Description: Plaintiff's Verified Original and Emergency Application
for Temporary Injunction and Permanent Injunction (Sebastian)
Status as of 3/13/2025 12:22 PM CST

Associated Case Party: Classic Chevrolet West Houston, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Rebecca DeeDuckworth | | rduckworth@shackelford.law | 3/13/2025 12:11:51 PM | SENT |
| John LucasPeterson | | lpeterson@shackelford.law | 3/13/2025 12:11:51 PM | SENT |
| Derek D.Rollins | | drollins@shackelford.law | 3/13/2025 12:11:51 PM | SENT |
| Timothy DZeiger | | TZeiger@shackelford.law | 3/13/2025 12:11:51 PM | SENT |

App.A 0306

FILED
TARRANT COUNTY
3/13/2025 10:28 AM
THOMAS A. WILDER
DISTRICT CLERK

236-362746-25

CAUSE NO. _____

| | | |
|---|---|---|
| CLASSIC CHEVROLET WEST HOUSTON, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | \_\_\_\_ JUDICIAL DISTRICT |
| | § | |
| MICHAEL JEFFREY SEBASTIAN AND TIFFANY SEBASTIAN, | § | |
| | § | |
| *Defendants.* | § | TARRANT COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING

On this day the Court considered the Verified Original Petition and Emergency Application for Temporary Injunction and Permanent Injunction ("Verified Application") of Plaintiff Classic Chevrolet West Houston, LLC ("Plaintiff") against Defendants Michael Jeffrey Sebastian ("Jeff") and Tiffany Lynn Sebastian ("Tiffany") (collectively "Defendants"). After reviewing the Verified Application and the attachments thereto and arguments of counsel, the Court makes the following findings:

1.      The purported actions taken at the February 22, 2025 special meeting were unauthorized under the Company Agreement and are, therefore, null and void.

2.      Defendants are prohibited from attempting to call, or otherwise participate in, any meetings of Plaintiff's members.

3.      Defendants are prohibited from attempting to vote or engage in any managerial function associated with their membership interest(s) in Plaintiff, including without limitation, entering the Dealership, giving instruction, direction, or orders to Dealership employees, or accessing or attempting to access any financial records of the Dealership.

4.      Unless a Temporary Restraining Order is entered immediately enjoining Defendants Michael Jeffrey Sebastian and Tiffany Lynn Sebastian, their agents, servants, employees, and attorneys from the acts described herein, there is imminent danger Plaintiffs will suffer immediate and irreparable harm, loss, and damage in the form of disruption of business operations and financial and reputational harm directly resulting from the acts of Defendant.



**Exhibit 13**                                    **App.A 0307**

5. Plaintiffs have no adequate remedy at law, due to the continuing nature of the damages and the extreme difficulty inherent in attempting to quantify the damages in monetary terms.

6. Plaintiffs are entitled to the issuance of a Temporary Restraining Order to protect and preserve the status quo until a hearing can be held on Plaintiffs' request for a Temporary Injunction. Plaintiffs have demonstrated a likelihood of success on the merits of this case and a balancing of the equities strongly favors an award of injunctive relief.

**IT IS, THEREFORE, ORDERED** that each Defendant, together with his or her respective agents, employees, contractors, representatives, attorneys, and legal representatives, and all others in active concert or participation with each of them, is enjoined from engaging, directly or indirectly, through any person or entity, in any of the following activities:

1. Effecting or enforcing any of the purported actions taken at the February 22, 2025 special meeting.

2. Attempting to call, or otherwise participate in, any meetings of Plaintiff's members.

3. Attempting to vote or engage in any managerial function associated with their membership interest(s) in Plaintiff, including without limitation, entering the Dealership, giving instruction, direction, or orders to Dealership employees, or accessing or attempting to access any financial records of the Dealership.

**IT IS FURTHER ORDERED** that, unless terminated earlier by this Court, this Temporary Restraining Order shall expire at close of business fourteen (14) days from the date of signing, unless within the time limit set out above, the Court extends the effectiveness of this Order in compliance with applicable law or it is extended by agreement of the parties.

**IT IS FURTHER ORDERED** that Defendants shall appear at the _236th_ Judicial District Court of Tarrant County, Texas, Tom Vandergriff Civil Courts Building, 100 North Calhoun Street, Fort Worth, TX 76196 on the _27th_ day of _Mar_, 2025, at _2:00_ p. m. to show cause, if any, why Temporary Injunction should not issue as requested by Plaintiff until final trial of this cause.

App.A 0308

**IT IS FURTHER ORDERED** that this Temporary Restraining Order will not be effective unless and until Plaintiff executes and files with the Court a bond in conformity with the law, or a cash deposit in lieu thereof, in the amount of $ _1,800_ . _⁰⁰_

SIGNED this _13th_ day of _Mar._ , 2025 at _1:07_ _p._ .m.

_R.H. Wallace_
**Sitting by Assignment**

JUDGE PRESIDING

App.A 0309

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rebecca Duckworth on behalf of Derek Rollins
Bar No. 24029803
rduckworth@shackelford.law
Envelope ID: 98662859
Filing Code Description: Amended Filing
Filing Description: Plaintiff's Verified First Amended Petition and Application for Temporary Injunction (Sebastian)
Status as of 3/20/2025 8:15 AM CST

Associated Case Party: MICHAELJEFFREYSEBASTIAN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| E. MichelleBohreer | | michelle@bohreerlaw.com | 3/19/2025 5:43:51 PM | SENT |

Associated Case Party: TIFFANYLYNNSEBASTIAN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Mitch Little | | mitch.little@solidcounsel.com | 3/19/2025 5:43:51 PM | SENT |
| Steven Ovando | | steven.ovando@solidcounsel.com | 3/19/2025 5:43:51 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Derek D.Rollins | | drollins@shackelford.law | 3/19/2025 5:43:51 PM | SENT |
| Timothy DZeiger | | TZeiger@shackelford.law | 3/19/2025 5:43:51 PM | SENT |
| Sharon Taylor | | sharont@bohreerlaw.com | 3/19/2025 5:43:51 PM | SENT |
| Pritesh Soni | | pritesh@bohreerlaw.com | 3/19/2025 5:43:51 PM | SENT |
| E MichelleBohreer | | e-service@bohreerlaw.com | 3/19/2025 5:43:51 PM | SENT |
| John LucasPeterson | | lpeterson@shackelford.law | 3/19/2025 5:43:51 PM | SENT |
| Rebecca DeeDuckworth | | rduckworth@shackelford.law | 3/19/2025 5:43:51 PM | SENT |

App.A 0310

**Elizabeth Swan**

**Attachments:**        Transcript for corporate meeting.pdf

From: **Jeff Sebastian** <jeffsebastian1@gmail.com>
Date: Wed, Mar 12, 2025 at 1:58 PM
Subject: Classic Chevy Hwy 6
To: Ulises Duran <uduran@classicchevysugarland.com>, Ulises Duran <uduran@classicelite.com>, Wife <tiffanysebastian@gmail.com>

Ulises,

I hope you're having a great day. Tiffany and I are currently working at the Highway 6 location.

Effective immediately, as managers (see attachment), Tiffany and I will have the following compensation structure:

- A base salary of $15,000 per month, starting March 12, 2025.
- 2% of the total store gross, beginning with the prior month's gross, paid on April 15, 2025.

We have already scheduled a meeting with Chevrolet and are excited that over the coming days, we will be scheduling multiple meetings with staff, lenders, vendors, and others. In order to proceed as efficiently as possible, we need the following items from you as soon as possible:

1. Access to our emails
2. All daily and monthly financial reports and financial documents for Highway 6
3. Keys for Highway 6
4. Login access to all systems, including CRM, DMS, Vauto, Global Connect, etc. for Highway 6
5. Contact information for PBS
6. current new and used inventory for Highway 6.

There will likely be additional requests, but this will be a good starting point. While I know you may have other things before this request, I would appreciate receiving these reports by 3 today if possible.  Please send them as you run them.

Additionally, we need to schedule a meeting with you as soon as possible. Excited to be working with you again.

Best,

Jeff and TIffany

1

App.B 0001



Transcript of:

# Corporate Meeting

## Taken February 22, 2025

### *Cause No.:*

*Corporate Meeting*

Reported By:  Lorraine Brazil

Job #: 200787

BrazilCo.com

Austin **O** 512.355.6970 | **F** 512.355.6975
Baton Rouge **O** 225.228.1360 | **F** 225.228.1239
Dallas-Fort Worth **O** 214.414.1160 | **F** 214.414.1159

Houston (Fort Bend County) **O** 281.429.8660 | **F** 281.429.8665
Houston (Harris County) **O** 713.496.3344 | **F** 713.496.3341
New Orleans **O** 504.533.8640 | **F** 504.533.8648



App.B 0002

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Special Meeting of Managers

Classic Chevrolet West Houston, LLC

February 22, 2025

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

CERTIFIED COPY

Special Meeting of Managers for Classic Chevrolet West Houston, LLC was held in the above on February 22, 2025, from 10:30 a.m. to 10:52 a.m., before Lorraine Brazil, Texas CSR, Louisiana CCR, RPR, CRR, CBC, RMR, in and for the State of Texas, reported by machine shorthand, at the Law Offices of Richard L. Tate, Attorney At Law, 206 South 2nd Street, Richmond, Texas, pursuant to the Texas Rules of Civil Procedure.

**BRAZILCO**  
LITIGATION SERVICES

BrazilCo - Making Your Case™  
Austin | Baton Rouge | Dallas | Houston | New Orleans

713.496.3344  
schedule@brazilco.com

App.B 0003

A P P E A R A N C E S

For Michael Jeffrey Sebastian:

     Ms. E. Michelle Bohreer
     Bohreer Law Firm, PLLC
     777 Post Oak Road
     Suite 950
     Houston, Texas 77056
     T: 713.446.4958
     F: 713.526.8105
     michelle@bohreerlaw.com
     And
     Mr. Richard L. Tate
     Attorney At Law
     206 South 2nd Street
     Richmond, Texas 77469
     T: 281.341.0077
     rltate@tate-law.com



MR. SEBASTIAN: All right. It is 10:45 a.m. on Saturday, February 22nd, 2025. I will be calling this meeting to order. I am Michael Jeffrey Sebastian, a manager with the owner of 51 percent of the class A interests in Classic Chevrolet West Houston, LLC. I served notice of this special meeting of managers in accordance with Section 3.26 of the company agreement and provided notice to my fellow manager, Thomas R. Durant, via Federal Express on February 18th, 2025.

My counsel, E. Michelle Bohreer, provided notice to Mr. Durant's counsel of record via E-mail on the same day. For the minutes, I am attaching the notice of special meeting along with a copy of the Federal Express label sending the same to Mr. Durant and a copy of the E-mail from my attorney.

I note that Mr. Thomas R. Durant is not present despite the notice.

As provided in the notice, the first matter for consideration is the removal of Thomas R. Durant as a manager of Classic Chevrolet West Houston, LLC as authorized by Section 3.20 of the company agreement.

Is there any discussion?

**BRAZILCO**
LITIGATION SERVICES

BrazilCo - Making Your Case™
Austin | Baton Rouge | Dallas | Houston | New Orleans

713.496.3344
schedule@brazilco.com

App.B 0005

Any discussion?

(None.)

MR. SEBASTIAN:  Hearing none, all in favor say "aye."

MR. SEBASTIAN:  Aye, I vote any 51 percent class A interest in favor of removal.

The second item to be considered is the filling of the vacancy in managers based on Mr. Durant's removal as authorized by Section 3.17 of the company agreement.

Are there any nominations?

Any discussions?

(None.)

MR. SEBASTIAN:  Hearing none, I vote my 51 percent class A interest in favor of Tiffany Sebastian.  Based on the company agreement, Tiffany Sebastian fills the vacancy of Thomas R. Durant as manager.

The third matter to be addressed is removal of Thomas R. Durant as president of Classic Chevrolet West Houston, LLC pursuant to Section 3.22 of the company agreement.

Is there any discussion?

(None.)

MR. SEBASTIAN:  Hearing none, as the

**BRAZILCO**
LITIGATION SERVICES

BrazilCo - Making Your Case™
Austin | Baton Rouge | Dallas | Houston | New Orleans

713.496.3344
schedule@brazilco.com

App.B 0006

sole manager and 51 percent owner of the class A interests in Classic Chevrolet West Houston, I believe it is in the best interests of Classic Chevrolet West Houston for Mr. Durant to be removed as president.

Is there any discussion?

(Discussion off the record.)

MR. SEBASTIAN:  Hearing none, as the sole manager and 51 percent owner of the class A interests in Classic Chevrolet West Houston, I believe it is in the best interests of Classic Chevrolet West Houston for Michael Jeffrey Sebastian to be appointed as president.

I vote to appoint Michael Jeffrey Sebastian as president of Classic Chevrolet West Houston.

All in favor say "aye."

MS. SEBASTIAN:  Aye.

MR. SEBASTIAN:  Aye.

Michael Jeffrey Sebastian is now appointed as president pursuant to the terms of the company agreement.

The fifth item to be considered is the compensation of the managers pursuant to Section 3.10 of the company agreement.

**BRAZILCO**
LITIGATION SERVICES

BrazilCo - Making Your Case™
Austin | Baton Rouge | Dallas | Houston | New Orleans

713.496.3344
schedule@brazilco.com

App.B 0007

Is there any discussion?  Being manager -- being a manager is time consuming.  I think that a $15,000 per month base pay, plus two percent of the total store gross would be appropriate compensation for each manager.  I believe the manager should each receive $15,000 base pay immediately, with payment no later than February 28th, 2025, and be paid two percent of the total store gross for February no later than March 15th, 2025.  The March base pay should be paid no later than March 5th, 2025 with the two percent of the total store gross to be paid by April 15th, 2025.

As a manager and 51 percent owner of the class A interests in Classic Chevrolet West Houston, I believe an appropriate compensation for a manager of Classic Chevrolet West Houston is $15,000 per month salary, plus two percent of the total store gross.

I vote to approve compensation of $15,000 per month base pay, plus two percent of the total store gross for each manager effective immediately.

All in favor say "aye."

MS. SEBASTIAN:  Aye.

MR. SEBASTIAN:  Aye.

**BRAZILCO**
LITIGATION SERVICES

BrazilCo - Making Your Case™
Austin | Baton Rouge | Dallas | Houston | New Orleans

713.496.3344
schedule@brazilco.com

App.B 0008

Based on the notice of special meeting, all the specific items have been addressed. I would like to summarize the action taken at this special meeting. First, Thomas R. Durant has been removed as manager of Classic Chevrolet West Houston, LLC. Second, Tiffany Sebastian is appointed to fill the vacancy caused by the removal of Thomas R. Durant. Third, Thomas R. Durant is removed as president of Classic Chevrolet West Houston. Fourth, Michael Jeffrey Sebastian is appointed as president of Classic Chevrolet West Houston. And, finally, Michael Jeffrey Sebastian and Tiffany Sebastian as managers shall receive compensation of $15,000 per month base pay and two percent of the total store gross with payment due for February to be paid no later than February 28th, 2025 and February percentage of gross by March 15th. March base to be paid by March 5, 2025 and two percent of total store gross by March 15th, 2025, with each month thereafter to follow the same payment schedule.

Based on that, I declare the special meeting adjourned.

* * * * *

**BRAZILCO**
LITIGATION SERVICES

BrazilCo - Making Your Case™
Austin | Baton Rouge | Dallas | Houston | New Orleans

713.496.3344
schedule@brazilco.com

App.B 0009

COUNTY OF HARRIS )

STATE  OF  TEXAS )

REPORTER'S CERTIFICATE

I, LORRAINE BRAZIL, Certified Shorthand Reporter in and for the State of Texas, hereby certify that this transcript is a true record of the testimony given.

I further certify that I am neither attorney nor Counsel for, related to, nor employed by any of the parties to the action in which this testimony was taken. Further, I am not a relative or employee of any attorney of record in this cause, nor do I have a financial interest in the action.

Subscribed and sworn to on this the 24TH day of FEBRUARY, 2025.

LORRAINE BRAZIL, Texas CSR 3119
Louisiana CCR # 2011027
Certified Livenote Reporter
NCRA Certified Realtime Reporter
NCRA Registered Merit Reporter
BrazilCo, Inc.
Expiration Date:  4-30-2026
Firm Registration:  No. 667
9119 Highway 6 South, Suite 230
Missouri City, Texas  77459
Tel: 713.496.3344
Fax: 713.496.3341

**BRAZILCO**
LITIGATION SERVICES

BrazilCo - Making Your Case™
Austin | Baton Rouge | Dallas | Houston | New Orleans

713.496.3344
schedule@brazilco.com

App.B 0010

## $

**$15,000**  6:3,6,16,20 7:13

## 1

**10:45**  3:1
**15th**  6:9,12 7:17,19
**18th**  3:10

## 2

**2025**  3:2,10 6:8,10,11,12 7:16,18,19
**22nd**  3:2
**28th**  6:8 7:16

## 3

**3.10**  5:25
**3.17**  4:9
**3.20**  3:23
**3.22**  4:21
**3.26**  3:7

## 5

**5**  7:18
**51**  3:4 4:5,15 5:1,9 6:13
**5th**  6:11

## A

**a.m.**  3:2
**accordance**  3:7
**action**  7:3
**addressed**  4:19 7:2
**adjourned**  7:22

**agreement**  3:8,24 4:10, 16,22 5:22,25
**appoint**  5:14
**appointed**  5:13,21 7:6, 10
**approve**  6:19
**April**  6:12
**attaching**  3:14
**attorney**  3:17
**authorized**  3:23 4:9
**aye**  4:4,5 5:17,18,19 6:23, 24,25

## B

**base**  6:3,6,10,20 7:14,17
**based**  4:8,16 7:1,21
**Bohreer**  3:11

## C

**calling**  3:3
**caused**  7:7
**Chevrolet**  3:5,22 4:21 5:2,4,10,12,15 6:14,16 7:5, 9,11
**class**  3:5 4:6,15 5:1,9 6:14
**Classic**  3:5,22 4:20 5:2,3, 10,11,15 6:14,16 7:5,9,11
**company**  3:8,24 4:10,16, 22 5:22,25
**compensation**  5:24 6:5, 15,19 7:13
**consideration**  3:21
**considered**  4:7 5:23
**consuming**  6:2
**copy**  3:15,16
**counsel**  3:11,12

## D

**day**  3:13
**declare**  7:21
**discussion**  3:25 4:1,23 5:6,7 6:1
**discussions**  4:12
**due**  7:15
**Durant**  3:9,16,18,22 4:17, 20 5:4 7:4,7,8
**Durant's**  3:12 4:9

## E

**E-MAIL**  3:13,16
**effective**  6:21
**Express**  3:10,15

## F

**favor**  4:4,6,15 5:17 6:23
**February**  3:2,10 6:7,9 7:15,16
**Federal**  3:9,15
**fellow**  3:9
**fill**  7:6
**filling**  4:8
**fills**  4:17
**finally**  7:11
**follow**  7:20
**Fourth**  7:9

## G

**gross**  6:4,9,12,18,21 7:15,17,19

**BRAZILCO**
LITIGATION SERVICES

BrazilCo - Making Your Case™
Austin | Baton Rouge | Dallas | Houston | New Orleans

713.496.3344
schedule@brazilco.com

App.B 0011

## H

**Hearing** 4:3,14,25 5:8

**Houston** 3:6,23 4:21 5:2, 4,10,12,16 6:14,16 7:5,9, 11

## I

**immediately** 6:7,22

**interest** 4:6,15

**interests** 3:5 5:2,3,10,11 6:14

**item** 4:7 5:23

**items** 7:2

## J

**Jeffrey** 3:3 5:12,14,20 7:10,12

## L

**label** 3:15

**LLC** 3:6,23 4:21 7:5

## M

**manager** 3:4,9,22 4:18 5:1,9 6:1,2,5,6,13,15,21 7:5

**managers** 3:7 4:8 5:24 7:13

**March** 6:9,10,11 7:17,18, 19

**matter** 3:21 4:19

**meeting** 3:3,7,14 7:1,4,22

**Michael** 3:3 5:12,14,20 7:9,12

**Michelle** 3:11

**minutes** 3:13

**month** 6:3,17,20 7:14,19

## N

**nominations** 4:11

**note** 3:18

**notice** 3:6,8,12,14,19,20 7:1

## O

**order** 3:3

**owner** 3:4 5:1,9 6:13

## P

**paid** 6:8,10,12 7:15,18

**pay** 6:3,6,10,20 7:14

**payment** 6:7 7:15,20

**percent** 3:4 4:6,15 5:1,9 6:3,8,11,13,17,20 7:14,18

**percentage** 7:17

**present** 3:19

**president** 4:20 5:5,13,15, 21 7:8,10

**provided** 3:8,12,20

**pursuant** 4:21 5:21,24

## R

**receive** 6:6 7:13

**record** 3:12 5:7

**removal** 3:21 4:6,9,20 7:7

**removed** 5:4 7:4,8

## S

**salary** 6:17

**Saturday** 3:2

**schedule** 7:20

**Sebastian** 3:1,4 4:3,5,14, 16,17,25 5:8,12,15,18,19, 20 6:24,25 7:6,10,12

**Section** 3:7,23 4:9,21 5:24

**sending** 3:15

**served** 3:6

**sole** 5:1,9

**special** 3:6,14 7:1,3,21

**specific** 7:2

**store** 6:4,9,12,17,21 7:14, 18

**summarize** 7:3

## T

**terms** 5:21

**Thomas** 3:9,18,21 4:17, 20 7:4,7,8

**Tiffany** 4:15,16 7:6,12

**time** 6:2

**total** 6:4,8,12,17,21 7:14, 18

## V

**vacancy** 4:8,17 7:7

**vote** 4:5,14 5:14 6:19

## W

**West** 3:5,22 4:21 5:2,4,10, 12,15 6:14,16 7:5,9,11

**BRAZILCO**
LITIGATION SERVICES

BrazilCo - Making Your Case™
Austin | Baton Rouge | Dallas | Houston | New Orleans

713.496.3344
schedule@brazilco.com

App.B 0012

CAUSE NO. 236-362746-25 _____

| | | |
|---|---|---|
| CLASSIC CHEVROLET WEST HOUSTON, LLC, | § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | ____ JUDICIAL DISTRICT |
| MICHAEL JEFFREY SEBASTIAN AND TIFFANY SEBASTIAN, | § § § § | |
| Defendants. | § | TARRANT COUNTY, TEXAS |

## TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING

On this day the Court considered the Verified Original Petition and Emergency Application for Temporary Injunction and Permanent Injunction ("Verified Application") of Plaintiff Classic Chevrolet West Houston, LLC ("Plaintiff") against Defendants Michael Jeffrey Sebastian ("Jeff") and Tiffany Lynn Sebastian ("Tiffany") (collectively "Defendants"). After reviewing the Verified Application and the attachments thereto and arguments of counsel, the Court makes the following findings:

1.      The purported actions taken at the February 22, 2025 special meeting were unauthorized under the Company Agreement and are, therefore, null and void.

2.      Defendants are prohibited from attempting to call, or otherwise participate in, any meetings of Plaintiff's members.

3.      Defendants are prohibited from attempting to vote or engage in any managerial function associated with their membership interest(s) in Plaintiff, including without limitation, entering the Dealership, giving instruction, direction, or orders to Dealership employees, or accessing or attempting to access any financial records of the Dealership.

4.      Unless a Temporary Restraining Order is entered immediately enjoining Defendants Michael Jeffrey Sebastian and Tiffany Lynn Sebastian, their agents, servants, employees, and attorneys from the acts described herein, there is imminent danger Plaintiffs will suffer immediate and irreparable harm, loss, and damage in the form of disruption of business operations and financial and reputational harm directly resulting from the acts of Defendant.

App.C 0001

5.    Plaintiffs have no adequate remedy at law, due to the continuing nature of the damages and the extreme difficulty inherent in attempting to quantify the damages in monetary terms.

6.    Plaintiffs are entitled to the issuance of a Temporary Restraining Order to protect and preserve the status quo until a hearing can be held on Plaintiffs' request for a Temporary Injunction. Plaintiffs have demonstrated a likelihood of success on the merits of this case and a balancing of the equities strongly favors an award of injunctive relief.

**IT IS, THEREFORE, ORDERED** that each Defendant, together with his or her respective agents, employees, contractors, representatives, attorneys, and legal representatives, and all others in active concert or participation with each of them, is enjoined from engaging, directly or indirectly, through any person or entity, in any of the following activities:

1.    Effecting or enforcing any of the purported actions taken at the February 22, 2025 special meeting.

2.    Attempting to call, or otherwise participate in, any meetings of Plaintiff's members.

3.    Attempting to vote or engage in any managerial function associated with their membership interest(s) in Plaintiff, including without limitation, entering the Dealership, giving instruction, direction, or orders to Dealership employees, or accessing or attempting to access any financial records of the Dealership.

**IT IS FURTHER ORDERED** that, unless terminated earlier by this Court, this Temporary Restraining Order shall expire at close of business fourteen (14) days from the date of signing, unless within the time limit set out above, the Court extends the effectiveness of this Order in compliance with applicable law or it is extended by agreement of the parties.

**IT IS FURTHER ORDERED** that Defendants shall appear at the _236th_ Judicial District Court of Tarrant County, Texas, Tom Vandergriff Civil Courts Building, 100 North Calhoun Street, Fort Worth, TX 76196 on the _27th_ day of _Mar_, 2025, at _2:00_ p. m. to show cause, if any, why Temporary Injunction should not issue as requested by Plaintiff until final trial of this cause.

App.C 0002

**IT IS FURTHER ORDERED** that this Temporary Restraining Order will not be effective unless and until Plaintiff executes and files with the Court a bond in conformity with the law, or a cash deposit in lieu thereof, in the amount of $ _1,800 .⁰⁰_ .

SIGNED this _13th_ day of _Mar._, 2025 at _1:07_ p.m.

_R.H. Wallace_ **Sitting by Assignment**
JUDGE PRESIDING

App.C 0003

| CLASSIC CHEVROLET WEST HOUSTON, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | 236th JUDICIAL DISTRICT |
| v. | § | |
| | § | |
| MICHAEL JEFFREY SEBASTIAN AND | § | |
| TIFFANY SEBASTIAN, | § | |
| | § | TARRANT COUNTY, TEXAS |
| | § | |
| *Defendant.* | § | |

## DEFENDANTS' JOINT MOTION TO TRANSFER VENUE AND, SUBJECT THERETO, EMERGENCY MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants Michael Jeffrey Sebastian and Tiffany Sebastian ("Defendants") and file this Joint Motion to Transfer Venue and, subject thereto, Emergency Motion to Dissolve Temporary Restraining Order and for Action on Bond. In support, Defendants assert as follows:

## I.
### INTRODUCTION

On Friday, March 13, 2025, Plaintiff misled this Court into granting a Temporary Restraining Order ("TRO") even though Plaintiff knew it should have sought relief in Fort Bend County, Texas—the county of Defendants' domicile and the county of the court with dominant jurisdiction over this matter. The acts for which Plaintiff seeks a permanent injunction and sought a TRO is the subject of a lawsuit in the 387th Judicial District Court of Fort Bend County. On the Friday before the Fort Bend County District Court—i.e., the court of dominant jurisdiction—was to order that a receiver take control over Plaintiff and two other Classic dealerships, Plaintiff and its current counsel obtained a stay of the Fort Bend County case pending an appeal to the 15th Court of Appeals. Now, during the stay requested and obtained by Plaintiff, Plaintiff attempts to

DEFENDANTS' MOTION TO TRANSFER VENUE AND,
SUBJECT THERETO, EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND

App.D 0001

Page | 1

take over this litigation and lead this Court into error. This Court should not allow itself to be used in this way and must dismiss and vacate the TRO entered in error and send the Plaintiff and its alleged need for relief back to the Fort Bend County court, the court of dominant jurisdiction.

## II.
### ARGUMENTS & AUTHORITIES

**A. Venue is not Proper in this Court, and the Court Should Transfer this Case to Fort Bend, County.**

#### 1. Legal Standard

"Generally, the plaintiff chooses the venue of the case, and the plaintiff's choice of venue cannot be disturbed if the suit is initially filed in a county of proper venue." *Sazy v. J.R. Birdwell Constr. and Restoration, L.L.C.*, No. 05–19–01351–CV, 2021 WL 1220122, at *2 (Tex. App.— Dallas Apr. 1, 2021, pet. filed). The defendant may challenge a plaintiff's choice of venue through a motion to transfer venue under Rule 86, which must "state that the action should be transferred to another specified county of proper venue because: (a) The county where the action is pending is not a proper county[.]" TEX. R. CIV. P. 86(3). The motion must also "state the legal and factual basis for the transfer of the action and request transfer of the action to a specific county of mandatory or proper venue." *Id*. Verification of the Motion is not required, though it may include supporting affidavits. *Id*. Rule 87 mandates that "[t]he determination of a motion to transfer venue shall be made promptly by the court[.]" TEX. R. CIV. P. 87.1. "Except on leave of court each party is entitled to at least 45–days' notice of a hearing on the motion to transfer," and any response to the motion or opposing affidavits must be filed "at least 30 days prior to the hearing[.]" *Id*.

As the parties seeking to maintain venue in Collin County under Section 15.002 (the general venue statute), Plaintiffs have the initial burden to establish prima facie proof that venue is maintainable in this county. TEX. R. CIV. P. 87.2(a); *Ford Motor Co. v. Johnson*, 473 S.W.3d

DEFENDANTS' MOTION TO TRANSFER VENUE AND,
SUBJECT THERETO, EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND

App.D 0002

Page | 2

925, 928 (Tex. App.—Dallas 2015, pet. denied) ("Once the defendant specifically challenges the plaintiff's choice of venue, the plaintiff has the burden to present prima facie proof that venue is proper in the county of suit."). Plaintiffs' prima facie burden is satisfied by properly pleading venue facts and supporting them (to the extent they are specifically denied by Defendants) with affidavits and other "duly proved attachments" that fully and specifically set forth the facts to support any venue allegations. *Sazy*, 2021 WL 1220122, at \*3 (citing *Ford Motor Co.*, 473 S.W.3d at 928 and TEX. R. CIV. P. 87.3(a)).

### 2. The Mandatory Venue Provision Outlined in Section 65.023 of the Texas Civil Practice and Remedies Code Lead to Fort Bend County.

The mandatory venue provision for suits seeking injunctive relief applies here. *See* TEX. CIV. PRAC. & REM. CODE §§ 15.016, 65.023. This statute applies "only to suits in which the relief sought is purely ***or primarily injunctive***." *In re Cont'l Airlines, Inc*., 988 S.W.2d 733, 736 (Tex. 1998) (orig. proceeding) (emphasis added). More precisely, the mandatory venue provision applies when, as here, "the petition discloses that the issuance of a perpetual injunction is the primary and principal relief sought [.]" *Brown v. Gulf Television Co*., 157 Tex. 607, 306 S.W.2d 706, 708 (1957). In this context, "primary," of course, "means first in order of rank or importance." *In re Fox River Real Est. Holdings, Inc*., 596 S.W.3d 759, 765 (Tex. 2020) (orig. proceeding).

Section 65.023(a) accordingly does not apply if the requested injunctive relief is merely ancillary to other relief sought or is not the dominant purpose or central focus of the lawsuit. *Id*. (recognizing the legislature "did not intend for the tail to wag the dog"). It stands to reason that the "true nature of the lawsuit turns on the facts alleged in the petition, the rights asserted, and the relief sought." *Airvantage, LLC v. TBAN Properties #£1, L.T.D*., 269 S.W.3d 254, 258 (Tex. App.—Dallas 2008, no pet.).

DEFENDANTS' MOTION TO TRANSFER VENUE AND,
SUBJECT THERETO, EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND

App.D 0003
Page | 3

Plaintiff's request for a temporary injunction and permanent injunction are "primarily injunctive." When a plaintiff alleges it has no adequate remedy at law—and thus purports it is entitled to injunctive relief—equitable relief is the primary remedy sought, and venue is controlled by the injunction statute. *Brown*, 157 Tex. 607, 306 S.W.2d at 709. The bottom line: the primary purpose of Plaintiff's Original Petition is injunctive, where it advances the pervading theme that it has no adequate remedy at law.

Subject to an exception not at issue here, section 65.023(a) provides that venue in the defendant's county of domicile is mandatory in an injunction suit: "[A] writ of injunction against a party who is a resident of this state shall be tried in a district or county court in the county in which the party is domiciled." As the Texas Supreme Court has acknowledged, the "statute placing venue for injunction suits in the county of the defendant's domicile is mandatory." *In re Continental Airlines, Inc.*, 988 S.W.2d 733, 736 (Tex. 1998) (orig. proceeding).

Here, Tarrant County is not the County where Defendants are domiciled: they are domiciled in Fort Bend County, Texas. Simply put, the mandatory venue provision outlined in section 65.023 in Texas Civil Practice and Remedies Code applies here, and thus venue is proper in Fort Bend County, Texas.

Indeed, under no circumstance is Tarrant County District Court the proper court to determine the claims raised by the Plaintiff herein. As stated above, the Texas Civil Practice and Remedies Code establishes the mandatory venue for a request for an injunction such as the one brought by Plaintiff. In certain circumstances, this section has been found to be jurisdictional, with courts finding that a court in a county other than the county in which prior actions occurred lacked jurisdiction. *McVeigh v. Lerner*, 849 S.W.2d 911, 914 (Tex .App.—Houston [1st Dist.] 1993, writ denied). *Butron v. Cantu*, 960 S.W.2d 91, 94-95 (Tex. App.—Corpus Christi 1997, no

DEFENDANTS' MOTION TO TRANSFER VENUE AND,
SUBJECT THERETO, EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND

App.D 0004
Page | 4

writ). The Texas Supreme Court has instructed that no court other than one in a county that is the county of domicile of at least one defendant should issue an injunction over such defendant(s). *See* TEX. CIV. PRAC. & REM. CODE §§ 15.016, 65.023. *In re Cont'l Airlines, Inc.*, 988 S.W.2d 733, 736 (Tex. 1998) (orig. proceeding).

Here, Tarrant County is not the county where either of the Defendants are domiciled. The Defendants are domiciled in Fort Bend County, Texas and Harris County, Texas, a fact well known to Plaintiff. Simply put, jurisdiction and the mandatory venue provision outlined in section 65.023 in Texas Civil Practice and Remedies Code compel this Court to transfer this case to Fort Bend County, Texas and dismiss and vacate its TRO.

### B. The Court Should Refuse to Exercise Jurisdiction in Deference to the Court of Dominant Jurisdiction.

Contrary to Plaintiff's argument at the March 13, 2025 Temporary Restraining Order hearing, while this Court may have inferior jurisdiction, the 387th District Court in Fort Bend County is the court of dominant jurisdiction. In instances where inherently interrelated suits are pending in two counties, the court in which suit was first filed acquires dominant jurisdiction. *In re J.B. Hunt Transport, Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding); *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005); *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988) (overruled in part on other grounds by J.B. Hunt, 492 S.W.3d at 292 (modifying Wyatt's statement of the compulsory-counterclaim rule)).

Under these circumstances, the general rule is that the court in the second action (here, this Court) must abate the suit. *J.B. Hunt*, 492 S.W.3d at 294; *Wyatt*, 760 S.W.2d at 247. "This first-filed rule flows from 'principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues.'" *J.B. Hunt*, 492 S.W.3d at 294 (quoting *Wyatt*, 760 S.W.2d at 248).

DEFENDANTS' MOTION TO TRANSFER VENUE AND,
SUBJECT THERETO, EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND

App.D 0005
Page | 5

Even more significant, though, a court must have jurisdiction to enter a temporary restraining order. *See, e.g., Shor v. Pelican Oil & Gas Mgmt., LLC*, 405 S.W.3d 737, 743 (Tex. App.—Houston [1st Dist.] 2013, no pet.). And when a court issues an "order which actively interferes with the exercise of jurisdiction" by a court possessing dominant jurisdiction, the court commits error and mandamus relief is appropriate. *Perry v. Del Rio*, 66 S.W.3d 239, 258 (Tex. 2001) (granting mandamus relief to direct a district court to move a trial setting so that another court that already exercised jurisdiction over different cases involving nearly identical issues, parties, and witnesses could first consider those cases). The Defendants file this emergency motion to ask this Court to dismiss and vacate the TRO that Plaintiff wrongly caused this Court to grant solely for the purpose of venue shopping.

Here, the Fort Bend County case is deeply intertwined with this case, since it involves the same parties, claims and subject matter; thus, the Fort Bend County court is the court of dominant jurisdiction. As illustrated in Exhibit 5 of Plaintiff's Original Petition, the First Amended Third-Party Petition deals with the same parties and the same subject matter. In fact, the Third Party-Petition requests **precisely the same declaratory relief** requested here. Thus, the Fort Bend County court, where Michael Jeffrey Sebastian and Tiffany Lynn Sebastian individually and on behalf of The Classic Dealerships (which includes Plaintiff) request the same declaratory relief sought here, has, without question, dominant jurisdiction over this matter—meaning, this Court has **no** jurisdiction, let alone jurisdiction to enter a Temporary Restraining Order. In fact, the Defendants herein sought a Temporary Restraining Order and Temporary Injunction in the 387th District Court related to the control of Plaintiff and two other Classic Dealerships. The Temporary Injunction hearing was set for February 24, 2025. On February 21, 2025, Plaintiff herein sought to stay the Fort Bend County case pending appeal of an issue heard by the business court. The

DEFENDANTS' MOTION TO TRANSFER VENUE AND,
SUBJECT THERETO, EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND

App.D 0006
Page | 6

Fort Bend County Court issued a TRO on February 21, 2024, but vacated the same because of the appellate court's stay. Bringing this action in Tarrant County is sheer gamesmanship and blatant venue shopping, something Section 65.023 of the Texas Civil Practice and Remedies Code prevents. The Court of dominant jurisdiction did address the issue of control of the Plaintiff on an emergency basis and was prepared for a full hearing on February 24, 2025. Plaintiff's actions alone caused the cancellation of this hearing. This Court should not allow its jurisdiction to be misused to gain an advantage in an already pending case.

**C. The Court Should Dissolve the Temporary Restraining Order and Grant Defendants Relief Upon the Bond.**

Because the Fort Bend County Court clearly has dominant jurisdiction over this case, the parties, and issues presented before it in Plaintiff's Original Petition, the Court should defer to the court of dominant jurisdiction and dissolve the March 13, 2025 Temporary Restraining Order. Pursuant to Rule 680 of the Texas Rules of Civil Procedure, "On two days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice tot hat party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require." At this Court's invitation, Defendants have filed this motion to dissolve the temporary restraining order on jurisdictional grounds. Pursuant to Rule 684 of the Texas Rules of Civil Procedure, Defendants request action upon Plaintiff's bond in the amount of money and costs incurred in obtaining dissolution of the Temporary Restraining Order.

**III.**
**CONCLUSION & PRAYER**

Based on Texas Civil Practice and Remedies Code section 65.023 and the dominant jurisdiction of the 387th District Court in Fort Bend County, this Court should transfer this matter

DEFENDANTS' MOTION TO TRANSFER VENUE AND,
SUBJECT THERETO, EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND

App.D 0007
Page | 7

to Fort Bend, County Texas, dissolve the Temporary Restraining Order signed on March 13, 2024, and advise Plaintiff in no uncertain terms that this Court will not be used as part of an effort by the Plaintiff to circumvent the court of dominant jurisdiction and the prior litigation filed by Defendants.

For these reasons, Defendants Michael Jeffrey Sebastian and Tiffany Sebastian request that the Court grant their Motion to Transfer Venue and, subject thereto, and Emergency Motion to Dissolve Temporary Restraining Order and for Action on Bond, transfer this case to Fort Bend County, Texas, dissolve the Temporary Restraining Order, grant them relief upon the bond, and grant them any other relief to which they are justly entitled.

**DEFENDANTS' MOTION TO TRANSFER VENUE AND,**
**SUBJECT THERETO, EMERGENCY MOTION TO DISSOLVE**
**TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND**

App.D 0008

**Page | 8**

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**


By: */s/ J. Mitchell Little*
    J. Mitchell Little
    State Bar No. 24043788
mitch.little@solidcounsel.com
Steven Ovando
State Bar No. 24128862
steven.ovando@solidcounsel.com

2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100 Telephone
(214) 472-2150 Telecopier

**ATTORNEYS FOR DEFENDANT
TIFFANY SEBASTIAN**


**BOHREER LAW FIRM PLLC**

E. Michelle Bohreer
State Bar No. 06717100
Pritesh Soni
State Bar No. 24063926
777 Post Oak Blvd., Suite 950
Houston, Texas 77056
Telephone: (832) 856-3006
Facsimile: (832) 856-2891
Emails: michelle@bohreerlaw.com
        pritesh@bohreerlaw.com
E-service: e-service@bohreerlaw.com

**ATTORNEYS FOR DEFENDANT
MICHAEL JEFFREY SEBASTIAN**

**DEFENDANTS' MOTION TO TRANSFER VENUE AND,
SUBJECT THERETO, EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND**

App.D 0009
**Page | 9**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 17, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record via electronic service.

/s/ Steven Ovando
Steven Ovando

**DEFENDANTS' MOTION TO TRANSFER VENUE AND,**
**SUBJECT THERETO, EMERGENCY MOTION TO DISSOLVE**
**TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND**

App.D 0010
**Page | 10**

FILED
TARRANT COUNTY
3/20/2025 8:55 AM
THOMAS A. WILDER
DISTRICT CLERK

**CAUSE NO. 236-362746-25**

| | | |
|---|---|---|
| **CLASSIC CHEVROLET WEST HOUSTON, LLC,** | § § § | **IN THE DISTRICT COURT** |
| *Plaintiff,* | § § | |
| | § | **236th JUDICIAL DISTRICT** |
| **v.** | § § | |
| | § | |
| **MICHAEL JEFFREY SEBASTIAN AND TIFFANY SEBASTIAN,** | § § | **TARRANT COUNTY, TEXAS** |
| | § § | |
| *Defendant.* | | |

**DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND, AND MOTION FOR TEMPORARY STAY**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Defendants Michael Jeffrey Sebastian and Tiffany Sebastian ("Defendants") and file this Supplemental Emergency Motion to Dissolve Temporary Restraining Order and for Action on Bond, and Motion for Temporary Stay, which was filed after Defendants filed their Motion to Transfer Venue in accordance with the due order of pleading. In support, Defendants assert as follows:

**I.**
**INTRODUCTION**

The Plaintiff knowingly used this Court as a pawn in its dilatory tactics aimed at causing Defendants to spend money after the Plaintiff and its cohorts wrongfully deprived Defendants of pay and distributions related to the Defendants' ownership interest in Plaintiff and other Classic dealerships. On Friday, March 13, 2025, Plaintiff misled this Court into granting a Temporary Restraining Order ("TRO") even though Plaintiff knew it should have sought relief in Fort Bend County, Texas—the county of Defendants' domicile and the county of the court with dominant jurisdiction over this matter. The acts for which Plaintiff seeks a permanent injunction and sought

**DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND, AND MOTION FOR STAY**

App.E 0001

Page | 1

a TRO is the subject of a lawsuit in the 387th Judicial District Court of Fort Bend County. On the Friday before the Fort Bend County District Court—i.e., the court of dominant jurisdiction—was to order that a receiver take control over Plaintiff and two other Classic dealerships (a TRO had actually been entered which the trial court vacated out of deference to the 15h Court of Appeals, , Plaintiff and its current counsel obtained a stay of the Fort Bend County case pending an appeal to the 15th Court of Appeals. Now, during the stay requested and obtained by Plaintiff, Plaintiff attempts to take over this litigation and lead this Court into error. This Court should not allow itself to be used in this way and must dismiss and vacate the TRO entered in error and send the Plaintiff and its alleged need for relief back to the Fort Bend County court, the court of dominant jurisdiction.[1]

On March 19, 2025, Plaintiff amended its Original Petition and Application for Temporary Injunction, attempting to recast its claims into a pleading that does not primarily seek injunctive relief in light of its declaratory judgment claim. But that attempt failed. Indeed, Texas courts have repeatedly held that the dominant purpose of the suit can be injunctive even when there is a request for declaratory relief. *See, e.g., Billings v. Concordia Heritage Ass'n.*, 960 S.W.2d 688, 693 (Tex. App.—El Paso 1997, writ denied); *KJ Eastwood Invs., Inc. v. Enlow*, 923 S.W.2d 255, 257–58 (Tex. App.—Fort Worth 1996, orig. proceeding); *Michalski v. Mutual Bldg. & Loan Ass'n*, 449 S.W.2d 834, 836 (Tex. App.—Fort Worth 1970, no writ); *Guion v. Gibson*, 439 S.W.2d 715, 715, 717 (Tex. App.—Houston [14th Dist.] 1969, no writ). This principle applies with even greater force when,, as here, the

---

[1] On Tuesday, March 18, 2025, because of Plaintiff's gamesmanship and inconsistent positions regarding the need for all matters between the parties to be addresses solely by the Business Court, the Sebastians filed an emergency motion to lift the stay previously granted by the 15th Court of Appeals. The 15th Court of Appeals has ordered a response be filed by noon on Friday, March 21.

DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND,
AND MOTION FOR STAY

App.E 0002

Page | 2

declaratory action seeks to determine the rights and obligations of all interest holders. *See e.g., In Re FPWP CP LLC*, (citing No. 05-16-01145-CV, 2017 WL 461355, at *1 (Tex. App.—Dallas Jan. 25, 2017, no pet.) (mem. op.)). In such cases, the pleading is still considered principally injunctive as it was in *FPWP CP LLC*. *Id*.

## II.
### ARGUMENTS & AUTHORITIES

**A. Venue is not Proper in this Court, and the Court Should Transfer this Case to Fort Bend, County.**

### 1. Legal Standard

"Generally, the plaintiff chooses the venue of the case, and the plaintiff's choice of venue cannot be disturbed if the suit is initially filed in a county of proper venue." *Sazy v. J.R. Birdwell Constr. and Restoration, L.L.C.*, No. 05–19–01351–CV, 2021 WL 1220122, at *2 (Tex. App.—Dallas Apr. 1, 2021, pet. filed). The defendant may challenge a plaintiff's choice of venue through a motion to transfer venue under Rule 86, which must "state that the action should be transferred to another specified county of proper venue because: (a) The county where the action is pending is not a proper county[.]" TEX. R. CIV. P. 86(3). The motion must also "state the legal and factual basis for the transfer of the action and request transfer of the action to a specific county of mandatory or proper venue." *Id*. Verification of the Motion is not required, though it may include supporting affidavits. *Id*. Rule 87 mandates that "[t]he determination of a motion to transfer venue shall be made promptly by the court[.]" TEX. R. CIV. P. 87.1. "Except on leave of court each party is entitled to at least 45–days' notice of a hearing on the motion to transfer," and any response to the motion or opposing affidavits must be filed "at least 30 days prior to the hearing[.]" *Id*.

As the parties seeking to maintain venue in Collin County under Section 15.002 (the general venue statute), Plaintiffs have the initial burden to establish prima facie proof that venue

DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND,
AND MOTION FOR STAY

App.E 0003

Page | 3

is maintainable in this county. TEX. R. CIV. P. 87.2(a); *Ford Motor Co. v. Johnson*, 473 S.W.3d 925, 928 (Tex. App.—Dallas 2015, pet. denied) ("Once the defendant specifically challenges the plaintiff's choice of venue, the plaintiff has the burden to present prima facie proof that venue is proper in the county of suit."). Plaintiffs' prima facie burden is satisfied by properly pleading venue facts and supporting them (to the extent they are specifically denied by Defendants) with affidavits and other "duly proved attachments" that fully and specifically set forth the facts to support any venue allegations. *Sazy*, 2021 WL 1220122, at *3 (citing *Ford Motor Co.*, 473 S.W.3d at 928 and TEX. R. CIV. P. 87.3(a)).

### 2. The Mandatory Venue Provision Outlined in Section 65.023 of the Texas Civil Practice and Remedies Code Lead to Fort Bend County.

The mandatory venue provision for suits seeking injunctive relief applies here. *See* TEX. CIV. PRAC. & REM. CODE §§ 15.016, 65.023. This statute applies "only to suits in which the relief sought is purely ***or primarily injunctive***." *In re Cont'l Airlines, Inc.*, 988 S.W.2d 733, 736 (Tex. 1998) (orig. proceeding) (emphasis added). More precisely, the mandatory venue provision applies when, as here, "the petition discloses that the issuance of a perpetual injunction is the primary and principal relief sought [.]" *Brown v. Gulf Television Co.*, 157 Tex. 607, 306 S.W.2d 706, 708 (1957). In this context, "primary," of course, "means first in order of rank or importance." *In re Fox River Real Est. Holdings, Inc.*, 596 S.W.3d 759, 765 (Tex. 2020) (orig. proceeding).

Section 65.023(a) accordingly does not apply if the requested injunctive relief is merely ancillary to other relief sought or is not the dominant purpose or central focus of the lawsuit. *Id.* (recognizing the legislature "did not intend for the tail to wag the dog"). It stands to reason that the "true nature of the lawsuit turns on the facts alleged in the petition, the rights asserted, and the

DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND,
AND MOTION FOR STAY

App.E 0004
Page | 4

relief sought." *Airvantage, LLC v. TBAN Properties #£1, L.T.D.*, 269 S.W.3d 254, 258 (Tex. App.—Dallas 2008, no pet.).

Plaintiff's request for a temporary injunction and permanent injunction are "primarily injunctive." When a plaintiff alleges it has no adequate remedy at law—and thus purports it is entitled to injunctive relief—equitable relief is the primary remedy sought, and venue is controlled by the injunction statute. *Brown*, 157 Tex. 607, 306 S.W.2d at 709. The bottom line: the primary purpose of Plaintiff's Original Petition is injunctive, where it advances the pervading theme that it has no adequate remedy at law.

Subject to an exception not at issue here, section 65.023(a) provides that venue in the defendant's county of domicile is mandatory in an injunction suit: "[A] writ of injunction against a party who is a resident of this state shall be tried in a district or county court in the county in which the party is domiciled." As the Texas Supreme Court has acknowledged, the "statute placing venue for injunction suits in the county of the defendant's domicile is mandatory." *In re Continental Airlines, Inc.*, 988 S.W.2d 733, 736 (Tex. 1998) (orig. proceeding).

Here, Tarrant County is not the County where Defendants are domiciled: they are domiciled in Fort Bend County, Texas. Simply put, the mandatory venue provision outlined in section 65.023 in Texas Civil Practice and Remedies Code applies here, and thus venue is proper in Fort Bend County, Texas.

Indeed, under no circumstance is Tarrant County District Court the proper court to determine the claims raised by the Plaintiff herein. As stated above, the Texas Civil Practice and Remedies Code establishes the mandatory venue for a request for an injunction such as the one brought by Plaintiff. In certain circumstances, this section has been found to be jurisdictional, with courts finding that a court in a county other than the county in which prior actions occurred

DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND,
AND MOTION FOR STAY

App.E 0005

Page | 5

lacked jurisdiction. *McVeigh v. Lerner*, 849 S.W.2d 911, 914 (Tex .App.—Houston [1st Dist.] 1993, writ denied).  *Butron v. Cantu*, 960 S.W.2d 91, 94-95 (Tex. App.—Corpus Christi 1997, no writ).  The Texas Supreme Court has instructed that no court other than one in a county that is the county of domicile of at least one defendant should issue an injunction over such defendant(s). *See* TEX. CIV. PRAC. & REM. CODE §§ 15.016, 65.023. *In re Cont'l Airlines, Inc.*, 988 S.W.2d 733, 736 (Tex. 1998) (orig. proceeding).

Here, Tarrant County is not the county where either of the Defendants are domiciled. The Defendants are domiciled in Fort Bend County, Texas and Harris County, Texas, a fact well known to Plaintiff. Simply put, jurisdiction and the mandatory venue provision outlined in section 65.023 in Texas Civil Practice and Remedies Code compel this Court to transfer this case to Fort Bend County, Texas and dismiss and vacate its TRO.

**B.  The Court Should Refuse to Exercise Jurisdiction in Deference to the Court of Dominant Jurisdiction.**

Contrary to Plaintiff's argument at the March 13, 2025 Temporary Restraining Order hearing, while this Court may have inferior jurisdiction, the 387th District Court in Fort Bend County is the court of dominant jurisdiction.   In instances where inherently interrelated suits are pending in two counties, the court in which suit was first filed acquires dominant jurisdiction. *In re J.B. Hunt Transport, Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding); *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005); *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988) (overruled in part on other grounds by J.B. Hunt, 492 S.W.3d at 292 (modifying Wyatt's statement of the compulsory-counterclaim rule)).

Under these circumstances, the general rule is that the court in the second action (here, this Court) must abate the suit. *J.B. Hunt*, 492 S.W.3d at 294; *Wyatt*, 760 S.W.2d at 247. "This first-

filed rule flows from 'principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues.'" *J.B. Hunt*, 492 S.W.3d at 294 (quoting *Wyatt*, 760 S.W.2d at 248).

Even more significant, though, a court must have jurisdiction to enter a temporary restraining order. *See, e.g., Shor v. Pelican Oil & Gas Mgmt., LLC*, 405 S.W.3d 737, 743 (Tex. App.—Houston [1st Dist.] 2013, no pet.). And when a court issues an "order which actively interferes with the exercise of jurisdiction" by a court possessing dominant jurisdiction, the court commits error and mandamus relief is appropriate. *Perry v. Del Rio*, 66 S.W.3d 239, 258 (Tex. 2001) (granting mandamus relief to direct a district court to move a trial setting so that another court that already exercised jurisdiction over different cases involving nearly identical issues, parties, and witnesses could first consider those cases). The Defendants file this emergency motion to ask this Court to dismiss and vacate the TRO that Plaintiff wrongly caused this Court to grant solely for the purpose of venue shopping.

Here, the Fort Bend County case is deeply intertwined with this case, since it involves the same parties, claims and subject matter; thus, the Fort Bend County court is the court of dominant jurisdiction. As illustrated in Exhibit 5 of Plaintiff's Original Petition, the First Amended Third-Party Petition deals with the same parties and the same subject matter. In fact, the Third Party-Petition requests **precisely the same declaratory relief** requested here. Thus, the Fort Bend County court, where Michael Jeffrey Sebastian and Tiffany Lynn Sebastian individually and on behalf of The Classic Dealerships (which includes Plaintiff) request the same declaratory relief sought here, has, without question, dominant jurisdiction over this matter—meaning, this Court has **no** jurisdiction, let alone jurisdiction to enter a Temporary Restraining Order. In fact, the Defendants herein sought a Temporary Restraining Order and Temporary Injunction in the 387th District Court related to the control of Plaintiff and two other Classic Dealerships. The Temporary

DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND,
AND MOTION FOR STAY

App.E 0007
Page | 7

Injunction hearing was set for February 24, 2025. On February 21, 2025, Plaintiff herein sought to stay the Fort Bend County case pending appeal of an issue heard by the business court. The Fort Bend County Court issued a TRO on February 21, 2024, but vacated the same because of the appellate court's stay. Bringing this action in Tarrant County is sheer gamesmanship and blatant venue shopping, something Section 65.023 of the Texas Civil Practice and Remedies Code prevents. The Court of dominant jurisdiction did address the issue of control of the Plaintiff on an emergency basis and was prepared for a full hearing on February 24, 2025. Plaintiff's actions alone caused the cancellation of this hearing. This Court should not allow its jurisdiction to be misused to gain an advantage in an already pending case.

## C. The Court Should Dissolve the Temporary Restraining Order and Grant Defendants Relief Upon the Bond.

Because the Fort Bend County Court clearly has dominant jurisdiction over this case, the parties, and issues presented before it in Plaintiff's Original Petition, the Court should defer to the court of dominant jurisdiction and dissolve the March 13, 2025 Temporary Restraining Order. Pursuant to Rule 680 of the Texas Rules of Civil Procedure, "On two days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice tot hat party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require." At this Court's invitation, Defendants have filed this motion to dissolve the temporary restraining order on jurisdictional grounds. Pursuant to Rule 684 of the Texas Rules of Civil Procedure, Defendants request action upon Plaintiff's bond in the amount of money and costs incurred in obtaining dissolution of the Temporary Restraining Order.

## D. The Court should Grant a Stay Over This Matter.

DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND,
AND MOTION FOR STAY

App.E 0008
Page | 8

Defendants, individually and on behalf of Plaintiff and two other Classic dealerships, sued several entities and individuals ("Fort Bend Defendants") in their divorce proceeding in 387th Judicial District Court of Fort Bend County, Texas (the" 387th Case" or "Fort Bend Case") after the Fort Bend Defendants improperly ousted Defendants and took control of the businesses related to various car dealerships. The Fort Bend Defendants immediately removed the claims brought against them in the Fort Bend Case to the business court claiming that the dispute between the parties belonged in the newly created Business Court even though it was not removable by statute. After considering the parties' motions and arguments, the Honorable Stacy Rogers Sharp granted the remand back to the Fort Bend District Court. The Fort Bend Defendants then filed a mandamus and sought an emergency stay of the Fort Bend Case. The Fort Bend Court granted a Temporary stay on February 21, 2025.

Contradicting their own arguments that the Business Court has jurisdiction over the parties' disputes to obtain a stay against Defendant's attempt to obtain injunctive relief, the Fort Bend Defendants then filed this lawsuit in the Tarrant County District Court on March 13, 2025, and obtaining their own injunctive relief barring Defendants from participating in their own business, after the Fort Bend Defendants deprived Defendants from obtaining relief that included the appointment of a receiver over the Plaintiff and the other Classic Dealerships. .

While the dispute between Defendants and the Fort Bend Defendants remains waiting for decisions of the 15th Court of Appeals, this Court should refrain from taking any action.

As set forth above, the Plaintiff knowingly filed in the wrong court, a court of inferior jurisdiction to Fort Bend County and a court that does not include a county of domicile of either of the Sebastians. This Court should dissolve the TRO and grant a stay of these proceedings until the appellate court has made such determination.

DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND,
AND MOTION FOR STAY

App.E 0009

Page | 9

### III.
### CONCLUSION & PRAYER

Based on Texas Civil Practice and Remedies Code section 65.023 and the dominant jurisdiction of the 387th District Court in Fort Bend County, this Court should transfer this matter to Fort Bend, County Texas, dissolve the Temporary Restraining Order signed on March 13, 2024, and advise Plaintiff in no uncertain terms that this Court will not be used as part of an effort by the Plaintiff to circumvent the court of dominant jurisdiction and the prior litigation filed by Defendants. Alternatively, the Court should stay these proceedings in light of the emergency motion before the appellate court.

For these reasons, Defendants Michael Jeffrey Sebastian and Tiffany Sebastian request that the Court grant their Emergency Motion to Dissolve Temporary Restraining Order and for Action on Bond, and stay this proceeding pending the actions of the 15th Court of Appeals and thereafter a hearing on the Sebastians' Motion to Transfer Venue, unless this Court sue sponte transfers this case to Fort Bend County, Texas, dissolve the Temporary Restraining Order, grant them relief upon the bond, and grant them any other relief to which they are justly entitled.

**DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE**
**TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND,**
**AND MOTION FOR STAY**

App.E 0010

**Page | 10**

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**


By: */s/ J. Mitchell Little*
    J. Mitchell Little
    State Bar No. 24043788
mitch.little@solidcounsel.com
Steven Ovando
State Bar No. 24128862
steven.ovando@solidcounsel.com

2600 Network Blvd., Suite 400
Frisco, Texas 75034
(214) 472-2100 Telephone
(214) 472-2150 Telecopier

**ATTORNEYS FOR DEFENDANT
TIFFANY SEBASTIAN**


**BOHREER LAW FIRM PLLC**

E. Michelle Bohreer
State Bar No. 06717100
Pritesh Soni
State Bar No. 24063926
777 Post Oak Blvd., Suite 950
Houston, Texas 77056
Telephone: (832) 856-3006
Facsimile: (832) 856-2891
Emails: michelle@bohreerlaw.com
       pritesh@bohreerlaw.com
E-service:  e-service@bohreerlaw.com

**ATTORNEYS FOR DEFENDANT
MICHAEL JEFFREY SEBASTIAN**

**DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE
TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND,
AND MOTION FOR STAY**

App.E 0011
**Page | 11**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 20, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record via electronic service.

/s/ Steven Ovando
Steven Ovando

**DEFENDANTS' SUPPLEMENTAL EMERGENCY MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND FOR ACTION ON BOND, AND MOTION FOR STAY**

App.E 0012
**Page | 12**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jeri Hamman on behalf of Mitch Little
Bar No. 24043788
jeri.hamman@solidcounsel.com
Envelope ID: 98672776
Filing Code Description: Motion (No Fee)
Filing Description: Defendants' Supplemental Emergency Motion to Dissolve Temporary Restraining Order and for Action on Bond, and Motion for Temporary Stay
Status as of 3/20/2025 9:59 AM CST

Associated Case Party: MICHAELJEFFREYSEBASTIAN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| E. MichelleBohreer | | michelle@bohreerlaw.com | 3/20/2025 8:55:31 AM | SENT |

Associated Case Party: TIFFANYLYNNSEBASTIAN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Mitch Little | | mitch.little@solidcounsel.com | 3/20/2025 8:55:31 AM | SENT |
| Steven Ovando | | steven.ovando@solidcounsel.com | 3/20/2025 8:55:31 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Derek D.Rollins | | drollins@shackelford.law | 3/20/2025 8:55:31 AM | SENT |
| Timothy DZeiger | | TZeiger@shackelford.law | 3/20/2025 8:55:31 AM | SENT |
| Sharon Taylor | | sharont@bohreerlaw.com | 3/20/2025 8:55:31 AM | SENT |
| Pritesh Soni | | pritesh@bohreerlaw.com | 3/20/2025 8:55:31 AM | SENT |
| E MichelleBohreer | | e-service@bohreerlaw.com | 3/20/2025 8:55:31 AM | SENT |
| John LucasPeterson | | lpeterson@shackelford.law | 3/20/2025 8:55:31 AM | SENT |
| Rebecca DeeDuckworth | | rduckworth@shackelford.law | 3/20/2025 8:55:31 AM | SENT |

App.E 0013

236-362746-25

CAUSE NO. 236-362746-25

| | | |
|---|---|---|
| CLASSIC CHEVROLET WEST HOUSTON, LLC, | § § § | IN THE DISTRICT COURT |
| *Plaintiff*, | § § § | |
| v. | § § | 236th JUDICIAL DISTRICT |
| MICHAEL JEFFREY SEBASTIAN AND TIFFANY SEBASTIAN, | § § § § | |
| *Defendants*. | § § | TARRANT COUNTY, TEXAS |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION TO TRANSFER VENUE AND TO DISSOLVE TEMPORARY RESTRAINING ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Classic Chevrolet West Houston, LLC ("Plaintiff") files its Response to Defendants' Motion to Transfer Venue and, Subject Thereto, Emergency Motion to Dissolve Temporary Restraining Order and For Action on Bond ("the Motion"), and would respectfully show the Court the following:

### SUMMARY

1. On March 13, 2025, this Court signed a Temporary Restraining Order (the "TRO") that temporarily preserves the *status quo ante* of the operation of Plaintiff's motor vehicle dealership (the "Dealership") – its peaceable operation free from Defendants' interference. On March 17, 2025, Defendants jointly filed their "Emergency" Motion, which does not explain why the TRO's preservation of the *status quo* represents any emergency, but which (1) asserts that the court with dominant jurisdiction is the 387th District Court in Fort Bend County, Texas (the "387th District Court"),[1] and (2) seeks to dissolve the TRO as a result.

---

[1] The Fort Bend case, which as discussed in Plaintiff's petition is currently stayed by order of the Fifteenth Court of Appeals, has a cause number of 24-DCV-318087 ("the **Fort Bend Action**").

<span style="color:red">App.F 0001</span>

2.     Initially, section 65.023 of the Texas Civil Practice and Remedies Code, cited by Defendants as conferring mandatory venue over this case to the 387th District Court, does not apply here because the relief sought by Plaintiff is not primarily injunctive. First and foremost, Plaintiff seeks a declaratory judgment as to Defendants' voting and managerial rights (or lack of rights) under Plaintiff's Company Agreement. *See Company Agreement*, Ex. 1 to Plaintiff's First Am. Pet. (filed March 19, 2025). Ancillary to that, Plaintiff seeks temporary injunctive relief to preserve the *status quo* of the Dealership's operation pending a decision on the merits – namely, that it be permitted to remain open for business as it has for the past six-plus months, without interference from Defendants.

3.     The 387th District Court has not acquired dominant jurisdiction over this dispute for at least three independent reasons. ***First***, the Fort Bend Action is not "inherently interrelated" to the instant case because the actions which necessitated Plaintiff's claims in this case—Defendants' unauthorized disruption of Dealership operations—are independent of the claims asserted in Fort Bend Action. ***Second***, venue for the Fort Bend Action is not proper in Fort Bend County because (1) Defendants' claim for the appointment of a receiver for the Dealership and two other motor vehicle dealerships in the Fort Bend Action implicates Section 64.071 of the Texas Civil Practice & Remedies Code, a mandatory venue provision requiring the request for the appointment of a receiver to be brought in county of the corporation's principal office (*i.e.*, Tarrant County), and (2) the general venue rule also requires the Fort Bend Action to be brought in Tarrant County because all or a substantial portion of the events giving rise to Defendants' claims in that case occurred in Tarrant County, where the defendants in that case reside and operate. ***Third***, conferring dominant jurisdiction over this action on the 387th District Court would improperly delay and/or prevent a prompt and full adjudication of Plaintiff's claims for ancillary relief in this case, resulting in irreparable and immeasurable harm to the Dealership's business operations. *See Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001) (the "first-filed rule admits of exceptions when

App.F 0002

its justifications fails, as when the first court does not have the full matter before it, or when conferring dominant jurisdiction on the first court will delay or even prevent a prompt and full adjudication ….").

4.    For these reasons, the Court should deny the Motion in its entirety.

**ARGUMENT AND AUTHORITIES**

**A.  Section 65.023 of the Texas Civil Practice and Remedies Code does not apply because the relief sought by Plaintiff in this case is not primarily injunctive.**

5.    Initially, as Defendants note in the Motion, a motion to transfer venue requires a minimum 45-day notice period of the hearing on motions to transfer to the nonmovant, unless otherwise granted by leave of court. TEX. R. CIV. P. 87. Defendants have not requested leave of court to obtain their hearing on the Motion, which seeks to transfer this case to the 387th District Court, prior to the requisite 45-day notice period.

6.    In any event, the temporary injunctive relief requested by Plaintiff is ancillary to the declaratory judgment action because the injunctive relief is sought solely to maintain the *status quo ante* (*i.e.*, the peaceable operation of the dealership) pending resolution of the declaratory judgment sought. *In re FPWP GP LLC*, No. 05-16-01145-CV, 2017 WL 461355, at *3 (Tex. App.—Dallas Jan. 25, 2017, no pet.) ("When the injunctive relief is sought simply to maintain the status quo pending resolution of the lawsuit, then the injunctive relief is ancillary to the relief sought and [mandatory venue] section 65.023 does not apply."); *see also In re City of Corpus Christi*, 13–12–00510–CV, 2012 WL 3755604, at **1, 5 (Tex. App.—Corpus Christi Aug. 29, 2012, orig. proceeding) (mem. op.) (injunctive relief ancillary to declaratory relief where plaintiff sought only temporary injunctive relief pending final hearing of the merits of the declaratory judgment action); *In re Adan Volpe Props., Ltd.*, 306 S.W.3d 369, 377–78 (Tex. App.—Corpus Christi 2010, orig. proceeding) (holding that request for injunctive relief was ancillary in libel action in which declaratory judgment was also sought where injunction was sought to maintain *status quo* until libel suit could be resolved);

<span style="color:red">App.F 0003</span>

*Shuttleworth v. G & A Outsourcing, Inc.*, No. 01–08–00650–CV, 2009 WL 277052, at \*\*1, 4 (Tex. App.—Houston [1st Dist.] Feb. 5, 2009, no pet.) (holding that temporary injunction to prevent party from using, disseminating, or destroying confidential information was ancillary to suit against former employee for violation of non-compete and non-solicitation agreements where injunction sought to preserve evidence for trial and plaintiff sought substantial damages on contract and tort claims).

7.	Plaintiff's live pleading does not seek a permanent injunction. When a party "does not plead for a permanent injunction, the injunctive relief is ancillary to the other relief sought." *FPWP*, 2017 WL at \*3; *see also In re Cont'l Airlines*, 988 S.W.2d at 736-37 (section 65.023 inapplicable and injunctive relief ancillary to prayer for declaratory relief where the plaintiff did not pray for permanent injunctive relief, the pleadings would not support a permanent injunction, the controversy can be fully resolved by declaratory judgment, and "throughout the pleading the only requests for court action ask the trial court to declare the parties' rights under the contract."); *Flewellen v. Brownfield State Bank & Tr. Co. of Brownfield*, 517 S.W.2d 384, 388 (Tex. Civ. App.—Amarillo 1974, no writ) ("The petition demonstrates that the principal and primary relief sought is to establish by the court's decree the correlative rights of the plaintiff and the defendants for possession and disposition of the cotton grown by Weiss, and the respective priorities thereto, and that the injunctive relief sought is only incidental to such main relief and to protect and enforce the rights so established.").

**B.	The 387th District Court has not acquired dominant jurisdiction over this case.**

8.	To support a finding that the 387th District Court acquired dominant jurisdiction over this case, this Court must find both that (1) this case and the Fort Bend County Action are "inherently interrelated," and (2) that venue is proper in Fort Bend County. *In re Red Dot Bldg. Sys., Inc.*, 504 S.W.3d 320, 322 (Tex. 2016) ("In instances where **inherently interrelated** suits are pending in two counties, **and venue is proper in either county**, the court in which suit was first filed acquires dominant jurisdiction.") (emphasis added). When both elements are shown to exist, the "general rule" is that the court in the second action must abate the suit. *Id.*

<span style="color:red">App.F 0004</span>

**1. The Fort Bend Action is not inherently interrelated with this case.**

9.      "To determine if claims are inherently interrelated, triggering dominant jurisdiction, we are guided by the compulsory-counterclaim rule." *In re Happy State Bank*, No. 02-17-00453-CV, 2018 WL 1918217, at *4 (Tex. App.—Fort Worth Apr. 23, 2018, no pet.) (citing *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 292–93 (Tex. 2016); TEX. R. CIV. P. 97(a) (compulsory counterclaim rule)). Rule of Procedure 97 provides, in pertinent part:

> a pleading shall state as a counterclaim any claim within the jurisdiction of the court, not subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim …

TEX. R. CIV. P. 97(a); *see also In re Happy State*, 2018 WL at *4 ("A counterclaim is compulsory if the claim: (1) is within the jurisdiction of the court, (2) was not the subject of a pending action when the original suit was commenced, (3) **is mature and owned by the defending party at the time the pleading is filed**, (3) **arose out of the same transaction or occurrence that is the subject matter of the opposing party's claim**, (4) **is against an opposing party in the same capacity**, and (5) does not require the presence of third parties over whom the court cannot acquire jurisdiction.") (emphasis added).

10.     As a threshold matter, no defendant has filed an answer or any other pleading subject to the due-order-of-pleading rules in the Fort Bend Action. The only pleading filed by the defendants in the Fort Bend Action is their Notice of Removal to the Business Court, which is not subject to due-order-of-pleading rules. *See* TEX. GOV'T CODE § 25A.006(i) ("Removal of a case to the business court is not subject to the statutes or rules governing the due order of pleading"); *id*. (j) ("Removal of a case does not waive a defect in venue or constitute an appearance to determine personal jurisdiction"); TEX. R. CIV. P. 355(d) ("A notice of removal to the business court is not subject to due order of pleading rules. Filing a notice of removal does not waive a defect in venue or constitute an appearance waiving a challenge to personal jurisdiction.").

<span style="color:red">App.F 0005</span>

11.      Moreover, Plaintiff's claims in the instant case do not arise from the same transaction or occurrence that form the basis of Defendants' claims in the Fort Bend Action. Indeed, as alleged in their First Amended Third-Party Petition filed in the Fort Bend Action on December 20, 2024, Defendants complain of actions arising out of, *inter alia*, a July 22, 2024 vote of no-confidence in Jeff's continued management of the Dealership by Plaintiff's principals, and to Defendants' asserted rights under the Buy-Sell Agreement between the parties and their request for the appointment of a receiver over the Dealership. *See* Defendants' First Amended Petition, <u>Ex. 6 to Plaintiff's First Am. Pet.</u>, ¶¶ 31 (complaining that Defendants were wrongfully terminated and removed from management of the Dealership in July and September 2024); 44 ("the Buy-Sell Agreement stipulates that an option to purchase the Sebastians' interest in [the various motor vehicle dealerships, including the Dealership] shall arise upon the occurrence of certain events … Jeff Sebastian was terminated on July 22, 2024, which … expressly triggered the applicable Buy-Sell Agreement"); 48-49 (seeking declaratory judgment as to the parties' rights under the Buy-Sell Agreement), 74-79 (requesting the appointment of a receiver for the Dealership).

12.      By contrast, the necessity of Plaintiff's request for a declaratory judgment regarding the effect of Defendants' actions after their voting rights were lost under the Dealership's Company Agreement did not accrue until ***after the filing of Defendants' operative petition in the Fort Bend Action***, namely, their purported seizure of control of the Dealership. *See* <u>Plaintiff's First Am. Pet</u>. (filed March 19, 2025), ¶¶ 15-16 (explaining that Jeff's request for the appointment of a receiver over the Dealership in the Fort Bend Action triggered an involuntary transfer of his voting rights under Plaintiff's Company Agreement), 19-20, 23 (describing the unauthorized actions Defendants purported to take under the Company Agreement, namely removing Thomas R. Durant as Plaintiff's President and Manager), 24 (describing Defendants' disruption of Plaintiff's business operations upon unauthorized entrance onto Dealership property on March 12, 2025).

<span style="color:red">App.F 0006</span>

13. Further, Plaintiff is not a named defendant in the Fort Bend Action – Defendants purport to sue derivatively on behalf of Plaintiff, but Plaintiff is not named as a defendant in that case. Therefore, the claims at issue in this case are not asserted by and between these parties "in the same capacity," negating the compulsory counterclaim rule's application here. A stakeholder in an organization, including a beneficial owner, can bring a derivative action on behalf of the entity. When the stakeholder does so, the suit is not in an individual capacity, but as a representative of the entity and must be brought in that representative, or derivative capacity. *Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 775-76 (Tex. 2020); *Mossler v. Nouri*, No. 03–08–00476–CV, 2010 WL 2133940, at *7 (Tex. App.—Austin May 27, 2010, pet. denied). Legally, the individual suing derivatively is a different and separate person from the same individual in any other capacity. *Elizondo v. Tex. Nat. Res. Conservation Comm'n*, 974 S.W.2d 928, 931 (Tex. App.—Austin 1998, no pet.).

14. For the foregoing reasons, the Fort Bend Action is not so "inherently interrelated" with Plaintiff's claims in this case as to confer dominant jurisdiction over this case to Fort Bend County, where Defendants initially filed claims against certain individuals and entities that are not even a party to this case.

**2. Venue for the claims asserted in the Fort Bend Action is not maintainable in Fort Bend County.**

15. Venue is not proper in Fort Bend County for the Fort Bend Action, but due to the unique procedural posture of the Fort Bend Action, the defendants in that case (which do not include Plaintiff) have not had an opportunity to move for transfer to the proper venue – Tarrant County. Further complicating matters is the fact that Defendants' claims in the Fort Bend Action were not properly joined with their interspousal divorce claims, but the defendants in that case have similarly been prevented from seeking a severance of the claims against them from the Defendants' interspousal divorce claims.

App.F 0007

16.     In their operative petition in the Fort Bend Action, Defendants plead that venue is mandatory in Fort Bend County pursuant to Section 64.071 of the Texas Civil Practice & Remedies Code and Section 11.402 of the Texas Business Organizations Code because Defendants seek to appoint a receiver for the Dealership and two other motor vehicle dealership also owned and operated by Plaintiff's principals, and they allege that Fort Bend County is where the principal offices of those dealerships are located. *See Defendants' First Amended Petition in Fort Bend Action*, Ex. 6 to Plaintiff's First Am. Pet., ¶ 18; *cf. Defendants' Original Third Party Pet. in Fort Bend Action*, Ex. 5 to Plaintiff's First Am. Pet., ¶¶ 5-6 (noting that the principal office of the Dealership is in Tarrant County, Texas); TEX. CIV. PRAC. & REM. CODE § 64.071 (mandatory venue for action for appointment of corporate receiver is county where the corporation's principal office is located); TEX. BUS. ORGS. CODE § 11.402 (district courts in county where a domestic entity's registered office or principal place of business is located has jurisdiction to appoint a receiver in certain enumerated instances).

17.     In the Fort Bend Action, Defendants also suggest that venue is "proper" in Fort Bend County pursuant to Sections 15.002 and 15.005 of the Texas Civil Practice & Remedies Code "as it is the county in which the underlying divorce occurred, and it is where all or a substantial part of the events or omissions giving rise to the claim[s] occurred." *Defendants' First Am. Pet. in Fort Bend Action*, Ex. 6 to Plaintiff's First Am. Pet., ¶ 17; TEX. CIV. PRAC. & REM. CODE § 15.002 (general venue rule providing that, ***where a mandatory venue provision does not apply***, lawsuits are proper in the county where "all or a substantial part of the events or omissions giving rise to the claim occurred," in the county of the defendant's residence, in the county of the defendant's principal office, or if none of the foregoing apply, in the county where the plaintiff resided at the time of accrual of the claims that are the subject of the suit) (emphasis added); *Id.* § 15.005 ("[i]n a suit in which the plaintiff has established proper venue against a defendant, the court also has venue of all the defendants in all claims or actions arising out of the same transaction,

App.F 0008

occurrence, or series of transactions or occurrences.”). Trial courts “shall transfer an action to another county of proper venue if the county in which the action is pending is not a proper county ….” TEX. CIV. PRAC. & REM. CODE § 15.063.

18. In actions “governed by a statute prescribing mandatory venue, the action ‘shall be brought in the county required by the statute.’” *Fortenberry v. Great Divide Ins. Co*., 664 S.W.3d 807, 811 (Tex. 2023) (quoting TEX. CIV. PRAC. & REM. CODE § 15.016). A mandatory venue provision applicable to one claim in a lawsuit involving multiple claims confers mandatory venue over all claims involved in the lawsuit, provided that such claims are properly joined in the lawsuit with the claim to which the mandatory venue provision applies. *See* TEX. CIV. PRAC. & REM. CODE § 15.004 (“In a suit in which a plaintiff properly joins two or more claims or causes of action arising from the same transaction, occurrence, or series of transactions or occurrences, and one of the claims or causes of action is governed by [a] mandatory venue provision[] … the suit shall be brought in the county required by the mandatory venue provision.”).

19. “Proper” venue, on the other hand, refers to the general venue rule or the permissive-venue provisions, which apply when there is no applicable mandatory venue provision. *See* TEX. CIV. PRAC. & REM. CODE § 15.001(b); *O’Quinn v. Hall*, 77 S.W.3d 438, 448-49 (Tex. App.—Corpus Christi 2002, no pet). Importantly, venue is determined by facts as they existed when the cause of action accrued. TEX. CIV. PRAC. & REM. CODE § 15.006; *Fortenberry*, 664 S.W.3d at 811.

20. An action to appoint a receiver for a Texas corporation “shall” be brought in the county where the corporation’s “principal office” is located. TEX. CIV. PRAC. & REM. CODE § 64.071; *see also Perryman*, 546 S.W.3d at 131 (“the phrase ‘shall bring suit’ is ‘unmistakably mandatory’”). “Principal office” is defined as “a principal office of a corporation … in which the decision makers for the organization within this state conduct the daily affairs of the organization.”

App.F 0009

TEX. CIV. PRAC. & REM. CODE § 15.001(a). "The mere presence of an agency or representative does not establish a principal office." *Id.*

21.     "To establish venue based on a principal office, plaintiffs must show the employees in the county where the lawsuit was filed (1) are the 'decision makers' for the company, and (2) have 'substantially equal responsibility and authority' relative to other company officials within the state." *Ford Motor Co. v. Johnson*, 473 S.W.3d 925, 929 (Tex. App.—Dallas 2015, pet. denied) (quoting and citing *In re Missouri Pacific R. Co.*, 998 S.W.2d 212, 217, 220 (Tex. 1999)). "'Decision makers' who conduct the daily affairs are different kinds of officials than agents or representatives, and 'daily affairs' does not mean relatively common, low-level management decisions." *Id.* (citing *Mo. Pac.* at 217).

22.     Here, both before and after the events allegedly giving rise to Defendants' claims against the defendants in the Fort Bend Action, the final decision-makers with respect to all significant events affecting the business operations of the Dealership made those decisions in Tarrant County, Texas. *See* Ex. A, Affidavit of T. Bently Durant, ¶ 3. Moreover, according to Defendants, the alleged actions that give rise to their application for the appointment of a receiver for the Dealership were taken by Defendants "since," *i.e.*, after, the Sebastians' alleged "exclusion" from the Dealership. *Defendants' First Am. Pet. in Fort Bend Action*, Ex. 6 to Plaintiff's First Am. Pet., ¶ 74. In other words, the Sebastians admit that their cause of action for the appointment of a receiver did not accrue until the Sebastians' involvement in the affairs of the Classic Dealerships ceased. *Cf.* TEX. CIV. PRAC. & REM. CODE § 15.006 ("A court shall determine the venue of a suit based on the facts existing at the time the cause of action that is the basis of the suit accrued."). While Defendants may dispute that such actions were permitted under the organizational documents of Plaintiff, they cannot seriously dispute that such actions were taken by the defendants in the Fort Bend Action where they reside and operate – Tarrant County, Texas. Ex. A,

<span style="color:red">App.F 0010</span>

<u>Affidavit of T. Bently Durant</u>, ¶¶ 3-4. Accordingly, the mandatory venue for the Fort Bend Action is Tarrant County, Texas.

23.     Moreover, Defendants cannot meet their burden to prove that Plaintiff maintains any office or presence in Fort Bend County. <u>Id</u>., ¶¶ 6-8; *see Fortenberry*, 664 S.W.3d at 811 (once a defendant challenges the plaintiff's venue choice, the "plaintiff bears the burden to present prima facie proof that venue is maintainable in the county of suit …."). This is because Plaintiff's sales and service facility is located at 8100 S. Texas 6, Houston, TX 77083, which is in Harris County, Texas. <u>Id</u>., ¶ 6.

24.     Thus, venue for the claims asserted Fort Bend Action is mandatory in Tarrant County, Texas, as that is where the principal office of the Dealership, and other motor vehicle dealerships subject to Defendants' claims in the Fort Bend Action, are located. Therefore, Defendants' initiation of their claims against Plaintiff's principals in the 387th District Court did not confer dominant jurisdiction upon it because venue was not, and is not, proper in that court.

**3.   Conferring dominant jurisdiction over this case to the 387th District Court would improperly hinder Plaintiff's ability to seek a prompt and full adjudication of Plaintiff's ancillary claims to preserve the *status quo* in this case.**

25.     Additionally, conferring dominant jurisdiction over this case to the 387th District Court would improperly delay and/or prevent a prompt and full adjudication of Plaintiff's claims for ancillary relief in this case. *See Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001) (the "first-filed rule admits of exceptions when its justifications fails, as when the first court does not have the full matter before it, or when conferring dominant jurisdiction on the first court will delay or even prevent a prompt and full adjudication ….").

26.     Here, because of the Fifteenth Court of Appeals' stay of the Fort Bend Action, Plaintiff was prohibited from seeking any relief from the 387th District Court when its causes of action in this case accrued during the stay. Moreover, the stay notwithstanding, had Plaintiff filed in the 387th District Court, Plaintiff would have invited argument that it waived its objection to venue in Fort Bend

<span style="color:red">App.F 0011</span>

County. *See* TEX. R. CIV. P. 86 ("The motion objecting to improper venue may be contained in a separate instrument filed concurrently with or prior to the filing of a movant's first responsive pleading …."). Accordingly, applicable law and the real-world implications of Plaintiff's business continuing to be disrupted by Defendants necessitated Plaintiff's filing of this action in this Court – the alternative, allowing Defendants to continue to disrupt and cause irreparable harm to Plaintiff's economic and reputational interests until the Fifteenth Court of Appeals' stay is lifted, was not an option Plaintiff could afford to take.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court deny the Motion in its entirety, and that Plaintiff be awarded all other equity to which it may show itself justly entitled, whether by law or in equity.

Respectfully submitted,

*/s/ Timothy D. Zeiger*
Derek D. Rollins
State Bar No. 24029803
Lucas Peterson
State Bar No. 24121468
SHACKELFORD, MCKINLEY & NORTON, LLP
9201 N. Central Expressway
4th Floor
Dallas, Texas 75231
214-780-1400
drollins@shackelford.law
lpeterson@shackelford.law

Timothy D. Zeiger
State Bar No. 22255950
tzeiger@shackelford.law
2600 Via Fortuna, Suite 150
Austin, Texas 78746
(512) 469-0900

AND

James E. Key

<span style="color:red">App.F 0012</span>

State Bar No. 24012958
HARRIS, FINLEY & BOGLE, P.C.
777 Main Street, Suite 1800
Fort Worth, Texas 76102
817-870-8735 (direct)
817-333-1182 (fax)
Jkey@hfblaw.com

**ATTORNEYS FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on March 19, 2025, a true and correct copy of the above and foregoing was served in accordance with Rule 21a on all counsel of record.

*/s/ Timothy D. Zeiger*
Timothy D. Zeiger

<span style="color:red">App.F 0013</span>

# EXHIBIT A

NO. 25-BC11A-0001

| | | |
|---|---|---|
| IN THE MATTER OF THE MARRIAGE OF TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFREY SEBASTIAN | § § § § | IN THE DISTRICT COURT |
| AND IN THE INTEREST OF G.S., A CHILD | § § § | |
| ------------------------------------------------- | § § | |
| TIFFANY LYNN SEBASTIAN AND MICHAEL JEFFREY SEBASTIAN, INDIVIDUALLY AND DERIVATELY ON BEHALF OF THE CLASSIC DEALERSHIPS, and 16835 CADET PARTNERS, LLC, | § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | 387th JUDICIAL DISTRICT |
| T. BENTLY DURANT, THOMAS R. DURANT, THE DURANT CLASSIC DYNASTY TRUST, MICHAEL A. WARD, 8100 PARTNERS, LTD., 8100 MANAGEMENT LLC, 8705 PARTNERS, LTD., and 8705 MANAGEMENT LLC, | § § § § § § § § | |
| Defendants. | § | FORT BEND COUNTY, TEXAS |

## AFFIDAVIT OF THOMAS BENTLY DURANT

STATE OF TEXAS       )
                               )
COUNTY OF _Tarrant_    )

I, **THOMAS BENTLY DURANT**, being duly sworn, depose and state that the following is true and correct:

1. I am above the age of eighteen, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

App.F 0014

2.      I am the Chief Operating Officer of Classic Chevrolet, Inc., and General Counsel to the Classic Family of Dealerships. I am also a beneficiary of The Durant Classic Dynasty Trust ("the Trust"), the majority interest holder in Classic Chevrolet Sugar Land, LLC ("Classic Sugar Land"), Classic Chevrolet West Houston, LLC ("Classic West Houston"), Classic Elite Buick GMC, Inc. ("Classic Buick GMC"), and 16835 Cadet Partners, LLC ("Cadet Partners") (collectively "the Classic Dealerships"). By virtue of my position and responsibilities, I am familiar with the operations of the Classic Dealerships.

3.      Both before and after the events allegedly giving rise to Jeff and Tiffany Sebastian's claims against the Defendants in the above-referenced matter, Tom Durant, Marin ("Mark") Escamilla, as Trustee of the Trust, and myself were collectively the final decision-makers with respect to all significant events affecting the business operations of the Classic Dealerships. While the common, low-level management decisions associated with running a motor vehicle dealership were delegated to employees on site at the Classic Dealerships, all significant decisions affecting the Classic Dealerships occurred in Tarrant County, Texas. No employee or other personnel on site at the Classic Dealerships has equal responsibility or authority to make significant business decisions for the Classic Dealerships.

4.      Tom Durant, Mark Escamilla, Trustee of the Trust, and myself reside in Grapevine, Texas, which is in Tarrant County, Texas, and work out of the Classic Dealerships' principal office located at 1101 W. State Highway 114, Grapevine, TX 76051, which is also located in Tarrant County, Texas. This principal office is where the meetings of the Members of the Classic Dealerships, which resulted in the termination of the Sebastians' employment and managerial responsibilities associated with the Classic Dealerships, occurred.

5.      Michael A. Ward, a named defendant in the above-referenced action, is not an employee or other person known to the Classic Dealerships or Defendants. On information and belief, the Sebastians intended to name James Michael Ward, not Michael A. Ward, as a defendant in this action. James Michael Ward resides in Tarrant County, Texas.

6.      The sales and service facility for Classic West Houston is located at 8100 S. Texas 6, Houston, TX 77083. This facility is in Harris County, Texas.

7.      The sales and service facility for Classic Buick GMC is located at 16835 Katy Fwy, Houston, TX 77094. This facility is in Harris County, Texas.

8.      Cadet Partners is a limited liability company that owns the real property on which the Classic Buick GMC sales and service facility operates. The principal and only office of Cadet Partners is located at 1101 W. State Highway 114, Grapevine, TX 76051, which is located in Tarrant County, Texas. Cadet Partners maintains no office or presence in Fort Bend County, Texas.

App.F 0015

THOMAS BENTLY DURANT

STATE OF TEXAS §
§
COUNTY OF Tarrant §

BEFORE ME, the undersigned authority, this day personally appeared **THOMAS BENTLY DURANT**, who has been properly identified and who, after being duly sworn, deposes and says that he has executed the foregoing Affidavit and that the information contained therein is within his personal knowledge and is true and correct.

SWORN TO AND SUBSCRIBED before me this 21 day of February, 2025.



TAMMY KIMBER
My Notary ID # 11972020
Expires May 15, 2028

_____
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

My commission expires: 5-15-28

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Rebecca Duckworth on behalf of Derek Rollins
Bar No. 24029803
rduckworth@shackelford.law
Envelope ID: 98670238
Filing Code Description: No Fee Documents
Filing Description: Plaintiff's Response to Defendants' Joint Motion to Transfer Venue and to Dissolve Temporary Restraining Order (Sebastian)
Status as of 3/20/2025 9:06 AM CST

Associated Case Party: MICHAELJEFFREYSEBASTIAN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| E. MichelleBohreer | | michelle@bohreerlaw.com | 3/20/2025 7:42:43 AM | SENT |

Associated Case Party: TIFFANYLYNNSEBASTIAN

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Mitch Little | | mitch.little@solidcounsel.com | 3/20/2025 7:42:43 AM | SENT |
| Steven Ovando | | steven.ovando@solidcounsel.com | 3/20/2025 7:42:43 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Derek D.Rollins | | drollins@shackelford.law | 3/20/2025 7:42:43 AM | SENT |
| Timothy DZeiger | | TZeiger@shackelford.law | 3/20/2025 7:42:43 AM | SENT |
| Sharon Taylor | | sharont@bohreerlaw.com | 3/20/2025 7:42:43 AM | SENT |
| Pritesh Soni | | pritesh@bohreerlaw.com | 3/20/2025 7:42:43 AM | SENT |
| E MichelleBohreer | | e-service@bohreerlaw.com | 3/20/2025 7:42:43 AM | SENT |
| John LucasPeterson | | lpeterson@shackelford.law | 3/20/2025 7:42:43 AM | SENT |
| Rebecca DeeDuckworth | | rduckworth@shackelford.law | 3/20/2025 7:42:43 AM | SENT |

App.F 0018

FILED
TARRANT COUNTY
3/20/2025 9:19 AM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 236-362746-25

| | | |
|---|---|---|
| CLASSIC CHEVROLET WEST HOUSTON, LLC, Plaintiff, | § § § § § | IN THE DISTRICT COURT OF |
| v. | § § § | TARRANT COUNTY, TEXAS |
| MICHAEL JEFFREY SEBASTIAN AND TIFFANY SEBASTIAN, Defendants. | § § § § § | 236TH JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANTS' EMERGENCY MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER, ~~FOR ACTION ON BOND~~ AND STAY OF PROCEEDINGS

On this day came on for consideration the Defendants, Michael Jeffrey Sebastian and Tiffany Sebastian's ("Sebastians") Emergency Motion to Dissolve Temporary Restraining Order and for Action on Bond (the "Motion"). The Court after considering the pleadings, the motion and response, and hearing arguments of counsel, is of the opinion the Motion should be GRANTED. It is therefore

ORDERED, ADJUDGED AND DECREED that Defendants, Michael Jeffrey Sebastian and Tiffany Sebastian's Motion is hereby GRANTED. It is further

ORDERED, ADJUDGED AND DECREED that the Temporary Restraining Order entered on March 13, 2025 at 2:07 p.m. is hereby dissolved. It is further

ORDERED, ADJUDGED AND DECREED that a stay of this proceeding is GRANTED *or until further Order of the Court.* pending the actions of the 15th Court of Appeals, ~~and thereafter on the Sebastians' Motion to~~ Transfer Venue. ~~It is further~~

1

App.G 0001

~~ORDERED, ADJUDGED AND DECREED that Defendants be granted relief upon the~~ *RHW*

~~bond in the sum of $1,000.00 plus any accrued interest.~~

SIGNED this _20th_ day of _March_ , 2025 in Fort Worth, Texas.

_R. H. Wallace_
JUDGE PRESIDING  **Sitting by Assignment**

2

App.G 0002


**Shackelford**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS & COUNSELORS

**Derek D. Rollins**
9201 N. Central Expressway
Fourth Floor
Dallas, Texas 75231
(214) 780-1400 (Main)
(214) 780-1401(Fax)
drollins@shackelford.law

March 12, 2025

**VIA E-mail to michelle@bohreerlaw.com**
Jeff Sebastian
c/o Michelle Bohreer
Bohreer Law Firm
777 Post Oak Blvd., Suite 950
Houston, Texas 77056

  Re: Chevrolet West Houston

Dear Michelle:

  Michelle, I understand your client, Jeff Sebastian, went to the Chevrolet West store today, ostensibly to go to work or manage the store. He is not an employee and any voting / managerial rights previously enjoyed by him were lost last month pursuant to the Company Agreement due to his request for receivership.

  I have attached relevant portions of the Company Agreement for your reference.

  To confirm, Jeff is not welcome at the store and he is not authorized to work for, or manage, the activities at that dealership. He will be treated as a trespasser, to the extent he is unwilling to voluntarily leave. The dealership reserves all rights associated with this disruption and with Jeff falsely holding himself out as having a right to manage or otherwise operate Chevrolet West.

  Should you have any questions, please feel free to contact our office.

       Sincerely,

       Derek D. Rollins

cc:  Client

App.H 0001

THE SECURITIES REPRESENTED HEREBY: (1) HAVE NOT BEEN REGISTERED OR QUALIFIED UNDER THE U.S. FEDERAL SECURITIES ACT OF 1933, AS AMENDED (THE "ACT"), OR UNDER STATE SECURITIES LAWS AND ARE "RESTRICTED SECURITIES" AS DEFINED IN RULE 144 PROMULGATED UNDER THE ACT ("RULE 144"); (2) HAVE BEEN ACQUIRED FOR INVESTMENT AND NOT WITH A VIEW TO OR IN CONNECTION WITH THE DISTRIBUTION THEREOF; AND (3) MAY NOT BE SOLD OR OTHERWISE DISPOSED OF WITHOUT AN EFFECTIVE FEDERAL REGISTRATION STATEMENT AND STATE QUALIFICATION RELATED THERETO OR, IF REQUESTED BY THE MANAGERS, AN OPINION OF COUNSEL FURNISHED AT BUYER'S EXPENSE IN FORM AND SUBSTANCE AND FROM COUNSEL REASONABLY SATISFACTORY TO THE ISSUER OF THESE SECURITIES THAT SUCH SALE OR DISPOSITION IS IN COMPLIANCE WITH RULE 144 OR THAT SUCH REGISTRATION AND QUALIFICATION OTHERWISE IS NOT REQUIRED UNDER THE ACT AND UNDER APPLICABLE STATE LAW.

ALL TRANSFERS OF MEMBERSHIP INTERESTS ARE SUBJECT TO AND GOVERNED BY THAT CERTAIN BUY-SELL AGREEMENT FOR MEMBERSHIP INTERESTS OF EVEN DATE HEREWITH, AS AMENDED FROM TIME TO TIME, BY AND AMONG THE COMPANY AND ITS MEMBERS.

## COMPANY AGREEMENT

## OF

## CLASSIC CHEVROLET WEST HOUSTON, LLC

THIS COMPANY AGREEMENT, dated as of November 2ᵗʰ, 2019, is hereby duly adopted as the Company Agreement (hereinafter referred to as this "Agreement") of Classic Chevrolet West Houston, LLC, a Texas limited liability company, by the Managers of Company (as defined below) and by the Members (as defined below) who agree to be bound hereby.

The Certificate of Formation of Classic Chevrolet West Houston, LLC, dated as of October 10, 2019, was filed in the Office of the Secretary of State of Texas and became effective on October 10, 2019.

## ARTICLE I
## DEFINITIONS

1.1     Definitions. The following terms used in the Agreement shall have the following meanings (unless otherwise expressly provided herein):

(a)     "Additional Capital Contributions" means Capital Contributions made pursuant to Section 7.3.

(b)     Adjusted Capital Account Deficit". Any reference to "Adjusted Capital

App.H 0002

(ii)     The Gross Asset Values of all Company assets shall be adjusted to equal their respective gross fair market values, as determined by the Managers, as of the following times: [a] the acquisition of an additional interest in the Company by any new or existing Member in exchange for more than a de minimis Capital Contribution, including services; [b] the distribution by the Company to a Member of more than a de minimis amount of Property as consideration for an interest in the Company; and [c] the liquidation of the Company within the meaning of Reg. § 1.704-1(b)(2)(ii)(g), provided, however, that adjustments pursuant to clauses [a] and [b] above shall be made only if the Managers reasonably determine that such adjustments are necessary or appropriate to reflect the relative economic interests of the Members;

(iii)     The Gross Asset Value of any Company asset distributed to any Member shall be adjusted to equal the gross fair market value of such asset on the date of distribution as determined by the distributee and the Managers, provided that, if the distributee is a Manager, the determination of the fair market value of the distributed asset shall require the consent of a majority of the Members; and

(iv)     The Gross Asset Values of Company assets shall be increased (or decreased) to reflect any adjustments to the adjusted basis of such assets pursuant to Section 734(b) or Section 743(b) of the Code, but only to the extent that such adjustments are taken into account in determining Capital Accounts pursuant to Reg. § 1.704-1(b)(2)(iv)(m) and subparagraph (vi) of the definition of Profits and Losses or Article VIII, provided, however, that Gross Asset Values shall not be adjusted pursuant to this subparagraph (iv) to the extent the Managers determine that an adjustment pursuant to subparagraph (ii) is necessary or appropriate in connection with a transaction that would otherwise result in an adjustment pursuant to this subparagraph (iv).

If the Gross Asset Value of an asset has been determined or adjusted pursuant to subparagraphs (i), (ii), or (iv), such Gross Asset Value shall thereafter be adjusted by the Depreciation taken into account with respect to such asset for purposes of computing Profits and Losses.

(y)     "Initial Capital Contribution" means the initial Capital Contribution to Company made by a Member pursuant to this Agreement.

(z)     "Involuntary Transfer" shall mean (i) any foreclosure or similar event associated with a Membership Interest or any beneficial right therein; (ii) committing an act of bankruptcy or making a general assignment for the benefit of creditors; or (iii) if there is filed by or against a Member a petition in bankruptcy or a petition for the appointment of a receiver, or the commencement under any bankruptcy or insolvency laws of any proceeding for relief, composition, extension, arrangement or adjustment of any obligations of such Member; or (iv) the issuance of any writ, attachment or similar process against the property of a Member; or (v) the taking of possession of or assumption of control of all or any substantial part of the property of a Member by any government or agency thereof.

App.H 0003

Provided, however, notwithstanding the foregoing, there shall be no Involuntary Transfer pursuant to (iii), (iv), or (v) above if, within sixty (60) days after: [a] any matter described in (iii), such filing, petition, or commencement is withdrawn, released, vacated or stayed; or [b] any matter described in (iv) above, such writ, attachment, or similar process is vacated, released, or bonded; or [c] any matter described in (v) above, such taking of possession of or assumption of control shall have been rescinded or otherwise relinquished or abandoned.

The date of such Involuntary Transfer shall be: [a] with respect to any matter described in (ii) upon the committing of such acts of bankruptcy or making of such general assignment; or [b] with respect to any matter described in (iii), (iv), or (v) above, upon the expiration of such sixty (60) day period without any of the applicable curative events described above.

(aa)    "Losses" means, for each Fiscal Year, the losses and deductions of Company determined in accordance with accounting principles consistently applied from year to year under the method of accounting adopted by Company and as reported, separately or in the aggregate, as appropriate, on Company's information tax return filed for federal income tax purposes, plus any expenditures described in Section 705(a)(2)(B) of the Code.

(bb)    "Majority" means (i) with respect to any referenced group of Members, a combination of such Members constituting more than fifty percent (50%) of the number of Members of such referenced group who are then Members, and (ii) with respect to any referenced group of Managers, a combination of any such Managers constituting more than fifty percent (50%) of the number of Managers of such referenced group who are then elected and qualified. Any action to be taken by the Managers hereunder, unless otherwise specified under the BOC or this Agreement, shall be taken upon the affirmative vote of a Majority of the Managers.

(cc)    "Majority-In-Interest" means, with respect to any referenced group of Members, a combination of any of such Members who, in the aggregate, own more than fifty percent (50%) of the Membership Interests owned by all of such referenced group of Members. Any action to be taken by the Members hereunder, unless otherwise specified under the BOC or this Agreement, shall be taken upon the affirmative vote of a Majority-In-Interest of the Members.

(dd)    "Managers" means Thomas R. Durant, Michael Jeffrey Sebastian, or any other Person(s) who is (are) designated to succeed him in that capacity or who are designated to act as additional Managers of Company as provided herein, but does not include any Person who has ceased to be a Manager of Company. "Managers" means all such Persons, whether one or more, collectively in their capacity as Managers of Company.

(ee)    "Member" means each Person designated as a Class A Member or Class B Member on Schedule 1, attached hereto and hereby made a part hereof, any successor or successors to all or any part of any such Person's interest in Company, or any additional Member admitted as a Class A Member or Class B Member of Company in accordance with Article VIII, each in its capacity as a Member of Company, but does not include any Person who has ceased to be a Member of Company. "Members" means all such Persons collectively in their capacity as Members of Company.

App.H 0004

may be admitted to the Company upon the affirmative unanimous Vote of all of the Members. A new and/or substitute Member duly admitted to the Company shall be subject to all of the terms and provisions of this Agreement. A transferee or assignee of a Membership Interest may request in writing to be admitted to the Company as a substitute Member. Each Member may, in its sole and absolute discretion, withhold its Vote for such transferee or assignee to be admitted as a Member. In addition, the Managers may require the applicant transferee or assignee to comply with additional conditions and requirements as provided by this Agreement.

6.5     Treatment of Nonpermitted Transferees. Any attempted assignment or transfer of a Membership Interest or any beneficial interest therein in contravention of this Agreement shall be of no force or effect and shall not be binding upon or recognized by the Company or any of its Members. The Company and its Members shall be entitled to treat the Member holding record ownership of the Membership Interest as the absolute owner thereof, and shall be entitled to make all Distributions, if any, to such Member without any liability whatsoever to any purported assignee or transferee, and shall incur no liability for allocations of income, gain, loss, deduction or credit, or for transmittal of reports and notices required to be given to such Member. Such an alleged assignee shall have no right to require any information or account of the Company's transactions or to inspect the Company's books and records, tax return information, or any other Company information, documents, or other data associated with the Company.

6.6     Voting and Management Rights of Transferred Interests. If a Member transfers a Membership Interest, such transferor shall lose all right to Vote and any other management right associated with that portion of the Membership Interest, the Economic Interest of which was transferred, and the transferee may obtain such rights only upon being admitted to the Company as a Member as provided under Section 6.4, and only to the extent of the rights pertaining to the Class to which such transferee is admitted.

6.7     Change of Control of Member. No Member which is not an individual shall permit any of its equity owners to transfer any ownership interest in such Member without the affirmative unanimous Vote of the Members, if such transfer would result in a Change of Control of such Member. As used in this Section, a transfer shall be deemed to cause a "Change in Control" of a Member if such transfer would, taking into account all prior transfers of equity ownership interests in such Member on a cumulative basis since the date of such Member's admission to the Company as a Member, result in fifty percent (50%) or more of the equity ownership interests in such Member being owned by Persons other than (i) the equity owners of such Member who were such as of the date of such Member's admission to the Company as a Member, or (ii) the Affiliates of such Member who were such as of the date of such Member's admission to the Company as a Member.

6.8     General Requirements for Transfer of Membership Interest. A Permitted Transfer of a Membership Interest shall be made subject to all the terms and conditions of this Agreement and shall not be recognized by the Company or considered to have transferred title to the Membership Interest until the last day of the month in which the following requirements are met to the satisfaction of the Managers:

(a)     Written Assignment. A duly executed written instrument of assignment setting forth the assigning Member's assignment of its Membership Interest shall be given to the

App.H 0005

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Rebecca Duckworth on behalf of Derek Rollins
Bar No. 24029803
rduckworth@shackelford.law
Envelope ID: 98729814
Filing Code Description: Response
Filing Description: Relators' Response to Real-Parties-In-Interest's
Emergency Motion to Reconsider the Stay Granted by the Court
Status as of 3/21/2025 10:45 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jeri Hamman | | jeri.hamman@solidcounsel.com | 3/21/2025 10:35:12 AM | SENT |
| Melissa Diaz | | melissa.diaz@solidcounsel.com | 3/21/2025 10:35:12 AM | SENT |
| Walker StevenYoung | | walker.young@solidcounsel.com | 3/21/2025 10:35:12 AM | SENT |
| Rebecca DeeDuckworth | | rduckworth@shackelford.law | 3/21/2025 10:35:12 AM | SENT |
| K. Elizabeth Swan | | eswan@shackelford.law | 3/21/2025 10:35:12 AM | SENT |
| Derek D. Rollins | | drollins@shackelford.law | 3/21/2025 10:35:12 AM | SENT |
| Timothy D.Zeiger | | tzeiger@shackelford.law | 3/21/2025 10:35:12 AM | SENT |
| Lucas Peterson | | lpeterson@shackelford.law | 3/21/2025 10:35:12 AM | SENT |
| Rosa Balderas | | rbalderas@shackelford.law | 3/21/2025 10:35:12 AM | SENT |
| E. Michelle Bohreer | | michelle@bohreerlaw.com | 3/21/2025 10:35:12 AM | SENT |
| Pritesh Soni | | pritesh@bohreerlaw.com | 3/21/2025 10:35:12 AM | SENT |
| J. Mitch Little | | mitch.little@solidcounsel.com | 3/21/2025 10:35:12 AM | SENT |
| Steven Ovando | | steven.ovando@solidcounsel.com | 3/21/2025 10:35:12 AM | SENT |
| John Coselli, II | | john@diceccolawpartners.com | 3/21/2025 10:35:12 AM | SENT |
| Jill K.Evangelista | | jill@diceccolawpartners.com | 3/21/2025 10:35:12 AM | SENT |
| Joseph W.DiCecco | | joe@diceccolawpartners.com | 3/21/2025 10:35:12 AM | SENT |
| Hon. Stacy RogersSharp | | BCClerk@txcourts.gov | 3/21/2025 10:35:12 AM | SENT |